**Appeal No.: 0:2024cv01399 (24-1399)**

**In The United States Court of Appeals**

**for the Second Circuit**

Onwy Uzoigwe

*Plaintiff-Appellant*

v.

Charter Communications LLC.

*Defendant-Appellee*

_____

Appeal from Case:

1:23-cv-07383-HG-LB

In The United States District Court for the Eastern District of New York

# APPELLANT'S BRIEF

Onwy Uzoigwe

Date filed: August 8th, 2024          4212 Flowerton Rd.

Baltimore, MD 21229

Phone: (347) 572-8280

Email: o.uzoigwe@gmail.com

*Pro se Plaintiff-Appellant*

## TABLE OF CONTENTS

Page

I. Introduction ...................................................................................10

II. Procedural History .........................................................................10

III. Relevant facts ................................................................................12

IV. Argument.......................................................................................15

   A. 28 U.S.C.A. §1291. Final Decisions of District Courts .............................15

     1. FRAP Rule 4. Appeal as of Right--When Taken......................................16

      a. Standard of Review on an Interlocutory Appeal ...................................16

      b. Plaintiff's Position on the validity of this Appeal .................................17

   B. 28 U.S.C.A. §1652. State laws as rules of decision..................................18

     1. Standard on the joinder and service on an in state defendant...................18

     1. Standard on the application of State and Federal Laws in Diversity

     Jurisdiction cases................................................................................19

     2. Standard on Personal Jurisdiction ...........................................................20

   C. The District Court did not have personal jurisdiction over the

   Defendant ........................................................................................20

     3. Service pursuant to NY CPLR §312-A.....................................................21

4.   The Defendant did not deny the receipt of the required documents utilizing

this method of service. ....................................................................23

5.   The Federal E-Sign Act preempts the provisions of NY CPLR §312-A...25

6.   The Defendant signed the Acknowledgment Documents.........................27

7.   Service which has been completed pursuant to NY CPLR §312-A after the

30-day window...............................................................................28

8.   Standard Of Review on Correcting Defective Service in New York ........30

   c.   Using NY CPLR §2001, NY CPLR 305(c), and/or Fed. R. Civ. P Rule

   4(l)(3) to cure Plaintiff's defective service would have been proper in the

   interest of justice...........................................................................31

9.   Defendant never properly rebutted service made upon them, inferring lack

of prejudice toward Defendant..........................................................34

10.  Plaintiff, later effectuated service by an alternative method in

conformity with NY CPLR 308(3). ...................................................36

11.  Plaintiff's private process server served Defendant's resident agent in

conformity with NY CPLR 308(3) and Fed. R. Civ. P Rule 4(e)(2)(C) prior to

removal, triggering the forum defendant rule ....................................37

12.  Judge Gonzalez's seemingly showed partialness towards Charter

Communications LLC.......................................................................39

13.  Judge Gonzalez denied Plaintiff's request for an evidentiary hearing...40

**D. The Trial Court's Dismissal of Plaintiff's Breach of Contract Claim was seemingly incorrect ............................................................................41**

1. *Res Judicata*/Collateral Estoppel ..............................................41

2. Judge Gonzalez's finding that Plaintiff remained an At-Will employee was a stretch ........................................................................48

3. Charter's Termination Process limiting their Ability to Terminate At-Will 51

   a. Existence of delimiting Policy....................................................52

   b. Employer or authorized representative made employee aware of the policy ....................................................................................52

   c. The employee detrimentally relied on the policy in accepting or continuing employment. ..............................................................53

**E. Negligence Claim ..............................................................................55**

**V. Conclusion ..............................................................................59**

## **TABLE OF AUTHORITIES**

## **CASES**

*21st Mortg. Corp. v. Raghu*, 154 N.Y.S.3d 84, 88 (N.Y. App. Div. 2d Dept. 2021).20

*2505 Victory Blvd., LLC v. Victory Holding, LLC*, 848 N.Y.S.2d 514, 520 (N.Y. Civ. Ct. 2007) ................................................................................................38

*Artvale, Inc. v. Rugby Fabrics Corp.*, 232 F. Supp. 814, 827 (S.D.N.Y. 1964), aff'd, 363 F.2d 1002 (2d Cir. 1966).................................................................19

*Baker v. 40 Wall St. Holdings Corp.*, 161 N.Y.S.3d 723, 724–25 (N.Y. Sup. Ct. 2022) ................................................................................................57

*Baker v. 40 Wall St. Holdings Corp.*, 208 N.Y.S.3d 680 (N.Y. App. Div. 2d Dept. 2024) ................................................................................................57

*Bank of New York Mellon v. Chaudhury*, 195 N.Y.S.3d 246, 248 (N.Y. App. Div. 2d Dept. 2023) ............................................................................20

*Baron v. Port Auth. of New York and New Jersey*, 271 F.3d 81, 85 (2d Cir. 2001)(cleaned up)................................................................ 51, 52, 53

*Berlin v. Renaissance Rental Partners, LLC*, 723 F.3d 119, 128 (2d Cir. 2013) ...16

*Brash v. Richards*, 195 A.D.3d at 582, 149 N.Y.S.3d 560 ......................................56

*Braune v. Abbott Laboratories*, 895 F. Supp. 530, 542 (E.D.N.Y. 1995)...............19

*Brinks Glob. Services USA, Inc. v. Bonita Pearl Inc.*, 686 F. Supp. 3d 357, 364 (S.D.N.Y. 2023)................................................................................32

*Broman v. Stern*, 567 N.Y.S.2d 829, 830 (N.Y. App. Div. 2d Dept. 1991)..............38

*Bumpus v. New York City Transit Auth.*, 883 N.Y.S.2d 99, 105 (N.Y. App. Div. 2d Dept. 2009) ................................................................................33

*Charnin v. Cogan*, 673 N.Y.S.2d 134, 137 (N.Y. App. Div. 1st Dept. 1998) ...........27

*Citibank, N.A. v. Conti-Scheurer*, 98 N.Y.S.3d 273, 279 (N.Y. App. Div. 2d Dept. 2019) ....................................................................... 30, 35

*Citibank, N.A. v. Conti-Scheurer*, 98 N.Y.S.3d 273, 279 (N.Y. App. Div. 2d Dept. 2019)...............................................................................35

*Collymore v. Krystal Myers, RN*, 74 F.4th 22, 27 (2d Cir. 2023) ..........................18

*Comack v. VBK Realty Associates, Ltd.*, 852 N.Y.S.2d 370, 372 (N.Y. App. Div. 2d Dept. 2008) ................................................................................58

*Cruz v. Guaba*, 159 N.Y.S.3d 828, 828 (N.Y. Sup. Ct. 2022)...................................57

*Cruz v. Guaba*, 210 N.Y.S.3d 425, 426 (N.Y. App. Div. 2d Dept. 2024...................57

*CSX Transportation, Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 467 (2d Cir. 2018) ................................................................................40

*Deutsche Bank Natl. Tr. Co. v. Martinez*, 180 N.Y.S.3d 577, 579 (N.Y. App. Div. 2d Dept. 2022) ................................................................................32

*E. Sav., FSB v. Thompson*, No. 12-CV-1197(WFK)(RLM), 2016 WL 2977268, at *4 (E.D.N.Y. May 19, 2016) ................................................................35

*Erie R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938) ....................................................20

*FirsTier Mortg. Co. v. Inv'rs Mortg. Ins. Co.*, 498 U.S. 269 (1991) ............... 17, 18

*Fisher v. Levine*, 325 N.E.2d 151, 154 (N.Y. 1975) .................................................48

*Gabin v. Greenwich House, Inc.*, 210 A.D.3d 497, 498, 177 N.Y.S.3d 582 ...........56

*Gadani v. DeBrino Caulking Associates, Inc.*, 926 N.Y.S.2d 724, 727 (N.Y. App.

   *Div. 3d Dept. 2011)* ..............................................................................................44

*Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 706 (2d Cir. 2019) .............21

*Grskovic v. Holmes*, 972 N.Y.S.2d 650, 654–55 (N.Y. App. Div. 2d Dept. 2013) ...33

*Harden v. Weinraub*, 221 A.D.3d 1460, 1462, 200 N.Y.S.3d 207 ..........................56

*Hilaire v. Dennison*, 2005, 24 A.D.3d 1152, 807 N.Y.S.2d 432 (3d Dep't) ...... 22, 31

*In re Agran*, 863 N.Y.S.2d 295, 296 (N.Y. App. Div. 3d Dept. 2008) ......................47

*In re Fosamax Products Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013) ...............19

*In re Guynup*, 968 N.Y.S.2d 608, 609 (N.Y. App. Div. 3d Dept. 2013) ..................43

*In re LTI, Inc.*, 869 N.Y.S.2d 262 (N.Y. App. Div. 3d Dept. 2008) ..........................42

*Jade Mfrs. Outlet, Inc. v. Transamerica Ins. Co.*, 237 A.D.2d 104, 104, 655

   *N.Y.S.2d 342 (4th Dep't 1997)* ............................................................................35

*Jenkins v. City of New York*, 478 F.3d 76, 85 (2d Cir. 2007)..................................43

*Kelsey v. Forster & Garbus, LLP*, 353 F. Supp. 3d 223, 228 (W.D.N.Y. 2019) .....35

*Klein v. Whirlpool Corp.*, 144 N.Y.S.3d 646, 647 (N.Y. App. Div. 2d Dept. 2021).31

*Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 940 (9th Cir. 2006)....................21

*Loeb v. Cnty. of Suffolk*, No. 22-CV-6410 (HG), 2023 WL 4163117 (E.D.N.Y. June 23, 2023) ............................................................................... 56, 57

*Lucenti v. City of Buffalo*, 29 A.D.2d 833, 287 N.Y.S.2d 612 (1968) ...................... 30

*Maldonado v. Arcadia Bus. Corp.*, No. 14CV4129DLIRML, 2015 WL 12791329, at *3 (E.D.N.Y. Aug. 27, 2015) ............................................................. 36, 40

*Marcy v. Woodin*, 237 N.Y.S.2d 402, 403 (N.Y. App. Div. 3d Dept. 1963) ............. 33

*Matter of Roach v. Cornell Univ.*, 207 A.D.3d 931, 933, 172 N.Y.S.3d 215 .......... 56

*Naldi v. Grunberg*, 908 N.Y.S.2d 639, 644–45 (N.Y. App. Div. 1st Dept. 2010) ..... 27

*Naldi v. Grunberg*, 908 N.Y.S.2d 639, 646 (N.Y. App. Div. 1st Dept. 2010) ........... 25

*Nardeo v. Diaz*, 210 N.Y.S.3d 644 (N.Y. Civ. Ct. 2024) ........................................... 36

*New York v. Mt. Tobacco Co.*, 942 F.3d 536, 543 (2d Cir. 2019) .......................... 41

*O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 429 N.E.2d 1158, 445 N.Y.S.2d 687 (1981) ............................................................................... 43

*Old Republic Ins. Co. V. P. Fin. Services of Am., Inc.*, 301 F.3d 54, 57–58 (2d Cir. 2002) ....................................................................................... 36

*Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460 (2d Cir. 1998) ................... 21

*Patricia v. Delford Industries, Inc.*, 660 F. Supp. 1429, 1434–35 (S.D.N.Y. 1987)(cleaned up) .............................................................................. 45

*People v. Bailey*, 283 N.Y.S.2d 660 (N.Y. Sup. Ct. 1967) ........................................ 45

*Phelps v. Kapnolas*, 123 F.3d 91, 93 (2d Cir. 1997) ............................................... 18

*Pollard v. New York Methodist Hosp.*, 861 F.3d 374, 382 (2d Cir. 2017..............42

*Prage v. Kavulich & Associates, P.C.*, No. 16-CV-1627 (CBA), 2016 WL 5900194, at *2 (E.D.N.Y. Oct. 7, 2016). ...................................................26

*Rooney v. Tyson*, 697 N.E.2d 571 (N.Y. 1998) ................................. 48, 49

*Ruffin v. Lion Corp.*, 940 N.E.2d 909, 911 (N.Y. 2010)............................30

*Ryan v. New York Tel. Co.*, 467 N.E.2d 487, 490 (N.Y. 1984) ........................ 45, 46

*Sinnott v. Smith*, No. 6:21-CV-06197 EAW, 2024 WL 3610054, at *8 (W.D.N.Y. July 31, 2024) ................................................ 41, 47

*Sipos v. Fastrack Healthcare Sys., Inc.*, 820 N.Y.S.2d 846 (N.Y. Sup. Ct. 2006)....42

*Slayton v. Am. Exp. Co.*, 460 F.3d 215, 224 (2d Cir. 2006)..................................16

*Smurphat v. Hobb*, 822 Fed. Appx. 44, 45–46 (2d Cir. 2020)................................16

*Trento 67, LLC v. OneWest Bank, N.A.*, No. 2022–04453, 2024 WL 2947520, at *5 (N.Y. App. Div. 2d Dept. June 12, 2024) ...........................................56

*Uzoigwe v. Charter Commun., LLC*, No. 23CV07383HGLB, 2024 WL 1756503, at *4 (E.D.N.Y. Apr. 24, 2024) ........................................... 41, 42

*Uzoigwe v. Charter Communications LLC. 1:23-cv-07383* .................................10

*Vasura v. Acands*, 84 F. Supp. 2d 531, 538 (S.D.N.Y. 2000) ..................................19

## STATUTES

*15 U.S.C.A. § 7001*...................................................................... 25, 27

*28 U.S.C. § 1332* ...........................................................................20

*28 U.S.C.A. §1291* .................................................................... 1, 15

*28 U.S.C.A. §1652* .................................................................... 1, 18

*28 USC 1441(b)(2)* ..................................................................... 20

*7002* ............................................................................................ 25

*N.Y. Exec. Order 202.67* ..................................................... 55, 57

*N.Y. Exec. Order 202.8 (Mar. 20, 2020)* ........................... 55, 57

*N.Y. Lab. Law § 623* ................................................................. 44

## RULES

*FRAP Rule 4* ............................................................. 1, 16, 17, 18

*NY CPLR §2001* ......................................................... 2, 31, 32, 33

*NY CPLR §312-A* ..................... 1, 2, 21, 22, 24, 25, 26, 28, 31, 34, 35, 39

*NY CPLR §318* ............................................................................. 22

*NY CPLR 305(c)* ................................................................. 2, 31, 37

*NY CPLR 308(3)* .................................................................. 36, 39

## I.  <u>INTRODUCTION</u>

I, *Pro se* Appellant-Plaintiff, Onwy Uzoigwe ("Plaintiff") have no representation whatsoever in this matter.  I was seeking an attorney to handle this matter against Charter Communications LLC. ("Defendant") before bringing it to the District Court.  I could not seem to find an attorney that I felt would handle this matter to the best of their ability, and the choice was to file suit *pro se* or let certain claim go due to not meeting the statute of limitations.  I submit this Brief in Support of my appeal of the District Court's Order/Judgment.  For the remainder of this matter, I will refer to myself in the third person for clarity.  Plaintiff also incorporates filings by reference from the District Court case *Uzoigwe v. Charter Communications LLC.* 1:23-cv-07383 (hereinafter "Trial Court").  The updated Trial Court appendix will also accompany this brief.

## II. <u>PROCEDURAL HISTORY</u>

This is a Breach of Contract matter regarding the termination of Mr. Uzoigwe's employment from Charter Communications LLC ("Charter" or "Defendant"), which included a claim of Negligence and NYCAC Title 20 Retaliation.  There were numerous deficiencies with Judge Hector Gonzalez's application of the law.  Furthermore, it seems that the Judge purposely ignored actions from Plaintiff, which would prove that the Defendant was properly served prior to the removal of this matter from the State Court to the District Court for

diversity jurisdiction, where Plaintiff, upon information and belief, believes that Remand of this matter to the State Court is proper. Numerous deficiencies in Judge Gonzalez's misconstrued application of the law created a belief that there might have been a conflict of interest. Upon Plaintiff revealing where there was a strong presumption of bias that seemed to result in prejudice to Plaintiff, Plaintiff requested that Judge Gonzalez recuse himself where he refused to do so. As it seemed, Judge Gonzalez wanted to keep this case under his authority. He then seemed to continue applying the law incorrectly. He later adopted the Magistrate's order despite Plaintiff's seemingly valid objections, and dismissed Plaintiff's claims. The Judge granted Plaintiff leave to file an Amended Complaint on the Breach of Contract claim only, but stated that the Court agreed with the Magistrate's Order of Plaintiff being able to amend his Complaint to state a viable claim. He further stated that the failure to file the Amended Complaint by May 24th, 2024 would end with a Judgment entered in favor of the Defendant. Plaintiff, timely filed an interlocutory notice of appeal on May 17th, 2024 appealing the Judge's non final-order/judgment, which would have been final, and became final, upon Plaintiff's choice not to amend his Complaint, to this Court. On May 31st, 2024, after the District Court Clerk sent that case index to this Court[1], Judge Gonzalez ordered the clerk to dismiss the case with

---

[1] The full case index/appendix is Exhibit P.E.1

prejudice for Plaintiff's failure to file the Amended Complaint. Due to Plaintiff not Amending his Complaint, the interlocutory appeal give this Court subject matter jurisdiction.

### III.     RELEVANT FACTS

Plaintiff Onwy Uzoigwe was hired by Time Warner Cable in December of 2015 as a Field Technician and became a member of IBEW Local 3 ("Union"), the Labor Union for the Bargaining Unit that Plaintiff was hired into. Charter Communications, LLC ("Charter" or "Spectrum") then merged with Time Warner Cable in 2016. In 2017 the Union was unable to reach a fair agreement with Charter during contract negotiations. On May 28th, 2017 The Union then chose to go on strike, which Plaintiff took part in. After months on strike Plaintiff found that the Union led an illegal strike. Plaintiff decided to return to work. Plaintiff, after receiving communication of the terms and conditions responded to an email that he received from Charter representatives stating that he would like to return to work. Charter scheduled his restart date for November 17th, 2017 where there would be an orientation first (meeting of the minds) at their College Point, NY training facility (Plaintiff's old shop). Charter went over terms and conditions, which were the same as what was communicated prior to November 17th, 2017. There were numerous technicians onboarding on that date. Charter then presented the attending

technicians with a contract to sign bearing the Charter Communications logo with the subject "Confirmation of Your Post-strike Work Status." Immediately prior to signing Wajeeha Aziz asked if there were any questions. Plaintiff presented a question in two words; "Job security?" Ms. Aziz then stated, "There is a six step process prior to termination." Satisfied with her answer, Plaintiff, and all other technicians signed the document. The document, after signing, presented two signatures, one from a Charter representative and one from Plaintiff. The document had a lifetime indefinite duration stating,

> "Your assignment is permanent so that you will continue in that assignment through and after the end of the strike by Local 3, and you will not be displaced by the returning strikers at the end of the strike."

> (Trial Court: ECF 1-1 p. 16).

After signing the document Plaintiff asked Ms. Aziz if he could take a picture of it. Ms. Aziz said "Yeah, go ahead." There was a presentation, then all technicians were to head to their assigned garages/home shop. Plaintiff was assigned to Charter's 5th Avenue Shop in Sunset Park, Brooklyn. Plaintiff worked out of that shop until he was able to transfer in 2019 back to College Point. Plaintiff was called in by management around December 5th, 2019 for missing a timeframe for his first job. Plaintiff told management that he went home to use the bathroom. Management told Plaintiff to try and do his first job first before going home to use the bathroom. Plaintiff was never told that he couldn't go home to use the bathroom.

Plaintiff stopped home numerous times after that to use the bathroom unaware of any repercussions that would follow. Plaintiff requested to work on Thanksgiving Day on November 28th, 2019 and it was granted. Plaintiff was given a route in South Queens. After his last customer, Plaintiff drove home to change his clothes as he was heading to New Jersey for Thanksgiving dinner and it would save time. Plaintiff worked the next day, but had an inconspicuous stomach virus. Plaintiff felt no pain; just a constant need to go to the bathroom. Plaintiff did not concede to the feeling being a stomach virus until he, just after using the bathroom at a Rite-Aid on Atlantic Ave., had to run back into the bathroom as soon as he got to his work van. Plaintiff called a Manager (Plaintiff forgot the manager's s name but describes him as Dominican, light brown skin, about 6'3" tall) and told him his issue. Plaintiff tried to make it through the day but could not. Plaintiff eventually went back to the shop after communicating with the manager and later went home.

On or around January 7th, 2020, Plaintiff was met at the front door of his job's building by is Supervisor Chris Wenger who told him there was a meeting he needed to attend. Plaintiff thought it was a normal company meeting. It was actually an investigatory meeting. The security department asked Plaintiff some questions about a stolen/missing meter. Plaintiff stated that he didn't know what they were talking about. The meter was the topic of the meeting. Management then showed GPS data of Plaintiff's van. They asked him if he went home on particular days,

Plaintiff said yes. Management asked why. Plaintiff said to use the bathroom. Management asked him why he chooses to go home to use the bathroom. Plaintiff stated that it was because it's the one that he knows is clean and that he's been to gas stations, stores, etc. where the bathrooms are filthy. Some with feces on the wall and toilet seat. He stated that it's only when he has to do a "number 2." Management then suspended him without pay pending investigation. Plaintiff went home and filed for unemployment benefits. On January 16th, 2020 Plaintiff got a call from his manager with another Charter Representative on the phone. Plaintiff was then terminated for going home to use the bathroom. Plaintiff asked about the six step process but was ignored. After, Plaintiff, having financial difficulties in NY chose to move to Baltimore, MD. One month later the world shut down due to Covid-19. Plaintiff, in the past 3+ years, was getting his life together, has met with attorneys, and has gotten some legal advice on how to bring this case forward.

## IV.     ARGUMENT
### A. 28 U.S.C.A. §1291.  Final Decisions of District Courts

"The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States[.]" 28 U.S.C.A. §1291.

1.  **FRAP Rule 4. Appeal as of Right--When Taken**

Rule 4(a)(2) states that "[a] notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry."

a.  **Standard of Review on an Interlocutory Appeal**

*"A dismissal with leave to amend is a non-final order and not appealable."* *Slayton v. Am. Exp. Co., 460 F.3d 215, 224 (2d Cir. 2006).* However, "a premature notice of appeal from a nonfinal order may ripen into a valid notice of appeal if a final judgment has been entered by the time the appeal is heard and the appellee suffers no prejudice." *Berlin v. Renaissance Rental Partners, LLC*, 723 F.3d 119, 128 (2d Cir. 2013). "In order to render [a non-final] order final and appealable, an appellant must disclaim any intent to re-plead, or the appellant must no longer be able to file an amended complaint because the deadline for such filing has expired." *Smurphat v. Hobb*, 822 Fed. Appx. 44, 45–46 (2d Cir. 2020)(unpublished). "Thus, Rule 4(a)(2) protects the unskilled litigant who files a notice of appeal from a decision that he reasonably but mistakenly believes to be a final judgment, while failing to file a notice of appeal from the actual final judgment." *Slayton v. Am. Exp. Co*., 460 F.3d 215, 224 (2d Cir. 2006), as amended (Oct. 3, 2006). "Applying

*FirsTier*[2] in light of our practice of allowing disclaimers of intent to amend to render a non-final judgment final, appellants' notice of appeal is effective. The judgment from which the notice of appeal was filed was non-final but would become final when the plaintiffs disclaimed their intent to amend the complaint." *Id* at 224–25.

### b.  Plaintiff's Position on the validity of this Appeal

Plaintiff's position is that this appeal was properly effectuated.   Judge Gonzalez ordered the dismissal of all claims, but granted Plaintiff leave to file an Amended Complaint to only one of his claims and directed that if Plaintiff did not file the Amended Complaint by May 24th, 2024, judgment shall be entered against him.  After Judge Gonzalez's Order for the dismissal of the case on May 31st, 2024 (Trial Court: ECF 53), Plaintiff filed a Notice of Appeal on May 17th, 2024, which serves as effective in disclaiming his intent to amend, to all parties and the Court, that he does not seek to file an Amended Complaint.  Judge Gonzalez, on May 29th, 2024, ordered for the Clerk of the District Court to enter Final Judgment dismissing Plaintiff's claims for his failure to file an Amended Complaint.  "In such an instance,

---

[2] *FirsTier Mortg. Co. v. Inv'rs Mortg. Ins. Co.*, 498 U.S. 269 (1991) ("*Held:* Rule 4(a)(2) permits a notice of appeal filed from a nonfinal decision to serve as an effective notice of appeal from a subsequently entered final judgment when a district court announces a decision that would be appealable if immediately followed by the entry of judgment.").

it would be reasonable for a litigant to believe that the decision is final, and permitting a notice of appeal to become effective when judgment is entered would not catch the appellee by surprise." *FirsTier Mortg. Co. v. Inv'rs Mortg. Ins. Co.*, 498 U.S. 269 (1991). "The amendment provides that a notice of appeal filed before the disposition of a posttrial tolling motion is sufficient to bring the underlying case, as well as any orders specified in the original notice, to the court of appeals." *See* Fed. R. App. P. 4, Advisory Committee Notes. "And of course, an appeal from a final judgment allows appeal of all prior interlocutory orders*." Collymore v. Krystal Myers, RN*, 74 F.4th 22, 27 (2d Cir. 2023) (*citing Phelps v. Kapnolas*, 123 F.3d 91, 93 (2d Cir. 1997)).

## B. **28 U.S.C.A. §1652. State laws as rules of decision**

"The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C.A. § 1652.

### 1. **Standard on the joinder and service on an in state defendant**

"Although this conclusion settles the matter, it is worth noting that the removal petition suffered from an additional fatal defect: at least one of the named

and served defendants is a New York corporation. As noted, even in the presence of complete diversity among the parties, removal is prohibited if any of the defendants is a citizen of the forum state. Allowing removal in cases involving a local defendant would defeat the purpose of diversity jurisdiction which is to protect out-of-state defendants from local prejudice. The presence of a single in-state defendant serves to defeat removal on diversity grounds." *Vasura v. Acands*, 84 F. Supp. 2d 531, 538 (S.D.N.Y. 2000).

2. <u>**Standard on the application of State and Federal Laws in Diversity Jurisdiction cases**</u>

"Because this is a diversity case, we apply state substantive law…and federal procedural law." *In re Fosamax Products Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013). "Federal courts sitting in diversity apply the substantive law of the forum state on outcome-determinative issues[.]" *Braune v. Abbott Laboratories*, 895 F. Supp. 530, 542 (E.D.N.Y. 1995). "However, where state law governs the rights of the parties, the duty of the federal court is simply to ascertain as best it can what the state courts would declare the law to be." *Artvale, Inc. v. Rugby Fabrics Corp.*, 232 F. Supp. 814, 827 (S.D.N.Y. 1964), aff'd, 363 F.2d 1002 (2d Cir. 1966). "The authority and only authority is the State, and if that be so, the voice adopted by the State as its own (whether it be of its Legislature or of its Supreme Court) should utter

the last word." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938). This has been long standing precedence and does not seem to require argument at this point.

### 3. <u>Standard on Personal Jurisdiction</u>

"[T]o determine the validity of service of process, the burden of proving personal jurisdiction is upon the party asserting it, and that party must sustain that burden by a preponderance of the credible evidence." *Bank of New York Mellon v. Chaudhury*, 195 N.Y.S.3d 246, 248 (N.Y. App. Div. 2d Dept. 2023). "After having been served with process, the defendant who wants to avoid a default must respond in a proper and timely manner…within 20 days of service of a summons." *21st Mortg. Corp. v. Raghu*, 154 N.Y.S.3d 84, 88 (N.Y. App. Div. 2d Dept. 2021).

### C. <u>The District Court did not have personal jurisdiction over the Defendant</u>

28 USC 1441(b)(2) states "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought. If Charter Communications LLC., as a citizen of New York, is a proper party to the action, its presence destroys diversity citizenship, and thereby deprives the district court of subject matter jurisdiction under 28 U.S.C. § 1332. *See Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460

(2d Cir. 1998). The Defendant agrees that they are a citizen of New York. *See* Trial Court: ECF 1 ("Accordingly, for diversity purposes, at the time of the filing of the State Court Action and as of the date of this removal, Charter is and has been a citizen of the States of Connecticut, Delaware, Missouri, and **New York**."). At issue is whether the Defendant was *properly joined and served*. Plaintiff effectuated service twice. Plaintiff urges this Court to analyze the execution of these methods of service thoroughly in this matter.

This Circuit agreed with the Ninth Circuit stating "[r]emoval based on diversity jurisdiction is intended to protect **out-of-state defendants** from possible prejudices in state court." *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 706 (2d Cir. 2019) *citing Lively v. Wild Oats Markets, Inc.,* 456 F.3d 933, 940 (9th Cir. 2006). In that same case, the Ninth Circuit also stated, "[t]he need for such protection is absent, however, in cases where the defendant is a citizen of the state in which the case is brought." *Id*. The Defendant, in this immediate case, is merely forum-shopping and have evading proper service being made upon them.

1. <u>**Service pursuant to NY CPLR §312-A**</u>

NY CPLR §312-A(a) explains that "[a]s an alternative to the methods of personal service…a summons and complaint…may be served by the plaintiff…by mailing to the person or entity to be served, by first class mail, postage prepaid, a

copy of the summons and complaint…together with two copies of a statement of service by mail and acknowledgement of receipt…with a return envelope, postage prepaid, addressed to the sender." Failure to enclose the forms precludes effective service under CPLR 312-a (*see Hilaire v. Dennison*, 2005, 24 A.D.3d 1152, 807 N.Y.S.2d 432 (3d Dep't)).

Plaintiff properly sent the summons, complaint, two copies of the required Statement of Service by Mail and Acknowledgement of Receipt documents, with a postage prepaid envelope addressed to Plaintiff, to the Defendant's agent on record to receive service of process by first class mail (Plaintiff also included Certified Mail and Return Receipt Requested). New York State Law states that "[t]he defendant, an authorized employee of the defendant, defendant's attorney or an employee of the attorney *must* complete the acknowledgement of receipt and mail or deliver one copy of it within thirty (30) days from the date of receipt." (N.Y. C.P.L.R. §312-a).

Plaintiff effectuated service upon the Defendant in this manner. Although, the Defendant's counsel attempted to throw the court off by stating that "certified mail" was the method of mailing used (Trial Court: ECF 1 p. 2), Plaintiff never stated that he served the Defendant by "certified mail" and has always maintained that he served the Defendant by first class mail, as §312-A calls for (Trial Court: ECF 10 p. 2). Further proof of the summons and complaint being sent by first class mail to the Defendant's agent on file pursuant to NY CPLR §318 ("resident agent") is in Trial

Court: ECF 14-1 p. 29 where the sticker at the top-right corner of the apparent envelope sent by Plaintiff has the letters "FCM" which, from knowledge, is known to mean first class mail. Furthermore, Trial Court: ECF 14-1 pp. 2-28 were included in that envelope[3]. Also, the Defendant filing the exhibits in ECF 14-1, should serve as an admission that the Defendant did, in fact, receive all required documents in accordance with 312-A. Going even further, the return receipt from the post office proved that the mailing reached the Defendant's resident agent (Trial Court: ECF 10 pp. 14-19).

## 2. **The Defendant did not deny the receipt of the required documents utilizing this method of service.**

The Defendant stated:

> "Plaintiff attempted to serve Charter's registered agent with a copy of the Summons and Complaint by sending the documents via certified mail on August 24, 2023. Charter's registered agent received the Summons and Complaint via certified mail on August 28, 2023" and also stated "[a]t the time of filing this Notice of Removal, Charter has not returned an acknowledgement of receipt of the Summons and Complaint. Accordingly, service is not complete."
>
> Trial Court ECF 1 p. 2.

The Defendant's further stated:

---

[3] Defendant still failed to show the postage prepaid return envelope that was addressed to Plaintiff.

First, Plaintiff argues that his certified mailing of the acknowledgement of receipt form effectuated service, and that Charter's failure to return the form prior to removal is irrelevant. However, as Charter demonstrated in its Notice of Removal, it is not Charter's receipt of the Summons, Complaint, or acknowledgement form that perfects service under New York law: it is Charter's formal acknowledgment of that receipt (by mailing the signed form to Plaintiff).

Trial Court: ECF 14 p. 2.

First, the Defendant's filing of Trial Court: ECF 14 and 14-1 show that they have and are violating Fed. R. Civ. P Rule 11 "[b]y presenting to the court a…paper…by signing, filing, submitting, [and] later advocating it, [but], present[ing] it for an[] improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  This is extremely unfair to Plaintiff Onwy Uzoigwe.

Second, the Defendant implicitly agrees that they received the summons, complaint, and acknowledgment form and states that service is not complete because they did not *mail* the Acknowledgment form back to Plaintiff.  However, Plaintiff contends that this is incorrect and that service has, in fact, been properly completed. The Completion of Service section of §312-A states that "[s]ervice is complete on the date the signed acknowledgement of receipt is *mailed* or *delivered* to the sender." The Defendant delivered the signed Acknowledgment Form via the U.S. District Court's ECF.  In the event that there is an argument as to the whether or not that filing the document via ECF is a valid method, *see* the Federal E-Sign Act;  15

U.S.C.A. § 7001(a)(1) states that "a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form." This act would preempt certain provisions in §312-A.

### 3.  <u>The Federal E-Sign Act preempts the provisions of NY CPLR §312-A</u>

Various parts of the E-Sign Act (15 USC §7001 et seq.) apply in this matter. New York's NY CPLR 312-A would be preempted by the E-Sign Act due to the only form of proof of service being the mailing of a signed Acknowledgment Document which the Defendant must return to Plaintiff. New York does not provide another form of proving service under this statute. This, as shown in this matter, allows a Defendant to retain the Acknowledgment Document; causing a Plaintiff's service to be defective. New York also requires this method to be sent by first class mail only. The Federal E-Sign Act validates that electronic acknowledgment of receipt of the summons and complaint would preempt New York's more restrictive method of acknowledgment and allow for an electronic record of service being made to constitute proof of service. *See* 15 U.S.C.A. §§7001, 7002. "New York's lawmakers appear to have chosen to incorporate the substantive terms of E–SIGN into New York state law." *Naldi v. Grunberg*, 908 N.Y.S.2d 639, 646 (N.Y. App. Div. 1st Dept. 2010).

The Federal Rule of Civil Procedure has a similar, but less restrictive version of §312-A (Rule 4(d): Waiving Service). The Federal Rule allows for service to "be sent by first-class mail *or other reliable means*" and, in the event that a defendant does not return the waiver, Rule 4(l) may assist in the completion of service where "[f]ailure to prove service does not affect the validity of service. The court may permit proof of service to be amended." Additionally, Rule 4(d)(2) provides provisions that *must* be imposed on a Defendant "[i]f a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States", but is silent as to those being the only impositions that can be placed on a defendant. It would make sense for proof of service to be amended as well, provided that a Plaintiff can prove that service (in this case, of a summons and complaint, along with the 2 required Acknowledgment Documents, and a self-addressed postage prepaid return envelope) was properly effectuated. The Defendant also never stated that there was good cause for their delay in returning the Acknowledgment Document. "[U]nless service is waived, proof of service must be made to the court ... by the server's affidavit." *Prage v. Kavulich & Associates, P.C.*, No. 16-CV-1627 (CBA), 2016 WL 5900194, at *2 (E.D.N.Y. Oct. 7, 2016). However, "failure to file proper proof of service is a procedural irregularity, under New York law, not a jurisdictional defect, that may be cured by motion or *sua sponte* by the court in its discretion." *Id*. "[Although] courts

cannot acquire personal jurisdiction over defendants not properly served." *Id.* "[W]here service conforms to the statutory requirements, its validity is not undermined or defeated by an employer policy discouraging or even prohibiting acceptance of service of process." *Charnin v. Cogan*, 673 N.Y.S.2d 134, 137 (N.Y. App. Div. 1st Dept. 1998). Additionally, the E-Sign Act has preemptive effect in this matter, and allows for an electronic record of service being made to a defendant to serve as proof of service. "If a law that was enacted prior to this chapter expressly requires a record to be provided or made available by a specified method that requires verification or acknowledgment of receipt, the record may be provided or made available electronically only if the method used provides verification or acknowledgment of receipt (whichever is required)." (15 U.S.C.A. § 7001). "[A] signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form[.]" *Naldi v. Grunberg*, 908 N.Y.S.2d 639, 644–45 (N.Y. App. Div. 1st Dept. 2010).

### 4. <u>The Defendant signed the Acknowledgment Documents</u>

On October 18th, 2023 the Defendant's attorney filed the Acknowledgment Documents into the Court's ECF system from what is assumed to be, their attorney's filing account. (*see* Trial Court: ECF 14-1 pp. 2-5). These were the documents from Plaintiff which they received on August 28th, 2023. 15 U.S.C.A. § 7001(a)(1) states

that "a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form." Fed. Rule Civ. P Rule 5(d)(3)(D) states that "[a] paper filed electronically is a written paper for purposes of these rules."

Fed. R. Civ. P. Rule 11 states that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." The Court's acceptance of ECF 14-1 makes clear that the Acknowledgment Documents were signed by the Defendant. This would make service under §312-A complete on October 18th, 2023. Furthermore, there is record of a signature from the Defendant's resident agent proving that their late filed documents were received on August 28th, 2023 (which they agreed to they received on ECF 1 p. 2) *by first class mail*. (*See* Trial Court ECF 10 p. 17) which achieves the same purpose as the Acknowledgment Document.

5. **Service which has been completed pursuant to NY CPLR §312-A after the 30-day window**

Under NY CPLR 312-A "[t]he defendant, an authorized employee of the defendant, defendant's attorney or an employee of the attorney must complete the acknowledgement of receipt and mail or deliver one copy of it within thirty (30) days from the date of receipt. Service is complete on the date the signed acknowledgement of receipt is mailed or delivered to the sender. The signed acknowledgement of receipt shall constitute proof of service." The statute, however, does not state that service cannot be completed beyond the 30 day window.

The Defendant's late Acknowledgment on October 18th, 2023 is proof that they received the required documents on August 28th, 2023. There seems to be no authority on what should occur if a Defendant *returns* an Acknowledgment of Receipt beyond the 30-day window that the state provides, however, their retainage of the Acknowledgment Documents should not prejudice the plaintiff. The statute only requires a signature on the Acknowledgment Document. In this immediate case, Plaintiff was prejudiced due to the Defendant's failure to sign and return the acknowledgment document in a timely fashion, by the removal being allowed due to service not being completed, which could become a cost to Plaintiff, if the Defendant were to file for Summary Judgment and it be granted, and further creating unnecessary costs of serving the defendant through subsequent service, and costs of litigating the issue of service made upon them. "The Supreme Court, Appellate Division, held that defendant's retention of complaint served upon it operated as

waiver of untimely service." *Lucenti v. City of Buffalo*, 29 A.D.2d 833, 287 N.Y.S.2d 612 (1968)

6. <u>**Standard Of Review on Correcting Defective Service in New York**</u>

"Even in the face of a plaintiff's failure to establish, prima facie, that a notice was properly mailed on a motion [to dismiss] on the complaint, this Court has held that a defendant still has to meet its burden, on a…motion…dismissing the complaint, of establishing that the condition precedent was not fulfilled…We hold that a simple denial of receipt, without more, is insufficient to establish prima facie entitlement to judgment as a matter of law dismissing the complaint for failure to comply with the requirements…***To the extent that our prior decisions are to the contrary, they should no longer be followed.***" *Citibank, N.A. v. Conti-Scheurer*, 98 N.Y.S.3d 273, 279 (N.Y. App. Div. 2d Dept. 2019) (*cleaned up*). CPLR 2001 may be used to cure only a 'technical infirmity.'" *Ruffin v. Lion Corp.*, 940 N.E.2d 909, 911 (N.Y. 2010). "In deciding whether a defect in service is merely technical, courts must be guided by the principle of notice to the defendant—notice that must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id*.

**a. Using NY CPLR §2001, NY CPLR 305(c), and/or Fed. R. Civ. P Rule 4(l)(3) to cure Plaintiff's defective service would have been proper in the interest of justice**

The New York Court of Appeals Second Department[4] makes clear that a plaintiff satisfies the requirements of NY CPLR §312-A *only* if the "statement of service by mail and acknowledgment of receipt" documents are sent with the summons and complaint. See *Klein v. Whirlpool Corp.*, 144 N.Y.S.3d 646, 647 (N.Y. App. Div. 2d Dept. 2021) ("[P]laintiff did not satisfy the requirements set forth in CPLR 312–a, governing personal service by mail, *as he did not include with the papers he attempted to serve by mail a 'statement of service by mail and acknowledgment of receipt.'*").  The Third Department also agrees stating that "[f]ailure to enclose the forms precludes effective service under CPLR 312-a." *Hilaire v. Dennison*, 2005, 24 A.D.3d 1152, 807 N.Y.S.2d 432 (3d Dep't).  In this immediate case, Plaintiff Onwy Uzoigwe, believes he has shown, through *prima facie* evidence in the District Court docket, that he properly effectuated service under the statute.  The Defendant's agent received the documents on August 28th, 2023.  The Defendant has proven that they received the summons, complaint, and the

---

[4] This Appeals Court of NY covers the jurisdiction where the harm that Plaintiff complains of occurred.

acknowledgment documents, and the Defendant never stated that they did not receive a postage prepaid return envelope. In the interest of justice, Plaintiff believes that it would be proper to find that the Defendant was served on August 28th, 2023. "Under the interest of justice standard, 'the court may consider diligence, or lack thereof, along with any other relevant factor in making its determination, including expiration of the Statute of Limitations, the meritorious nature of the cause of action, the length of delay in service, the promptness of a plaintiff's request for the extension of time, and prejudice to the defendant." *Deutsche Bank Natl. Tr. Co. v. Martinez*, 180 N.Y.S.3d 577, 579 (N.Y. App. Div. 2d Dept. 2022). Courts in this Circuit have stated that "[o]nly when the error actually results in prejudice to the defendant or demonstrates a flagrant disregard of the requirements of Rule 4(a) ... is the district court likely to rule that a failure to comply precisely with Rule 4(a) cannot be cured by amendment." *DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 65 (S.D.N.Y. 2010). "In interpreting Rule 4(d), the courts frequently emphasize the statutory duty to avoid unnecessary costs of service of process, and are reluctant to excuse a defendant's failure to waive service based on "technical error[s]" that do not prejudice the defendant." *Brinks Glob. Services USA, Inc. v. Bonita Pearl Inc.*, 686 F. Supp. 3d 357, 364 (S.D.N.Y. 2023).

"As noted by Vincent C. Alexander in the Practice Commentaries to CPLR 2001, a statute like CPLR 2001 is essential in an enlightened system of civil

procedure that eschews the elevation of form over substance ... The court's ability to apply CPLR 2001… presupposes that the court has acquired jurisdiction." *Grskovic v. Holmes*, 972 N.Y.S.2d 650, 654–55 (N.Y. App. Div. 2d Dept. 2013) (*cleaned up*). "It is obvious that service must be made in conformity with the statute and that, in the interests of orderly procedure and for the protection of all concerned, there be certain and unequivocal proof thereof." *Marcy v. Woodin*, 237 N.Y.S.2d 402, 403 (N.Y. App. Div. 3d Dept. 1963). However, a defendant retaining the documents that would prove service is good cause to apply CPLR §2001. "By contrast, good cause may be found to exist where the plaintiff's failure to timely serve process is a result of circumstances beyond the plaintiff's control." *Bumpus v. New York City Transit Auth.*, 883 N.Y.S.2d 99, 105 (N.Y. App. Div. 2d Dept. 2009).

Plaintiff stated, in his Motion for Reconsideration, that NY CPLR §2001 should have been used to cure the defect in the initial service to Defendant. (Trial Court: ECF 30 p. 11). If the Defendant's failure to file all documents required in order for removal to federal court to be in compliance could be viewed as a technical defect, then the Defendant's failure to return a signed copy of the acknowledgment documents back to Plaintiff could also be viewed as a technical defect. NY CPLR §2001 is a statute that will allow for the correction of technical defects. The statute

states, as it pertains to this case, that "[m]istakes, omissions, defects and irregularities. At any stage of an action, including the filing of a…summons and complaint…, the court may permit a mistake, omission, defect or irregularity…to be corrected, upon such terms as may be just or, if a substantial right of a party is not prejudiced the mistake, omission, defect or irregularity shall be disregarded, provided that any applicable fees shall be paid."  "In deciding whether a defect in service is merely technical, courts must be guided by the principle of notice to the defendant—notice that must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"  *Ruffin v. Lion Corp.*, 940 N.E.2d 909, 911 (N.Y. 2010).  The Defendant's agent received all documents in conformity with NY CPLR §312-A.  Plaintiff's failure to prove that service was made was due to the Defendant retaining the acknowledgment documents.

7. **<u>Defendant never properly rebutted service made upon them, inferring lack of prejudice toward Defendant</u>**

"Even in the face of a plaintiff's failure to establish, prima facie, that a notice was properly mailed on a motion [to dismiss] the complaint, this Court has held that a defendant still has to meet its burden […] of establishing that the condition precedent was not fulfilled." *Citibank, N.A. v. Conti-Scheurer*, 98 N.Y.S.3d 273, 279

(N.Y. App. Div. 2d Dept. 2019). The Defendant has not properly rebutted the service made upon them. "[A] mere denial of receipt is insufficient to rebut a presumption of mailing where there is documentary proof of the mailing." *Citibank, N.A. v. Conti-Scheurer*, 98 N.Y.S.3d 273, 278–79 (N.Y. App. Div. 2d Dept. 2019). There also has been nothing from the Defendant showing that they would be prejudiced if this defect were cured. *See E. Sav., FSB v. Thompson*, No. 12-CV-1197(WFK)(RLM), 2016 WL 2977268, at *4 (E.D.N.Y. May 19, 2016) ("Furthermore, since there has been no demonstration or allegation of prejudice to the rights of any party, this…defect may be ignored."). *Kelsey v. Forster & Garbus, LLP*, 353 F. Supp. 3d 223, 228 (W.D.N.Y. 2019)("The motion court properly deemed defendant's failure to comply with the mailing requirements…as an irregularity to be disregarded under CPLR 2001.") *citing Jade Mfrs. Outlet, Inc. v. Transamerica Ins. Co.*, 237 A.D.2d 104, 104, 655 N.Y.S.2d 342 (4th Dep't 1997).

Therefore, they received, reasonably calculated notice of the action pending against them. Plaintiff has uploaded return receipts showing that the Defendant's resident agent did, in fact, receive that mailing (Trial Court: ECF 10 pp. 14-19). Therefore, the Defendant's failure to return the acknowledgment documents to Plaintiff, signed, which caused service to be incomplete, can, and should, be viewed as a technical defect where Plaintiff has proven that all documents required to be in conformity with §312-A have been mailed to Defendant. Plaintiff has also provided

an affidavit of service, although late, the late affidavit would be viewed as a technical infirmity and not a jurisdictional defect. The Civil Court of the City of New York held that late filing of [a plaintiff's] affidavit of service was mere technical infirmity that was required to be overlooked, and, thus, court had personal jurisdiction over [defendant] and subject-matter jurisdiction to hear [plaintiff's] claim. *Nardeo v. Diaz*, 210 N.Y.S.3d 644 (N.Y. Civ. Ct. 2024). "[F]ailure to file proof of service is not necessarily fatal to a plaintiff's claim. Many courts have found this to be a mere irregularity, non-jurisdictional in nature, which may be corrected by an order *nunc pro tunc*." *Maldonado v. Arcadia Bus. Corp.*, No. 14CV4129DLIRML, 2015 WL 12791329, at *3 (E.D.N.Y. Aug. 27, 2015). "A defendant's sworn denial of receipt of service, however, rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing…But no hearing is required where the defendant fails to swear to "specific facts to rebut the statements in the process server's affidavits." *Old Republic Ins. Co. V. P. Fin. Services of Am., Inc.*, 301 F.3d 54, 57–58 (2d Cir. 2002). No evidence was necessary in this matter, yet, despite all prima facie evidence given, Judge Gonzalez denied Plaintiff's Motion to Remand.

8. **Plaintiff, later effectuated service by an alternative method in conformity with NY CPLR 308(3).**

The 4th section of the Supplemental Practice Commentaries of NY CPLR 305(c), "C305:4 Amendment of the Summon, states "CPLR 305(c) is an extremely important provision that authorizes the court 'at any time' to allow the summons (or proof of its service (CPLR 306)) to be amended 'if a substantial right of a party against whom the summons issued is not prejudiced.' As mentioned in Commentary C305:1, above, the threshold question for the court is whether a defect in the summons is jurisdictional or an irregularity. The former is incurable, rendering the action subject to dismissal upon timely objection, whereas the latter will permit the summons to be corrected in the absence of prejudice."  N.Y. C.P.L.R. 305.

## 9. **Plaintiff's private process server served Defendant's resident agent in conformity with NY CPLR 308(3) and Fed. R. Civ. P Rule 4(e)(2)(C) prior to removal, triggering the forum defendant rule**

After days of not receiving the acknowledgment documents from the Defendant, Plaintiff effectuated service in conformity to NY CPLR 308(3), by having an individual who is a non-party "deliver[] the summons [and complaint] within the state to the agent for service of the person to be served as designated under rule 318 […]." (N.Y. C.P.L.R. 308 (McKinney)).  That individual, Mr. Vagary, had the documents delivered to the Defendant's agent on file with the State, filed an

affidavit with the State Court[5], and included the return receipt for proof. Defendant

omitted these documents in their Notice of Removal, however, included it in their

Letter Response to Remand (Trial Court: ECF pp. 30-52). Further proof is shown

in Plaintiff's Memorandum in support of his Motion for Reconsideration of the

Court's Denial of Plaintiff's Motion to Remand. (Trial Court: ECF 30 pp. 17-28).

Trial Court: ECF 30 p. 27 shows that the corresponding envelope from Mr. Vagary

(ECF 14-1 and ECF 30 p. 28) was, in fact, delivered to the address of the Defendant's

agent on file with the State. "CPLR 308(3) permits service upon an individual to be

made by delivering the summons within the state to the agent for service on the

person to be served designated under rule 318. *Broman v. Stern*, 567 N.Y.S.2d 829,

830 (N.Y. App. Div. 2d Dept. 1991). Plaintiff has proven that "service was made in

conformity with the statute and received by the [Defendant's agent]. [Defendant's

agent] acknowledges receipt in the mail, one of the methods authorized to insure that

notice was given when a method other than personal delivery is employed." *2505*

*Victory Blvd., LLC v. Victory Holding, LLC*, 848 N.Y.S.2d 514, 520 (N.Y. Civ. Ct.

2007) (finding that service according to NY CPLR §308(3) was proper). In this

case, the subsequent service documents accompanied the Notice of Removal. (*See*

Trial Court: ECF 1-1 pp. 23-27). Furthermore, Plaintiff included in his Motion for

---

[5] The affidavit that the summons and complaint we mailed, however

Reconsideration, evidence that the summons and complaint send by Yves Vagary was "Delivered". Additionally, in this removed case, the synonymous method of either NY CPLR 308(3) and Fed. R. Civ. P Rule 4(e)(2)(C)

10. **Judge Gonzalez's seemingly showed partialness towards Charter Communications LLC.**

On November 11th, 2023, Judge Gonzalez denied Plaintiff's Motion to Remand on due to, as it is relevant here, service of process not being completed prior to removal. (Trial Court: ECF 26). The defect was due to the Defendant not returning the Acknowledgment Documents to Plaintiff so that Plaintiff can file with the State Court. There was no defect, however, as it pertains to the service effectuated pursuant to NY CPLR 308(3). Plaintiff filed a Motion for Reconsideration on December 3rd, 2023 (Trial Court: ECF 29). Judge Gonzalez denied Plaintiff's Motion for Reconsideration stating that "because Defendant did not send back the acknowledgement of receipt, service was not properly effectuated under New York law, and Defendant was permitted to remove the action." (*See* December 4th, 2023 docket text order). Plaintiff, understood how the service pursuant to 312-A was ineffective, however, there was a subsequent service in conformity with NY CPLR 308(3). It became apparent that Judge Gonzalez was ignoring the service made in conformity with NY CPLR 308(3). Plaintiff then filed

a 2nd Motion for Reconsideration, removing any reference to the service made pursuant to 312-A. (Trial Court: ECF 32). Judge Gonzalez again, in what seemed to be prejudicial to Plaintiff, denied Plaintiff's 2nd Motion for Reconsideration.

### 11. Judge Gonzalez denied Plaintiff's request for an evidentiary hearing

"[A] plaintiff bears the burden of showing that service was proper. However, absent a request for a full evidentiary hearing, a plaintiff need only show prima facie evidence of proper service." *Maldonado v. Arcadia Bus. Corp.*, No. 14CV4129DLIRML, 2015 WL 12791329, at *4 (E.D.N.Y. Aug. 27, 2015) (*cleaned up*). Plaintiff requested an evidentiary hearing to prove that the Defendant was properly served prior to their Notice of Removal being filed. (Trial Court: ECF 18). On November 1st, 2023 Judge Gonzalez denied the request by docket text order stating that it would be unnecessary due to the issue being briefed in a pending Motion to Remand. As it applies here, "[The Second Circuit will] also review a district court's denial of an evidentiary hearing for abuse of discretion." *CSX Transportation, Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 467 (2d Cir. 2018). "The district court abuses its discretion if it applies legal standards incorrectly, relies on clearly erroneous findings of fact, or proceeds on the basis of an erroneous view of the applicable law." *Id.*

### D. **The Trial Court's Dismissal of Plaintiff's Breach of Contract Claim was seemingly incorrect**

#### 1. *Res Judicata*/Collateral Estoppel

"A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *New York v. Mt. Tobacco Co.*, 942 F.3d 536, 543 (2d Cir. 2019). "To determine whether the doctrine of res judicata bars a subsequent action, we consider whether 1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same." *Sinnott v. Smith*, No. 6:21-CV-06197 EAW, 2024 WL 3610054, at \*6 (W.D.N.Y. July 31, 2024).

One reason that Judge Gonzalez gave for denying res judicata/collateral estoppel effect Plaintiff's Breach of Contract Claim was that "[b]ecause the ALJ's decision was focused on whether Plaintiff was entitled to unemployment benefits, the Court cannot find that there was a prior adjudication on the merits of the instant case, namely, regarding Plaintiff's breach of contract claim." *Uzoigwe v. Charter Commun., LLC*, No. 23CV07383HGLB, 2024 WL 1756503, at \*4 (E.D.N.Y. Apr. 24, 2024). This does not follow precedence in New York.

First, Plaintiff was seeking *res judicata* or *collateral estoppel* effect. [6] The Judge then cited *Pollard v. New York Methodist Hosp.,* 861 F.3d 374, 382 (2d Cir. 2017) ("New York State Labor Law section 623(2) provides that unemployment insurance decisions do not have preclusive effect in subsequent litigation (subject to certain exceptions that are not applicable here) *See Uzoigwe v. Charter Commun., LLC* at p. 4. However, Judge Gonzalez only cited one case, which was from this Court, and cited no New York cases.[7] Plaintiff included, in his Objections to the Magistrate's Report and Recommendation, many cases from New York that support his argument regarding *res judicata* and *collateral estoppel*. *See* Trial Court: ECF 50 pp. 11-14. Plaintiff's reasoning is correct under New York law. Reviewed unemployment decisions, which are not appealed, are final and entitled to *res judicata* effect. "The Supreme Court, Appellate Division, held that determination on prior appeal upholding Unemployment Insurance Appeal Board's decision that corporation was the employer of certain individuals it retained to administer tests to job candidates had res judicata effect and was binding as the law of the case." *In re LTI, Inc.*, 869 N.Y.S.2d 262 (N.Y. App. Div. 3d Dept. 2008) *see also Sipos v. Fastrack Healthcare Sys., Inc.*, 820 N.Y.S.2d 846 (N.Y. Sup. Ct. 2006)("Since Sipos

---

[6] Collateral estoppel effect would still end up

[7] The case cited, *Pollard,* only took N.Y. Lab. Law § 623(2) into account. New York Courts read both §623(1) and §623(2) together to fully interpret N.Y. Lab. Law § 623.

has not demonstrated that he was not given a full and fair opportunity to litigate this matter before the Department of Labor, the findings of the ALJ are final and binding and must be adopted by this Court in deciding these motions.") *see also In re Guynup*, 968 N.Y.S.2d 608, 609 (N.Y. App. Div. 3d Dept. 2013) ("Given that claimant had a full and fair opportunity to litigate the issue of misconduct at the Civil Service Law § 75 hearing, the Board properly accorded collateral estoppel effect to the factual findings of the Hearing Officer.")  "Under New York's 'transactional approach' to the doctrine of res judicata, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 429 N.E.2d 1158, 445 N.Y.S.2d 687 (1981).

"In New York, collateral estoppel has two essential elements. First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Jenkins v. City of New York*, 478 F.3d 76, 85 (2d Cir. 2007).  Plaintiff explained that either the doctrines of *res judicata* or *collateral estoppel* should have been applied in this matter.  ECF 50 pp. 11-14.  Plaintiff's Unemployment Appeal Decision, which was

decided under judicial review, completely refuted the exact issues that Plaintiff was terminated for.

> 1. A decision of a referee, if not appealed from, shall be final on all questions of fact and law. A decision of the appeal board shall be final on all questions of fact and, unless appealed from, shall be final on all questions of law.

> 2. No finding of fact or law contained in a decision rendered pursuant to this article by a referee, the appeal board or a court shall preclude the litigation of any issue of fact or law in any subsequent action or proceeding

> N.Y. Lab. Law § 623 (McKinney).

New York's interpretation of N.Y. Lab. Law § 623, when §623(1) and §623(2) are read together would mean that a claimant is not estopped from pursuing a subsequent action, and that the litigation of finding of facts and conclusions of law, which are final according to §623(1), can be used in that litigation, and according to res judicata and collateral estoppel doctrines, the issues which are similar would be precluded from further litigation in accordance with the findings of the unemployment appeal. "The determination of an issue of law or fact will not be given preclusive effect *unless* the issue was material to the first action or proceeding and essential to the decision rendered therein." *Gadani v. DeBrino Caulking Associates, Inc.*, 926 N.Y.S.2d 724, 727 (N.Y. App. Div. 3d Dept. 2011).

> *Res judicata* effect may attach to a determination of an administrative agency when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate. The New York courts have determined that conclusive effect may be given to the determination of an Administrative Law Judge for the New York State Department of Labor Unemployment Insurance Board…[I]t is possible to have "good and sufficient cause" without actual

"misconduct." The doctrine is operative only as to facts actually litigated and decided; facts which might have been decided but were not are not precluded.

*Patricia v. Delford Industries, Inc.*, 660 F. Supp. 1429, 1434–35 (S.D.N.Y. 1987)(*cleaned up*).

"Absent timely request for hearing on Industrial Commissioner's determination adverse to claimant of unemployment insurance benefits, the determination was final." *People v. Bailey,* 283 N.Y.S.2d 660 (N.Y. Sup. Ct. 1967).

"Of course, the issue must have been material to the first action or proceeding and essential to the decision rendered therein, and it must be the point actually to be determined in the second action or proceeding such that a different judgment in the second would destroy or impair rights or interests established by the first*." Ryan v. New York Tel. Co*., 467 N.E.2d 487, 490 (N.Y. 1984)(*cleaned up*).  The reason the Defendant gave for Plaintiff's termination was for misconduct for going home to use the bathroom.   There is nothing in the company policy or Code of Conduct that state an employee can not go home to use the bathroom.   In fact, the Corrective Action Report stated that when Plaintiff was spoken to on December 5th, 2019 about going directly to my first job out of the shop. (*See* Trial Court: ECF 50-2 p. 2 ("You were coached on going directly to your first job after leaving the College Point depot.") *see also* Exhibit B2 p. 2, lines 13-16("Now, I remember on December 5th, we had a discussion with you. Chris Wenger was present, where it was discussed at the guidelines of *going directly to your first job* out of the shop.").  The Defendant never specifically stated that Plaintiff could not go to his home to use the bathroom.  Even

if the case was that they did not want Plaintiff to go home to use the bathroom, there was no documented warning prior to Plaintiff's termination.

During the termination phone call, Plaintiff expressed his reliance on the six-step process that he has sworn to Wajeeha Aziz stating there was prior to termination. The Defendant never denied that there was a six-step process. *See* Exhibit B2 pp. 15-16 ("So then, what happened to the six step rule? Like, the six step rule, because the first time my supervisor spoke to me, it was verbal, so the next step was skipped, and we went all the way to the last step or to the very last thing.") *see also* Plaintiff's Affidavit, Trial Court: ECF 39-1 p. 2 ("Charter Communications LLC's Ms. Wajeeha Aziz told me and all the other returning technicians that there was a six step process prior to termination after the question of job security came up. It was her answer that made me decide to sign the contract.")

> A determination whether the first action or proceeding genuinely provided a full and fair opportunity requires consideration of the realities of the prior litigation, including the context and other circumstances which may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him. Among the specific factors to be considered are the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation.

*Ryan v. New York Tel. Co.,* 467 N.E.2d 487, 491 (N.Y. 1984).

The Defendant, in this immediate action had a full and fair opportunity to litigate. They Defendant took part in the initial investigation, sent in documentation,

and initially, successfully blocked Plaintiff from receiving Unemployment Benefits where the Unemployment Board decided against Plaintiff. Plaintiff appealed and the Unemployment Board made aware of the appeal. During the phone hearing with Judge Fishkin, Judge Fishkin attempted to call the Defendant for the hearing where they failed to answer. Their lack of appearance does not mean that they did not have an opportunity to litigate. *See In re Agran*, 863 N.Y.S.2d 295, 296 (N.Y. App. Div. 3d Dept. 2008) ("Although claimant elected not to appear at the disciplinary hearing, she nonetheless had a full and fair opportunity to be heard and witnesses were presented at the hearing on the issue of her insubordination. Therefore, the Board properly accorded collateral estoppel effect to the Hearing Officer's relevant factual findings.").

"[Litigant] was well-aware of the foreseeability of future litigation…since his complaint and amended complaint in the instant action had already been screened and discovery was ongoing. In sum, since [litigant] was fully able to raise the same factual issues" in the Court of Claims, he is precluded from relitigating the same factual issues." *Sinnott v. Smith*, No. 6:21-CV-06197 EAW, 2024 WL 3610054, at *8 (W.D.N.Y. July 31, 2024).

> As to mixed questions of fact and law, i.e., where the conclusion turns on the combined consideration of factual and legal factors, the Appeal Board's authority is quasi-legislative with the concomitant right and responsibility to exercise its expertise and judgment. Decisions so arrived at have been denominated 'discretionary determinations'. They are final if they have a 'rational basis'. This is not to be confused with the 'arbitrary and capricious' test

applied to purely administrative actions and sometimes improperly applied to quasi-judicial or quasi-legislative determinations of an administrative agency.

*Fisher v. Levine*, 325 N.E.2d 151, 154 (N.Y. 1975)

## 2. <u>Judge Gonzalez's finding that Plaintiff remained an employee was erroneous</u>

Plaintiff has pointed to contract agreement ECF No. 1-1 at 16 throughout this matter and ECF No. 50 at 16. Judge Gonzalez gave what is seemingly an erroneous reason for finding Plaintiff to be an At-Will employee stating:

> Plaintiff argues that a letter he received in 2017 rebuts the presumption that he was hired as an at-will employee. ECF No. 50 at 16. Plaintiff points to the language "Your assignment is permanent so that you will continue in that assignment through and after the end of the strike by Local 3[.]" Id.; see also ECF No. 1-1 at 16. The Court disagrees that this wording explicitly limited Defendant's ability to terminate Plaintiff after the strike ended. The 2017 Letter was provided to Plaintiff in the midst of a strike that Plaintiff initially participated in, but later decided not to engage in, and instead returned to work. ECF No. 1-1 at 6–7. The phrase that Plaintiff's assignment was "permanent . . . through and after the end of the strike by Local 3," indicates that Plaintiff's assignment was permanent through the duration of the strike, after which time Plaintiff's assignment returned to an at-will status.

> Trial Court: ECF 53 p. 9.

Plaintiff disagrees with Judge Gonzalez' reasoning. A motion to dismiss should be construed in favor of the Plaintiff. A reasonable person would find that this created a contract. Plaintiff cited *Rooney v. Tyson*, 697 N.E.2d 571 (N.Y. 1998) numerous times which is still a precedent in establishing a contract through durational language in an agreement. The Court found that "[a]n oral contract between a fight trainer and a professional boxer to train the boxer 'for as long as the boxer fights professionally' establishes a definite legally cognizable duration so as

to remove it from the strictures of the at-will employment doctrine." *Rooney v. Tyson*, 697 N.E.2d 571 (N.Y. 1998). If *"for as long as a boxer fights professionally"* can establish a definite legally cognizable duration, then *"permanent . . . through and after the end of the strike by Local 3"* should also. It is similar to stating *"for as long as Plaintiff does not quit"*, *"for as long as Charter operates in New York…"*, *"for as long as there is no labor organization representing Plaintiff"*, etc. The start date would be the day that the agreement was signed (November 17th, 2017). The end date can be found in the aforementioned instances, hence, the cognizable boundaries. Furthermore, Plaintiff did not begin working, nor did Charter begin paying him, until after the contract was signed.[8] Going further, the contract did not state that Plaintiff would remain an at-will employee.

Next, Manager Pavel Dejesus stated, during the termination phone call (Exhibit B):

> Because as for our policy and the conduct guidelines, you're not supposed to go home without even letting anyone know. Now, those actions do not only constitute a violation of the charter's code of conduct, but it also does exhibit a lack of integrity, since we did advise you that you would not be able to go home without letting anyone know at all, really. You're supposed to use a bathroom provided to you in this location.

---

[8] It is believed that the purpose of this seemingly lifetime contract was to refrain from having to renegotiate hundreds of individual contracts every couple of years. There was much consideration surrounding the signed contract including a pay scale showing growth potential.

Exhibit B2 p. 8.

Mr. Dejesus was untruthful. I was never told not to go to my home without letting anyone know. I was told not to go home before my first job. Furthermore, there is nothing in the Code of Conduct, Trial Court: ECF 50-1 pp. 74- 89 ("Code") that states that an employee cannot go home to use the bathroom.

The Defendant also has an Employee Handbook, Trial Court ECF 50-1 pp. 16-47 ("HB"). The HB states:

> From time to time, Charter may employ or *retain* the services of temporary or seasonal employees, or interns whose services are retained for a specific project or limited time period. On occasion, such retention may extend beyond the time period initially contemplated, but that extension does not imply or create a change in employment status. Similarly, employment for a specific time period does not guarantee employment to that individual for the duration of that specified period or beyond. All employees are at-will, meaning that both Charter and employees have the right to terminate the employment relationship at any time, with or without cause or notice.

> HB at pp. 24-25.

It would make sense, for Charter to retain employees who returned from the strike and are already trained and skilled, such as Plaintiff.

Next, Judge Gonzalez recognizes the 2019 letter Plaintiff received from the Defendant and stated, "the 2019 letter Plaintiff received from Defendant explicitly states '[Defendant] may terminate your employment at any time for any reason not prohibited by law or the collective bargaining agreement between [Defendant] and the union, with or without notice.' Trial Court: ECF 53 pp. 9-10 *citing* ECF No. 39-3 p. 8 (February 6, 2019, Letter). The Judge failed to recognize that that same letter

stated, "[t]his letter constitutes the full terms and conditions of your employment with the Company; it supersedes any other oral or written promises (**except Employment Agreements**) that may have been made to you." ECF No. 39-3 p. 8. Therefore, Plaintiff's Employment Agreement, ECF No. 1-1 at 16, was not superseded.

3. <u>**Charter's Termination Process limiting their Ability to Terminate At-Will**</u>

> In New York, it has long been settled that an employment relationship is presumed to be a hiring at will, terminable at any time by either party. This presumption can be rebutted, however, by establishing an express limitation in the individual contract of employment curtailing an employer's right to terminate at will…Policies in a personnel manual specifying the employer's practices with respect to the employment relationship, including the procedures or grounds for termination, may become a part of the employment contract. To establish that such policies are a part of the employment contract, an employee alleging a breach of implied contract must prove that (1) an express written policy limiting the employer's right of discharge exists, (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment. The New York Court of Appeals has admonished that this is a difficult pleading burden and that routinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements.

> *Baron v. Port Auth. of New York and New Jersey*, 271 F.3d 81, 85 (2d Cir. 2001)(*cleaned up*).

Judge Gonzalez recognized the Defendant's "Corrective Action Report" (*see* Trial Court: 53 pp. 10-11), which, Plaintiff states, is the six-step process. Judge Gonzalez stated that "the document does not indicate that any of the actions are

compulsory or must be completed in a required order." There is no precedence that states that the delimiting policy needs enumerated and completed in a required order. Upon information and belief, it makes sense that a company that retains an employee provide that employee with, at least, a documented warning prior to termination. Precedence requires that "(1) an express written policy limiting the employer's right of discharge exists, (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment." *Id.*

### a. Existence of delimiting Policy

The delimiting policy is the Corrective Action Report (Trial Court: ECF 50-2). This document is not part of any employee manual or handbook or policy statement. This is the actual policy.

### b. Employer or authorized representative made employee aware of the policy

"On November 17th, 2017 during the orientation but immediately before signing the contract that was laid in front of me (Plaintiff's Exhibit A), Charter Communications LLC's Ms. Wajeeha Aziz told me and all the other returning technicians that there was a six-step process prior to termination after the question of job security came up. It was her answer that made me decide to sign the contract."

Trial Court: ECF 39-1.

c. **The employee detrimentally relied on the policy in accepting or**

**continuing employment.**

Plaintiff stated above that it was Ms. Wajeeha Aziz's statement of his job being secured by a six-step process that *made him sign the contract*. In addition, Physical Exhibit B, which is the conversation between Mr. Uzoigwe, his former Manager when he was terminated. (transcribed as Exhibit B2[9]). It will be heard that Plaintiff was relying on the six step process during his termination.

Judge Gonzalez then stated that as a result of the policy not being enumerated "none of the writings identified by [Plaintiff] . . . constitutes a written express limitation on [Defendant's] right to hire, fire, promote, demote, transfer or take any other employment action it deems otherwise appropriate." Trial Court: ECF 53 p. 11 *citing Baron*, 271 F. 3d at 85. However, the document offered in *Baron* was a guidebook and not a policy limiting the employer's "right to hire, fire, promote, demote, transfer or take any other employment action it deems otherwise appropriate." *Baron* at p. 85. Plaintiff has shown the Corrective Action Report.

---

[9] Plaintiff stated to his former Manager, Pavel Dejesus, "[s]o then, what happened to the six step rule? Like, the six step rule, because the first time my supervisor spoke to me, it was verbal, so the next step was skipped, and we went all the way to the last step or to the very last thing." Exhibit B2 pp. 15-16.

The Defendants did not refute Plaintiff's statement swearing to Ms. Aziz's statement, nor did they deny that a six-step policy existed. They also received the Administrative Law Judge's findings and decision which stated that where was a six step process and they did nothing to refute those statements. Any reasonable person, given all of these facts, would disagree with Judge Gonzalez. For all of these aforementioned reasons, Plaintiff's Breach of Contract claim should not have been dismissed.

Furthermore, Prohibited Conduct is listed in the HB at pp. 41-42 which states:

> Charter does not tolerate any type of workplace violence committed by or against employees, customers, suppliers, vendors, contractors, and others with whom employees interact. Employees are specifically prohibited from making threats, engaging in heated arguments, fighting, or engaging in violent activities or other behavior that may be dangerous to others. This list of behaviors, while not exhaustive, provides examples of conduct that is prohibited:
>
> -Causing, attempting, or threatening physical injury to another person
>
> -Making threatening remarks
>
> -Engaging in aggressive, intimidating, or hostile behavior that is threatening to another person
>
> -Provoking or baiting another person
>
> -Intentionally damaging Company property or the property of another employee, vendor, customer, supplier, or contractor
>
> -Possession of a weapon, explosive, firearm, or other instrument
>
> -Committing violent acts or threats of violence
>
> This prohibited conduct is prohibited on Charter property (including the parking lots and in the immediate vicinity of the premises) and away from the premises if employees are on the job, on a business trip, or involved in any other

business-related activity, or if off the job but wearing clothing that identifies one as a Charter employee.

Nowhere in that list, or anywhere in the HB or Code does it prohibit going home to use the bathroom. Therefore, any option prior to termination on

## E. <u>Negligence Claim</u>

Judge Gonzalez stated "EO 202.8 suspended 'any specific time limit for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding, as prescribed by the procedural laws of the state[.]' N.Y. Exec. Order 202.8 (Mar. 20, 2020). The period was extended until November 3, 2020, for a total of 228 days." Trial Court: ECF 53 p. 5, *citing* N.Y. Exec. Order 202.67 (Oct. 4, 2020). Judge Gonzalez maliciously and intentionally omitted pertinent text from N.Y. Exec. Order 202.67. 202.67 Ordered that the suspension in 202.8 as modified and extended in subsequent Executive Orders that tolled any specific time limit for the commencement, filing, or service of any legal action…is hereby continued as modified, with the only change being that for any civil case the suspension and tolling will not extend past November 3rd, 2020. *See* N.Y. Comp. Codes, R. & Regs. tit. 9, § 8.202.67[10]:

> The suspension in Executive Order 202.8, as modified and extended in subsequent Executive Orders, that tolled any specific time limit for the

---

[10] This Regulation is N.Y. Exec. Order 202.67

commencement, filing, or service of any legal action, notice, motion, or other process or proceeding as prescribed by the procedural laws of the state, including but not limited to the criminal procedure law, the family court act, the civil practice law and rules, the court of claims act, the surrogate's court procedure act, and the uniform court acts, or by any statute, local law, ordinance, order, rule, or regulation, or part thereof, is hereby continued, as modified by prior executive orders, provided however, for any civil case, such suspension is only effective until November 3, 2020, and after such date any such time limit will no longer be tolled[.]

New York's Appellate Courts have agreed that Executive Order 202.8 constitutes a toll and not a suspension. *See Trento 67, LLC v. OneWest Bank*, N.A., No. 2022–04453, 2024 WL 2947520, at *5 (N.Y. App. Div. 2d Dept. June 12, 2024)("This Court has held that Executive Order 202.8 and seven subsequent executive orders constituted a 'toll'.") *referring to* (*Brash v. Richards*, 195 A.D.3d at 582, 149 N.Y.S.3d 560). "The other three Departments of the Appellate Division have followed this Court's holding in *Brash v. Richards*" *Trento 67, LLC v. OneWest Bank, N.A.* (*see Harden v. Weinraub*, 221 A.D.3d 1460, 1462, 200 N.Y.S.3d 207 [4th Dept.*]; Gabin v. Greenwich House, Inc.*, 210 A.D.3d 497, 498, 177 N.Y.S.3d 582 [1st Dept.]; *Matter of Roach v. Cornell Univ.*, 207 A.D.3d 931, 933, 172 N.Y.S.3d 215 [3d Dept.]). Plaintiff made this clear in his objections.

Further evidence of Judge Gonzalez's and the Magistrate's reasoning being incorrect is in is the Magistrate's citing of a case heard by Judge Gonzalez, *Loeb v. Cnty. of Suffolk*, No. 22-CV-6410 (HG), 2023 WL 4163117 (E.D.N.Y. June 23, 2023) (Trial Court: ECF 47 p. 8) where Judge Gonzalez stated:

The Court is of the opinion that Executive Order 202.8 suspended the time period to which it applied, and thus Plaintiff's claims were time-barred as of March 23, 2022. See also *Baker v. 40 Wall St. Holdings Corp.*, 161 N.Y.S.3d 723, 724–25 (N.Y. Sup. Ct. 2022) ("[T]he Governor did not toll all statutes of limitation, but only suspended them, due to the COVID-19 Pandemic, and ... he terminated the suspension on November 3, 2020.... With a suspension, a party can only benefit from the Executive Orders if his or her statute of limitations or filing deadline fell within the suspension period."); *Cruz v. Guaba*, 159 N.Y.S.3d 828, 828 (N.Y. Sup. Ct. 2022) ("Th[e] toll merely stopped the running of any applicable period of limitations for the 228 day period of time between March 3, 2020 and November 3, 2020. Contrary to Plaintiff's claims, the executive orders did not extend everyone's statute of limitations period for an additional 228 days.").

*Loeb v. Cnty. of Suffolk*, No. 22-CV-6410 (HG), 2023 WL 4163117, at *3 (E.D.N.Y. June 23, 2023)

Both of the cases the Judge Gonzalez relied on were reversed on appeal (*see Baker v. 40 Wall St. Holdings Corp.,* 208 N.Y.S.3d 680 (N.Y. App. Div. 2d Dept. 2024)("The Supreme Court, Appellate Division, held that three-year statute of limitations was tolled for 228-day period that executive orders tolling statutes of limitations due to COVID-19 pandemic were in effect, and thus claim against defendant was timely."); Cruz v. Guaba, 210 N.Y.S.3d 425, 426 (N.Y. App. Div. 2d Dept. 2024)("Pursuant to CPLR 214(5), an action to recover damages for personal injuries is generally subject to a three-year statute of limitations. [However,] Executive Order (A.Cuomo) Nos. 202.8 and 202.67 (9 NYCRR 8.202.8, 8.202.67), enacted by then Governor Andrew Cuomo ... in response to the COVID–19 pandemic, acted to toll the applicable statute of limitations for 228 days from March 20, 2020, until November 3, 2020.").  Therefore, the statute of limitations was tolled and there is no doubt that Plaintiff had 228 days added to the statute of limitations

for his Negligence claim. As long as Plaintiff filed his claim within 3 years and 228 days from the date that the harm occurred, his Negligence claim is timely.

Next, Plaintiff would have to establish that there was a valid claim of Negligence. "To establish a prima facie case of negligence, a plaintiff must establish the existence of a duty owed by a defendant to the plaintiff, a breach of that duty, and that such breach was a proximate cause of injury to the plaintiff." *Comack v. VBK Realty Associates, Ltd*., 852 N.Y.S.2d 370, 372 (N.Y. App. Div. 2d Dept. 2008).

Due to the employer-employee relationship between Defendant and Plaintiff, Defendant owed Plaintiff a duty of using reasonable care prior to terminating his employment. The Defendant failed to use reasonable care prior to terminating Plaintiff's employment where Plaintiff's termination was abrupt. The Defendant did have a contract with the Defendant. The Defendant also did, in fact, have a process prior to termination and failed to effectively utilize that process in this matter. There is no evidence of, at least, a documented warning which states that Plaintiff's actions of going home to use the bathroom constituted a major infraction, where further actions of that nature would lead to termination.[11] This abrupt termination was the

---

[11] Manager Pavel Dejesus stated that going home to use the bathroom was a violation of Charter's Code of Conduct. The Charter

proximate cause of injury where Plaintiff was unable to meet financial obligations . Plaintiff's move to Maryland was due to the loss of his employment at Charter which made him unable to take care of his sick father, who fell in his home (Plaintiff's former residence), and was hospitalized since then until he passed away on June 28th, 2023.

## V. <u>CONCLUSION</u>

Plaintiff signed what he believes is a contract, and, has sworn to being told by the Defendant that there is a six step process which he relied on. A reasonable person would find it easier to infer that Plaintiff's employment converted to one for cause then to state that he was still an at will employee, due to the documents he has presented. Even if the contract were not a contract, they relied on it to induce Plaintiff into returning to work. They, as well as Plaintiff, acted after the contract was signed, making his employment only terminable for cause.

WHEREFORE, for the foregoing reasons, Plaintiff is requesting that Judge Gonzalez's decision be REVERSED on the grounds that Plaintiff has presented sufficient facts to avoid dismissal, or to VACATE the District Court's Judgement

and order for this matter to be remanded back to the State Court as Plaintiff believes

he has proven they have jurisdiction and so that the State can properly apply their

laws.

Respectfully submitted,

Onwy Uzoigwe

4212 Flowerton Rd.

Baltimore, MD 21229

Phone: (347) 572-8280

Email: o.uzoigwe@gmail.com

*Plaintiff*

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that, on this 8th day of August 2024, that this principal brief, pursuant to Rule 28.1(e)(2), excluding the Table of Contents and Table of Authorities does not exceed 13,000 words, or 1300 lines of text, using typeface Time New Roman and 14 point text.  Footnotes and large quotations are at 12 point text.

_____
Onwy Uzoigwe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 8th day of August 2024, a copy of the foregoing document and Certificate of Compliance was sent by the Court's ECF system to all registered parties and six (6) paper copies will be sent to the Court via USPS delivery.

_____
Onwy Uzoigwe