# No. 24-1399

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

Onwy Uzoigwe,
*Plaintiff-Appellant,*
v.
Charter Communications, LLC,
*Defendant-Appellee.*

On Appeal from the United States District Court
For the Eastern District of New York
No. 23-CV-7383-HG-LB (Hon. Hector Gonzalez)

## BRIEF OF DEFENDANT-APPELLEE

Michael D. Kabat
Shawna M. Miller
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, GA 30363
Telephone: (404) 400-7300
mkabat@kcozlaw.com
smiller@kcozlaw.com

*Counsel for Defendant-Appellee*
*Charter Communications, LLC*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Defendant-Appellee Charter Communications, LLC ("Charter") hereby discloses the following pursuant to Federal Rule of Appellate Procedure 26.1:

a.     The name of each person, attorney, association of persons, firm, law firm, partnership, and corporation that has or may have an interest in the outcome of this action—including subsidiaries, conglomerates, affiliates, parent corporations, publicly traded companies that own 10% or more of a party's stock, and all other identifiable legal entities related to any party in the case:

| | |
|---|---|
| **Onwy Uzoigwe** | **Plaintiff-Appellant** |
| **Charter Communications, LLC** | **Defendant-Appellee** |
| **Charter Communications, Inc.** | **Indirect Parent Company of Defendant-Appellee** |
| **Liberty Broadband Corp.** | **Owner of 10% or More of Defendant-Appellee's Stock** |
| **Kabat Chapman & Ozmer LLP** <br> **Michael D. Kabat** <br> **Shawna M. Miller** | **Defendant-Appellee's Counsel** |

b.     The name of every other entity whose publicly-traded stock, equity, or debt may be substantially affected by the outcome of the proceedings:

**None of which Charter is aware.**

i

c.    The name of every other entity which is likely to be an active participate in the proceedings, including the debtor and members of the creditors' committee (or twenty largest unsecured creditors) in bankruptcy cases:

**None of which Charter is aware.**

d.    The name of each victim (individual or corporate) of civil and criminal conduct alleged to be wrongful, including every person who may be entitled to restitution:

**None**.

I certify that, except as disclosed, I am unaware of an actual or potential conflict of interest affecting the United States Court of Appeals for the Second Circuit in this action.

DATED: November 7, 2024          */s/ Shawna M. Miller*
                                  Shawna M. Miller

                                  KABAT CHAPMAN & OZMER LLP
                                  171 17th Street NW, Suite 1550
                                  Atlanta, GA 30363
                                  (404) 400-7300
                                  smiller@kcozlaw.com


                                  *Counsel for Defendant-Appellee*
                                  *Charter Communications, LLC*

ii

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT........................................................ i

JURISDICTIONAL STATEMENT.....................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW.......................................4

STATEMENT OF THE CASE ...........................................................................5

    I.    Factual Background: The Complaint's Allegations. ................................5

        A.    Uzoigwe's Union Participation and Return to Work. .....................5

        B.    Charter Terminates Uzoigwe's Employment. ................................7

    II.    Procedural History and District Court Proceedings. ................................7

        A.    Uzoigwe Files Suit and Unsuccessfully Attempts Service on Charter by Certified Mail. ..............................................................7

        B.    Charter Removes this Lawsuit to Federal Court, and the District Court Denies Uzoigwe's Repeated Attempts to Remand. ...............9

        C.    The District Court Grants Charter's Motion to Dismiss. ..............12

SUMMARY OF THE ARGUMENT......................................................................14

ARGUMENT .................................................................................................20

    I.    Applicable Standards of Review. ..........................................................20

        A.    Standard of Review for a Motion to Dismiss. ...............................20

        B.    Standard of Review for a Motion to Remand.................................20

        C.    Standard of Review for Other Miscellaneous Motions..................21

    II.    The Court Should Summarily Dismiss This Appeal Given Uzoigwe's Disregard of Procedural Requirements. ..................................................21

        A.    Uzoigwe Did Not Prepare and File a Compliant Appendix..........21

B.     Uzoigwe Flouted the Requirements of Rule 28 and Local Rule 28.1 By Omitting Key Sections of His Brief. ........................................23

III.   This Court Should Affirm the District Court's Dismissal of Uzoigwe's Breach of Contract Claim for Failure to State a Claim for Relief. ..........25

A.     Uzoigwe Did Not Adequately Plead that a Contract Existed.........26

B.     The District Court Correctly Held That Uzoigwe Was an At-Will Employee, and Charter Therefore Did Not Breach any Employment Contract When Terminating His Employment. .......27

1.   The District Court Correctly Held the Letter Does Not Alter the Presumption of At-Will Employment.......................................28

2.   The District Court Correctly Found That Uzoigwe Does Not Allege Any Other Express Policy Limiting Charter's Ability to Terminate Uzoigwe on Which Either Party Relied. .................31

i.   No Written Policy Incorporates a Six-Step Pre-Termination Procedure. ................................................................32

ii.  Uzoigwe Did Not Allege He Detrimentally Relied on Any Policy. ................................................................34

iii. Ms. Aziz's Alleged Verbal Assurance Is Insufficient to Overcome At-Will Employment.........................................35

C.     The District Court Properly Refused to Allow the Unemployment Insurance Proceedings to Preclude Charter's Defenses.................36

IV.   The District Court Correctly Held Uzoigwe Cannot State a Claim for Negligent Termination................................................................................39

A.     Negligent Discharge Is Not a Claim Under New York Law..........39

B.     Even If a Negligent Discharge Claim Existed, Uzoigwe's Claim is Barred by the Statute of Limitations. .............................................40

V.    This Court Should Affirm the District Court's Denial of Uzoigwe's Repeated Requests to Remand the Case...................................................43

iv

A. Several Procedural Deficiencies Bar Uzoigwe's Remand Arguments. ...................................................................43

B. The District Court Properly Held, on Several Occasions, That Charter's Removal Was Proper, and Uzoigwe's Additional Arguments Otherwise Do Not Warrant Remand or Reversal........46

    1. The District Court Correctly Rejected Uzoigwe's Argument that Charter Was Not Required to Return the Acknowledgement Form. ...................................................................48

    2. The District Court Correctly Rejected Uzoigwe's Argument that Charter Effectively Returned a Signed Acknowledgment Form When It Attached the Unsigned Form as an Exhibit to its Notice of Removal. .................................................................50

    3. Uzoigwe's Failure to Complete Service was a Jurisdictional Defect that Could Not Be Corrected. .........................................52

    4. The District Court Properly Disregarded Uzoigwe's Remaining Arguments, as They are Red Herrings. ......................................55

C. The District Court Did Not Err in Denying Uzoigwe's Motions for Recusal and an Evidentiary Hearing. .............................................58

CERTIFICATE OF COMPLIANCE .......................................................61

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2505 Victory Blvd., LLC v. Victory Holding, LLC,*
  848 N.Y.S.2d 514 (N.Y. App. Div. 1991) .........................................................56

*Agyin v. Razmzan,*
  986 F.3d 168 (2d Cir. 2021) ..............................................................................20

*Andrew v. J.P. Morgan Chase & Co.,*
  No. 18-cv-4421-DLC, 2018 WL 4926440 (S.D.N.Y. Oct. 9, 2018).................28

*Anthony v. City of New York,*
  339 F.3d 129 (2d Cir. 2003) .........................................................................45, 46

*Anwar v. Fairfield Greenwich Ltd.,*
  676 F. Supp. 2d 285 (S.D.N.Y. 2009) ...............................................................20

*Arentz v. Morse Dry Dock & Repair Co.,*
  249 N.Y. 439, 164 N.E. 342 (1928).................................................................29

*Arroyo v. WestLB Admin., Inc.,*
  54 F. Supp. 2d 224 (S.D.N.Y. 1999) .................................................................37

*Aurelius Cap. Partners, LP v. Republic of Argentina,*
  584 F.3d 120 (2d Cir. 2009) ..............................................................................21

*Baker v. 40 Wall St. Holdings Corp.,*
  208 N.Y.S.3d 680 (N.Y. App. Div. 2024)..........................................................43

*Baron v. Port Auth. of N.Y. & N.J.,*
  271 F.3d 81 (2d Cir. 2001) ..................................................................27, 31, 32

*Black v. Vitello,*
  841 F. App'x 334 (2d Cir. 2021) .......................................................................56

*Blockbuster, Inc. v. Galeno,*
  472 F.3d 53 (2d Cir. 2006) ................................................................................20

*Brinks Global Servs. USA, Inc. v. Bonita Pearl Inc.,*
  686 F. Supp. 3d 357 (S.D.N.Y. 2023) ...............................................................55

*Broman v. Stern*,
    567 N.Y.S.2d 829 (N.Y. App. Div. 1991) ...........................................................56

*Brown v. Daikin Am. Inc.*,
    756 F.3d 219 (2d Cir. 2014) .................................................27, 31, 35

*Buechel v. Bain*,
    97 N.Y.2d 295 (2001) ...........................................................38

*Buggs v. Ehrnschwener*,
    968 F.2d 1544 (2d Cir. 1992) ...........................................................50

*Bumpus v. N.Y.C. Transit Auth.*,
    883 N.Y.S.2d 99 (N.Y. App. Div. 2009) ...........................................................55

*Citibank, N.A. v. Cont-Scheurer*,
    98 N.Y.S.3d 273 (N.Y. App. Div. 2019) ...........................................................55, 57

*Com/Tech Commc'n Tech., Inc. v. Wireless Data Sys., Inc.*,
    163 F.3d 149 (2d Cir. 1998) ...........................................................53

*Cruz v. Guaba*,
    210 N.Y.S.3d 425 (N.Y. App. Div. 2024) ...........................................................43

*CSX Transp., Inc. v. Island Rail Terminal, Inc.*,
    879 F.3d 462 (2d Cir. 2018) ...........................................................21

*Cucchi v. N.Y.C. Off-Track Betting Corp.*,
    818 F. Supp. 647 (S.D.N.Y. 1993) ...........................................................36

*DBW Invs., LLC v. VNUE, Inc.*,
    No. 23-857, 2024 WL 2524033 (2d Cir. May 24, 2024) ...........................................................2

*DeLuca v. AccessIT Grp., Inc.*,
    695 F. Supp. 2d 54 (S.D.N.Y. 2010) ...........................................................55

*Deutsche Bank Nat'l Tr. Co. v. Martinez*,
    180 N.Y.S.3d 577 (N.Y. App. Div. 2022) ...........................................................55, 57

*Diskin v. Consolidated Edison Co. of N.Y., Inc.*,
    522 N.Y.S.2d 888 (N.Y. App. Div. 1987) ...........................................................36

*Dominguez v. Stimpson Mfg. Corp.*,
   616 N.Y.S.2d 221 (N.Y. App. Div. 1994) ........................................... 49

*Dorcinvil v. Annucci*,
   131 N.Y.S.3d 724 (N.Y. App. Div. 2020) ..................................... 53, 54

*E. Sav., FSB v. Thompson*,
   No. 12-cv-1197-WFK-RLM, 2016 WL 2977268 (E.D.N.Y. May
   19, 2016) ........................................................................................ 58

*Entretelas Americanas S.A. v. Soler*,
   840 F. App'x. 601 (2d Cir. 2020) ....................................................... 2

*Ernst Haas Studio, Inc. v. Palm Press, Inc.*,
   164 F.3d 110 (2d Cir. 1999) ............................................................ 23

*Esquire Trade & Fin., Inc. v. CBQ, Inc.*,
   562 F.3d 516 (2d Cir. 2009) ............................................................ 38

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004) ............................................................ 25

*Freedom Holdings, Inc. v. Cuomo*,
   624 F.3d 38 (2d Cir. 2010) ............................................................. 20

*Gelb v. Royal Globe Ins. Co.*,
   798 F.2d 38 (2d Cir. 1986) ............................................................. 38

*Gibbons v. Bristol-Myers Squibb Co.*,
   919 F.3d 699 (2d Cir. 2019) ....................................................... 20, 47

*Griffin-Robinson v. N.Y. State Dep't of Corrs. & Cmty. Supervision*,
   210 N.Y.S.3d 516 (N.Y. App. Div. 2024) ........................................ 54

*Grskovic v. Holmes*,
   972 N.Y.S. 2d 650 (N.Y. App. Div. 2013) ........................................ 55

*Hill v. Westchester Aeronautical Corp.*,
   492 N.Y.S.2d 789 (N.Y. App. Div. 1985) ........................................ 36

*Hodge v. Abaco, LLC*,
   825 F. App'x 46 (2d Cir. 2020) ....................................................... 26

*In re Agran*,
863 N.Y.S.2d 295 (N.Y. App. Div. 2008) ............................................................38

*In re Aguinda*,
241 F.3d 194 (2d Cir. 2001) ...............................................................................21

*In re Guynup*,
968 N.Y.S.2d 608 (N.Y. App. Div. 2013) ............................................................38

*In re LTI, Inc.*,
869 N.Y.S.2d 262 (N.Y. App. Div. 2008) ............................................................38

*Jacoby v. N.Y. State Bd. for Prof. Med. Cond.*,
743 N.Y.S.2d 192 (N.Y. App. Div. 2002) ............................................................56

*Junk v. Aon Corp.*,
No. 07 Civ 4640, 2007 WL 4292034 (S.D.N.Y. Dec. 3, 2007) .........................36

*Kelsey v. Forster & Garbus, LLP*,
353 F. Supp. 3d 223 (W.D.N.Y. 2019) ...............................................................55

*Kostelanetz & Fink, L.L.P. v. Hui Qun Zhao*,
694 N.Y.S.2d 285 (N.Y. Civ. Ct. 1999) .................................................48, 50, 58

*Kotick v. Desai*,
507 N.Y.S.2d 217 (N.Y. App. Div. 1986) ............................................................29

*L-7 Designs, Inc. v. Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011) ...............................................................................21

*LCS Group, LLC v. Shire LLC*,
No. 19-2404, 2019 WL 7824613 (2d Cir. Nov. 12, 2019) ..................................45

*Lessambo v. PricewaterhouseCoopers, L.P.*,
451 F. App'x 57 (2d Cir. 2011) ..........................................................................45

*Lobosco v. N.Y. Tel. Co./NYNEX*,
96 N.Y.2d 312 (2001) ....................................................................................33, 39

*Loeb v. Cnty. Of Suffolk*,
No. 22-cv-6410, 2023 WL 4163117 (E.D.N.Y. June 23, 2023) ....................41, 43

*Maldonado v. Arcadia Bus. Corp.*,
    No. 14-cv-4129-DLI-RML, 2015 WL 12791329 (E.D.N.Y. Aug.
    27, 2015) ........................................................................................55

*Marcy v. Woodlin*,
    237 N.Y.S.2d 402 (N.Y. App. Div. 1963) ........................................55

*Merschrod v. Cornell Univ.*,
    527 N.Y.S.2d 109 (N.Y. App. Div. 1998) ........................................26

*Murphy v. Am. Home Prods. Corp.*,
    58 N.Y.2d 293 (1983) ................................................................27, 39

*Muto v. CBS Corp.*,
    668 F.3d 53 (2d Cir. 2012) ..............................................................20

*N.L.R.B. v. Kathleen's Bakeshop, LLC*,
    No. 02-4673, 2003 WL 22221353 (2d Cir. Sept. 26, 2003) .............37

*O'Neal v. Spota*,
    744 F. App'x 35 (2d Cir. 2018) ......................................................23

*Paolucci v. Adult Retardates Ctr., Inc.*,
    582 N.Y.S.2d 452 (N.Y. App. Div. 1992) ........................................35

*People v. Bailey*,
    283 N.Y.S.2d 660 ..........................................................................38

*Estate of Perlman v. Kelley*,
    108 N.Y.S.3d 28 (N.Y. App. Div. 2019) ........................................54

*Pierce v. Village of Horseheads Police Dep't*,
    970 N.Y.S. 2d 95 (N.Y. App. Div. 2013) ...................................53, 54

*Prage v. Kavulich & Assocs., P.C.*,
    No. 16-cv-1627-CBA, 2016 WL 5900194 (E.D.N.Y. Oct. 7, 2016) ...............55

*RCB Equities #£3, LLC v. Martin*,
    632 F. App'x 663 (2d Cir. 2015) ....................................................45

*Richard A. Hellander, M.D., P.C. v. Metlife Auto & Home Ins. Co.*,
    15 N.Y.S.3d 537 (N.Y. App. Div. 2015) ........................................50

x

*Rooney v. Tyson*,
    91 N.Y.2d 685 (1998) ....................................................................29, 30

*Rooney v. Tyson*,
    956 F. Supp. 213 (N.D.N.Y. 1997)..............................................29, 30

*Ruffin v. Lion Corp.*,
    15 N.Y.3d 578 (2010) ...............................................................................53

*Ryan v. N.Y. Tel. Co.*,
    62 N.Y.2d 494 (1984) ...............................................................................38

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995) ...............................................................3, 44

*Sioson v. Knights of Columbus*,
    303 F.3d 458 (2d Cir. 2002) .........................................................23, 25

*Sipos v. Fastrack Healthcare Sys., Inc.*,
    820 N.Y.S.2d 846 (N.Y. Sup. Ct. 2006).........................................38

*Slayton v. Am. Exp. Co.*,
    460 F.3d 215 (2d Cir. 2006) ..................................................................2

*Stamelman v. Fleishman-Hillard, Inc.*,
    No. 02-civ-8318-SAS, 2003 WL 21782645 (S.D.N.Y. July 31,
    2003) ...............................................................................27, 34, 35, 36

*Stop & Shop Supermarket Co. LLC v. Goldsmith*,
    No. 10-cv-3052 (KMK), 2011 WL 1236121 (S.D.N.Y. Mar. 31,
    2011) .........................................................................................................47

*Taylor v. Harbour Pointe Homeowners Ass'n*,
    690 F.3d 44 (2d Cir. 2012) ...................................................................24

*Terrell v. NBC Universal Media LLC*,
    No. 18-CV-2354, 2019 WL 3206131 (E.D.N.Y. July 16, 2019) ....................57

*Thomas v. City of N.Y.*,
    563 N.Y.S.2d 832 (N.Y. App. Div. 1991).........................................37

*U.S. v. E. River Housing Corp.*,
    90 F. Supp. 3d 118 (S.D.N.Y. 2015) .................................................38

*U.S. v. Gilmartin*,
   803 F. App'x 538 (2d Cir. 2020) ........................................................45

*Wanamaker v. Columbian Rope Co.*,
   907 F. Supp. 522 (N.D.N.Y. 1995)....................................................36

*Weaver v. New York*,
   7 F. Supp. 2d 234 (W.D.N.Y. 1998)............................................48, 49

*Weiner v. McGraw-Hill Inc.*,
   57 N.Y.2d 458 (1982) ................................................................34, 35

*Weingot v. Unison Agreement Corp.*,
   No. 21-cv-4542, 2023 WL 5152478 (E.D.N.Y. July 20, 2023),
   *report and recommendation adopted as modified on other grounds*,
   2024 WL 1191106 (E.D.N.Y. Mar. 20, 2024)...............................41, 42

*Williams v. Buffalo Pub. Schs.*,
   758 F. App'x 59 (2d Cir. 2018) ........................................................39

*Wright v. Cayan*,
   817 F.2d 999 (2d Cir. 1987) .....................................................27, 29

**Statutes**

15 U.S.C. § 7001 ...................................................................................52

15 U.S.C. § 7003 ...................................................................................52

28 U.S.C. § 1332 .................................................................................1, 9

28 U.S.C. § 1441 ...............................................................................9, 46

28 U.S.C. § 1446 .....................................................................................9

**Rules**

CPLR § 308..........................................................................................56

CPLR § 312........................................................................................*passim*

CPLR § 2001.......................................................................................*passim*

Fed. R. App. P. 3.................................................................................44

xii

Fed. R. App. P. 28 ................................................................................24

Fed. R. App. P. 30 ....................................................................21, 22, 24

Fed. R. Civ. P. 4 ...................................................................................57

Fed. R. Civ. P. 8 ...................................................................................20

Fed. R. Civ. P. 11 ........................................................................*passim*

Fed. R. Civ. P. 12 ............................................................................1, 12

Local Rule 4 ..........................................................................................57

Local Rule 28 ..............................................................................*passim*

Local Rule 30 ..........................................................................1, 21, 22, 24

# JURISDICTIONAL STATEMENT[1]

The U.S. District Court for the Eastern District of New York had subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, despite Defendant-Appellee Charter Communications LLC being a resident of New York, because Charter removed the action to federal court before being properly joined and served. (CSA-47–56, 86–90.)  Therefore, the forum-defendant rule did not apply. (*Id.*)  Additionally, the amount in controversy exceeds $75,000. (CSA-53–57.)[2]

This is an appeal from an April 24, 2024 Order ("Dismissal Order") of the district court (the Honorable Hector Gonzalez) granting Charter's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (CSA-3, 143–154.)  Despite the Dismissal Order giving him until May 24, 2024 to amend his pleadings, Plaintiff-Appellant Onwy Uzoigwe prematurely filed his notice of appeal on May 17, 2024. (CSA-3.)  Nearly two weeks later, on May 31, 2024, the district court entered a

---

[1] Charter submits this statement of jurisdiction, as Uzoigwe did not include a jurisdictional statement as required by Federal Rule of Appellate Procedure 28.

[2] "CSA" refers to Charter's Supplemental Appendix and the corresponding page number(s) in the CSA, filed pursuant to Local Rule 30.1(g).  Uzoigwe never conferred with Charter regarding the contents of an appendix (much less agreed) and initially did not file an appendix.  The corrected appendix Uzoigwe ultimately filed consists only of a printout of the district court docket and an unverified transcript of the audio recording he attached to his pleadings, and it omits a table of contents. (*See generally*, App. D.E. 32.1.)  Accordingly, Charter submits the CSA to organize the pertinent materials.

1

final order and judgment dismissing Uzoigwe's operative Complaint with prejudice due to his failure to amend. (CSA-155; U.S. Court of Appeals for the Second Circuit Docket Entry ("App. D.E.") D.E. 31.1 at 12–13, 18.)[3]

Charter does not dispute this Court has jurisdiction to review the Dismissal Order, as Uzoigwe specifically identifies it in his Notice of Appeal. *See Slayton v. Am. Exp. Co.*, 460 F.3d 215, 224 (2d Cir. 2006); *DBW Invs., LLC v. VNUE, Inc.*, No. 23-857, 2024 WL 2524033, at *1 (2d Cir. May 24, 2024) (Summary Order); *Entretelas Americanas S.A. v. Soler*, 840 F. App'x. 601, 602–03 (2d Cir. 2020) (Summary Order).

However, this Court lacks jurisdiction to review any arguments that fall outside the scope of the Dismissal Order, including those related to remand. *See infra* at pp. 43–46. Uzoigwe's Notice of Appeal only identifies the non-final Dismissal Order.[4] (CSA-3.) Because the Notice of Appeal does not identify any district court order related to remand (including those orders denying Uzoigwe's Motion to Remand, First Motion for Reconsideration, Second Motion for Reconsideration, Motion to Recuse Judge Gonzalez, or Request for Evidentiary

---

[3] Throughout, and with respect to those documents that are part of this appeal, Charter cites to the page numbers assigned by the Electronic Case Files system ("ECF"). For clarity given the numerous versions of Uzoigwe's Brief, Charter references Uzoigwe's cured brief and appendix located at App. D.E. 31.1 and 32.1.

[4] Although the Notice of Appeal refers to a "judgment," no judgment had been entered as of the date of the Notice of Appeal.

2

Hearing) this Court does not have jurisdiction to review them. (*Id.*) *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256 (2d Cir. 1995) (when notice of appeal specifies one district court order but fails to reference another, appeal from unmentioned orders cannot be considered). Therefore, this Court's review must be limited to the Dismissal Order, and it should not consider Uzoigwe's scattered arguments regarding any extraneous issues, including remand.

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1.    Whether the Second Circuit should disregard Uzoigwe's appellate brief entirely given his failure to comply with the Federal Rules of Appellate Procedure and the Second Circuit's Local Rules.

2.    Whether the district court correctly dismissed Uzoigwe's breach of contract claim based on Uzoigwe failing to plead an agreement that altered his at-will employment status.

3.    Whether the district court correctly dismissed Uzoigwe's negligence claim as the claim was untimely and outside the applicable statute of limitations, or alternatively, because no claim for negligent termination exists under New York law.

4.    Whether this Court can properly review the district court's denials of Uzoigwe's repeated requests to remand.

5.    If so, whether the district court correctly denied Uzoigwe's repeated requests for remand given that Charter was not properly served and joined as a defendant at the time of removal.

## STATEMENT OF THE CASE

I. **Factual Background:  The Complaint's Allegations.**

    A. **Uzoigwe's Union Participation and Return to Work.**

Charter hired Uzoigwe as a field technician.  (CSA-9.)  He was a member of a local union (the "Union") that went on strike in March 2017.  (*Id.*)  While Uzoigwe initially participated in the strike, he alleges that he realized the strike was improper and decided to cross the picket line in November 2017, at which point he resumed his work for Charter as a full-time field technician.  (*Id.*)

Upon his return to work on November 17, 2017, Charter provided Uzoigwe with a letter for his signature ("the Letter") that confirmed his employment would continue after the end of the Union's strike, distinguishing him from those temporary employees who were hired to fill the positions of the striking Union employees and who would be terminated when the strike ended.  (CSA-10, CSA-38.)  Specifically, the Letter stated:

> SUBJECT: Confirmation of Your Post-strike Work Status
> . . .
> Since your return to work after leaving [the Union's] strike, your shift assignment in the Field Operations department will be Tuesday – Saturday 12:30 p.m. – 9:00 p.m. Your assignment is ***permanent so that you will continue in that assignment through and after the end of the strike*** by [the Union], and you will not be displaced by the returning strikers at the end of the strike.

(CSA-38 (emphasis added).)  Uzoigwe alleges "permanent" means "to continue indefinitely."  (CSA-14 n.4; *see also* District Court Docket Entry ("Dist. Ct. D.E.")

5

39 at 6; Dist. Ct. D.E. 50 at 8.)

Other than informing Uzoigwe of his shift assignment and clarifying that the strike would not alter his employment status, the Letter is silent as to any other employment terms or conditions. (CSA-38.) Additionally, the Letter does not provide any limitations on Charter's ability to terminate Uzoigwe's employment, nor does it provide any fixed duration of employment. (*See id.*)

Uzoigwe alleges that, after he returned to work and sometime around when he signed the Letter, a member of Charter management (Ms. Aziz) verbally assured him of a non-descript "six-step process" before termination. (CSA-9–10.) However, Uzoigwe does not allege any writing memorializing this supposed six-step process; that he relied on this statement when returning to work (particularly since, as alleged, he was already working when the statement was made); and what those six steps would be. (*See id.*) Moreover, Plaintiff attached a version of Charter's Employee Handbook in his Opposition to Charter's Motion to Dismiss, which the district court considered. (CSA-107–138, CSA-152.) Rather than lay out any six-step process preceding termination, the Handbook expressly states that Uzoigwe was an at-will employee and that Charter could terminate his employment at any time with or without cause. (CSA-109–110.) He also attached a letter from Charter dated February 2019 (which the district court considered) that confirmed his at-will employment status by expressly stating Charter "may

6

terminate your employment at any time for any reason not prohibited by law . . . ." (CSA-106, CSA-151–152.)

## B. Charter Terminates Uzoigwe's Employment.

As the Letter indicated, Uzoigwe remained employed once the strike concluded. (CSA-10–11.) More than two years later, on January 7, 2020, Charter suspended Uzoigwe when it determined he had been violating its policy by going home while on the clock during his scheduled shift (which Uzoigwe admitted, stating he did so to use the bathroom). (*Id.*) Charter terminated Uzoigwe's employment for that same reason on January 18, 2020. (*Id.*)

More than three years later, in May 2023, after he "went on with his life," Uzoigwe was purportedly "scrolling through pictures on his phone" and found a picture of the Letter, which he alleges "he forgot all about." (CSA-12.) Allegedly, the Letter also triggered his memory of the purported six-step process conversation prior to termination. (*See id*.)

## II. Procedural History and District Court Proceedings.

### A. Uzoigwe Files Suit and Unsuccessfully Attempts Service on Charter by Certified Mail.

On August 23, 2023, Uzoigwe, proceeding *pro se*, filed his Complaint in the New York Supreme Court for Queens County, asserting causes of action against Charter for: (1) retaliation pursuant to Title 20 of the NYCAC, (2) negligence causing personal injury, and (3) breach of contract. (CSA-5–46.) Uzoigwe has

conceded that the retaliation claim is barred by the statute of limitations, leaving only the breach of contract and negligent termination claims at issue in this appeal. (Dist. Ct. D.E. 50 at 24; *see generally*, App. D.E. 31.1.)

On August 24, 2023, Uzoigwe sent a copy of the Summons and Complaint via certified mail to Charter's registered agent, who received the same on August 28, 2023. (CSA-48; Dist. Ct. D.E. 10 at 18–19.) Uzoigwe included a Statement of Service by Mail and Acknowledgement of Receipt by Mail of Summons and Complaint (the "Acknowledgement Form"), which included a space for Charter's signature and indicated that if Charter did not sign and return the Acknowledgment within 30 days, it could be charged with the expenses of subsequent personal service. (*Id.*)

On September 11, 2023, Uzoigwe contacted an individual named Yves Vagary to attempt service on Charter again. (CSA-81–85.) As evidenced by the mailing envelope as well as Vagary's improper Affidavit of Service, he resent the Summons and Complaint by registered mail, again including an Acknowledgment

Form.[5] (*Id.*)  Uzoigwe does not dispute that Vagary attempted service by mail and never personally served Charter.  (CSA-88–89; *see also* Dist. Ct. D.E. 10 at 3–4; Dist. Ct. D.E. 33 at 5.)  Charter did not sign or return either Acknowledgment Form to Uzoigwe.  (CSA-48, CSA-88–89.)

### B. Charter Removes this Lawsuit to Federal Court, and the District Court Denies Uzoigwe's Repeated Attempts to Remand.

Thirty days after Charter received notice of the lawsuit, on September 27, 2023, Charter removed this action to federal court pursuant to 28 U.S.C. § 1332, 1411, and 1446.  (*See generally,* CSA-47–85.)  In addition to demonstrating the district court had jurisdiction and that removal was procedurally proper, Charter explained that, although Charter is a resident of New York, the non-jurisdictional forum-defendant rule did not apply because Charter had not been properly joined and served at the time of removal.  (CSA-47–53; Dist. Ct. D.E. 21.)

On October 6, 2023, Uzoigwe filed a Motion to Remand the case back to state court, primarily arguing that he effectuated service by mail pursuant to N.Y. CPLR § 312-a and properly joined Charter as a defendant in the case.  (Dist. Ct.

---

[5] Notably, the Affidavit of Service form expressly states that an individual must *personally* serve a civil defendant.  (CSA-81–83.)  While the Affidavit includes a section where the affiant can attest that he "also enclosed a copy of the above papers in a postpaid . . . sealed envelope properly addressed to defendant," that section is only to be used in conjunction with in-person substituted service.  (*Id.*) *See* New York Civil Practice Laws and Rules ("CPLR") § 308 (permitting substituted service by delivering summons and complaint "*and* by . . . mailing the summons").

D.E. 10.) Pursuant to Judge Gonzalez's individual rules, the district court initially treated the Motion as a letter request for a pre-motion conference, which Charter opposed by letter on October 18, 2023. (Dist. Ct. D.E. 10 and 14; Dist. Ct. Oct. 11, 2023 Order.) On October 21, 2023, the district court permitted the Motion, set a schedule for Charter to file its opposition, and expressly stated, "There will be no reply." (Dist. Ct. Oct. 21, 2023 Scheduling Order.) However, before Charter could even oppose the Motion to Remand, Uzoigwe filed a Motion for Evidentiary Hearing on October 25, 2023 "to determine if jurisdiction was already obtained by the State Court." (Dist. Ct. D.E. 18.) The district court denied Uzoigwe's request on November 1, 2023, and Charter filed its Opposition to the Motion to Remand on November 10, 2023, demonstrating that Uzoigwe's service attempts were ineffective and, thus, removal was proper. (Dist. Ct. D.E. 19 and 21.)

On November 22, 2023, the district court entered an Order denying Uzoigwe's Motion to Remand, holding that:

- At the time of removal, Uzoigwe had not properly served and joined Charter as a party because CPLR § 312-a(b)(1) provides that service is not complete until the defendant signs and returns the Acknowledgment Form, which Charter did not do. (CSA-88–89.)

- Charter was not under a legal obligation to sign and return the Acknowledgement Form, as the statute provides that the only penalty for

10

not doing so is the defendant may be responsible for the expense of subsequent personal service. (*Id.*)

- As a result, the forum defendant rule did not apply because Charter properly removed the case before it was joined as a party. (*Id*.)

Uzoigwe refused to accept the district court's decision. On December 3, 2023, he filed a Motion for Reconsideration, which the district court denied the next day, immediately followed by a Second Motion for Reconsideration on December 5, 2023, which the district court denied three days later. (Dist. Ct. D.E. 29, 30, 32, 33; Dist. Ct. Dec. 4, 2023 Order; Dist. Ct. Dec. 8, 2023 Order.) In both denial orders, the district court explained it had carefully reviewed Uzoigwe's remand arguments in the leading Motion, that the motions for reconsideration were re-litigation of those same arguments, and that its reasoning in the November 22 Order stood. (Dist. Ct. Dec. 4, 2023 Text Order; Dist. Ct. Dec. 8, 2023 Text Order.)

Uzoigwe next filed a Letter Motion to Recuse Judge Gonzalez on December 20, 2023, alleging that Judge Gonzalez had acted "maliciously and intentionally," should recuse himself because he was "harboring bias" against Uzoigwe by allowing Charter's removal, and should remand the case for the same reasons he set forth in his numerous prior motions seeking that relief. (App. D.E. 31.1 at 56; Dist. Ct. D.E. 37.) The district court denied Uzoigwe's request the following day

11

and confirmed Uzoigwe's accusations were false.  (Dist. Ct. Dec. 21, 2023 Order.)

**C.      The District Court Grants Charter's Motion to Dismiss.**

Charter filed a Motion to Dismiss each of Uzoigwe's claims pursuant to Fed. R. Civ. P. 12(b)(6) on November 22, 2023. (Dist. Ct. D.E. 24–25.)  Uzoigwe filed his Opposition to the Motion to Dismiss on December 20, 2023, to which he attached over 20 extraneous exhibits that were neither pled nor attached to his Complaint.[6]  (Dist. Ct. D.E. 39–40.)  Charter filed its Reply on January 5, 2024, and the district court referred the Motion to the magistrate judge for a report and recommendation.  (Dist. Ct. D.E. 41; Dist. Ct. Jan. 8, 2024 Order.)

The magistrate judge entered the Report and Recommendation on March 18, 2024, which recommended that the court dismiss each of Uzoigwe's claims for the following reasons:

- The statute of limitations barred Uzoigwe's retaliation and negligence claims; and

- Uzoigwe's breach of contract claim failed because Uzoigwe did not allege an express written policy, or oral assurance incorporated into a written policy, that limited Charter's right to discharge Uzoigwe's employment.  Thus, Uzoigwe failed to overcome the difficult pleading

---

[6] In accordance with case law permitting a court to consider materials outside the pleadings on a motion to dismiss a *pro se* complaint, the district court considered these documents.  (CSA-146.)

burden required to rebut New York's presumption in favor of at-will employment. (CSA-95–105.)

On April 4, 2024, Uzoigwe filed his objections to the Report and Recommendation, and Charter responded on April 18, 2024. (Dist. Ct. D.E. 50–51.)

On April 24, 2024, the district court entered the Dismissal Order adopting the reasoning of the Report and Recommendation in full, dismissing the negligence and retaliation claims with prejudice, and allowing Uzoigwe until May 24, 2024 to amend his breach of contract claim. (CSA-143-154.) On May 17, 2024, Uzoigwe filed his Notice of Appeal, requesting that the Second Circuit review the Dismissal Order. (CSA-3.) Although Uzoigwe references a "judgment," no judgment had been entered. (CSA-3, CSA-154.) Rather, only when Uzoigwe failed to amend his complaint by the district court's May 24 deadline, did the district court enter a final Order and Judgment on May 31, 2024—nearly two weeks after Uzoigwe had filed his Notice of Appeal. (CSA-155.)

## SUMMARY OF THE ARGUMENT

Uzoigwe appeals the district court's dismissal of his claims and its refusal to remand this case to state court. Notably, Uzoigwe cannot maintain his appeal of the district court's remand decision because he did not identify any remand-related orders in his Notice of Appeal.

Setting aside the portion of the Appellant's Brief ("Brief") addressing remand, the thrust of Uzoigwe's appeal is his quarrel with the reason for his termination—that Charter terminated him because he was going home during his shift to use the bathroom. Uzoigwe dedicates pages of his Brief to this issue, attempting to convince the Court that Charter did not terminate him for justifiable cause and that he should be given an opportunity to present these arguments in the state court. Whether Charter had a reasonable basis to terminate Uzoigwe is, however, not at issue here. What *is* at issue is whether Uzoigwe satisfied his mandatory procedural obligations in submitting his appeal and, if so, whether he had an employment contract with Charter in the first instance, whether any such contract altered his at-will status, and whether he is able to state a claim for negligent termination.[7] The answer to each of these questions is "no." For this reason, the district court's holdings are correct and should be affirmed.

---

[7] In an abundance of caution, Charter also addresses Uzoigwe's improper argument that his claims must be remanded to state court.

14

As a threshold matter, Uzoigwe flouted both the mandatory procedural requirements of the Federal Rules of Appellate Procedure and the Second Circuit's Local Rules, as he did not prepare and file a proper appendix, fails to properly cite to the record throughout his Brief, and did not include many critical sections required for his Brief, including a jurisdictional statement, a statement of issues, a concise statement of the case, or a summary of the argument. Uzoigwe's failures in this regard render his assignments of error nearly impossible to identify, as he does not dispute specific portions of the district court's Dismissal Order or its various remand orders, but instead jumps straight into his convoluted arguments, which provide little in the way of logical legal analysis. Pursuant to Local Rule 28.1, the Court has grounds to dismiss Uzoigwe's appeal due to his procedural failures, and should do so. Notwithstanding, should this Court consider Uzoigwe's substantive arguments, it is clear that the district court correctly dismissed Uzoigwe's Complaint for failure to state a claim for breach of contract or negligence (and that it correctly refused to remand those claims to state court).

First, Uzoigwe's breach of contract claim is premised upon his unsupported allegation that the Letter he received from Charter after he crossed the picket line during a Union strike—confirming he would not be treated as a replacement employee and terminated at the conclusion of the strike—somehow entitled him to permanent employment of "indefinite" duration and precluded Charter from

15

terminating him without cause.  Additionally, he purports that at that same time, Charter management verbally assured him of a "six-step process" preceding termination.  Uzoigwe claims that when Charter terminated him in January 2020 for going home while on the clock to use the bathroom, Charter breached that contract because it did not have justifiable cause to terminate him, nor did it proceed through the allegedly promised "six-step" process.  As the district court correctly held, Uzoigwe cannot state a claim for relief that is plausible based on these allegations.

Under New York law, employees are at will unless an employment contract contains an explicit employment duration or expressly limits an employer's right to terminate them.  Here, the Letter and the verbal assurance did not contain a duration or limitation.  New York courts universally hold that a promise of permanent employment is treated as one of indefinite duration.  Thus, the Letter's language regarding "permanent" employment could not and did not alter his at-will employment status.  Further, under settled law, the alleged oral assurance of a six-step pre-termination process must be incorporated into an express written policy upon which Uzoigwe relied to form the basis of a breach of contract claim.  As the district court correctly held, no policy incorporating that purported assurance exists, and further, Uzoigwe did not adequately allege he detrimentally relied on that assurance.  The district court also properly rejected Uzoigwe's remaining

16

arguments given that the documents he filed in support of his Opposition to Charter's Motion to Dismiss actually confirm he was an at-will employee by expressly stating his employment was at-will, and settled New York law—including codified legislation—precludes an award of unemployment benefits from the Unemployment Insurance Appeal Board ("Unemployment Board") from having any preclusive effect in subsequent litigation proceedings. As such, the district court's dismissal of Uzoigwe's breach of contract claim was correct and this Court should affirm it.

Second, Uzoigwe's negligence claim is based on the single allegation that Charter negligently terminated him. This claim fails as a matter of law for the simple reason that New York does not recognize a negligent termination claim. This Court need not proceed further in affirming the district court's dismissal. Nonetheless, even if New York recognized such a claim, it would be barred by the applicable three-year statute of limitations. Although Uzoigwe attempts to sidestep the indisputable fact that he filed his claim more than three years after it accrued by referencing Executive Order 202.8 and its continuances, those orders (which were issued in response to the COVID-19 pandemic) suspended pending statutes of limitations that were set to expire while they were in effect—they did not indiscriminately add more than seven months to all running limitations periods. Thus, the Court should affirm dismissal of Uzoigwe's negligence claim as well.

17

As for Uzoigwe's arguments regarding remand, as a preliminary matter, this Court does not even have jurisdiction to review the district court's various orders denying Uzoigwe's repeated requests to remand the case to state court, as Uzoigwe did not identify those orders in his Notice of Appeal. Notwithstanding, even if the Court exercised review, the record is clear that the district court correctly upheld Charter's removal given that, despite Charter being a New York resident, it removed the case prior to service of the Summons and Complaint such that the forum-defendant rule did not apply. While Uzoigwe asserts a slew of arguments—many of which are specious and difficult to decipher—he cannot evade the fact that he only attempted service on Charter by mail pursuant to CPLR § 312-a and that CPLR § 312-a expressly provides that service is only complete if the defendant signs and returns the requisite acknowledgment form, which Charter did not do. For example, Uzoigwe argues that Rule 11 of the Federal Rules of Civil Procedure and the Federal E-Sign Act somehow superimposed a signature on the acknowledgment form (despite Charter never appending a signature to it), and that when Charter filed the form as an exhibit to its Notice of Removal, Charter "delivered" it to Uzoigwe pursuant to CPLR § 312-a, thereby effectuating service. He also argues that the district court should have invoked a state court procedural rule to "cure" his failure to serve by deeming service completed—an extraordinary remedy that New York state courts expressly prohibit and which is inapplicable to

18

federal courts. Despite these arguments (and others detailed further below), the district court properly found Uzoigwe did not properly join and serve Charter as of the date of removal, and therefore, removal was proper. This Court should affirm those holdings.

Finally, Uzoigwe only disputes the outcome of the district court denying his motion for recusal and request for evidentiary hearing without assigning any error to the district court's holdings. He does not argue, much less demonstrate, that the district court abuses its discretion in denying either motion. Thus, this Court should similarly affirm these rulings.

For all these reasons, those in the district court's decision, and based on the record, the district court's dismissal and remand holdings were all correct and based on settled circuit law. Charter therefore respectfully asks this Court to affirm the district court's rulings and bring this litigation to conclusion.

# **ARGUMENT**

## I. **Applicable Standards of Review.**

### A. **Standard of Review for a Motion to Dismiss.**

This Court reviews a district court's grant of a motion to dismiss de novo, "accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the plaintiffs." *Muto v. CBS Corp.*, 668 F.3d 53, 56 (2d Cir. 2012). The Court "may affirm the district court's decision on any ground appearing in the record." *Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 49 (2d Cir. 2010).

### B. **Standard of Review for a Motion to Remand.**

This Court reviews a district court's denial of a motion to remand de novo. *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 704 (2d Cir. 2019). On a motion to remand, the party seeking removal bears the burden of establishing to "a reasonable probability" that removal is proper. *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006); *see also Anwar v. Fairfield Greenwich Ltd.*, 676 F. Supp. 2d 285, 292 (S.D.N.Y. 2009). But a removing party is only required to plead a "short and plain statement of the grounds for removal, as courts apply the same pleading standard in Rule 8(a) of the Fed. R. Civ. P. to Notices of Removal." *Agyin v. Razmzan*, 986 F.3d 168, 180–81 (2d Cir. 2021).

### C. Standard of Review for Other Miscellaneous Motions.

Appeals of motions for reconsideration, motions for recusal, and motions for an evidentiary hearing are subject to an "abuse of discretion" standard of review. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 435 (2d Cir. 2011) (reconsideration); *In re Aguinda*, 241 F.3d 194, 200 (2d Cir. 2001) (recusal); *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 467 (2d Cir. 2018) (evidentiary hearing). A district court abuses its discretion only if it applies legal standards incorrectly or relies on clearly erroneous findings of fact. *See Aurelius Cap. Partners, LP v. Republic of Argentina*, 584 F.3d 120, 129 (2d Cir. 2009).

## II. The Court Should Summarily Dismiss This Appeal Given Uzoigwe's Disregard of Procedural Requirements.

As a threshold matter, the Court should disregard Uzoigwe's Brief and dismiss his appeal given his non-compliance with numerous procedural requirements. Specifically, the Court supplied Uzoigwe with instructions as to what his Brief must include. (App. D.E. 5.) Uzoigwe ignored these instructions, as he not only failed to file a proper appendix pursuant to Rule 30 and Local Rule 30.1, he also flouted the requirements of Rule 28 and Local Rule 28.1.

### A. Uzoigwe Did Not Prepare and File a Compliant Appendix.

Rule 30(a)(1) of the Federal Rules of Appellate Procedure requires an appellant to:

21

prepare and file an appendix to the briefs containing: (A) the relevant docket entries in the proceeding below; (B) the relevant portions of the pleadings, charge, findings, or opinion; (C) the judgment, order, or decision in question; and (D) other parts of the record to which the parties wish to direct the court's attention.

Fed. R. App. P. 30(a)(1).[8]   Uzoigwe did not comply with any of these requirements.

Uzoigwe's "Appendix" in this case consists only of a printout of the district court's PACER docket and an unverified transcript of an audio recording he attached to his Complaint by thumb drive.  (*See generally*, App. D.E. 32.1.)  It does not include "the relevant portions of the pleadings, charge, findings, or opinion," "the judgment, order, or decision in question," or "other parts of the record to which [he] wish[es] to direct the court's attention."  *See* Fed. R. App. P. 30(a).  And, although Uzoigwe is *pro se*, he never applied to proceed *in forma pauperis*.  Therefore, he cannot rely on the district court's original record pursuant to Local Rule 30.1. Further compounding his failure, Uzoigwe does not consistently cite to the original record in his Brief, rendering it impossible to decipher his arguments, much less correlate them with the proceedings in the lower court.  (*E.g.,* App. D.E. 31.1 at 11-16, 30, 46–47, 50, 54–56, 59–60.)

---

[8] While Local Rule 30.1(e) exempts a party from filing an appendix in a subset of cases including "proceedings conducted in forma pauperis, (B) social security cases, and (C) immigration cases" (L.R. 30.1(e)), Uzoigwe does not fall within any of those exemptions.  L.R. 30.1(e).

22

## B. Uzoigwe Flouted the Requirements of Rule 28 and Local Rule 28.1 By Omitting Key Sections of His Brief.

Federal Rule of Appellate Procedure 28 sets forth the required sections in any appellant brief, including a jurisdictional statement, a statement of the issues, a concise statement of the case, and a summary of the argument. Fed. R. App. P. 28. Local Rule 28.1 elaborates on these requirements and provides that "[a] brief must be concise, logically arranged with proper headings and free of irrelevant matter." L.R. 28.1(a). Importantly, "[t]he court may disregard a brief that does not comply with this rule." *Id.* An appellant's *pro se* status does not grant him a free pass to ignore these procedural rules, as this Court has confirmed that a *pro se* appellant's compliance with Rule 28 is "mandatory," and a failure to include the required sections of an appellant brief subjects the entire appeal to dismissal. *Sioson v. Knights of Columbus*, 303 F.3d 458, 459 (2d Cir. 2002) (dismissing brief that omitted statement of facts, summary of argument, and only included argument); *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999) (similar and granting attorney's fees to appellee); *O'Neal v. Spota*, 744 F. App'x 35, 36–37 (2d Cir. 2018) (Summary Order) (dismissing *pro se* appeal for violations of procedural rules); *see also* How to Appeal as a Pro Se Party, U.S. Court of Appeals for the Second Circuit, https://ww3.ca2.uscourts.gov/clerk/case_filing/appealing _a_case/pdf/How%20to%20Appeal%20as%20a%20Pro%20Se%20Party.pdf (last

23

visited October 28, 2024) ("Every person who files a case in this Court must follow the Federal Rules of Appellate Procedure."); App. D.E. 5.1 (confirming Uzoigwe received briefing instructions).

Here, Uzoigwe disregarded Rule 28 and its Local Rule counterpart, as his Brief does not contain: (1) a jurisdictional statement; (2) a statement of the issues; (3) a concise statement of the case compliant with Rule 28 and Local Rule 28.1;[9] or (4) a summary of argument. *See* Fed. R. App. P. 28(a); Local Rule 28.1. Rather, it is nothing more than scattered legal arguments and facts not logically arranged in any fashion. (*See generally*, App. D.E. 31.1.) The disjointed nature of Uzoigwe's Brief renders it nearly impossible to determine what he is actually appealing in this case, and his failure to include a statement of the issues further compounds this problem and prejudices Charter in its ability to identify and address the purported assignments of error.[10]

Given that Uzoigwe flouted the procedural requirements of Rule 28, Local Rule 28.1, Rule 30(a)(1) and Local Rule 30.1, the Court should dismiss his appeal at the outset. *Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 48 (2d Cir. 2012) (dismissing appeal that failed to include required sections and offered

---

[9] Although Uzoigwe includes a statement of facts and procedural history, it is convoluted (as opposed to concise). (App. D.E. 31.1 at 11–16.)

[10] Uzoigwe's failure to include several mandatory sections also skews the word count of his Brief, as he would have had far less room for argument if he had included the mandatory sections set forth in the rules.

scattered legal arguments); *Sioson*, 303 F.3d at 460 (dismissing appeal due to numerous violations of procedural rules).

### III. **This Court Should Affirm the District Court's Dismissal of Uzoigwe's Breach of Contract Claim for Failure to State a Claim for Relief.**

The district court's dismissal of Uzoigwe's first claim for relief—breach of contract—was correct as a matter of law. (CSA-148–153.) Uzoigwe premises his breach of contract claim on his arguments that the Letter was an employment contract with Charter promising him "permanent" or "indefinite" employment, that the agreement somehow incorporated the alleged verbal assurance of a "six-step process" that would precede any termination for cause, and that Charter breached that purported agreement by terminating him without sufficient cause.[11] (App. D.E. 31.1 at 49–57.) The district court properly held that to survive Charter's Motion to Dismiss, Uzoigwe must have alleged facts to show: "(1) the existence of an agreement, (2) adequate performance of the contract by plaintiff, (3) breach of the contract by defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004).

---

[11] Uzoigwe dedicates much of his Brief to quarreling with the basis for his termination and whether it constituted justifiable cause. (App. D.E. 31.1 at 46–47, 50–51, 56.) But as the district court properly held, whether Charter's termination was warranted was not at issue on the Motion to Dismiss. (CSA-148–153.)

### A.      Uzoigwe Did Not Adequately Plead that a Contract Existed.

The district court assumed, *arguendo*, the existence of a contract and dismissed Uzoigwe's claim on alternative grounds.   (*See* CSA-100, 151.) However, as Charter argued at the district court, Uzoigwe's allegations fail to establish the existence of an employment contract in the first instance.  (Dist. Ct. D.E. 25 at 13–14.)   To constitute a valid employment contract, the alleged agreement must contain all "essential elements" of a contract, including "the identity of the parties, the terms of employment, which include the commencement date, the duration of the contract, and the salary." *Merschrod v. Cornell Univ.*, 527 N.Y.S.2d 109, 111–12 (N.Y. App. Div. 1998).

Here, the Letter does not set forth *any* key terms and conditions of Uzoigwe's employment, including his rate of pay, the duration of employment, or other terms and conditions thereof.  (*See* CSA-38.)  *E.g., Hodge v. Abaco, LLC*, 825 F. App'x 46, 47 (2d Cir. 2020) (Summary Order) (affirming dismissal of breach of employment contract claim due to lack of durational language, even where offer letter mentioned anticipated five-year employment term).  Rather, the Letter only states Uzoigwe's shift upon his return to work and confirms he would not be terminated at the conclusion of the strike.  (*Id*.)  Thus, Uzoigwe's claim for breach of his employment contract fails at the outset.

26

**B.** **The District Court Correctly Held That Uzoigwe Was an At-Will Employee, and Charter Therefore Did Not Breach any Employment Contract When Terminating His Employment.**

Notwithstanding, the district court correctly applied New York law in holding the terms of any employment contract (assuming one existed) did not overcome New York's strong presumption in favor of at-will employment. *See Baron v. Port Auth. of N.Y. & N.J.*, 271 F.3d 81, 85 (2d Cir. 2001) ("In New York, it has long been settled that an employment relationship is presumed to be a hiring at will, terminable at any time by either party."). A plaintiff faces a "difficult pleading burden" when disputing the at-will presumption, *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 231 (2d Cir. 2014), because, under New York law, employment is at will unless an employment contract (1) "explicitly" sets forth the duration of the employment or (2) places "an express limitation on the right to terminate the employment." *Wright v. Cayan*, 817 F.2d 999, 1002–03 (2d Cir. 1987).

In the absence of such an express duration or explicit limitation, an employer has an unfettered right to discharge an employee with or without cause, even if an employment contract is otherwise in place. *See, e.g., Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 300, 305 (1983); *Baron*, 271 F.3d at 85–86; *Stamelman v. Fleishman-Hillard, Inc.*, No. 02-civ-8318-SAS, 2003 WL 21782645, at *3 (S.D.N.Y. July 31, 2003) (dismissing breach of contract claim where offer letter stated start date, job title, location, and compensation but not fixed term of

27

employment or language limiting right to terminate); *Andrew v. J.P. Morgan Chase & Co.*, No. 18-cv-4421-DLC, 2018 WL 4926440, at \*2–4 (S.D.N.Y. Oct. 9, 2018) (dismissing breach of contract claim where employee relied on offer letter listing start date, salary, and benefits, but not end date). Such was the case here, as Uzoigwe's Letter contained none of those terms. Therefore, Uzoigwe was an at-will employee (even assuming *arguendo* he had an employment contract with Charter) subject to discharge with or without cause.

1.   <u>The District Court Correctly Held the Letter Does Not Alter the Presumption of At-Will Employment.</u>

First, the district court found that the Letter was not a contract that altered his at-will employment because it neither provided an employment duration nor addressed Charter's right to terminate, much less limited that right. (CSA-151– 153.) As the district court noted, the Letter does not promise a definite term of employment of any duration. (CSA-38, CSA-151–153.) It only indicates that Uzoigwe was not a replacement employee during the strike and that his employment was "permanent" in the sense that he would not be displaced by striking returning workers. (CSA-101.) (citing *Belknap, Inc. v. Hale*, 463 U.S. 491, 493, 500 (1983) (explaining employers routinely use term "permanent" in context of strikes to differentiate between temporary workers and workers whose employment will survive the strike).) Even Uzoigwe continues to admit there was no employment duration: Uzoigwe's own Brief states the "permanent"

28

employment referenced in the Letter was of "indefinite" duration. (App. D.E. 31.1 at 14; *see also* Dist. Ct. D.E. 39 at 6 (Uzoigwe arguing Letter's duration was "indefinite"); CSA-14 n.4 (Uzoigwe defining employment term as "indefinite" in Complaint).)

New York courts universally hold that a promise of "permanent" or indefinite employment does not alter an employee's at will status. *See Wright*, 817 F. 2d at 1003 (letter promising "permanent employment" failed to rebut presumption of at-will employment); *Kotick v. Desai*, 507 N.Y.S.2d 217, 218 (N.Y. App. Div. 1986) ("Termination of such 'permanent' or at will employment does not give rise to a cause of action for breach of contract."); *Rooney v. Tyson*, 956 F. Supp. 213, 216 (N.D.N.Y. 1997) (reference to permanent employment does not create employment contract); *see also Arentz v. Morse Dry Dock & Repair Co.*, 249 N.Y. 439, 443–44, 164 N.E. 342, 344 (1928) ("permanent employment" is not a definite duration). Accordingly, because Uzoigwe plead that the Letter promised "indefinite" employment with Charter, the Court must affirm the dismissal of Uzoigwe's breach of contract claim.

Notwithstanding, as he did in the district court, Uzoigwe attempts to evade his own admission by misapplying the holding of *Rooney v. Tyson*, 91 N.Y.2d 685, 692 (1998), but the district court's rejection of Uzoigwe's arguments regarding this case was correct. (CSA-99–103, CSA-151–153; App. D.E. 31.1 at 49–50; Dist. Ct.

D.E. 39 at 14–15.) In *Rooney*, the New York Court of Appeals analyzed what type of language could imply a definite employment duration (thereby overcoming the at-will presumption) and what type could imply an indefinite duration (thereby falling within the at-will presumption). 91 N.Y.2d at 689–92. The *Rooney* Court confirmed that an employment contract containing "temporally amorphous terms such as 'permanent'" is of an "indefinite" duration and cannot alter the default at-will employment status. *Id.* at 691. On the other hand, a "definite" employment duration is one where "the boundaries of beginning and end of the employment period [are] sufficiently ascertainable" by the employment contract—such as "for as long as the boxer fights professionally." *Id.* at 692. Thus, *Rooney* unambiguously supports a finding of at-will employment here, as the Letter states only that Uzoigwe's employment would be "permanent" in the sense of continuing after the Union strike and does not set forth any ascertainable boundaries dictating when his employment would end after that date. (CSA-38.) Although Uzoigwe concocts imaginary hypothetical scenarios to try to manufacture an ascertainable end-point—such as the illusory involvement of a new union or the possibility that Charter ceases operations in New York (App. D.E. 31.1 at 50)—those events are not inevitable or even likely to occur, and are nowhere to be found in the Letter. (CSA-38.)

30

Additionally, the Letter does not contain any express limitation on Charter's ability to fire Uzoigwe, nor does it even address termination. *Compare* (CSA-38) *with Daikin Am. Inc.*, 756 F.3d at 231 (stating, where employment indefinite, plaintiff must demonstrate "express limitation" on right to terminate to overcome at-will employment); *Baron*, 271 F.3d at 85 (requiring express limitation "curtailing an employer's right to terminate at will"). Thus, the Letter does not alter Uzoigwe's at-will status, as the district court properly held. (CSA-151.)

> **2.** **The District Court Correctly Found That Uzoigwe Does Not Allege Any Other Express Policy Limiting Charter's Ability to Terminate Uzoigwe on Which Either Party Relied.**

In addition to the Letter, Uzoigwe purports that Ms. Aziz's verbal assurance of a "six-step process" prior to termination and Charter's Corrective Action Report (CAR) form expressly limited Charter's right to terminate him. (*See* App. D.E. 31.1 at 51–54.) But, as the Dismissal Order correctly held, this is premised on a misstatement of the law and misinterpretation of the documents. (CSA-151–153.) To base a breach of contract claim on a verbal assurance or policy extraneous to an employment contract, a plaintiff must plausibly plead that: (1) an express written policy limited the employer's right to discharge, (2) the employer made the employee aware of that express policy, and (3) the employee detrimentally relied on the policy in accepting or continuing his employment. *Baron*, 271 F.3d at 85. As the district court found, Uzoigwe fell far short of meeting these requirements.

31

(CSA-151–153.)

       *i.     No Written Policy Incorporates a Six-Step Pre-Termination Procedure.*

    After reviewing Uzoigwe's allegations and the numerous exhibits to his briefing on Charter's Motion to Dismiss, the district court held that there is not a single document that incorporates a six-step pre-termination procedure or that otherwise places any limitation on Charter's right to terminate Uzoigwe's employment. (*Id.*; *see* App. D.E. 31.1 at 51–55.) Instead, the district court confirmed that the various documents Uzoigwe filed with the district court disprove his theory. (CSA-151–153.)

    In his Brief, Uzoigwe maintains that the CAR "is the policy" that expressly limits Charter's ability to terminate him and incorporates a six-step process pre-termination procedure. (App. D.E. 31.1 at 52–53.) However, the CAR does nothing of the sort. (CSA-152–153.) Rather, the CAR is a template disciplinary form (not a policy) that lists at most four (not six) levels of disciplinary action from which Charter can choose to issue to an employee. (CSA-139–142.) Nowhere does the document state that Charter must move through each level of discipline sequentially before termination or that Charter cannot proceed directly to termination. *Id.* Therefore, despite Uzoigwe's contention otherwise, the CAR is not an express policy incorporating a "six-step process" preceding termination.

    Although he has abandoned these arguments on appeal (implicitly

acknowledging they are fatal to his claim), Uzoigwe argued in the district court that other documents he filed in support of his Opposition to the Motion to Dismiss prove Charter could only terminate him for cause, including Charter's employee handbook and a 2019 letter. (*See, e.g.,* Dist. Ct. D.E. 39 at 10–14.) But, as the district court held, these documents confirm his at-will employment. (CSA-151–153.) For instance, Charter's handbook provides:

> An employment-at-will relationship exists between Charter and its employees, meaning both parties have the right to end the employment at any time, for any reason, or without cause or notice.

(CSA-109–110); *see Lobosco v. N.Y. Tel. Co./NYNEX*, 96 N.Y.2d 312, 316-17 (2001) (handbook language making clear employment at will "preserves [employer's] . . . at will employment relationship with" employees). Additionally, the 2019 letter expressly states, "the Company may terminate your employment for any reason not prohibited by law or the collective bargaining agreement between the Company and the union, with or without prior notice." (CSA-106.) Although Uzoigwe attempts to evade this confirmation of his at-will employment in his Brief (at 51–52) by pointing to the 2019 letter's disclaimer that it does not supersede employment agreements, as discussed above in Section II.A no employment agreement existed in the first instance, much less one that limited Charter's ability to fire Uzoigwe. Thus, Uzoigwe has not and cannot identify an express written policy incorporating any mandatory six-step process.

33

Given the above, Uzoigwe was an at-will employee and cannot assert a breach of contract claim.

> ii.    *Uzoigwe Did Not Allege He Detrimentally Relied on Any Policy.*

Notwithstanding the lack of any express written policy incorporating the purported "six-step process," Uzoigwe also fails to sufficiently allege detrimental reliance on such a policy, the third element required to overcome at-will employment based on an oral assurance.  (*See* CSA-8–11.)  To demonstrate the requisite reliance, a plaintiff must plead that: (a) the employer orally assured him it could only fire him for just cause; (b) he signed an employment application that incorporated the oral assurance; (c) he rejected other offers of employment in reliance on the assurance; and (d) the employer instructed him to proceed in strict compliance with the oral assurance.[12]  *See Weiner v. McGraw-Hill Inc.*, 57 N.Y.2d 458, 465-66 (1982); *Stamelman*, 2003 WL 21782645, at *3.

Despite alleging in his Complaint that he chose to cross the picket line and returned to work before receiving the Letter and Ms. Aziz's purported verbal assurance, Uzoigwe flip-flopped in his district court briefing, arguing that Ms. Aziz's supposed promise of a pre-termination procedure prompted him to sign the

---

[12] The district court did not reach the reliance element since it concluded its analysis at the absence of a written policy.  (*See generally* CSA-143–154.) However, Charter raised this argument in the district court.  (Dist. Ct. D.E. 52 at 19–20.)

Letter and return to work. (*Compare* CSA-9–10 *with* Dist. Ct. D.E. 39 at 5–6.) Notwithstanding these contradictory allegations, Uzoigwe could not detrimentally rely on that alleged promise because he: (1) did not sign an employment application that incorporated the oral assurance of a pre-termination procedure; (2) did not reject other offers of employment in reliance on that purported assurance; and (3) was not instructed to proceed in strict compliance with any such assurance. *See Weiner*, 57 N.Y.2d at 465–66; *Stamelman*, 2003 WL 21782645, at *3; *Daikin Am., Inc.*, 756 F.3d at 231 (general allegations of termination policy insufficient to overcome "difficult pleading burden"). Therefore, Uzoigwe failed to allege detrimental reliance, which requires dismissal of his breach of contract claim. (CSA-9–10.)

> ### iii. Ms. Aziz's Alleged Verbal Assurance Is Insufficient to Overcome At-Will Employment.

Given that neither the Letter nor any other express written policy altered Uzoigwe's at-will employment, Uzoigwe is left only with the alleged verbal promise by Ms. Aziz of a "six-step process" preceding termination. The district court correctly held that this verbal assurance cannot modify Uzoigwe's at-will employment or otherwise form the basis of a breach of contract. *Daikin Am. Inc.*, 756 F.3d at 231 (rejecting employee's allegations that reassurances by supervisors converted at-will employment); *Paolucci v. Adult Retardates Ctr., Inc.*, 582 N.Y.S.2d 452, 453 (N.Y. App. Div. 1992) ("Neither oral assurances made to the

plaintiff nor a general provision in an employee manual were sufficient to limit the defendants' right to discharge the plaintiff at any time, for any reason."); *Diskin v. Consolidated Edison Co. of N.Y., Inc.*, 522 N.Y.S.2d 888, 890 (N.Y. App. Div. 1987) (oral assurances of termination for cause insufficient to limit right to terminate); *Hill v. Westchester Aeronautical Corp.*, 492 N.Y.S.2d 789, 791 (N.Y. App. Div. 1985) (same); *Junk v. Aon Corp.*, No. 07 Civ 4640, 2007 WL 4292034, at *3 (S.D.N.Y. Dec. 3, 2007) ("oral assurances are insufficient to alter an employee's at-will status"); *Wanamaker v. Columbian Rope Co.*, 907 F. Supp. 522, 539 (N.D.N.Y. 1995) (oral assurances insufficient to overcome presumption of at-will employment); *Cucchi v. N.Y.C. Off-Track Betting Corp.*, 818 F. Supp. 647, 651–52 (S.D.N.Y. 1993) (collecting cases); *see also, e.g., Stamelman*, 2003 WL 21782645, at *3–4 (general assurances do not transform employment at will to employment terminable for cause)  Therefore, Uzoigwe's vague allegations of oral assurances about a six-step pre-termination process fall far short of creating an express limitation upon Charter's right to terminate his employment.

### C.  The District Court Properly Refused to Allow the Unemployment Insurance Proceedings to Preclude Charter's Defenses.

The district court correctly rejected Uzoigwe's argument that an Unemployment Insurance Appeals Board ("Unemployment Board") determination precluded Charter from asserting defenses to his breach of contract claim.  (App. D.E. 31.1 at 42–49.)  Uzoigwe cannot and does not identify any error in the court's

reasoning on this point, and his argument is meritless.

First, the district court properly held that Uzoigwe's arguments fail based on the express language of New York Labor Law that "[n]o finding of fact or law contained in a decision rendered pursuant to this article by a referee, the appeal board or a court shall preclude the litigation of any issue of fact or law in any subsequent action or proceeding . . . ." NYLL § 623(2);[13] *see also Arroyo v. WestLB Admin., Inc.*, 54 F. Supp. 2d 224, 230 (S.D.N.Y. 1999) (unreviewed unemployment decisions lack preclusive effect). Uzoigwe cannot overcome this clear directive from the New York legislature, which summarily disposes of his argument that the district court should have afforded preclusive effect to the Unemployment Board's decision on employment benefits.[14]

Second, aside from the statutory directive, the district court correctly found that neither collateral estoppel nor res judicata apply here because: (1) there was no final *judgment* on the merits; (2) breach of contract and negligence were not

---

[13] This statute, which is within the article titled "Unemployment Insurance Law," specifically applies to unemployment decisions. NYLL § 623(2).

[14] Consistent with the statute, New York courts repeatedly hold that unemployment decisions are entitled to little or no weight in a subsequent lawsuit. *See N.L.R.B. v. Kathleen's Bakeshop, LLC*, No. 02-4673, 2003 WL 22221353, at *1 (2d Cir. Sept. 26, 2003) (Summary Order) (determination by unemployment appeals board irrelevant to wrongful termination claim); *see also Arroyo*, 54 F. Supp. 2d at 230 (unemployment decision "entitled to little or no weight"); *Thomas v. City of N.Y.*, 563 N.Y.S.2d 832, 834 (N.Y. App. Div. 1991) (findings in unemployment benefits hearing irrelevant to subsequent lawsuit).

37

actually litigated in the unemployment proceedings; (3) the state agency is not a court of competent jurisdiction for res judicata purposes; and (4) the issue before the Unemployment Board was whether Uzoigwe was entitled to unemployment benefits, *not* whether Charter breached a contract or was negligent. *See Esquire Trade & Fin., Inc. v. CBQ, Inc.*, 562 F.3d 516, 520 (2d Cir. 2009) (reciting elements of res judicata as "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action."); *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986) (reciting elements of collateral estoppel as "(1) the issues in both proceedings must be identical, (2) the issue in the prior proceedings must have been actually litigated and actually decided, (3) there must have been full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits."). Uzoigwe's arguments cannot overcome this controlling law.[15]

---

[15] As with the entirety of his Brief, the cases Uzoigwe cites are inapplicable. *See, e.g., U.S. v. E. River Housing Corp.*, 90 F. Supp. 3d 118 (S.D.N.Y. 2015) (Fair Housing Act claim, not unemployment); *Buechel v. Bain*, 97 N.Y.2d 295 (2001) (trust and estate issues); *Sipos v. Fastrack Healthcare Sys., Inc.*, 820 N.Y.S.2d 846 (N.Y. Sup. Ct. 2006) (nonbinding holding concerning offensive collateral estoppel as opposed to defensive); *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494 (1984) (predating amendment of NYLL codifying that unemployment proceedings lack preclusive effect); *In re LTI, Inc.*, 869 N.Y.S.2d 262, 262–63 (N.Y. App. Div. 2008) (appealing unemployment decision); *In re Guynup*, 968 N.Y.S.2d 608, 608–09 (N.Y. App. Div. 2013) (same); *People v. Bailey*, 283 N.Y.S.2d 660 (N.Y. Sup. Ct. 1967 (similar); *In re Agran*, 863 N.Y.S.2d 295, 295 (N.Y. App. Div. 2008) (same).

In short, the district court's Order correctly held that: Uzoigwe's unemployment award has no effect on the instant proceedings.

## IV. The District Court Correctly Held Uzoigwe Cannot State a Claim for Negligent Termination.

In his Complaint, Uzoigwe alleges that Charter negligently terminated his employment by terminating him in violation of the alleged contract. (CSA-16–17.) The district court correctly dismissed this claim, as it held that Uzoigwe's claim was time barred by the applicable three-year statute of limitations as prescribed by CPLR § 214. Uzoigwe disputes the district court's Order, claiming a split of authority in lower New York courts' interpretation of the COVID-19 Executive Orders ("EO"). (CSA-147–148; App. D.E. 31.1 at 56–59.) But this Court need not even reach that issue, as a claim for negligent termination does not exist under New York law in the first instance.

### A. Negligent Discharge Is Not a Claim Under New York Law.

Although the lower court did not consider Charter's argument (because it dismissed the claim on timeliness grounds), Charter pointed out in its district court briefing that New York law does not recognize a claim for negligent discharge. (*See* Dist. Ct. D.E. 52 at 9–10; 41 at 5-6 n.5.) *See Lobosco*, 96 NY.2d at 316 ("New York does not recognize the tort of wrongful discharge."); *Murphy*, 58 N.Y.2d at 300–01 (declining to recognize tort of negligent discharge claim as it would abolish at-will employment doctrine); *Williams v. Buffalo Pub. Schs.*, 758 F. App'x

39

59, 64 (2d Cir. 2018) (Summary Order) (affirming dismissal of negligent termination claim because "New York courts do not recognize such a claim"). Therefore, regardless of its untimeliness, Uzoigwe cannot maintain a claim that Charter negligently terminated him. This Court should therefore affirm the district court's holding.

## B. Even If a Negligent Discharge Claim Existed, Uzoigwe's Claim is Barred by the Statute of Limitations.

Uzoigwe does not dispute that he filed his Complaint more than three years after his termination (*i.e.*, the date his negligence claim accrued).[16] Instead, he argues that his negligent discharge claim was timely because EO 202.8 and its subsequent extensions tolled the statute of limitations, giving him 228 additional days to bring this claim. (App. D.E. 31.1 at 56–61.) Should the Court consider the EOs' application to this case despite the fact that Uzoigwe cannot maintain a negligent discharge claim, it should affirm the district court's correct holding that EO 202.8 and its continuances suspended the statute of limitations for claims that would otherwise expire during the 228-day suspension period—it did not tack on an additional 228 days to all pending limitations periods as Uzoigwe contends.

In the aftermath of the expiration of EO 202.8, New York courts have been split as to how to interpret the EOs' impact—*i.e.*, did they suspend the limitations

---

[16] Uzoigwe was terminated on January 18, 2020 and did not file this lawsuit until August 23, 2023.

periods for those set to expire during the 228-day period or did they toll all statutes of limitations by 228 days. The district court followed the former line of cases, reasoning that EO 202.8 and its continuances suspended—but did not toll—the statutes of limitations during the COVID-19 pandemic. (CSA-147–148.) The district court's holding is correct, as the line of cases it follows reflect the authority granted to the Governor in the first instance. *See Loeb v. Cnty. Of Suffolk*, No. 22-cv-6410, 2023 WL 4163117, at *3 (E.D.N.Y. June 23, 2023) (EO 202.8 suspended but did not toll statutes of limitations as Governor's authority limited to temporary suspensions); *Weingot v. Unison Agreement Corp.*, No. 21-cv-4542, 2023 WL 5152478, at *4 (E.D.N.Y. July 20, 2023) (similar), *report and recommendation adopted as modified on other grounds*, 2024 WL 1191106 (E.D.N.Y. Mar. 20, 2024).

That is, EL § 29-a, which is titled "*Suspension* of other laws," allows the governor to *suspend* statutes of limitations as necessary to cope with a statewide disaster. The language of the EL makes clear that the Governor's authority is limited to suspending statutes of limitations, not indefinite extensions. Specifically:

- Section 29(a)(1) allows for the *suspension* of statutes during a state disaster, but only permitting such suspension to the extent "necessary to cope with the disaster." N.Y. EL § 29-a(1) (only using the word

41

"suspension," not toll, and doing so eleven times).

- Section 29-a(2)(d) provides, "the [Governor's] order may provide for such *suspension* only under particular circumstances and may provide for the alteration or modification of the requirements of such state, local law, ordinance, order, rule or regulation *suspended*." *Id.* (emphasis added).

- Section 29-a(2)(e) states the "*suspension* order shall provide for the *minimum* deviation from the requirements of the statute . . . deemed necessary"—*i.e.*, the Governor does not have the authority tack on months (or years) to all limitations periods. *Id.* (emphasis added).

Additionally, the text of the EOs themselves support the district court's holding. In line with EL § 29-a, Governor Cuomo titled EO 202.8 "Continuing *Temporary Suspension* and Modification of Laws Relating to the Disaster Emergency." (EO 202.8 (emphasis added).) Governor Cuomo also stated that he promulgated Executive Order 202.8 only to the extent "necessary to cope with the disaster emergency." *Id.* Although he used the word "toll" in the body of EO 202.8, the seven subsequent EOs extending EO 202.8 omitted that language, stating they continued the "suspensions" of EO 202.8. (EO Nos. 202.14, 202.28, 202.38, 202.48, 202.55, 202.55.1, and 202.60.) These subsequent orders also expressly reiterate that the Governor promulgates the orders only to the extent "necessary to cope with the disaster emergency." *See id.*

42

Thus, as shown, Uzoigwe's interpretation that the EOs indiscriminately added 228 days to all statutes of limitations that were running during the pandemic disregards the EL's scope and permissive authority, fails to consider the EOs' purpose and language, and is a far cry from the "minimum deviation" necessary to cope with the disaster. Further, Uzoigwe's interpretation would grant him and many other plaintiffs an unwarranted windfall, as Uzoigwe admits his delay in filing suit was unrelated to the pandemic, but rather due to the fact he simply "forgot all about the matter." *See Loeb*, 2023 WL 4163117, at *3. As such, the Court should affirm the district court's holding that EO 202.8 suspended—but did not toll—the statute of limitations by 228 days, and as a result, Uzoigwe's negligence claim also fails as untimely.[17]

## V. **This Court Should Affirm the District Court's Denial of Uzoigwe's Repeated Requests to Remand the Case.**

### A. **Several Procedural Deficiencies Bar Uzoigwe's Remand Arguments.**

In addition to the dismissal of his claims, Uzoigwe argues that the district court erred with respect to the orders denying his request to remand the case to the New York Supreme Court, including the November 22, 2023 Order Denying Uzoigwe's Motion to Remand, the December 4, 2023 Order Denying Uzoigwe's

---

[17] Plaintiff's argument relies on non-binding rulings. *See* (App. D.E. 31.1 (citing *Brash v. Richards*, 149 N.Y.S.3d 560 (N.Y. App. Div. 2021); *Baker v. 40 Wall St. Holdings Corp.*, 208 N.Y.S.3d 680 (N.Y. App. Div. 2024); *Cruz v. Guaba*, 210 N.Y.S.3d 425, 426 (N.Y. App. Div. 2024).

Motion for Reconsideration, and the December 8, 2023 Order Denying Uzoigwe's Second Motion for Reconsideration (collectively, the "Remand Orders"). (App. D.E. 31.1 at 19–41.) At the threshold, Uzoigwe's arguments surrounding these Remand Orders fail as a matter of law due to several procedural deficiencies.

First, this Court lacks jurisdiction to review the Remand Orders. Rule 3 of the Federal Rules of Appellate Procedure provides that a notice of appeal must "designate the judgment—or appealable order—from which the appeal is taken." Fed. R. App. P. 3(c)(1)(B). Uzoigwe's Notice of Appeal identifies only the non-final "order and judgment entered on April 24, 2024." (CSA-3.) However, there was no judgment dated April 24, 2024, and in fact, the final judgment in the case was not entered until May 31, 2024—two weeks after Uzoigwe filed his Notice of Appeal. (CSA-155.) Given that Uzoigwe did not identify any of the district court's multiple remand orders in his appeal and could not have appealed any judgment into which prior orders would merge,[18] the Court's review must be limited to the April 24, 2024 Order granting Charter's Motion to Dismiss, and it should disregard his arguments concerning the district court's various Remand Orders. (CSA-3.) *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256 (2d Cir. 1995) (when notice of appeal specifies one district court order, appellate review

---

[18] If the Notice of Appeal had properly identified the May 31, 2024 judgment, all prior orders would have merged into it. *See* Fed. R. App. P. 3(c)(4).

limited to that order); *U.S. v. Gilmartin*, 803 F. App'x 538, 539 (2d Cir. 2020) (Summary Order) (same); *LCS Group, LLC v. Shire LLC*, No. 19-2404, 2019 WL 7824613, at \*1 (2d Cir. Nov. 12, 2019) (same); *Lessambo v. PricewaterhouseCoopers, L.P.*, 451 F. App'x 57, 58 (2d Cir. 2011) (Summary Order) (failure to designate orders appealed strips appellate court of jurisdiction).

Second, Uzoigwe improperly raises new arguments on appeal which cannot be considered. *Anthony v. City of New York*, 339 F.3d 129, 136 n.3 (2d Cir. 2003). Uzoigwe asserts for the first time in his Brief that: (1) Rule 11 of the Federal Rules of Civil Procedure and the Federal E-Sign Act rendered service on Charter complete when Charter filed the Acknowledgement Form with its Notice of Removal (App. D.E. 31.1 at 26–29); (2) the district court should have invoked CPLR § 2001 and cured Uzoigwe's failure to perfect service for many reasons not articulated at the lower court, as Uzoigwe only mentioned this argument in passing (App. D.E. 31.1 at 31–35);[19] (3) Charter's Opposition to Uzoigwe's Motion to

---

[19] While Uzoigwe mentions CPLR § 2001 in his Motion for Reconsideration, he dedicates only three sentences to it, as opposed to the five pages of discussion in his Brief. (*Compare* Dist. Ct. D.E. 30 at 11 *with* App. D.E. 31.1 at 31–35.) The vast expansion of this argument, in which Uzoigwe raises numerous points and arguments absent from the district court record, renders these arguments waived. *RCB Equities #£3, LLC v. Martin*, 632 F. App'x 663, 665 (2d Cir. 2015) (Summary Order) ("Both the limited scope of the bench trial and [appellant's] notice of appeal, which lists only the final judgment entered following from that trial, stand in stark contrast to the breadth of arguments [appellant] seeks to raise in his appellate brief.").

Remand violates Rule 11 (App. D.E. 31.1 at 29); and (4) good cause or the interest of justice require remand (App. D.E. 31.1 at 32–34). Uzoigwe waived these arguments by not raising them in the district court, and the Court cannot consider them here. *See Anthony*, 339 F.3d at 136 n.3 (argument not raised before district court waived on appeal).

Thus, at the threshold, this Court should decline to review the Remand Orders given the lack of jurisdiction and improper new arguments.

**B.    The District Court Properly Held, on Several Occasions, That Charter's Removal Was Proper, and Uzoigwe's Additional Arguments Otherwise Do Not Warrant Remand or Reversal.**

Even if the Court were to review the Remand Orders, the district court was indisputably correct in its multiple holdings that Charter properly removed the case to federal court on the basis of diversity jurisdiction, despite being a New York resident. (CSA-86–90; Dec. 4, 2023 Text Order, Dec. 8, 2023 Text Order, Dec. 21, 2023 Text Order.) As the district court held, "a plain reading of the forum defendant rule permitted [Charter's] removal" because, at the time of removal, Charter had not been "properly joined and served." (CSA-89 (punctuation omitted) (quoting *Cheung v. Bristol-Meyers Squibb Co.*, 282 F. Supp. 3d 638, 642 (S.D.N.Y. 2017), *aff'd sub nom. Gibbons v. Bristol-Meyers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019)); *see also* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be

46

removed if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought.") (emphasis added). Uzoigwe does not dispute, nor could he, that the forum-defendant rule does not apply where service is incomplete such that a home-state defendant can remove a case to federal court. *See Gibbons*, 919 F.3d at 705 (home-state defendant authorized to remove on basis of diversity before proper service); *see also Stop & Shop Supermarket Co. LLC v. Goldsmith*, No. 10-cv-3052 (KMK), 2011 WL 1236121, at *6 (S.D.N.Y. Mar. 31, 2011) (denying motion to remand given inapplicability of forum defendant rule where removal before service).

Rather, Uzoigwe contends (without any legal basis) that he served Charter with the Summons and Complaint twice via mail, and therefore, Charter was properly joined as a party. (App. D.E. 31.1 at 22–24, 38–40.) Alternatively, Uzoigwe purports that the district court should have cured any defect in service by rendering it complete. (App. D.E. 31.1 at 31–35.) These meritless arguments cannot avoid the undisputed facts that: (1) service by mail is ***only*** complete under CLPR § 312-a when a civil defendant signs and returns the Acknowledgement Form; (2) Charter did not sign and return the Acknowledgement Form prior to

47

removal;[20] and (3) Uzoigwe never attempted personal service on Charter. (CSA-86–90, CSA-46.) As the district court found, these facts are fatal to Uzoigwe's remand arguments. (CSA-86–90.)[21]

1. The District Court Correctly Rejected Uzoigwe's Argument that Charter Was Not Required to Return the Acknowledgement Form.

In lieu of personal service, CPLR § 312-a allows a plaintiff to attempt service "by mailing to the person or entity to be served, by first class mail, postage prepaid, a copy of the summons and complaint, . . . together with two copies of statement of service by mail and acknowledgement of receipt, . . . with a return envelope, postage prepaid, addressed to sender." CPLR § 312-a(a). Service by this method "is complete on the date the signed acknowledgement of receipt is mailed or delivered to the sender." CPLR § 312-a(b); *see also Weaver v. New York*, 7 F. Supp. 2d 234, 236 (W.D.N.Y. 1998) (service incomplete prior to defendant's return of Acknowledgment Form); *Kostelanetz & Fink, L.L.P. v. Hui*

---

[20] Uzoigwe does not dispute that Charter did not sign or send him the Acknowledgement Form. (App. D.E. 31.1 at 25 (Plaintiff admitting Charter did not sign and return Acknowledgement Form before removal); Dist. Ct. D.E. 10 at 7 (same).

[21] Due to Uzoigwe's failure to comply with Rule 28 and Local Rule 28.1, or otherwise organize his Brief in any logical fashion, his remand arguments are nearly impossible to follow and comprehend. Nonetheless, Charter has made every attempt to understand and digest Uzoigwe's positions, and as shown herein, none have merit.

48

*Qun Zhao*, 694 N.Y.S.2d 285, 288 (N.Y. Civ. Ct. 1999) (service incomplete where defendant did not return Acknowledgment Form).

Notwithstanding this controlling law, Uzoigwe argues—without any authority in support—that service was complete upon his mailing of the Summons, Complaint, and Acknowledgement Form to Charter. (App. D.E. 31.1 at 23.) This argument defies the language of the statute. *See* CPLR 312-A(b) (service complete upon return of signed Acknowledgment Form); *Dominguez v. Stimpson Mfg. Corp.*, 616 N.Y.S.2d 221, 222 (N.Y. App. Div. 1994) ("The mailing of process pursuant to CPLR 312-A does not effect personal service. If the acknowledgment of receipt is not mailed or returned to the sender, the sender is required to effect personal service in another manner.") (cleaned up); *Weaver*, 7 F. Supp. 2d at 236 ("[M]erely mailing a summons and complaint in this manner does not constitute service under New York C.P.L.R. § 312-a.").

Uzoigwe also claims that Charter was under a legal obligation to sign and return the Acknowledgment Form, and that the penalty for its failure to do so is that service is deemed complete.[22] (App. D.E. 31.1 at 30.) Again, however, as the district court properly opined, the law is clear that a defendant is under no obligation to sign and return the acknowledgement of receipt form to a plaintiff.

---

[22] Such a consequence would lead to absurd results, as it would essentially moot the requirement of personal service.

49

*Kostelanetz,* 694 N.Y.S.2d at 287–88. Rather, a defendant may refuse to return the Acknowledgment Form, and if it does, the burden falls on the plaintiff to engage in personal service. (CSA-89–90.) *Buggs v. Ehrnschwener*, 968 F.2d 1544, 1549 (2d Cir. 1992) ("Failure of service under Section 312-a obliged [plaintiff] to resort to other methods of service under Article 3 of N.Y.C.P.L.R., which he failed to do."); *Richard A. Hellander, M.D., P.C. v. Metlife Auto & Home Ins. Co.*, 15 N.Y.S.3d 537, 539–40 (N.Y. App. Div. 2015) ("[A]n acknowledgment of receipt was never signed by defendant and returned to plaintiff. Consequently, plaintiff was required to effect personal service in another manner."). The only repercussion for failing to return the form is codified in the statute itself—the defendant may be responsible for the expenses incurred by the plaintiff to effectuate personal service. CPLR § 312-a(d) ("If you do not complete and return the form to the sender within thirty (30) days, you . . . will be required to pay expenses incurred in serving the summons and complaint . . . in any other manner permitted by law, and the cost of such service as permitted by law will be entered as a judgment against you.").

Thus, it cannot be disputed that Uzoigwe did not perfect service upon Charter when he and Mr. Vagary sent their mailings, as those were insufficient in and of themselves, and that Charter did not have a legal obligation to sign and return the Acknowledgment Form.

2. The District Court Correctly Rejected Uzoigwe's Argument that Charter Effectively Returned a Signed Acknowledgment

50

<u>Form When It Attached the Unsigned Form as an Exhibit to its
Notice of Removal.</u>

Uzoigwe dedicates pages of his Brief to his argument that by attaching the
unsigned Acknowledgement Form as an exhibit to its Notice of Removal, an
electronic signature somehow appended to the Form out of thin air, the act of filing
the Notice of Removal via ECF returned the Form to Uzoigwe, and service was
therefore magically complete upon the ECF submission. (App. D.E. 31.1 at 25–
29.)  This argument is nonsensical as it cannot be disputed that Charter never
signed the Acknowledgement Form, electronically or physically, much less
returned it.

Uzoigwe tries to avoid this fatal flaw in his remand argument by contending
(for the first time) that Rule 11 of the Federal Rules of Civil Procedure—which
requires an attorney to sign all papers and pleadings—somehow rendered the
Acknowledgment Form signed by counsel when Charter attached the unsigned
Form as an exhibit to its Notice of Removal via ECF.[23]  (App. D.E. 31.1 at 24–25,
29.)  This argument fails on its face as Rule 11 neither requires signatures on

---

[23] While Uzoigwe argued this concept at the district court, he never tied it to Rule
11 or the E-Sign Act.  Thus, as indicated in Section V.A, he waived these
arguments on appeal.

51

exhibits attached to the primary pleading, nor does it create a signature where none otherwise exists.[24]  *See* Fed. R. Civ. P. 11.

Second, Uzoigwe purports that the Federal E-Sign Act, 15 U.S.C. § 7001, *et seq.*, also rendered the Acknowledgment Form signed upon filing an unsigned Form as an exhibit to a Notice of Remand.  This Act affords electronic signatures the same legal effect and validity as wet ink signatures in "any transaction in or affecting interstate or foreign commerce."  15. U.S.C. §7001 (a).  But, the Act expressly states that it does not apply to "court orders or notices, or official court documents (including briefs, pleadings, and other writings) required to be executed in connection with court proceedings," necessarily exempting the Acknowledgement Form from its reach.  15 U.S.C. § 7003(b)(1).

Thus, Uzoigwe's convoluted argument that Charter effectively signed and returned the Acknowledgment Form by attaching an unsigned Form as an exhibit to its Notice of Removal falls flat.

### 3.    Uzoigwe's Failure to Complete Service was a Jurisdictional Defect that Could Not Be Corrected.

Uzoigwe argues that, in response to his Motion to Remand, the district court should have invoked CPLR § 2001 to cure his incomplete service by mail and applied that cure retroactively, such that Charter was held to have been properly

---

[24] Uzoigwe also suggests (for the first time) that Charter somehow violated Rule 11 by not returning the Acknowledgment Form despite admitting it received it.  This argument is similarly outlandish.  (App. D.E. 31.1 at 24.)

52

served at the time of removal.  (App. D.E. 31.1 at 31–35.)  This argument fails for numerous reasons.  Initially, federal courts sitting in diversity apply federal procedural law.  Therefore, Uzoigwe's assertion that the federal district court should have invoked a state procedural rule ignores settled law governing applicable procedures.  *See Com/Tech Commc'n Tech., Inc. v. Wireless Data Sys., Inc.*, 163 F.3d 149, 151 (2d Cir. 1998) (dismissing argument that NY CPLR applied to diversity case in federal court).  Notwithstanding, CPLR § 2001 only allows state courts to cure technical defects after they have already obtained jurisdiction, which never occurred here.

> CPLR § 2001 provides:
>
> At any stage of an action, including the filing of a summons with notice, summons and complaint or petition to commence an action, the court may permit a mistake, omission, defect or irregularity . . . to be corrected, upon such terms as may be just, or, if a substantial right of a party is not prejudiced, the mistake, omission, defect or irregularity shall be disregarded, provided that any applicable fees shall be paid.

New York courts have routinely confirmed that this statute permits the correction of "technical" infirmities but not jurisdictional defects, including the failure to perfect service of process.  *Pierce v. Village of Horseheads Police Dep't*, 970 N.Y.S. 2d 95, 98 (N.Y. App. Div. 2013) (failure in service is incurable "substantial" defect); *see also Ruffin v. Lion Corp.*, 15 N.Y.3d 578, 583 (2010) (same); *Dorcinvil v. Annucci*, 131 N.Y.S.3d 724, 726 (N.Y. App. Div. 2020) (CPLR not intended to

allow courts to deem service complete service where plaintiff did not comply with statutory requirements); *Estate of Perlman v. Kelley*, 108 N.Y.S.3d 28, 31 (N.Y. App. Div. 2019) (failure to comply with statutory mailing requirements cannot be cured). In other words, CPLR § 2001 "was not intended to allow courts to create jurisdiction where it otherwise does not exist." *Dorcinvil*, 131 N.Y.S.3d at 726 (quoting *Pierce*, 970 N.Y.S.2d at 98) (declining to apply CPLR § 2001 to cure service failure); *Griffin-Robinson v. N.Y. State Dep't of Corrs. & Cmty. Supervision*, 210 N.Y.S.3d 516, 518 (N.Y. App. Div. 2024) (same). Thus, the failure to perfect service of a summons and complaint "'is a substantial defect' that is not curable under CPLR 2001." *Pierce*, 970 N.Y.S.2d at 98 (quoting *Ruffin*, 15 N.Y.3d at 583.).

Here, Uzoigwe argues that the district court should have invoked the statute to correct his incomplete service of process and render it perfected, despite Charter not having signed or returned the Acknowledgment Form. (App. D.E. at 31–35.) This is precisely the scenario that New York courts conclusively hold is not appropriate for CPLR § 2001's application, as Uzoigwe argues that the district court should have "create[d] jurisdiction where it otherwise did not exist." *See Pierce*, 970 N.Y.S.2d at 98. The inapplicable case law Uzoigwe cites in his Brief does not suggest, much less hold, that Uzoigwe is entitled to such extraordinary

54

relief.[25]   Thus, the Court should reject Uzoigwe's argument based on CPLR §

2001, deem it waived, and affirm the district court's Remand Orders.

    4. <u>The District Court Properly Disregarded Uzoigwe's Remaining Arguments, as They are Red Herrings.</u>

  Uzoigwe asserts a slew of additional, convoluted arguments in an attempt to

convince this Court to reverse the Remand Orders such that his claims may

proceed in state court (where they would still be subject to dismissal for the

substantive reasons stated *supra*, in Sections II through III).  Notwithstanding, each

_____

[25] *See, e.g., Deutsche Bank Nat'l Tr. Co. v. Martinez*, 180 N.Y.S.3d 577, 579 (N.Y. App. Div. 2022) (discussing interest of justice standard in whether to allow extension for plaintiff to serve defendant, where defect was plaintiff did not receive notice that service ineffective); *Citibank, N.A. v. Cont-Scheurer*, 98 N.Y.S.3d 273, 279 (N.Y. App. Div. 2019) (considering CPLR § 2001's application regarding mortgagor's receipt of default notice in foreclosure action, not service of summons of complaint); *Grskovic v. Holmes*, 972 N.Y.S. 2d 650 (N.Y. App. Div. 2013) (applying CPLR § 2001 when mistake made regarding filing (not service) of summons and complaint); *Bumpus v. N.Y.C. Transit Auth.*, 883 N.Y.S.2d 99, 105 (N.Y. App. Div. 2009) (analyzing whether good cause to extend time for plaintiff to serve defendant with summons and complaint existed); *Marcy v. Woodlin*, 237 N.Y.S.2d 402, 403 (N.Y. App. Div. 1963) (analyzing propriety of personal service); *Brinks Global Servs. USA, Inc. v. Bonita Pearl Inc.*, 686 F. Supp. 3d 357, 364 (S.D.N.Y. 2023) (discussing whether plaintiff could recover expenses after defendant did not waive service—not discussing CPLR § 2001); *Kelsey v. Forster & Garbus, LLP*, 353 F. Supp. 3d 223, 228 (W.D.N.Y. 2019) (applying CPLR § 2001 to defect in service of answer after jurisdiction obtained); *Prage v. Kavulich & Assocs., P.C.*, No. 16-cv-1627-CBA, 2016 WL 5900194, at *2 (E.D.N.Y. Oct. 7, 2016) (analyzing impact of failure to file proof of service after service of summons and complaint complete); *Maldonado v. Arcadia Bus. Corp.*, No. 14-cv-4129-DLI-RML, 2015 WL 12791329, at *3 (E.D.N.Y. Aug. 27, 2015) (failure by plaintiff to file proof of service with court a technical defect, not failure to perfect service); *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 65 (S.D.N.Y. 2010) (technical error in text of summons does not render service invalid, not addressing whether court has authority to cure failure to properly serve summons and complaint).

of these arguments fails on independent grounds, and the Court should affirm the district court's Remand Orders.

First, Uzoigwe argues that he somehow perfected service on Charter pursuant to CPLR § 308(3) by contacting a third party (Mr. Vagary) to effectuate service. (App. D.E. 31.1 at 38–40.) However, that statute governs *personal* service on a *natural person*. *See* CPLR § 308 (providing requirements to effect personal service on natural person). Mr. Vagary did nothing beyond what Uzoigwe had previously done—he simply mailed a copy of the Summons, Complaint, and Acknowledgement Form to Charter (a limited liability company) pursuant to CPLR 312-a, and thus, he did not comply with the personal service requirements of CPLR 308. (CSA-81–85.) *See also Jacoby v. N.Y. State Bd. for Prof. Med. Cond.*, 743 N.Y.S.2d 192, 194 (N.Y. App. Div. 2002) (service insufficient under CPLR § 308(3) where attempted by mail rather than personal delivery); *Black v. Vitello*, 841 F. App'x 334, 335 (2d Cir. 2021) (Summary Order) (mailing not acceptable method of service under CPLR § 308(3)); *Broman v. Stern*, 567 N.Y.S.2d 829, 831 (N.Y. App. Div. 1991) ("Mailing a summons and complaint to a person to be served does not constitute valid service under CPLR 308(3).").[26]

---

[26] The only remaining case that Plaintiff cites in this section, *2505 Victory Blvd., LLC v. Victory Holding, LLC*, 848 N.Y.S.2d 514, 520 (N.Y. App. Div. 1991), is inapposite given that the plaintiff in that case was attempting personal service.

Second, Uzoigwe suggests that because service via certified mail can be proper under the Federal Rules of Civil Procedure, the district court should have therefore deemed his mailing proper service. (App. D.E. 31.1 at 27, 33, 38–40.) But, aside from the fact that the Federal Rules do not apply to service, as with New York law, they also require a defendant who is served by mail to sign and return a completed waiver of service form. *See* Fed. R. Civ. P. 4(d), (h)(1); *Terrell v. NBC Universal Media LLC*, No. 18-CV-2354, 2019 WL 3206131, at *2 (E.D.N.Y. July 16, 2019) ("Service of a summons and complaint on a[n] [LLC] by certified mail does not satisfy the requirements of Rule 4(h)(1) or the [N.Y.C.P.L.R.]").

Third, contrary to Uzoigwe's arguments, service is not determined by the "interest of justice," and the "interest of justice" cannot render service complete when a plaintiff has not complied with statutory requirements. (App. D.E. 31.1 at 32–34.) While this is a novel argument Uzoigwe waived on appeal, the cases he cites for this proposition have no relation to the case at hand. Rather, those cases consider whether it was in the interest of justice to allow a plaintiff additional time to serve a defendant. *See, e.g. Deutsche Bank Nat'l Tr. Co.*, 180 N.Y.S.3d at 579.

Fourth, Charter had no obligation to rebut service, as Uzoigwe contends throughout his Brief.[27] (App. D.E. 31.1 at 35–36.) Rather, New York law requires

---

[27] The cases Uzoigwe cites for this position have nothing to do with service of a complaint and summons. Instead, they implicate scenarios where a properly joined party claimed it did not receive service of a later-filed paper. *See, e.g., Citibank*,

57

only that in its Notice of Removal, Charter "affirmatively allege" that it "was not properly served" because it did not return the Acknowledgment Form. New York law does not require Charter to argue it never received the Summons and Complaint by mail. *Kostelanetz*, 694 N.Y.S.2d at 289 (defendant properly removed where defendant affirmatively alleged it was not properly served since it did not sign and return acknowledgment form). Moreover, as the district court recognized, Uzoigwe acknowledged that he did not properly serve Charter before Charter removed the case to federal court. (CSA-88–89.)

As such, Uzoigwe cannot and has not demonstrated error in the district court's denials of his requests to remand. The Court should therefore affirm the Remand Orders to the extent it considers them at all.

## C. The District Court Did Not Err in Denying Uzoigwe's Motions for Recusal and an Evidentiary Hearing.

Although Uzoigwe recounts the district court's orders denying his Motion for Recusal and Request for Evidentiary Hearing, both of which tie into remand, he assigns no error to either order. (App. D.E. 31.1 at 40) (arguing district court was biased); App. D.E. 31.1 at 41 (vaguely mentioning his request for evidentiary hearing without explaining why district court's ruling was wrong). These orders can only be reversed if the Court finds abuse of discretion. *See supra* Sec. I.C. As

98 N.Y.S.3d at 279 (concerning service of notice of foreclosure); *E. Sav., FSB v. Thompson*, No. 12-cv-1197-WFK-RLM, 2016 WL 2977268, at *4 (E.D.N.Y. May 19, 2016) (same).

Uzoigwe does not identify any holding in either order that he deems to be incorrect, much less provide a legal basis or any argument suggesting an abuse of discretion, any challenge to those orders fails at the outset.  Nor does his recitation of the procedural history of both motions and orders, coupled with his stated disagreement with the district court's orders, provide any basis for reversal.

## **CONCLUSION**

For the foregoing reasons, this Court should affirm the District Court's judgment granting Charter's Motion to Dismiss in its entirety.  To the extent that the Court finds Remand Motions within the scope of this appeal, the Court should similarly affirm the District Court's denial of these unfounded motions.

Dated:  November 7, 2024    KABAT CHAPMAN & OZMER LLP

           By: */s/ Shawna M. Miller*
             Shawna M. Miller
             171 17th Street NW
             Suite 1550
             Atlanta, Georgia 30363

             *Attorney for Appellee*
             *Charter Communications, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Shawna M. Miller, do certify that, on November 7, 2024, I caused a true and correct copy of Appellee's Answering Brief to be served by and through the ECF system, electronic mail system, and U.S. Mail (postage prepaid) on the following:

Onwy Uzoigwe
4212 Flowerton Rd.
Baltimore, MD 21229
o.uzoigwe@gmail.com

*Pro Se* Appellant

This 7th day of November, 2024.

KABAT CHAPMAN & OZMER LLP

By: */s/ Shawna M. Miller*
Shawna M. Miller
171 17th Street NW
Suite 1550
Atlanta, Georgia 30363

*Attorney for Appellee*
*Charter Communications, LLC*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2) because it contains 13,982 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

I further certify that this motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this motion has been prepared in a proportionally spaced 14-point Times New Roman typeface using Microsoft Word.

*/s/ Shawna M. Miller*
Shawna M. Miller
Counsel for Defendant-Appellee

## **Addendum**

Executive Law 29-a

Executive order 202.8

Executive order 202.14

Executive order 202.28

Executive order 202.38

Executive order 202.48

Executive order 202.55

Executive order 202.55.1

Executive order 202.60

N.Y. Labor Law § 623 (2024)

1987 N.Y. Sess. Laws, Chapter 258, A.7319 (McKinney)

*Andrew v. J.P. Morgan Chase & Co.,*
      No. 18-cv-4421-DLC, 2018 WL 4926440 (S.D.N.Y. Oct. 9, 2018)

*Black v. Vitello,*
      841 F. App'x 334 (2d Cir. 2021)

*DBW Investments, LLC v. VNUE, Inc.,*
      No. 23-857, 2024 WL 2524033 (2d Cir. May 24, 2024)

*Eastern Savings, FSB v. Thompson,*
      No. 12-cv-1197-WFK-RLM, 2016 WL 2977268 (E.D.N.Y. May 19, 2016)

*Entretelas Americanas S.A. v. Soler*
      840 F. App'x. 601 (2d Cir. 2020))

*Hodge v. Abaco, LLC,*
    825 F. App'x 46 (2d Cir. 2020)

*Junk v. Aon Corp.,*
    No. 07 Civ 4640, 2007 WL 4292034 (S.D.N.Y. Dec. 3, 2007)

*LCS Group, LLC v. Shire LLC,*
    No. 19-2404, 2019 WL 7824613 (2d Cir. Nov. 12, 2019)

*Lessambo v. PricewaterhouseCoopers, L.P.,*
    451 F. App'x 57 (2d Cir. 2011)

*Loeb v. County of Suffolk,*
    No. 22-cv-6410, 2023 WL 4163117 (E.D.N.Y. June 23, 2023)

*Maldonado v. Arcadia Business Corporation,*
    No. 14-cv-4129-DLI-RML, 2015 WL 12791329 (E.D.N.Y. Aug. 27, 2015

*N.L.R.B. v. Kathleen's Bakeshop,*
    No. 02-4673, 2003 WL 22221353 (2d Cir. Sept. 26, 2003)

*O'Neal v. Spota,*
    744 F. App'x 35 (2d Cir. 2018)

*Prage v. Kavulich & Associates, P.C.,*
    No. 16-cv-1627-CBA, 2016 WL 5900194 (E.D.N.Y. Oct. 7, 2016)

*RCB Equities #£3, LLC v. Martin,*
    632 F. App'x 663 (2d Cir. 2015)

*Stamelman v. Fleishman-Hillard, Inc.,*
    No. 02-civ-8318-SAS, 2003 WL 21782645 (S.D.N.Y. July 31, 2003)

*Stop & Shop Supermarket Co. LLC v. Goldsmith,*
    No. 10-cv-3052 (KMK), 2011 WL 1236121 (S.D.N.Y. Mar. 31, 2011)

*Terrell v. NBC Universal Media LLC,*
    No. 18-CV-2354, 2019 WL 3206131 (E.D.N.Y. July 16, 2019)

*U.S. v. Gilmartin,*
    803 F. App'x 538 (2d Cir. 2020)

*Weingot v. Unison Agreement Corp.,*
    No. 21-cv-4542, 2023 WL 5152478 (E.D.N.Y. July 20, 2023)

*Williams v. Buffalo Public Schools,*
    758 F. App'x 59 (2d Cir. 2018)

⚑ KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

> McKinney's Consolidated Laws of New York Annotated
>   Executive Law (Refs & Annos)
>     Chapter Eighteen. Of the Consolidated Laws
>       Article 2-B. State and Local Natural and Man-Made Disaster Preparedness (Refs & Annos)

McKinney's Executive Law § 29-a

§ 29-a. Suspension of other laws

Effective: March 3, 2020

Currentness

1. Subject to the state constitution, the federal constitution and federal statutes and regulations, the governor may by executive order temporarily suspend specific provisions of any statute, local law, ordinance, or orders, rules or regulations, or parts thereof, of any agency during a state disaster emergency, if compliance with such provisions would prevent, hinder, or delay action necessary to cope with the disaster.

2. Suspensions pursuant to subdivision one of this section shall be subject to the following standards and limits:

a. no suspension shall be made for a period in excess of thirty days, provided, however, that upon reconsideration of all of the relevant facts and circumstances, the governor may extend the suspension for additional periods not to exceed thirty days each;

b. no suspension shall be made which does not safeguard the health and welfare of the public and which is not reasonably necessary to the disaster effort;

c. any such suspension order shall specify the statute, local law, ordinance, order, rule or regulation or part thereof to be suspended and the terms and conditions of the suspension;

d. the order may provide for such suspension only under particular circumstances, and may provide for the alteration or modification of the requirements of such statute, local law, ordinance, order, rule or regulation suspended, and may include other terms and conditions;

e. any such suspension order shall provide for the minimum deviation from the requirements of the statute, local law, ordinance, order, rule or regulation suspended consistent with the disaster action deemed necessary; and

f. when practicable, specialists shall be assigned to assist with the related emergency actions to avoid needless adverse effects resulting from such suspension.

3. Such suspensions shall be effective from the time and in the manner prescribed in such orders and shall be published as soon as practicable in the state bulletin.

4. The legislature may terminate by concurrent resolution executive orders issued under this section at any time.

**Credits**

(Added L.1978, c. 640, § 3, eff. Apr. 1, 1979. Amended L.2012, c. 55, pt. G, § 7, eff. March 30, 2012; L.2020, c. 23, § 2.)

Notes of Decisions (26)

McKinney's Executive Law § 29-a, NY EXEC § 29-a

Current through L.2024, chapters 1 to 443. Some statute sections may be more current, see credits for details.

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Compilation of Codes, Rules and Regulations of the State of New York
  Title 9. Executive Department
    Subtitle A. Governor's Office
      Chapter I. Executive Orders
        Part 8. Executive Orders (Andrew M. Cuomo)

9 NYCRR 8.202.8

Section 8.202.8. Executive Order No. 8.202.8: Continuing Temporary
Suspension and Modification of Laws Relating to the Disaster Emergency

Currentness

WHEREAS, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

WHEREAS, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

WHEREAS, in order to facilitate the most timely and effective response to the COVID-19 emergency disaster, it is critical for New York State to be able to act quickly to gather, coordinate, and deploy goods, services, professionals, and volunteers of all kinds; and

NOW, THEREFORE, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 19, 2020 the following:

• In accordance with the directive of the Chief Judge of the State to limit court operations to essential matters during the pendency of the COVID-19 health crisis, any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including but not limited to the criminal procedure law, the family court act, the civil practice law and rules, the court of claims act, the surrogate's court procedure act, and the uniform court acts, or by any other statute, local law, ordinance, order, rule, or regulation, or part thereof, is hereby tolled from the date of this executive order until April 19, 2020;

Subdivision 1 of Section 503 of the Vehicle and Traffic Law, to the extent that it provides for a period of validity and expiration of a driver's license, in order to extend for the duration of this executive order the validity of driver's licenses that expire on or after March 1, 2020;

• Subdivision 1 of Section 491 of the Vehicle and Traffic Law, to the extent that it provides for a period of validity and expiration of a non-driver identification card, in order to extend for the duration of this executive order the validity of non-driver identification cards that expire on or after March 1, 2020;

• Sections 401, 410, 2222, 2251, 2261, and 2282(4) of the Vehicle and Traffic law, to the extent that it provides for a period of validity and expiration of a registration certificate or number plate for a motor vehicle or trailer, a motorcycle, a snowmobile, a

vessel, a limited use vehicle, and an all terrain vehicle, respectively, in order to extend for the duration of this executive order the validity of such registration certificate or number plate that expires on or after March 1, 2020;

• Section 420-a of the vehicle and traffic law to the extent that it provides an expiration for temporary registration documents issued by auto dealers to extend the validity of such during the duration of this executive order.

• Subsection (a) of Section 602 and subsections (a) and (b) of Section 605 of the Business Corporation Law, to the extent they require meetings of shareholders to be noticed and held at a physical location.

NOW, THEREFORE, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of Executive Order through April 19, 2020:

• The provisions of Executive Order 202.6 are hereby modified to read as follows: Effective on March 22 at 8 p.m.: All businesses and not-for-profit entities in the state shall utilize, to the maximum extent possible, any telecommuting or work from home procedures that they can safely utilize. Each employer shall reduce the in-person workforce at any work locations by 100% no later than March 22 at 8 p.m. Any essential business or entity providing essential services or functions shall not be subject to the in-person restrictions. An entity providing essential services or functions whether to an essential business or a non-essential business shall not be subjected to the in-person work restriction, but may operate at the level necessary to provide such service or function. Any business violating the above order shall be subject to enforcement as if this were a violation of an order pursuant to section 12 of the Public Health Law.

• There shall be no enforcement of either an eviction of any tenant residential or commercial, or a foreclosure of any residential or commercial property for a period of ninety days.

• Effective at 8 p.m. March 20, any appointment that is in-person at any state or county department of motor vehicles is cancelled, and until further notice, only on-line transactions will be permitted.

• The authority of the Commissioner of Taxation and Finance to abate late filing and payment penalties pursuant to section 1145 of the Tax Law is hereby expanded to also authorize abatement of interest, for a period of 60 days for a taxpayers who are required to file returns and remit sales and use taxes by March 20, 2020, for the sales tax quarterly period that ended February 29, 2020.

(L.S.)                    GIVEN under my hand and the Privy Seal of the State in the City of Albany this twentieth day of March in the year two thousand twenty.

*BY THE GOVERNOR*

/S/ Andrew M. Cuomo

/s/ Melissa DeRosa

*Secretary to the Governor*

**Credits**
Order dated March 20, 2020.

Current with amendments included in the New York State Register, Volume XLVI, Issue 45, dated November 6, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.8, 9 NY ADC 8.202.8

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Compilation of Codes, Rules and Regulations of the State of New York
  Title 9. Executive Department
    Subtitle A. Governor's Office
      Chapter I. Executive Orders
        Part 8. Executive Orders (Andrew M. Cuomo)

9 NYCRR 8.202.14

Section 8.202.14. Executive Order No. 8.202.14: Continuing Temporary
Suspension and Modification of Laws Relating to the Disaster Emergency

Currentness

WHEREAS, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

WHEREAS, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to continue;

NOW, THEREFORE, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law, do hereby continue the suspensions and modifications of law, and any directives, not superseded by a subsequent directive, made by Executive Order 202 and each successor Executive Order to 202, for thirty days until May 7, 2020, except as limited below.

IN ADDITION, I hereby temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, for the period from the date of this Executive Order through May 7, 2020, the following:

• Section 6524 of the Education Law, section 60.7 of title 8 of NYRR and section paragraph (1) of subdivision (g) 405.4 of title 10 of the NYCRR to the extent necessary to allow any physician who will graduate in 2020 from an academic medical program accredited by a medical education accrediting agency for medical education by the Liaison Committee on Medical Education or the American Osteopathic Association, and has been accepted by an Accreditation Council for Graduate Medical Education accredited residency program within or outside of New York State to practice at any institution under the supervision of a licensed physician;

• Subdivisions one, two, four, five, eight and nine of Section 1726 of the Surrogate's Court Procedure Act are hereby modified to provide that any parent, a legal guardian, a legal custodian, or primary caretaker who works or volunteers in a health care facility or who reasonably believes that they may otherwise be exposed to COVID-19, may designate a standby guardian by means of a written designation, in accordance with the process set forth in such subdivisions; and such designation shall become effective also in accordance with the process set forth in such subdivisions; and

• Sections 3216(d)(1)(C) and 4306(g) of the Insurance Law, subject to consideration by the Superintendent of Financial Services of the liquidity and solvency of the applicable insurer, corporation subject to Article 43 of the Insurance Law, or health maintenance organization certified pursuant to Article 44 of the Public Health Law, to:

o Extend the period for the payment of premiums to the later of the expiration of the applicable contractual grace period and 11:59 p.m. on June 1, 2020, for any comprehensive health insurance policyholder or contract holder under an individual policy or contract, as those terms are used in such sections, who is facing a financial hardship as a result of the COVID-19 pandemic; and

o Require that the applicable insurer, corporation subject to Article 43 of the Insurance Law, or health maintenance organization certified pursuant to Article 44 of the Public Health Law shall be responsible for the payment of claims during such period and shall not retroactively terminate the insurance policy or contract for non-payment of premium during such period.

FURTHER, I hereby issue the following directives for the period from the date of this Executive Order through May 7, 2020:

• Any medical equipment (personal protective equipment (PPE), ventilators, respirators, bi-pap, anesthesia, or other necessary equipment or supplies as determined by the Commissioner of Health) that is held in inventory by any entity in the state, or otherwise located in the state shall be reported to DOH. DOH may shift any such items not currently needed, or needed in the short term future by a health care facility, to be transferred to a facility in urgent need of such inventory, for purposes of ensuring New York hospitals, facilities and health care workers have the resources necessary to respond to the COVID-19 pandemic, and distribute them where there is an immediate need. The DOH shall either return the inventory as soon as no longer urgently needed and/or, in consultation with the Division of the Budget, ensure compensation is paid for any goods or materials acquired at the rates prevailing in the market at the time of acquisition, and shall promulgate guidance for businesses and individuals seeking payment.

• By virtue of Executive Orders 202.3, 202.4, 202.5, 202.6, 202.7, 202.8, 202.10, 202.11, and 202.13 which closed or otherwise restricted public or private businesses or places of public accommodation, and which required postponement or cancellation of all non-essential gatherings of individuals of any size for any reason (e.g. parties, celebrations, games, meetings or other social events), all such Executive Orders shall be continued, provided that the expiration dates of such Executive Orders shall be aligned, such that all in-person business restrictions and workplace restrictions will be effective until 11:59 p.m. on April 29, 2020, unless later extended by a future Executive Order.

• The enforcement of any violation of the foregoing directives on and after April 7, 2020, in addition to any other enforcement mechanism stated in any prior executive orders, shall be a violation punishable as a violation of public health law section 12-b(2) and the Commissioner of Health is directed and authorized to issue emergency regulations. The fine for such violation by an individual who is participating in any gathering which violates the terms of the orders or is failing to abide by social distancing restrictions in effect in any place which is not their home shall not exceed $1,000.

• The directive contained in Executive Order 202.4 as amended by Executive Order 202.11 related to the closure of schools statewide shall hereafter be modified to provide that all schools shall remain closed through April 29, 2020, at which time the continued closure shall be re-evaluated. No school shall be subject to a diminution in school aid due to failure to meet the 180 day in session requirement as a result of the COVID-19 outbreak, provided their closure does not extend beyond the term set forth herein. School districts must continue plans for alternative instructional options, distribution and availability of meals, and child care, with an emphasis on serving children of essential workers, and continue to first use any vacation or snow days remaining.

• Superintendent of Financial Services shall have the authority to promulgate an emergency regulation, subject to consideration by the Superintendent of Financial Services of the liquidity and solvency of the applicable insurer, corporation subject to Article 43 of the Insurance Law, health maintenance organization certified pursuant to Article 44 of the Public Health Law, or student health plan certified pursuant to Insurance Law § 1124, to:

o extend the period for the payment of premiums to the later of the expiration of the applicable contractual grace period and 11:59 p.m. on June 1, 2020 for any small group or student blanket comprehensive health insurance policy or contract, or any child health insurance plan policy or contract where the policyholder or contract holder pays the entire premium, as those

terms are used in the Insurance Law, for any policyholder or contract holder who is facing financial hardship as a result of the COVID-19 pandemic; and

o require that the applicable insurer, corporation subject to Article 43 of the Insurance Law, health maintenance organization certified pursuant to Article 44 of the Public Health Law, or student health plan certified pursuant to Insurance Law § 1124, shall be responsible for the payment of claims during such period and shall not retroactively terminate the insurance policy or contract for non-payment of premium during such period.

• Superintendent of Financial Services shall have the authority to promulgate emergency regulations necessary to implement this Executive Order, including regulations regarding: (1) the waiver of late fees; and (2) the prohibition on reporting negative data to credit bureaus.

• For the purposes of Estates Powers and Trusts Law (EPTL) 3-2.1(a)(2), EPTL 3-2.1(a)(4), Public Health Law 2981(2)(a), Public Health Law 4201(3), Article 9 of the Real Property Law, General Obligations Law 5-1514(9)(b), and EPTL 7-1.17, the act of witnessing that required under the aforementioned New York State laws is authorized to be performed utilizing audio-video technology provided that the following conditions are met:

o The person requesting that their signature be witnessed, if not personally known to the witness(es), must present valid photo ID to the witness(es) during the video conference, not merely transmit it prior to or after;

o The video conference must allow for direct interaction between the person and the witness(es), and the supervising attorney, if applicable (e.g. no pre-recorded videos of the person signing);

o The witnesses must receive a legible copy of the signature page(s), which may be transmitted via fax or electronic means, on the same date that the pages are signed by the person;

o The witness(es) may sign the transmitted copy of the signature page(s) and transmit the same back to the person; and

The witness(es) may repeat the witnessing of the original signature page(s) as of the date of execution provided the witness(es) receive such original signature pages together with the electronically witnessed copies within thirty days after the date of execution.

(L.S.)  　　　　　　　　　GIVEN under my hand and the Privy Seal of the State in the City of Albany this seventh day of April in the year two thousand twenty.

　　　　　　　　　　　　*BY THE GOVERNOR*

　　　　　　　　　　　　/S/ Andrew M. Cuomo

　　　　　　　　　　　　/s/ Melissa DeRosa

　　　　　　　　　　　　*Secretary to the Governor*

**Credits**
Order dated April 7, 2020.

Current with amendments included in the New York State Register, Volume XLVI, Issue 45, dated November 6, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.14, 9 NY ADC 8.202.14

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Compilation of Codes, Rules and Regulations of the State of New York
Title 9. Executive Department
Subtitle A. Governor's Office
Chapter I. Executive Orders
Part 8. Executive Orders (Andrew M. Cuomo)

9 NYCRR 8.202.28

Section 8.202.28. Executive Order No. 8.202.28: Continuing Temporary
Suspension and Modification of Laws Relating to the Disaster Emergency

Effective: May 7, 2020
Currentness

WHEREAS, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

WHEREAS, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

NOW, THEREFORE, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law, do hereby continue the suspensions and modifications of law, and any directives, not superseded by a subsequent directive, made by Executive Order 202 and each successor Executive Order up to and including Executive Order 202.14, for thirty days until June 6, 2020, except as modified below:

• The suspension or modification of the following statutes and regulations are not continued, and such statutes, codes and regulations are in full force and effect as of May 8, 2020:

o 10 NYCRR 405.9, except to the limited extent that it would allow a practitioner to practice in a facility where they are not credentialed or have privileges, which shall continue to be suspended; 10 NYCRR 400.9; 10 NYCRR 400.11, 10 NYCRR 405; 10 NYCRR 403.3; 10 NYCRR 403.5; 10 NYCRR 800.3, except to the extent that subparagraphs (d) and (u) could otherwise limit the scope of care by paramedics to prohibit the provision of medical service or extended service to COVID-19 or suspected COVID-19 patients; 10 NYCRR 400:12; 10 NYCRR 415.11; 10 NYCRR 415.15; 10 NYCRR 415.26; 14 NYCRR 620; 14 NYCRR 633.12; 14 NYCRR 636-1; 14 NYCRR 686.3; and 14 NYCRR 517;

o Mental Hygiene Law Sections 41.34; 29.11; and 29.15;

o Public Health Law Sections 3002, 3002-a, 3003, and 3004-a to the extent it would have allowed the Commissioner to make determination without approval by a regional or state EMS board;

o Subdivision (2) of section 6527, Section 6545, and Subdivision (1) of Section 6909 of the Education Law; as well as subdivision 32 of Section 6530 of the Education Law, paragraph (3) of Subdivision (a) of Section 29.2 of Title 8 of the NYCRR, and sections 58-1.11, 405.10, and 415.22 of Title 10 of the NYCRR;

o All codes related to construction, energy conservation, or other building code, and all state and local laws, ordinances, and regulations which would have otherwise been superseded, upon approval by the Commissioner of OPWDD, as applicable

only for temporary changes to physical plant, bed capacities, and services provided; for facilities under the Commissioners jurisdiction.

IN ADDITION, I hereby temporarily suspend or modify the following if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, for the period from the date of this Executive Order through June 6, 2020:

• Sections 7-103, 7-107 and 7-108 of the General Obligations Law to the extent necessary to provide that:

o Landlords and tenants or licensees of residential properties may, upon the consent of the tenant or licensee, enter into a written agreement by which the security deposit and any interest accrued thereof, shall be used to pay rent that is in arrears or will become due. If the amount of the deposit represents less than a full month rent payment, this consent does not constitute a waiver of the remaining rent due and owing for that month. Execution in counterpart by email will constitute sufficient execution for consent;

o Landlords shall provide such relief to tenants or licensees who so request it that are eligible for unemployment insurance or benefits under state or federal law or are otherwise facing financial hardship due to the COVID-19 pandemic;

o It shall be at the tenant or licensee's option to enter into such an agreement and landlords shall not harass, threaten or engage in any harmful act to compel such agreement;

o Any security deposit used as a payment of rent shall be replenished by the tenant or licensee, to be paid at the rate of 1/12 the amount used as rent per month. The payments to replenish the security deposit shall become due and owing no less than 90 days from the date of the usage of the security deposit as rent. The tenant or licensee may, at their sole option, retain insurance that provides relief for the landlord in lieu of the monthly security deposit replenishment, which the landlord, must accept such insurance as replenishment.

• Subdivision 2 of section 238-a of the Real Property Law to provide that no landlord, lessor, sub-lessor or grantor shall demand or be entitled to any payment, fee or charge for late payment of rent occurring during the time period from March 20, 2020, through August 20, 2020; and

• Section 8-400 of the Election Law is modified to the extent necessary to require that to the any absentee application mailed by a board of elections due to a temporary illness based on the COVID-19 public health emergency may be drafted and printed in such a way to limit the selection of elections to which the absentee ballot application is only applicable to any primary or special election occurring on June 23, 2020, provided further that for all absentee ballot applications already mailed or completed that purported to select a ballot for the general election or to request a permanent absentee ballot shall in all cases only be valid to provide an absentee ballot for any primary or special election occurring on June 23, 2020. All Boards of Elections must provide instructions to voters and post prominently on the website, instructions for completing the application in conformity with this directive.

• The suspension of the provisions of any time limitations contained in the Criminal Procedure Law contained in Executive Order 202.8 is modified as follows:

o Section 182.30 of the Criminal Procedure Law, to the extent that it would prohibit the use of electronic appearances for certain pleas;

o Section 180.60 of the Criminal Procedure Law to provide that (i) all parties' appearances at the hearing, including that of the defendant, may be by means of an electronic appearance; (ii) the Court may, for good cause shown, withhold the identity, obscure or withhold the image of, and/or disguise the voice of any witness testifying at the hearing pursuant to a motion under Section 245.70 of the Criminal Procedure law--provided that the Court is afforded a means to judge the demeanor of a witness;

o Section 180.80 of the Criminal Procedure Law, to the extent that a court must satisfy itself that good cause has been shown within one hundred and forty-four hours from May 8, 2020 that a defendant should continue to be held on a felony complaint due to the inability to empanel a grand jury due to COVID-19, which may constitute such good cause pursuant to subdivision three of such section; and

o Section 190.80 of the Criminal Procedure Law, to the extent that to the extent that a court must satisfy itself that good cause has been shown that a defendant should continue to be held on a felony complaint beyond forty-five days due to the inability to empanel a grand jury due to COVID-19, which may constitute such good cause pursuant to subdivision b of such section provided that such defendant has been provided a preliminary hearing as provided in section 180.80.

IN ADDITION, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of Executive Order through June 6, 2020:

• There shall be no initiation of a proceeding or enforcement of either an eviction of any residential or commercial tenant, for nonpayment of rent or a foreclosure of any residential or commercial mortgage, for nonpayment of such mortgage, owned or rented by someone that is eligible for unemployment insurance or benefits under state or federal law or otherwise facing financial hardship due to the COVID-19 pandemic for a period of sixty days beginning on June 20, 2020.

• Executive Order 202.18, which extended the directive contained in Executive Orders 202.14 and 202.4 as amended by Executive Order 202.11 related to the closure of schools statewide, is hereby continued to provide that all schools shall remain closed through the remainder of the school year. School districts must continue plans for alternative instructional options, distribution and availability of meals, and child care, with an emphasis on serving children of essential workers.

(L.S.)                                    GIVEN under my hand and the Privy Seal of the State in the City of Albany this seventh of May in the year two thousand twenty.

                                          *BY THE GOVERNOR*

                                          /S/ Andrew M. Cuomo

                                          /s/ Melissa DeRosa

                                          *Secretary to the Governor*

**Credits**
Order dated May 7, 2020.

Current with amendments included in the New York State Register, Volume XLVI, Issue 45, dated November 6, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.28, 9 NY ADC 8.202.28

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Compilation of Codes, Rules and Regulations of the State of New York
  Title 9. Executive Department
    Subtitle A. Governor's Office
      Chapter I. Executive Orders
        Part 8. Executive Orders (Andrew M. Cuomo)

9 NYCRR 8.202.38

Section 8.202.38. Executive Order No. 8.202.38: Continuing Temporary
Suspension and Modification of Laws Relating to the Disaster Emergency

Effective: June 6, 2020

Currentness

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law, do hereby continue the suspensions and modifications of law, and any directives, not superseded by a subsequent directive, made by Executive Order 202 and each successor Executive Order up to and including Executive Order 202.14, as continued as contained in Executive Order 202.27 and 202.28 until July 6, 2020; and

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I do hereby issue the following directives for the period from the date of this Executive Order through July 6, 2020:

• Consistent with Center for Disease Controls and Prevention and New York State Department of Health Guidance, commercial building owners, retail store owners and those authorized on their behalf to manage public places within their buildings and businesses (collectively "Operators") shall have the discretion to require individuals to undergo temperature checks prior to being allowed admittance. Further, Operators shall have the discretion to deny admittance to (i) any individual who refuses to undergo such a temperature check and (ii) any individual whose temperature is above that proscribed by New York State Department of Health Guidelines. No Operator shall be subject to a claim of violation of the covenant of quiet enjoyment, or frustration of purpose, solely due to their enforcement of this directive. This directive shall be applied in a manner consistent with the American with Disabilities Act and any provision of either New York State or New York City Human Rights Law.

• The directive contained in Executive Order 202.3, as extended, that required any restaurant or bar to cease serving patrons food or beverage on-premises, is hereby modified to the extent necessary to allow a restaurant or bar to serve patrons food or beverage on-premises only in outdoor space, provided such restaurant or bar is in compliance with Department of Health guidance promulgated for such activity.

• Executive Order 202.35 which continued the directive of Executive Order 202.33 is hereby modified to permit any non-essential gatherings for houses of worship at no greater than 25% of the indoor capacity of such location, provided it is in a geographic area in Phase 2 of re-opening, and further provided that social distancing protocols and cleaning and disinfection protocols required by the Department of Health are adhered to.

• Upon the resumption of on-premises outdoor service of food and beverages at the licensed premises of restaurants and bars, to facilitate compliance with social distancing requirements in connection with such service, notwithstanding any provision of the Alcoholic Beverage Control law, restaurants or bars in the state of New York shall be permitted to expand the premises licensed by the State Liquor Authority to use (a) contiguous public space (for example, sidewalks or closed streets) and/or (b) otherwise unlicensed contiguous private space under the control of such restaurant or bar, subject to reasonable limitations and procedures set by the Chairman of the State Liquor Authority and, with respect to (a) the use of public space, subject to the reasonable approval of the local municipality, and all subject to the guidance promulgated by the Department of Health.

(L.S.)                    GIVEN under my hand and the Privy Seal of the State in the City of Albany this sixth day of June in the year two thousand twenty.


*BY THE GOVERNOR*

/S/ Andrew M. Cuomo

/s/ Melissa DeRosa

*Secretary to the Governor*


**Credits**

Order dated June 6, 2020.


Current with amendments included in the New York State Register, Volume XLVI, Issue 45, dated November 6, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.38, 9 NY ADC 8.202.38

---

**End of Document**                            © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Compilation of Codes, Rules and Regulations of the State of New York
Title 9. Executive Department
Subtitle A. Governor's Office
Chapter I. Executive Orders
Part 8. Executive Orders (Andrew M. Cuomo)

9 NYCRR 8.202.48

Section 8.202.48. Executive Order No. 202.48: Continuing Temporary
Suspension and Modification of Laws Relating to the Disaster Emergency

Effective: July 6, 2020

Currentness

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, do hereby continue the suspensions and modifications of law, and any directives, not superseded by a subsequent directive, made by Executive Order 202 and each successor Executive Order up to and including Executive Order 202.14, as continued and contained in Executive Order 202.27, 202.28, and 202.38, for another thirty days through August 5, 2020, except the following:

• The suspension or modification of the following statutes and regulations, and the following directives, are not continued, and such statutes, codes, and regulations are in full force and effect as of July 7, 2020:

o The suspension of Education law section 3604(7), and any associated directives, which allowed for the Commissioner of Education to reduce instructional days, as such suspensions and directives have been superseded by statute, contained in Chapter 107 of the Laws of 2020;

o The suspension of Section 33.17 of the Mental Hygiene Law and associated regulations to the extent necessary to permit providers to utilize staff members transport individuals receiving services from the Office of Mental Health or a program or provider under the jurisdiction of the Office of Mental Health during the emergency;

o The suspensions of sections 2800(1)(a) and (2)(a); 2801(1) and (2); 2802(1) and (2); and 2824(2) of the Public Authorities Law, to the extent consistent and necessary to allow the director of the Authorities Budget Office to disregard such deadlines due to a failure by a state or local authority to meet the requirements proscribed within these sections during the period when a properly executed declaration of a state of emergency has been issued, are continued only insofar as they allow a state or local authority a sixty day extension from the original statutory due date for such reports;

o Section 390-b of the Social Services Law and regulations at sections 413.4 and 415.15 of Title 18 of the NYCRR;

o Subdivision 8 of section 8-407 of the Election Law;

o The suspension of Criminal Procedure Law to the extent it requires a personal appearance of the defendant, and there is consent, in any jurisdiction where the Court has been authorized to commence in-person appearances by the Chief Administrative Judge; provided further that the suspension or modification of the following provisions of law are continued:

# Section 150.40 of the Criminal Procedure Law, is hereby modified to provide that the 20-day timeframe for the return date for a desk appearance ticket is extended to 90 days from receiving the appearance ticket;

# Section 190.80 of the Criminal Procedure Law, is hereby modified to provide that the 45-day time limit to present a matter to the grand jury following a preliminary hearing or waiver continues to be suspended and is tolled for an additional 30 days;

# Section 30.30 of the Criminal Procedure Law, is hereby modified to require that speedy trial time limitations remain suspended until such time as petit criminal juries are reconvened or thirty days, whichever is later;

# Article 195 of the Criminal Procedure Law, is hereby suspended to the extent that it would prohibit the use of electronic appearances for certain pleas, provided that the court make a full and explicit inquiry into the waiver and voluntariness thereof;

# Sections 190.45 and 190.50 of the Criminal Procedure Law, are hereby modified to the extent necessary to allow an incarcerated defendant to appear virtually with his or her counsel before the grand jury to waive immunity and testify in his or her own defense, provided the defendant elects to do so;

# The suspension of Section 180.80 and 190.80 of the Criminal Procedure Law, as modified by Executive Order 202.28, is hereby continued for a period not to exceed thirty days in any jurisdiction where there is not a grand jury empaneled; and when a new grand jury is empaneled to hear criminal cases, then 180.80 and 190.80 of the criminal procedure law shall no longer be suspended beginning one week after such grand jury is empaneled;

# The suspension of Sections 180.60 and 245.70 of the Criminal Procedure Law, as modified by Executive Order 202.28, which allowed protective orders to be utilized at preliminary hearings, is hereby continued for a period of thirty days; and

# The suspension of Sections 182.20, in addition to the modification contained in Executive Order 202.28 of section 182.30 of the Criminal Procedure Law is hereby extended for a period of thirty days, to the extent that it would prohibit the use of electronic appearances for felony pleas, or electronic appearances for preliminary hearings or sentencing;

o Business Corporation law sections 602, 605, and 708, as such suspensions have been superseded by statute, as contained in Chapter 122 of the Laws of 2020;

o Banking Law Section 39 (2), as such suspension has been superseded by statute, as contained in Chapters 112 and 126 of the Laws of 2020, as well as the directives contained in Executive Order 202.9;

o Insurance Law and Banking Law provisions suspended by virtue of Executive Order 202.13, which coincide with the expiration of the Superintendent's emergency regulations;

o Subdivision (28) of Section 171 of the Tax Law, to the extent that the Commissioner has extended any filing deadline;

o Sections 3216(d)(1)(c) and 4306 (g) of the Insurance Law, and any associated regulatory authority provided by directive in Executive Order 202.14, as the associated emergency regulations are no longer in effect;

o The directive contained in Executive Order 202.28, as extended, that prohibited initiation of a proceeding or enforcement of either an eviction of any residential or commercial tenant, for nonpayment of rent or a foreclosure of any residential or commercial mortgage, for nonpayment of such mortgage, is continued only insofar as it applies to a commercial tenant or commercial mortgagor, as it has been superseded by legislation for a residential tenant, and residential mortgagor, in Chapters 112, 126, and 127 of the Laws of 2020; and

o The directive contained in Executive Order 202.10 related to restrictions, as amended by Executive Order 202.11, related dispensing hydroxychloroquine or chloroquine, as recent findings and the U.S. Food & Drug Administration's revocation of the emergency use authorization has alleviated supply shortages for permitted FDA uses of these medications.

• The directives contained in Executive Order 202.3, that closed video lottery gaming or casino gaming, gym, fitness center or classes, and movie theaters, and the directives contained in Executive Order 202.5 that closed the indoor common portions of retail shopping malls, and all places of public amusement, whether indoors or outdoors, as amended, are hereby modified to provide that such directives remain in effect only until such time as a future Executive Order opening them is issued.

**IN ADDITION**, I hereby suspend or modify for thirty days through August 5, 2020:

• the provisions of Articles 11-A and 11-B of the State Finance Law, and any regulations authorized thereunder, to the extent necessary to respond to the direct and indirect economic, financial, and social effects of the COVID-19 pandemic.

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I do hereby issue the following directives for the period from the date of this Executive Order through August 5, 2020:

• The directive contained in Executive Order 202.41, that discontinued the reductions and restrictions on in-person workforce at non-essential businesses or other entities in Phase Three industries or entities, as determined by the Department of Health, in eligible regions, is hereby modified only to the extent that indoor food services and dining continue to be prohibited in New York City.

(L.S.)                                GIVEN under my hand and the Privy Seal of the State in the City of Albany this sixth day of July in the year two thousand twenty.

*BY THE GOVERNOR*

/S/ Andrew M. Cuomo

/s/ Melissa DeRosa

*Secretary to the Governor*

**Credits**
Order dated July 6, 2020.

Current with amendments included in the New York State Register, Volume XLVI, Issue 45, dated November 6, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.48, 9 NY ADC 8.202.48

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Compilation of Codes, Rules and Regulations of the State of New York
  Title 9. Executive Department
    Subtitle A. Governor's Office
      Chapter I. Executive Orders
        Part 8. Executive Orders (Andrew M. Cuomo)

9 NYCRR 8.202.55

Section 8.202.55. Executive Order No. 202.55: Continuing Temporary
Suspension and Modification of Laws Relating to the Disaster Emergency

Effective: August 5, 2020

Currentness

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVXD-19 have been documented in New York State and are expected to continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, do hereby continue the directives, not superseded by a subsequent directive, made by Executive Order 202 and each successor Executive Order up to and including Executive Order 202.21, and Executive Order 202.27, 202.28, 202.29, 202.30, 202.38, 202.39, and 202.40, as continued and contained in Executive Order 202.48, 202.49, and 202.50 for another thirty days through September 4, 2020, and I hereby suspend or modify for thirty days through September 4, 2020:

• Sections 5-11.0(a), 5-16.0(a) 5-18.0(1) and 6-22.0 of the Nassau County Administrative Code, to the extent necessary to authorize the Nassau County Executive to:

  o change the deadline for the County Assessor to complete the extension of taxes for 2020-2021 school district purposes (and file the certificate associated therewith), from September 18, 2020 to October 16, 2020;

  o change the deadline for the County Legislature to levy such taxes from September 18, 2020 to October 16, 2020;

  o change the deadline for the County to deliver to the town tax receivers the 2020- 2021 school district assessment roll and warrants from September 28, 2020 to October 26, 2020;

  o change the deadline that first half 2020-2021 school district taxes shall be due and payable from October 1, 2020 to November 1, 2020; and

  o change the deadline by which the first half 2020-2021 school district taxes may be paid without interest or penalties from November 10, 2020 to December 10, 2020, with payments made after such date to be subject to interest and penalties beginning on December 11, 2020.

• Section 730(3) of the Real Property Tax Law, to the extent necessary to extend the deadline for filing a 2020 small claims assessment review petition in relation to property located in Nassau County to September 4, 2020; provided that such deadline shall not be further extended unless expressly provided otherwise by an Executive Order issued hereafter;

• Section 711 of the Real Property and Proceedings Law, Section 232-a of the Real Property Law, and subdivisions 8 and 9 of section 4 of the Multiple Dwelling Law, and any other law or regulation are suspended and modified to the extent that such laws would otherwise create a landlord tenant relationship between any individual assisting with the response to COVID-19 or any individual that has been displaced due to C0VID-19, and any individual or entity, including but not limited to any hotel owner, hospital, not-for-profit housing provider, hospital, or any other temporary housing provider who provides temporary housing for a period of thirty days or more solely for purposes of assisting in the response to COVD-19;

• Sections 352-eeee(2)-(2)(a) of the General Business Law, and any order, rule, or regulation in furtherance of the requirements thereof, to the extent it requires that an offering statement or prospectus filed with the Department of Law must be declared effective within fifteen months from filing or from the date of issuance of the letter of the attorney general stating that the offering statement or prospectus has been accepted for filing (the "Fifteen Month Period"), and any such Fifteen Month Period, shall be tolled and extended for a period equal to, in the aggregate, the duration of this Executive Order plus an additional period of 120 days (the "Tolling Period"). In addition, any deadlines contained within paragraphs 352-eeee(1)(f), 352-eeee(1)(g), 352-eeee(2)(c)(vi), 352-eeee(2)(c)(vii), and 352-eeee(2)(d)(ix) shall be tolled and extended for a period equal to, in the aggregate, the duration of this Executive Order plus an additional period of 120 days. Sponsor must treat all tenants in occupancy as non-purchasing tenants as defined by GBL 352-eeee(1)(e) for the duration of the Tolling Period, and must provide all such tenants in occupancy with all protections accorded to non-purchasing tenants under GBL 352-eeee for the duration of the Tolling Period. Sponsor must submit an amendment to the offering plan to the Department of Law updating the date by which sponsor must declare the offering plan effective, as necessary, within 45 days from the expiration of this Executive Order or within such other longer timeframe as may be specified by the Department of Law;

• Sections 352-eee(2)-(2)(a) of the General Business Law, and any order, rule, or regulation in furtherance of the requirements thereof, to the extent it requires that an offering statement or prospectus filed with the Department of Law must be declared effective within twelve months from filing or from the date of issuance of the letter of the attorney general stating that the offering statement or prospectus has been accepted for filing (the "Twelve Month Period"), and any such Twelve Month Period, shall be tolled and extended for a period equal to, in the aggregate, the duration of this Executive Order plus an additional period of 120 days ("the Tolling Period"). In addition, any deadlines contained within paragraphs 352-eee(1)(f), 352-eee(1)(g), 352-eee(2)(d)(vi), and 352-eee(2)(d)(ix) shall be tolled and extended for a period equal to, in the aggregate, the duration of this Executive Order plus an additional period of 120 days. Sponsor must treat all tenants in occupancy as non-purchasing tenants as defined by GBL 352-eee(1)(e) for the duration of the Tolling Period, and must provide all such tenants in occupancy with all protections accorded to non-purchasing tenants under GBL 352-eee for the duration of the Tolling Period. Sponsor must submit an amendment to the offering plan to the Department of Law updating the date by which sponsor must declare the offering plan effective, as necessary, within 45 days from the expiration of this Executive Order or within such other longer timeframe as may be specified by the Department of Law;

• 13 NYCRR § 20.3(o)(12), and any order, rule, or regulation in furtherance of the requirements thereof, to the extent it requires sponsor to offer rescission if the first closing of a unit does not occur within a period of twelve months after the projected date for such closing (corresponding to the projected first year of operation) as set forth in the offering plan, and any such twelve month period, shall be tolled and extended for a period equal to, in the aggregate, the duration of this Executive Order plus an additional period of 120 days. Sponsor must submit an amendment to the offering plan to the Department of Law updating the first year of operation and projected date of first closing, as necessary, within 45 days from the expiration of this Executive Order or within such other longer timeframe as may be specified by the Department of Law. The Department of Law shall not deem the tolling provided under this Executive Order and Executive Order 202.18 of any such twelve month period to be, a material and/or adverse event or change under terms of the offering plan or any order, rule, or regulation applicable thereto, or otherwise;

• 13 NYCRR § 22.3(k)(10), and any order, rule, or regulation in furtherance of the requirements thereof, to the extent it requires sponsor to offer rescission if the first closing of a home or lot does not occur within a period of twelve months after the projected date for such closing (corresponding to the projected first year of operation) as set forth in the offering plan, and any such twelve month period, shall be tolled and extended for a period equal to, in the aggregate, the duration of this Executive Order plus an additional period of 120 days. Sponsor must submit an amendment to the offering plan to the Department of Law updating the first year of operation and projected date of first closing, as necessary, within 45 days from the expiration of this Executive Order or within such other longer timeframe as may be specified by the Department of Law. The Department of Law shall not deem the tolling provided under this Executive Order and Executive Order 202.18 of any such twelve month period to be a material and/or adverse event or change under terms of the offering plan or any order, rule, or regulation applicable thereto, or otherwise;

• 13 NYCRR § 25.3(l)(12), and any order, rule, or regulation in furtherance of the requirements thereof, to the extent it requires sponsor to offer rescission if the units are not ready for occupancy within a period of twelve months after the projected-date for such closing (corresponding to the projected first year of operation) as set forth in the offering plan, and any such twelve month period, shall be tolled and extended for a period equal to, in the aggregate, the duration of this Executive Order plus an additional period of 120 days. Sponsor must submit an amendment to the offering plan to the Department of Law updating the first year of operation and projected date of first closing, as necessary, within 45 days from the expiration of this Executive Order or within such other longer timeframe as may be specified by the Department of Law. The Department of Law shall not deem the tolling provided under this Executive Order and Executive Order 202.18 of any such twelve month period to be a material and/or adverse event or change under terms of the offering plan or any order, rule, or regulation applicable thereto, or otherwise;

• 13 NYCRR §§ 18.3(g)(1), 20.3(h)(1), 21.3(g), 22.3(g)(1), 23.3(h)(1), 24.3(j)(1), and 25.3(h)(1) and any order, rule, or regulation in furtherance of the requirements thereof, to the extent it requires sponsor to set forth a budget for the first year of operation, the requirements with respect to any such budget for the projected first year of operation shall be tolled and extended for a period equal to, in the aggregate, the duration of this Executive Order plus an additional period of 120 days. Sponsor must submit an amendment to the offering plan to the Department of Law updating the first year of operation, as necessary, within 45 days from the expiration of this Executive Order or within such other longer timeframe as may be specified by the Department of Law, and shall not be required to offer rescission unless such budget for the first year of operation increases by 25 percent or more during the pendency of this Executive Order (or rescission otherwise is required under terms of the offering plan or any order, rule, or regulation applicable thereto, or otherwise). The Department of Law shall not deem the tolling provided under this Executive Order and Executive Order 202.18 of sponsor's requirements with respect to the budget for the first year of operation to be a material and/or adverse event or change under terms of the offering plan or any order, rule, or regulation applicable thereto, or otherwise;

• Section 339-ee(2) of the Real Property Law, and any order, rule, or regulation in furtherance of the requirements thereof, to the extent it provides that as each unit in a condominium is first conveyed "there shall be allowed a credit against the mortgage recording taxes (except the special additional mortgage recording tax imposed by subdivision one-a of section two hundred fifty-three of the tax law) that would otherwise be payable on a purchase money mortgage," in respect of a portion of certain mortgage taxes previously paid, provided certain two-year time periods (as specified therein) have not elapsed before the recordation of the declaration of condominium or the first condominium unit is sold, as the case may be, the running of any such two-year period(s) is hereby suspended for the duration of this Executive Order, and any such two-year period is hereby extended for a period equal to the duration of this Executive Order plus an additional period of 120 days.


(L.S.)                    GIVEN under my hand and the Privy Seal of the State in the City of Albany this fifth of August in the year two thousand twenty.


*BY THE GOVERNOR*

/S/ Andrew M. Cuomo

/s/ Melissa DeRosa

*Secretary to the Governor*

**Credits**

Order dated Aug. 5, 2020.

Current with amendments included in the New York State Register, Volume XLVI, Issue 45, dated November 6, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.55, 9 NY ADC 8.202.55

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Compilation of Codes, Rules and Regulations of the State of New York
Title 9. Executive Department
Subtitle A. Governor's Office
Chapter I. Executive Orders
Part 8. Executive Orders (Andrew M. Cuomo)

9 NYCRR 8.202.55.1

Section 8.202.55.1. Executive Order No. 202.55.1: Continuing Temporary
Suspension and Modification of Laws Relating to the Disaster Emergency

Effective: August 6, 2020

Currentness

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New Yorr State and axe expected to continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, do hereby amend Executive Order 202.55 to include all suspensions and modifications, not superseded by a suspension or modification in a subsequent Executive Order for the Executive Orders listed in 202.55; and provided further, Executive Orders 202.48, 202.49, and 202.50 are continued in their entirety, through September 4, 2020.

(L.S.)
GIVEN under my hand ad the Privy Seal of the State in the City of Albany this sixth of August in the year two thousand twenty.

*BY THE GOVERNOR*

/S/ Andrew M. Cuomo

/s/ Melissa DeRosa

*Secretary to the Governor*

**Credits**
Order dated Aug. 6, 2020.

Current with amendments included in the New York State Register, Volume XLVI, Issue 45, dated November 6, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.55.1, 9 NY ADC 8.202.55.1

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Compilation of Codes, Rules and Regulations of the State of New York
    Title 9. Executive Department
        Subtitle A. Governor's Office
            Chapter I. Executive Orders
                Part 8. Executive Orders (Andrew M. Cuomo)

9 NYCRR 8.202.60

Section 8.202.60. Executive Order No. 202.60: Continuing Temporary

Suspension and Modification of Laws Relating to the Disaster Emergency

Effective: September 4, 2020

Currentness

**WHEREAS,** on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

**WHEREAS,** the 2019 Novel Coronavirus (COVID-19) arrived in New York predominantly from Europe, with over 2.2 million travelers corning in between the end of January and March 16, 2020, when the federal government finally implemented a full European travel ban;

**WHEREAS,** during that period of time, 2.2 million travelers landed in the New York City metropolitan area and entered New York's communities, which, when combined with the density of our population, caused New York to have the highest infection rate of COVID-19 in the country;

**WHEREAS,** both cases of travel-related and community contact transmission of COVID-19 have been documented throughout New York State and, despite the persistent and diligent efforts of state and - local governments to trace, test, and contain the virus, such transmission is expected to continue;

**WHEREAS,** New York has undertaken a cautious, incremental and evidence-based approach to reopening the State of New York;

**WHEREAS,** the dedication of New Yorkers to "flatten the curve" has successfully slowed the transmission of COVID-19, and these vigilant efforts must continue to protect ourselves and our friends, family members, neighbors, and community members;

**WHEREAS,** the State of New York had the highest infection rate, but has succeeded in reducing the rate to one of the lowest in the country, and New York is one of only a few states reported to be on track to contain COVID-19 transmission;

**WHEREAS,** other states that may have taken a less cautious approach are experiencing an increased prevalence of COVID-19 cases, and the prevalence of cases in other states continues to present a significant risk to New York's progress; and

**WHEREAS,** the federal government has failed to sufficiently address the causes and effects of the COVID-19 pandemic ravaging the nation by failing to, among other actions, establish a nation-wide testing strategy and impose a nation-wide face covering mandate;

**NOW, THEREFORE, I, ANDREW M. CUOMO,** Governor of the State of New York, by virtue of the authority vested in me by the Constitution and the Laws of the State of New York, do hereby find that a disaster continues to exist for which affected

state agencies and local governments are unable to respond adequately. Therefore, pursuant to the authority vested in me by the Constitution of the State of New York and Section 28 of Article 2-B of the Executive Law, I hereby continue the declaration of the State Disaster Emergency effective March 7, 2020, as set forth in Executive Order 202. This Executive order shall remain in effect until October 4, 2020.

**IN ADDITION,** I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule; or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, do hereby continue the suspensions, modifications, and directives, not superseded by a subsequent directive, made by Executive Orders 202 up to and including 202.21, and 202.27, 202.28, 202.29, 202.30, 202.38, 202.39, 202.40, 202.48, 202.49, 202.50, as extended, and Executive Order 202.55 and 202.55.1 for another thirty days through October 4, 2020 and do hereby suspend or modify the following:

• Section 2804 of the Public Authorities Law, to the extent necessary to permit public authorities to receive comments concerning a proposed toll adjustment through public hearings held remotely, use of telephone conference, video conference, and/or other means of transmission, including acceptance of public comments electronically or by mail, and to permit all required documentation and records to be available in an electronic format on the internet and upon request;

• Subdivision 4 of section 1 of chapter 25 of the laws of 2020 is modified to the extent necessary to provide that in addition to any travel to a country for which the Centers for Disease Control and Prevention has a level two or three travel health notice, an employee shall not be eligible for paid sick leave benefits or any other paid benefits pursuant to this chapter if such employee voluntarily travels to a state with a positive test rate higher than 10 per 100,000 residents, or higher than a 10% test positivity rate, over a seven day rolling average, and which the commissioner of the department of health has designated as meeting these conditions as outlined in the advisory issued pursuant to Executive Order 205, and the employee did not begin travel to such state before the commissioner of the department of health designated such state, and the travel was not taken as part of the employee's employment or at the direction of the employee's employer;

• The suspension contained in Executive Order 202.8, as continued and modified most recently in Executive Order 202.48 and 202.55 and 202.55.1, is hereby amended to provide that the tolling of civil statutes of limitation shall be lifted as it relates to any action to challenge the approval by any municipal government or public authority of a construction project that includes either affordable housing or space for use by not-for-profit organizations. The suspension of Section 30.30 of the Criminal Procedure Law, is hereby modified to require that speedy trial time limitations remain suspended in a jurisdiction until such time as petit criminal juries are reconvened in that jurisdiction; Criminal Procedure Law 170.70 is no longer suspended, and for any appearance which has been required to be in-person may continue to be conducted virtually with the consent of the parties.

• Rural Electric Cooperatives Law Section 17(d) to the extent necessary to eliminate the minimum in- person quorum requirements;

• Title 5 of Article 11 of the Real Property Tax Law, is suspended with respect to the ability of a municipality to sell liens.

**IN ADDITION,** by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I do hereby issue the following directives through October 4, 2020:

• The directive contained in Executive Order 202.45, as extended, requiring closure of "all schools statewide to in-person instruction, is hereby modified only insofar as to authorize schools statewide to be open for instruction, effective September 1, 2020, subject to adherence to Department of Health issued guidance and directives, and provided further that school districts must continue plans to ensure the availability of meals, and the availability of child care for health care and emergency response

workers, for any school district that is conducting its operations remotely and provided further that for any district which closes to in-person instruction, a contingency plan to immediately provide such services must be maintained;

• Whenever a coroner or medical examiner has a reasonable suspicion that COVID-19 or influenza was a cause of death, but no such tests were performed within 14 days prior to death in a nursing home or hospital, or by the hospice agency, the coroner or medical examiner shall administer both a COVID-19 and influenza test within 48 hours after death, whenever the body is received within 48 hours after death, in accordance with regulations promulgated by the Department of Health. The coroner or medical examiner shall report the death to the Department of Health immediately after and only upon receipt of both such test results through a means determined by the Department of Health. The State Department of Health shall provide assistance for any requesting coroner or medical examiner.

• Nassau County Administrative Code § 5-17.0(2) to the extent necessary to suspend the deadline to pay 2019-2020 second half general taxes appearing on the Nassau County tax roll without interest or penalties from August 10, 2020 to August 31, 2020 for residential property that was owned in whole or in part at the time of their death by healthcare workers and first responders in Nassau County who passed away after contracting the novel coronavirus and which is now owned by immediate family members or their estates.

• Nassau County Administrative Code § 5-16.0(b) to the extent necessary to provide a discount of one percent on payments of second half 2020-2021 school district taxes which are made on or before December 10, 2020.

• The directive contained in Executive Order 202.3, as extended, that required closure to the public of any facility authorized to conduct video lottery gaming or casino gaming, is hereby modified to allow such facilities to open beginning on or after September 9, 2020, subject to adherence to Department of Health guidance.

• The directive contained in Executive Order 202.50, as amended by Executive Order 202.53, that allowed indoor common portions of retail shopping malls to open in regions of the state that are in Phase Four of the state's reopening, provided that such malls continue to be closed in the New York City region, is hereby amended to allow such malls to open in the New York City region, so long as such malls adhere to Department of Health issued guidance on and after September 9, 2020.

(L.S.)  GIVEN under my hand and the Privy Seal of the State in the City of Albany this fourth day of September in the year two thousand twenty.

*BY THE GOVERNOR*

/S/ Andrew M. Cuomo

/s/ Melissa DeRosa

*Secretary to the Governor*

**Credits**
Order dated Sept. 4, 2020.

Current with amendments included in the New York State Register, Volume XLVI, Issue 45, dated November 6, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.60, 9 NY ADC 8.202.60

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

McKinney's Consolidated Laws of New York Annotated
    Labor Law (Refs & Annos)
        Chapter 31. Of the Consolidated Laws (Refs & Annos)
            Article 18. Unemployment Insurance Law (Refs & Annos)
                Title 8. Hearings and Appeals (Refs & Annos)

McKinney's Labor Law § 623

§ 623. Decisions final

Currentness

1. A decision of a referee, if not appealed from, shall be final on all questions of fact and law. A decision of the appeal board shall be final on all questions of fact and, unless appealed from, shall be final on all questions of law.

2. No finding of fact or law contained in a decision rendered pursuant to this article by a referee, the appeal board or a court shall preclude the litigation of any issue of fact or law in any subsequent action or proceeding; provided, however, that this subdivision shall not apply to causes of action which (i) arise under this article, (ii) seek to collect or challenge liability for unemployment insurance contributions, (iii) seek to recover overpayments of unemployment insurance benefits, or (iv) allege that a claimant or employer was denied constitutional rights in connection with the administrative processing, hearing, determination or decision of a claim for benefits or assessment of liability for unemployment insurance contributions.

**Credits**
(Added L.1944, c. 705, § 1. Amended L.1987, c. 258, § 1.)

Notes of Decisions (153)

McKinney's Labor Law § 623, NY LABOR § 623
Current through L.2024, chapters 1 to 443. Some statute sections may be more current, see credits for details.

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 108 of 189

UNEMPLOYMENT INSURANCE APPEALS—FINALITY OF..., 1987 N.Y. Sess. Law...

1987 N.Y. Sess. Law Serv. 258 (McKinney)

McKINNEY'S

1987 NEW YORK SESSION LAWS

THE 210TH SESSION

Additions are indicated by <<+ UPPERCASE +>>

Deletions by <<- Lowercase ->>

Changes in tabular material are not indicated

CHAPTER 258

A.7319

UNEMPLOYMENT INSURANCE APPEALS—FINALITY OF DECISIONS

Approved July 7, 1987, effective as provided in section 2

AN ACT to amend the labor law, in relation to decisions of the unemployment appeals board

The People of the State of New York, represented in Senate and Assembly, do enact as follows:

NY LABOR § 623

§ 1. Section six hundred twenty-three of the labor law, as added by chapter seven hundred five of the laws of nineteen hundred forty-four, is amended to read as follows:

§ 623. Decisions final

<<+1.+>> A decision of a referee, if not appealed from, shall be final on all questions of fact and law. A decision of the appeal board shall be final on all questions of fact and, unless appealed from, shall be final on all questions of law.

<<+2. NO FINDING OF FACT OR LAW CONTAINED IN A DECISION RENDERED PURSUANT TO THIS ARTICLE BY A REFEREE, THE APPEAL BOARD OR A COURT SHALL PRECLUDE THE LITIGATION OF ANY ISSUE OF FACT OR LAW IN ANY SUBSEQUENT ACTION OR PROCEEDING; PROVIDED, HOWEVER, THAT THIS SUBDIVISION SHALL NOT APPLY TO CAUSES OF ACTION WHICH (I) ARISE UNDER THIS ARTICLE, (II) SEEK TO COLLECT OR CHALLENGE LIABILITY FOR UNEMPLOYMENT INSURANCE CONTRIBUTIONS, (III) SEEK TO RECOVER OVERPAYMENTS OF UNEMPLOYMENT INSURANCE BENEFITS, OR (IV) ALLEGE THAT A CLAIMANT OR EMPLOYER WAS DENIED CONSTITUTIONAL RIGHTS IN CONNECTION WITH THE ADMINISTRATIVE PROCESSING, HEARING, DETERMINATION OR DECISION OF A CLAIM FOR BENEFITS OR ASSESSMENT OF LIABILITY FOR UNEMPLOYMENT INSURANCE CONTRIBUTIONS.+>>

NY LABOR § 623, note

§ 2. This act shall take effect immediately and shall apply to findings of fact or law contained in decisions rendered on or after such date.

NY LEGIS (1987) 258

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 109 of 189

Andrew v. J.P. Morgan Chase & Co., Not Reported in Fed. Supp. (2018)

2018 IER Cases 373,933

2018 WL 4926440
United States District Court, S.D. New York.

Taryn-Lee ANDREW, Plaintiff,
v.
J.P. MORGAN CHASE & CO.,
Edward William Watson, Defendants.

18cv4421(DLC)
|
Signed 10/09/2018

**Attorneys and Law Firms**

For the plaintiff: Bernard V. Kleinman, Law Office of Bernard V. Kleinman, PLLC, 108 Village Square, Suite 313, Somers, NY 10589.

For the defendants: Maxine H. Neuhauser, Jiri Janko, Epstein, Becker, & Green, P.C., 250 Park Avenue, New York, New York 10177.

OPINION AND ORDER

DENISE COTE, United States District Judge

**\*1** The defendants have moved to dismiss the first amended complaint ("FAC"). For the reasons that follow, the motion is granted.

**Background**

The following facts are alleged in the FAC. Prior to her employment with J.P. Morgan Chase ("JPMC"), plaintiff Taryn-Lee Andrew ("Andrew") entered into a romantic relationship with defendant Edward Watson ("Watson") in or around 2008 that lasted for a period of about two years. Watson was an employee of defendant JPMC during the entire period of their relationship, holding the position of Executive Director. Andrew began working as a business analyst in the London office of JPMC in or around April 2010. During the course of the relationship, Watson was allegedly violent toward Andrew, leading to his arrest by London police. Andrew's injuries caused permanent damage to two of her fingers. Andrew reported Watson's behavior to her supervisor at JPMC, Andrew Brook, in 2010.

Andrew requested a transfer to the New York office of JPMC and moved to New York in October 2010. While Andrew was working at the JPMC office in New York, Watson would occasionally travel to that office from London for business reasons. Watson's presence in the New York office caused Andrew great distress, compelling her to excuse herself from work to see doctors. Andrew was diagnosed with post-traumatic stress disorder, and was prescribed medications. She made her JPMC supervisor, John Casper, aware of the situation, and asked to be notified if Watson was ever posted to the New York office. JPMC did not notify Andrew each time that Watson was scheduled to be in New York.

After her posting to New York, Andrew's performance reviews began to decline. On April 17, 2012, she received notice that her employment with JPMC was terminated because JPMC's "staffing needs [had] changed." She was given forty-five days to execute a proposed Separation Agreement or else waive any severance pay. On May 29, 2012, Andrew, through her counsel, declined to execute the Separation Agreement.

Andrew took no further action until more than three and a half years later, in January 2016, when her attorney sent a letter to JPMC seeking to resolve the issue of her termination. That letter was followed by two additional letters in February and April 2016. The instant action was filed in the New York County Supreme Court on April 14, 2018 -- six years after Andrew's termination by JPMC. On May 17, 2018, the action was removed to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446.

JPMC filed a motion to dismiss on May 18, 2018. On June 25, Andrew filed an amended complaint, which added Watson as a defendant. JPMC filed a renewed motion to dismiss on June 26. That motion became fully submitted on July 31.

In her FAC, Andrew asserts claims against JPMC for breach of an implied employment contract between her and JPMC, negligent infliction of emotional distress, various violations of the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and Title VII of the Civil Rights Act of 1964, civil conspiracy to violate the NYSHRL, and violation of Section 1182 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1101 et seq. She also asserts identical claims for negligent infliction of emotional distress and civil conspiracy against Watson.

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 110 of 189

Andrew v. J.P. Morgan Chase & Co., Not Reported in Fed. Supp. (2018)

2018 IER Cases 373,933

**\*2** Andrew admits that the statute of limitations has run on her Title VII and state law claims with the exception of her breach of contract claim, but relies on the doctrine of equitable tolling. [1] She has abandoned her claim under Section 1182 of the Immigration and Nationality Act.

## Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Cohen v. Rosicki, Rosicki & Assocs., 897 F.3d 75, 80 (2d Cir. 2018) (citation omitted). A claim to relief is plausible when the factual allegations in a complaint "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Progressive Credit Union v. City of New York, 889 F.3d 40, 48 (2d Cir. 2018) (citation omitted). A court "must accept as true all of the allegations contained in a complaint, though threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Carlin v. Davidson Fink LLP, 852 F.3d 207, 212 (2d Cir. 2017) (citation omitted).

Employment in the State of New York is at-will. "Under New York's employment-at-will doctrine, an employer has a nearly unfettered right to discharge an employee." Jones v. Dunkirk Radiator Corp., 21 F.3d 18, 21 (2d Cir. 1994). "Under New York law, employment for an indefinite or unspecified term is presumed to be at will and freely terminable by either party at any time without cause or notice." Brown v. Daikin America Inc., 756 F.3d 219, 231 (2d Cir. 2014) (citation omitted).

The presumption of at-will employment, however, may be rebutted "by demonstrating an express limitation in the individual contract of employment curtailing an employer's right to terminate at will." Id. (citation omitted). "Policies in a personnel manual specifying the employer's practices with respect to the employment relationship ... may become a part of the employment contract" when the employee alleging a breach of contract can prove "(1) an express written policy limiting the employer's right of discharge exists, (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment." Baron v. Port Authority of New York and New Jersey, 271 F.3d 81, 85 (2d Cir. 2001). The Second Circuit has observed that this is a "difficult pleading burden" and that "routinely issued employee manuals, handbooks and

policy statements should not lightly be converted into binding employment agreements." Brown, 756 F.3d at 231 (citation omitted).

For a Title VII claim arising in New York to be timely, a plaintiff must file a charge with the EEOC or its state equivalent within 300 days of the allegedly unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1); Vega v. Hempstead Union Free School District, 801 F.3d 72, 78-79 (2d Cir. 2015); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998). While "a plaintiff's failure to fully comply with the remedial administrative scheme envisioned by Title VII does not preclude judicial review, ... the administrative filing requirements operate like a statute of limitations," which are subject to equitable tolling. Hardaway v. Hartford Public Works Dep't, 879 F.3d 486, 491 (2d Cir. 2018) (citation omitted).

**\*3** Both New York State and New York City employment discrimination claims are governed by a three-year statute of limitations. See N.Y.C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d). Common law actions to recover damages for a personal injury such as negligent infliction of emotional distress are also subject to a three-year statute of limitations. N.Y.C.P.L.R § 214(5); see also Yong Wen Mo v. Gee Ming Chan, 792 N.Y.S.2d 589, 591 (2d Dep't 2005); AB ex rel. EF v. Rhinebeck Central School District, 361 F. Supp. 2d 312, 317 (S.D.N.Y. 2005).

A plaintiff seeking equitable tolling of a statute of limitations must establish "(1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing." Bolarinwa v. Williams, 593 F.3d 226, 231 (2d Cir. 2010) (citation omitted). "Statutes of limitations are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for her lateness in filing." Gonzalez v. Hasty, 651 F.3d 318, 322 (2d Cir. 2011) (citation omitted). Equitable tolling is "an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." Id. (citation omitted) (emphasis in original). The Supreme Court has urged that it is "a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." Wallace v. Kato, 549 U.S. 384, 396 (2007).

Andrew's claim for breach of her employment contract fails because employment in the State of New York is at-will

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 111 of 189

Andrew v. J.P. Morgan Chase & Co., Not Reported in Fed. Supp. (2018)
2018 IER Cases 373,933

and she has not established that there was an employment contract between her and JPMC for a specified period of time. The Harassment-Free Workplace Policy upon which Andrew initially relies is precisely the sort of "routinely issued employee manual[ ], handbook[ ] [or] policy statement[ ]" that "should not lightly be converted into [a] binding employment agreement[ ]." Brown, 756 F.3d at 231 (citation omitted). [2]

 **\*4** In her opposition, Andrew relies instead on a letter from the JPMC Human Resources Department dated August 19, 2010, which outlined the terms of her employment in New York. This employment letter cannot reasonably be read to constitute a contract for employment for a fixed period of time. While the letter lists a start date, salary, and benefits, it does not contain any language with respect to Andrew's end date or the term of her employment. Absent such language, "employment for an indefinite or unspecified term is presumed to be at will." Brown, 756 F.3d at 231.

Andrew further contends that this letter represented a contract for a minimum period of employment of three years, because she came to the United States on an H1B visa, which has a time limitation of three years. This argument is meritless. An H1B visa is valid for a period of "up to three years," with a possible extension to six years. 8 C.F.R. § 214.2(h)(9)(iii)(A) (1). It does not obligate an employer to continue to employ the visa recipient for a minimum of three years. This is especially the case since the JPMC letter does not make any mention of Andrew's H1B visa. There is, in short, nothing to rebut the strong presumption under New York law that Andrew was an at-will employee of JPMC.

The remainder of Andrew's claims are time-barred or have been abandoned. This case was filed six years after the alleged discriminatory actions took place -- well outside the three year statute of limitations for Andrew's state law claims. Andrew does not contest that her state law claims are time barred, but rather relies on the doctrine of equitable tolling.

Andrew has not made a showing that equitable tolling is appropriate in this case. She has not "been pursuing her rights diligently." Bolarinwa, 593 F.3d at 231. The only action Andrew describes taking in response to her termination from JPMC was to send a letter, through her counsel, in which she declined to execute the proposed separation agreement and explained her belief that her employment was terminated in order to protect Watson. She describes no further action until three and a half years later, after the statute of limitations

had already run, at which point Andrew's counsel sent three additional letters to JPMC seeking to resolve the dispute. Another two years passed before this case was filed.

Nor has Andrew alleged that any extraordinary circumstances prevented her from timely asserting her rights. She cites simply "the gravity of the allegations herein, and the fact that Defendant Watson is still an employee of Chase Bank." She has not adequately explained how these facts have prevented her from asserting her rights under state or federal law. Andrew has identified no facts that suggest she should be granted the extraordinary remedy of equitable tolling.

Andrew's Title VII claims are additionally barred because of her failure to exhaust her administrative remedies. Andrew did not file a complaint with the EEOC or the equivalent New York agency within 300 days of the alleged action taking place as required by 42 U.S.C. § 2000e-5(e)(1). See also Vega, 801 F.3d at 78-79. For the same reasons set out above, equitable tolling is inappropriate with respect to Andrew's Title VII claim.

Andrew's claims against Watson are also dismissed for the reasons described above. Where, as here, the reasons for dismissal apply equally to all defendants, and the plaintiff has had notice and a full opportunity to be heard, sua sponte dismissal of claims against defendants that have not yet been served and have not appeared is appropriate. See Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.6 (2d Cir. 1990). For example, sua sponte dismissal "is ... appropriate if it appears from the face of the complaint that the action is barred ... by expiration of the statute of limitations. Baker v. Cuomo, 58 F.3d 814, 819 (2d Cir. 1995). Both of the claims asserted against Watson (negligent infliction of emotional distress and civil conspiracy) are dismissed as time-barred for the same reasons discussed above with respect to JPMC.

## Conclusion

 **\*5** The defendants' June 26, 2018 motion to dismiss the FAC for failure to state a claim is granted with respect to all defendants.

## All Citations

Not Reported in Fed. Supp., 2018 WL 4926440, 2018 IER Cases 373,933

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.  3

2018 IER Cases 373,933

---

## Footnotes

1      Ordinarily, a motion to dismiss based on a statute of limitations would have to be converted into a motion for summary judgment because it addresses an affirmative defense that a plaintiff has no burden to anticipate. But in this case, Andrew attached many documents to her complaint that JPMC has relied upon. Andrew has not identified any further facts or documents that she would rely upon to rebut JPMC's statute of limitations defense.

2      Although only the "Harassment-Free Workplace Policy" was attached to Andrew's complaint, the complaint also contends that "such other policies as adopted by the Defendant created an enforceable contract between the parties." Andrew has not specifically identified the "other policies" to which she refers. As set forth in the exhibits to JPMC's declaration in support of its motion to dismiss, JPMC's employment-at-will policy specifically stated that "nothing set forth in these policies constitutes or creates a contract or guarantee of employment or confers any rights to continued employment." JPMC's Code of Conduct similarly stated that "[t]he Code of Conduct does not create any rights to continued employment and is not an employment contract." To the extent that Andrew relies on these policies, they are "integral to the complaint" and thus properly considered at the motion to dismiss stage. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002). Andrew has not challenged the appropriateness of considering these documents at the motion to dismiss stage, and indeed relies on the Code of Conduct in her opposition to the motion to dismiss.

---

**End of Document**                                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

841 Fed.Appx. 334 (Mem)
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE 32.1
AND THIS COURT'S LOCAL RULE 32.1.1. WHEN
CITING A SUMMARY ORDER IN A DOCUMENT
FILED WITH THIS COURT, A PARTY MUST
CITE EITHER THE FEDERAL APPENDIX OR AN
ELECTRONIC DATABASE (WITH THE NOTATION
"SUMMARY ORDER"). A PARTY CITING A
SUMMARY ORDER MUST SERVE A COPY OF IT ON
ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals, Second Circuit.

Sylvia BLACK, Plaintiff-Counter Defendant-Appellant,

v.

Peace Officer Christine VITELLO, Peace Officer
Rick Rosenberry, Peace Officer Bill Heine,
of the SPCA WNY, Spca of Western New
York, Defendants-counter Claimants-appellees.

20-1520-cv
|
March 29, 2021

Appeal from a judgment of the United States District Court
for the Western District of New York (Sinatra, *J*.; Foschio,
*M.J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of said District Court be and it hereby is
**AFFIRMED**.

**Attorneys and Law Firms**

Appearing for Appellant: Sylvia Black, pro se, Cheektowaga,
NY.

Appearing for Appellees: Alan Donatelli, Amherst, NY.

Present: DENNIS JACOBS, ROSEMARY S. POOLER,
MICHAEL H. PARK, Circuit Judges.

**SUMMARY ORDER**

Appellant Sylvia Black, pro se, sued the Society for the
Prevention of Cruelty to Animals of Western New York
("SPCA") and three of its officers under 42 U.S.C. § 1983.
Prior to filing the complaint with the district court, Black
mailed copies of the complaint to the defendants. She did
not later personally serve them with copies of a summons
issued by the district court clerk and the filed complaint. The
defendants moved to dismiss the complaint and a magistrate
judge recommended granting the motion on the ground that
the court lacked personal jurisdiction over the defendants
due to improper service. The district court adopted the
recommendation and dismissed the complaint. On appeal,
Black moves to compel the defendants to provide a copy of
their appellate brief. We assume the parties' familiarity with
the underlying facts, the procedural history of the case, and
the issues on appeal.

We review de novo district court orders dismissing a
complaint for lack of personal jurisdiction. **\*335** *Chufen
Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir.
2020). We review dismissals based on insufficient service of
process for abuse of discretion. *Dickerson v. Napolitano*, 604
F.3d 732, 740 (2d Cir. 2010). "Before a federal court may
exercise personal jurisdiction over a defendant, the procedural
requirement of service of summons must be satisfied."
*Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94
(2d Cir. 2006) (quoting *Omni Cap. Int'l, Ltd. v. Rudolf Wolff
& Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415
(1987)). Therefore, to survive a motion to dismiss premised
on lack of personal jurisdiction and insufficient service of
process, the plaintiff must demonstrate that she adequately
served the defendants. *See Penguin Grp. (USA) Inc. v. Am.
Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010) ("In order to
survive a motion to dismiss for lack of personal jurisdiction,
a plaintiff must make a prima facie showing that jurisdiction
exists." (internal quotation marks omitted)); *Dickerson*, 604
F.3d at 752 ("When a defendant moves to dismiss under Rule
12(b)(5), the plaintiff bears the burden of proving adequate
service." (alteration and internal quotation marks omitted)).

The requirements for service of process are set out in Federal
Rule of Civil Procedure 4. Rule 4 requires that a summons,
which is valid only when it is signed by the district court
clerk and bears the court's seal, be served with a copy of
the complaint. Fed. R. Civ. P. 4(a)(1)(F)–(G), (c)(1). Service

on an individual defendant must be accomplished by (1) following state law in the state where the district court is located, (2) personally delivering a copy of the summons and complaint to the defendant, (3) leaving a copy of the summons and complaint at the defendant's residence with another resident, or (4) delivering a copy to an agent authorized by appointment or law to receive service of process. Fed. R. Civ. P. 4(e). Service on a corporation or association can be accomplished by the same methods or by delivering a copy of the summons and complaint to an officer, manager, or other authorized agent. Fed. R. Civ. P. 4(h)(1).

Black did not properly serve the defendants. She did not offer any evidence showing that she had served copies of the complaint with a summons signed by the district court clerk or bearing the court's seal. Further, Black did not show that she personally served the individual defendants or an officer or agent of the SPCA, a non-profit corporation. Although Black provides evidence that she mailed the items to the defendants, mail is not an acceptable method of service under Federal Rule of Civil Procedure 4. Nor does New York law permit service by mail alone; service on a natural person generally requires personal delivery of the summons and complaint to either the individual or a designated agent. *See* N.Y. C.P.L.R. § 308(1), (3). Alternatively, the summons can be delivered to the defendant's residence or place of business and left with "a person of suitable age" if a copy is also mailed to the defendant's residence or place of business. *Id.* § 308(2). Finally, if service cannot be made by these means, it can be effected by affixing a copy of the summons to the defendant's residence or place of business and by mailing it to the same. *Id.* § 308(4). A judge may order an alternative if none of the above methods is practicable. *Id.* § 308(5). Service on a corporation is accomplished by personal delivery of the summons to an officer or agent of the corporation or the New York Secretary of State. N.Y. C.P.L.R. § 311(a). New York allows other avenues of service only when the original methods are impracticable, and the alternative is ordered by the court. *Id.* § 311(b). Black did not serve the defendants pursuant to these methods or obtain permission **\*336** from the district court to serve the summons and complaint by mail. Therefore, the district court properly dismissed the complaint.

"We review for an abuse of discretion a district court's Rule 4(m) dismissal for failure to serve process." *Zapata v. City of New York*, 502 F.3d 192, 195 (2d Cir. 2007). Absent a showing of good cause, "we generally will not reverse a district court's dismissal of an action for lack of service unless the [plaintiff] can 'advance some colorable excuse for neglect.'" *Meilleur v. Strong*, 682 F.3d 56, 61 (2d Cir. 2012). Here, Black has not provided any explanation for her failure to timely serve Defendants. Moreover, although Rule 4(m) directs district courts to order dismissal "without prejudice" when based on a failure to timely serve process, Fed. R. Civ. P. 4(m), a district court may dismiss a case with prejudice where "[t]he problem with [the plaintiff's] causes of action is substantive" and "better pleading will not cure it," *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Upon review of Black's complaint, we hold that it is "beyond doubt that [Black] can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Lerman v. Bd. of Elections*, 232 F.3d 135, 140 (2d Cir. 2000) (internal quotation marks omitted). Amendment to the complaint would thus be futile, and so we find that the district court did not abuse its discretion in dismissing the case with prejudice.

We also deny Black's motion to compel the defendants to provide her with a copy of their brief because they have provided copies of their brief to her. They filed two affidavits of service showing that they twice mailed a copy of the brief to Black's address of record. Further, the defendants provided a receipt from Federal Express showing that the second copy had been delivered and a copy of an email from their attorney to Black that attached a courtesy copy of the brief. Black has not stated that the address used to mail the briefs was incorrect or that she never received the emailed copy. The motion is therefore meritless.

We have considered the remainder of Black's arguments and find them to be without merit. Accordingly, we AFFIRM the judgment of the district court and DENY Black's motion to compel.

### All Citations

841 Fed.Appx. 334 (Mem)

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

**DBW Investments, LLC v. VNUE, Inc., Not Reported in Fed. Rptr. (2024)**

2024 WL 2524033

2024 WL 2524033
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

DBW INVESTMENTS, LLC, GOLOCK Capital, LLC, Plaintiffs-Counter Defendants-Appellees,

v.

VNUE, INC., Defendant-Counter Claimant-Appellant,
Crossover Capital Fund II, LLC, David Whitlock,
Christopher Gorog, Kenneth Lustig, Counter-Defendants.

23-857
|
May 24, 2024

Appeal from the June 1, 2023, judgment of the United States District Court for the District of Connecticut (Denise Cote, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on June 1, 2023, is **AFFIRMED**

**Attorneys and Law Firms**

FOR     PLAINTIFFS-COUNTER-DEFENDANTS-APPELLEES: Daniel S. Steinberg, The Law Offices of Daniel S. Steinberg P.C., New York, NY.

FOR     DEFENDANT-COUNTER-CLAIMANT-APPELLANT: Mark R. Basile, (Marjorie M. Santelli, on the brief), The Basile Law Firm, P.C., Jericho, NY.

PRESENT: JOSÉ A. CABRANES, BARRINGTON D. PARKER, MARIA ARAÚJO KAHN, Circuit Judges,

## SUMMARY ORDER

**\*1** Defendant-Appellant VNUE, Inc. ("VNUE") appeals from a judgment of the district court, entered following a bench trial, awarding Plaintiffs-Appellees DBW Investments, LLC and GOLOCK Capital, LLC (collectively, "Appellees") damages in excess of $1.7 million, including attorneys' fees, for breach of contract.[1] On appeal, VNUE challenges the district court's conclusion that VNUE breached the terms of several promissory notes by "fail[ing] to deliver" certain stock purchase warrants to Appellees. *Golock Cap., LLC v. VNUE, Inc.*, No. 21cv8103 (DLC), 2023 WL 3750333, at

\*4 (S.D.N.Y. June 1, 2023). In particular, VNUE contends that the court erred in finding that VNUE "refused to allow the Warrants to be exercised." *Id.* We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

We review a district court's findings of fact following a bench trial for clear error. *See Siemens Energy, Inc. v. Petróleos de Venezuela, S.A.*, 82 F.4th 144, 153 (2d Cir. 2023). Under the clear error standard, we are required to accept the district court's factual findings unless " 'we are left with the definite and firm conviction that a mistake has been [made].' " *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 119 (2d Cir. 2021) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 396 (1948)). "[I]f the district court's account of the evidence is plausible in light of the record viewed in its entirety," we "may not reverse it." *Siemens*, 82 F.4th at 153 (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573–74 (1985)).

Here, VNUE argues, *inter alia*, that the evidence presented by Appellees at trial was insufficient to support the district court's finding that it refused to issue shares under the warrants. In response, Appellees assert that VNUE's claim is unpreserved for appellate review because VNUE did not raise the argument below. We need not decide the preservation issue, as it is readily apparent that VNUE's arguments on appeal are meritless.

VNUE's obligation to deliver the warrants—including the specific share amounts and exercise price—appears on the face of the contract amendments admitted at trial. *See* App'x 100, 141. Appellees presented direct testimony from one of their managing members, in the form of a declaration, that VNUE had not issued the warrants, *see* App'x 1128, as well as unrebutted damages calculations that unambiguously include the value of the undelivered warrants, *see* App'x 1135. VNUE failed to challenge any of this evidence and presented no arguments or evidence to the contrary. Instead, VNUE relied exclusively on the affirmative defense of usury as to all of Appellees' claims.[2] Accordingly, the district court properly held that VNUE breached its contractual obligations with respect to the warrants and, when awarding damages, correctly "factor[ed] in ... the value of the Warrants VNUE *was to issue* to the Plaintiffs." *Golock Cap., LLC*, 2023 WL 3750333, at \*4 (emphasis added). The district court's account of the warrants evidence is more than "plausible in light of the record viewed in its entirety," and thus there is no clear error. *Anderson*, 470 U.S. at 574.

**DBW Investments, LLC v. VNUE, Inc., Not Reported in Fed. Rptr. (2024)**

2024 WL 2524033

* * *

**All Citations**

**\*2**  We have considered VNUE's remaining arguments and find them to be without merit. For the reasons set forth above, we **AFFIRM** the judgment of the district court.

Not Reported in Fed. Rptr., 2024 WL 2524033

---

### Footnotes

1    Although VNUE's notice of appeal was filed prematurely, this Court retains jurisdiction over the present appeal as the district court entered a final judgment, and subsequently amended its judgment, before the appeal was heard. *See* Fed. R. App. P. 4(a)(2); *see also Zeno v. Pine Plains Cent. School Dist.*, 702 F.3d 655, 663 n.6 (2d Cir. 2012) ("Although the [appellant] filed a premature notice of appeal, because the district court entered an amended final judgment before the appeal was heard and [the appellee] suffered no prejudice, the jurisdictional defect has been cured.").

2    In its pre-trial submissions, VNUE noted that it "does not dispute that it violated the [l]oans by failing to honor conversions and repay the amounts due by the maturity date. Thus, the Court must now determine whether [VNUE] has established the affirmative defense of criminal usury." App'x at 758.

---

**End of Document**                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 117 of 189

Eastern Savings, FSB v. Thompson, Not Reported in Fed. Supp. (2016)

2016 WL 2977268

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

EASTERN SAVINGS, FSB, Plaintiff,

v.

Ebony THOMPSON, Katrina Breedy New York
City Parking Violations Bureau, New York
Environmental Control Board and John Doe #1,
John Doe #2, John Doe #3, John Doe #4, John Doe
#5, John Doe #6, the last six names being fictitious
and unknown to plaintiff, the persons or parties
intended being the tenants, occupants, persons or
corporations, if any, having or claiming interest upon
the premises described in the Complaint, Defendants.

12-CV-1197(WFK)(RLM)
|
Signed 05/19/2016

**Attorneys and Law Firms**

Jerold C. Feuerstein, Dwight Yellen, David R. Groman, Kriss
& Fuerstein LLP, New York, NY, for Plaintiff.

Steven A. Biolsi, Law Office of Steven A. Biolsi, Forest Hills,
NY, for Defendants.

## DECISION AND ORDER

WILLIAM F. KUNTZ, II, United States District Judge

 **\*1**  On November 24, 2015, the Court of Appeals for
the Second Circuit vacated this Court's award of summary
judgment to defendants Ebony Thompson and Katrina Breedy
(collectively, "Defendants") and denial of summary judgment
to plaintiff Eastern Savings Bank ("Plaintiff"), and remanded
the case for further proceedings consistent with its summary
order. Following the Second Circuit's decision, both parties
in this action filed renewed cross motions for summary
judgment. For the reasons discussed below, the Court grants
Plaintiff's renewed motion for summary judgment and denies
Defendants' renewed motion for summary judgment.

## BACKGROUND

### I. Note and Mortgage

The Court assumes the parties' familiarity with the underlying
facts and record of this case. See *E. Sav., FSB v. Thompson,
57 F. Supp. 3d 198, 200-01 (E.D.N.Y. 2014)* (Kuntz, J.)
(providing a fuller recitation of the facts and record), *vacated
and remanded sub nom. E. Sav. Bank, FSB v. Thompson,* 631
Fed.Appx. 13 (2d Cir. 2015).

On May 26, 2006, Defendants executed a $500,000.00 note
and mortgage in favor of Home 123 Corporation. *See* Original
Note, ECF No. 61-1; Brown Aff. ¶ 4, ECF No. 37-2. The Note
—secured by a mortgage encumbering the investment real
property at 1696 Rockaway Parkway in Brooklyn, New York
—was indorsed in blank, essentially turning the Note into a
bearer security. Original Note at 5; Brown Aff. ¶ 4.

On June 23, 2006, Home 123 Corporation sold the Note and
Mortgage to UBS Real Estate Securities, Inc. Bollo Aff. ¶ 3,
ECF No. 37-3. Pursuant to the terms of the Note, Defendants
were to make monthly payments of $3,636.47 due on the first
of each month, beginning July 1, 2006, until the maturity
date of the Note. Original Note ¶¶ 1-3. On September 1,
2006, Defendants defaulted by failing to make their monthly
payment and all subsequent payments. Brown Aff. ¶ 17. As a
result, Defendants became subject to late charges of 2.000%
of the overdue payment of principal and interest fifteen days
after the due date. Original Note ¶ 7. Furthermore, the holder
of the Note may demand immediate payment of the amount
not yet paid. *Id.* ¶ 7(C) (acceleration clause).

On September 20, 2007, Plaintiff purchased the Note and
Mortgage from UBS Real Estate Securities, Inc. Bollo Aff. ¶
5. As a result of the purchase, the Note and Mortgage were
physically delivered to Plaintiff. Brown Aff. ¶ 8. Plaintiff is
currently in possession of the original Note and Mortgage.
*Id.* (reporting physical possession of the original Note and
original Mortgage as of November 20, 2007); Bollo Aff. ¶ 9
(same).

On September 19, 2011, Plaintiff sent a demand letter to
Defendants. Brown Aff. ¶ 20. This demand letter notified
Defendants that they were in default, provided thirty days
from receipt of the letter to cure the default, and accelerated
the amount due on the Note. *Id.* ¶ 20; *see also* Original Note
¶ 7(C) (procedures for providing written notice of default).
When Defendants failed to cure the default, *id.* ¶ 21, Plaintiff
initiated this foreclosure action.

### II. Procedural Posture

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 118 of 189

Eastern Savings, FSB v. Thompson, Not Reported in Fed. Supp. (2016)

**\*2** This foreclosure action comes before this Court pursuant diversity jurisdiction. *See* 28 U.S.C. § 1332; Compl. ¶ 8, ECF No. 1. Defendants filed an answer, in which they asserted five affirmative defenses: (1) failure to state a viable cause of action, (2) lack of standing, (3) laches and estoppel, (4) statute of frauds, and (5) fraud. Answer, ECF No. 4. The parties submitted cross motions for summary judgment. ECF Nos. 32-49. On November 5, 2015, the Court issued a Decision and Order granting summary judgment for Defendants and denying summary judgment for Plaintiff. Summ. J., ECF No. 50.

In granting summary judgment for Defendants, the Court held that Plaintiff stated a *prima facie* case to foreclose a mortgage. *E. Sav., FSB,* 57 F. Supp. 3d at 202-03 (finding the existence of a note, mortgage, and proof of default sufficient to establish a *prima facie* case for foreclosure). The Court concluded, however, that Plaintiff lacked standing to bring the foreclosure action. *Id.* at 203-05. Plaintiff appealed and, in a summary order, the Court of Appeals for the Second Circuit vacated and remanded the case. *E. Sav. Bank, FSB,* 631 Fed.Appx. at 17.

The parties filed renewed cross motions for summary judgment. PL Renewed Mot. Summ. J, ECF No. 60 (incorporating Plaintiff's earlier motion for summary judgment, ECF Nos. 37-43); Defs. Renewed Mot. Summ. J., ECF No. 59-1 (incorporating Defendants' earlier motion for summary judgment, ECF Nos. 32-36). The Court now grants summary judgment for Plaintiff and denies summary judgment for Defendants.

## DISCUSSION

### I. Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.,* 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks and citations omitted). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 212 (2d Cir. 2001) (internal editing omitted) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case ... since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). Importantly, if the evidence produced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986) (internal citations omitted).

### II. Analysis

The Court grants Plaintiff's renewed motion for summary judgment and denies Defendants' renewed motion for summary judgment. The Court finds that Plaintiff has standing to bring this foreclosure action and has established a *prima facie* case. Accordingly, the burden shifts to Defendants, but Defendants fail to carry that burden for all five affirmative defenses.

### A. Standing

**\*3** In its earlier decision, this Court found that Plaintiff failed to establish standing because of a defective gap in the assignment of the mortgage. *E. Sav. Bank,* 57 F. Supp. 2d at 203-05. The Second Circuit, however, found that under New York law, "although assignment of a mortgage without the accompanying note does not provide the assignee with a right to the debt, the delivery or assignment of a note without the accompanying mortgage transfers the debt and can confer standing on the recipient." *E. Sav. Bank, FSB,* 631 Fed.Appx. at 15. In other words, in analyzing whether Plaintiff has standing in this mortgage foreclosure action, the Second Circuit held the note trumps the mortgage in determining standing.

"Under New York law, '[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.' " *E. Sav. Bank, FSB,* 631 Fed.Appx. at 15 (quoting *Wells Fargo Bank, N.A. v. Rooney,*

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 119 of 189

Eastern Savings, FSB v. Thompson, Not Reported in Fed. Supp. (2016)

132 A.D.3d 980, 981 (2d Dep't 2015)); *see also Aurora Loan Servs., LLC v. Taylor,* 25 N.Y.3d 355, 361 (2015) ("[T]he note, and not the mortgage, is the dispositive instrument that conveys standing to foreclose under New York law."). In order to establish standing in this mortgage foreclosure action, Plaintiff must show that it was the holder or assignee of the Note at the commencement of the instant action and that it remains the holder or assignee of the Note.

"Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of the plaintiff." *E. Sav. Bank, FSB,* 631 Fed.Appx. at 15. Defendants argue that an allonge is missing from the Note. Defs. Renewed Mot. Summ. J. at 11-12. As the Court of Appeals notes, however, there is "[n]o evidence (or even suggestion) that the note was ever specially indorsed to any other predecessor in interest." *E. Sav. Bank, FSB,* 631 Fed.Appx. at 15 n.1. The Note is indorsed in blank, and Plaintiff has had possession of the Note since November 20, 2007. Original Note at 5; Brown Aff. ¶ 8 (reporting physical possession of the original Note and original Mortgage as of November 20, 2007); Bollo Aff. ¶ 9 (same). Absent such special endorsement, Plaintiff was the noteholder at the commencement of this action and remains the noteholder.

### B. *Prima Facie* Case

At summary judgement, the Court found that Plaintiff established a *prima facie* case by demonstrating (1) the existence of an obligation secured by a mortgage that was executed by the Defendants, and (2) that Defendants defaulted by failing to make loan payments. *See E. Sav. Bank,* 631 Fed.Appx. at 14 (quoting *E. Sav.,* 57 F. Supp. 2d at 202-03). Defendants' arguments to the contrary are unavailing. *See* Defs. Renewed Mot. Summ. J. at 13-15.

### C. Affirmative Defenses

For the aforementioned reasons, the Court finds that Plaintiff is in possession of the original Note. Accordingly, the Court finds that Defendants' affirmative defenses of failure to state a viable cause of action, lack of privity, statute of frauds, and fraud cannot survive summary judgment. *See* Answer ¶¶ 27-39 (failure to state a claim), 40-47 (lack of privity), 56-60 (statute of frauds), 61-65 (fraud due to allonge).

In addition, Defendants' affirmative defense of laches and/or estoppel, *id.* ¶¶ 48-55, cannot survive summary judgment. The defenses of laches and estoppel are unavailable when the foreclosure action is brought within the six-year statute of limitations. *See New York State Mortg. Loan Enforcement and Admin. Corp. v. North Town Phase II,* 191 A.D. 2d 151, 152 (1st Dep't 1993) ("[T]he doctrine of laches is not available in a foreclosure action brought within the period of limitations[.]" (citing *Schmidt's Wholesale, Inc. v. Miller & Lehman Constr.,* 173 A.D.2d 1004 (3d Dep't 1991)). Defendants defaulted on September 1, 2006, and Plaintiff brought this mortgage foreclosure action on March 9, 2012. Because Plaintiff brought this action within the six-year statute of limitations, the Court finds that the defenses of laches and estoppel do not bar Plaintiff's action.

**\*4** Finally, Defendants argue that paragraph twenty-four of the Complaint violates § 1301.2 of the New York State Real Property Actions and Proceedings Law ("RPAPL"), Defs. Renewed Mot. Summ. J. at 10 n.6, 15. Section 1301.2 provides: "The complaint shall state whether any other action has been brought to recover any part of the mortgage debt, and, if so, whether any part has been collected." RPAPL § 1301.2. Paragraph twenty-four of the Complaint states: "No other action or proceeding has been commenced or maintained or is now pending at law or otherwise for the foreclosure of said Mortgage or for recovery of the said sum secured by said Note and Mortgage or any part thereof[.]" Compl. ¶ 24.

It is true that Plaintiff previously filed, and subsequently voluntarily dismissed, a state action on the same default of the same note, Stipulation of Discontinuance, ECF No. 59-4, but the Court finds that paragraph twenty-four of the Complaint does not violate RPAPL § 1301.2. Under New York law, Plaintiff may either bring suit to recover on the Note or proceed through foreclosure on the mortgage, but "must only elect one of these alternate remedies." *Gizzi v. Hall,* 309 A.D.2d 1140, 1141 (3d Dep't 2003). Accordingly, "[t]he purpose of RPAPL § 1301 is 'to avoid multiple suits to recover the same mortgage debt and confine the proceedings to collect the mortgage debt to one court and one action[.]" *Resolution Trust Corp. v. J.I. Sopher & Co.,* 108 F.3d 329 (2d Cir. 1997) (quoting *Dollar Dry Dock Bank v. Piping Rock Builders, Inc.,* 581 N.Y.S.2d 361 (2d Dep't 1992)). Plaintiff elected to bring a mortgage foreclosure action and has not sought another action to collect under the Note. Furthermore, "[s]ince there has been no demonstration or allegation of prejudice to the rights of any party, this [RPAPL] defect may be ignored[.]" *Marton*

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 120 of 189

Eastern Savings, FSB v. Thompson, Not Reported in Fed. Supp. (2016)

*Associates v. Vitale,* 172 A.D.2d 501 (2d Dept. 1991) (quoting CPLR 2001, 3025).

**CONCLUSION**

The Court grants Plaintiff's renewed motion for summary judgment, and denies Defendants' renewed motion for summary judgment and request for trial. The Court further directs Defendants' general denial and answer to be struck from the record. *See* Fed. R. Civ. P. 12(f).

The Court refers the matter of damages to Chief Magistrate Judge Roanne Mann, and directs the parties to submit to Chief Magistrate Judge Mann all documents relevant to interest and protective advances. *See* Pl. 56.1 State, ¶ 18 (listing costs of real estate taxes, delinquent sewer and water chargers, and insurance premiums).

The Court further directs the Clerk of Court to revise the caption of this case by replacing John Doe #1 and John Doe # 2 with Evelyn Michelle and Louise Sutton, respectively, and by removing John Doe #3 through John Doe #6. *See* Fed. R. Civ. P. 15(a)(3).

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 2977268

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

840 Fed.Appx. 601
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE 32.1
AND THIS COURT'S LOCAL RULE 32.1.1. WHEN
CITING A SUMMARY ORDER IN A DOCUMENT
FILED WITH THIS COURT, A PARTY MUST
CITE EITHER THE FEDERAL APPENDIX OR AN
ELECTRONIC DATABASE (WITH THE NOTATION
"SUMMARY ORDER"). A PARTY CITING A
SUMMARY ORDER MUST SERVE A COPY OF IT ON
ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals, Second Circuit.

ENTRETELAS AMERICANAS

S.A., Plaintiff-Appellant,

v.

Rafael Ignacio SOLER, Defendant-Appellee.

20-1125-cv
|
December 21, 2020
|
Amended January 7, 2021

**Synopsis**
**Background:** Company brought action against its former
executive, asserting claims under the Racketeer Influenced
and Corrupt Organizations Act (RICO) and for breach of
contract and unjust enrichment. The United States District
Court for the Southern District of New York, Lewis A.
Kaplan, Senior District Judge, adopted magistrate judge's
report and recommendation that the executive's motion to
dismiss be granted without prejudice. Company appealed.

**Holdings:** The Court of Appeals held that:

company failed to plead with sufficient particularity mail
fraud or wire fraud, as predicate acts supporting its RICO
claims;

company's allegations were insufficient to plead money
laundering, as predicate act under RICO;

company's allegations were insufficient to plead causation, as
required for RICO claim based on extortion;

company's allegations were insufficient to plead amount
in controversy, as required for federal jurisdiction over its
common law claims; and

district court did not abuse its discretion in declining to
exercise supplemental jurisdiction over company's common
law claims.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for
Failure to State a Claim.

**\*602** Appeal from the United States District Court for the
Southern District of New York (Kaplan, *J.*).

**UPON DUE CONSIDERATION, IT IS ORDERED,
ADJUDGED, AND DECREED** that the order of the district
court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Paul A. Batista, Paul
Bautista, PC, New York, New York.

FOR DEFENDANT-APPELLEE: Vincent J. Syracuse,
Tannenbaum Helpern Syracuse & Hirschtritt LLP, New York,
New York; Richard Walker Trotter, Feuerstein Kulick LLP,
New York, New York

PRESENT: ROBERT D. SACK, DENNY CHIN,
RAYMOND J. LOHIER, JR., Circuit Judges.

<u>**AMENDEDSUMMARY ORDER**</u>

Plaintiff-appellant Entretelas Americanas S.A. ("Entretelas")
appeals from the district court's order, entered March 10,
2020, dismissing its claims against defendant-appellee Rafael
Ignacio Soler. The district court adopted the report and
recommendation of the magistrate judge (Lehrburger, *M.J.*)
recommending that Soler's motion to dismiss the complaint
pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure be granted without prejudice. The district court
granted Entretelas leave to amend its complaint by April
7, 2020. Entretelas never filed an amended complaint and

instead filed its notice of appeal on March 31, 2020. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"Normally, an order dismissing a complaint with leave to amend is interlocutory and not appealable at that time." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1246 (2d Cir. 1987). An appellant, however, can render such a non-final order "final" and appealable by disclaiming any intent to amend. *Slayton v. Am. Express Co.*, 460 F.3d 215, 225 (2d Cir. 2006). "Even where the appellant does not explicitly disclaim intent to replead, we will treat a premature appeal from a judgment granting leave to amend as an appeal from a final judgment if the deadline for **\*603** amendment has passed." *Id.* at 224 n.7 (citing *Festa v. Loc. 3 Int'l Brotherhood of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990)). Here, the deadline for amendment has long passed, and in its brief on appeal, Entretelas refers to the district court's March 10, 2020 order as a "final judgment that disposes of all claims in the underlying action." Appellant's Br. at 1. In these circumstances, we conclude that the nonfinality of the district court's order is cured and this appeal is properly before us.

We review a district court's dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(6) *de novo*, accepting the complaint's factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015).

Soler worked for Entretelas as an executive-level employee and CEO from 1999 through 2017. Entretelas alleges three claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), 1956, and 1951; a breach of contract claim; and an unjust enrichment claim. Soler brought a separate cause of action against Entretelas in the Argentinian court system, alleging, *inter alia*, that Entretelas failed to provide him with bonuses he was entitled to and that he received "off the books" compensation from Entretelas (the "Argentina Litigation"). Appellee's Br. at 8.

The magistrate judge held that the RICO claims fail to state a cause of action and that the court lacked jurisdiction as to the remaining common law claims. The court further held that even if it could exercise jurisdiction over the common law claims, those claims should be dismissed on *forum non conveniens* grounds.

### 1. RICO Claims

Section 1962 of RICO provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To sufficiently allege that the defendant violated RICO, a plaintiff must plead four elements: "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity." *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999) (internal quotation marks omitted). To establish civil liability, a plaintiff must also "plead injury to [its] business or property as a result of the RICO violation." *Id.*

The magistrate judge held that while the complaint sufficiently alleged the first three elements, it failed to state a claim for the fourth element -- "racketeering activity" -- because it failed to meet the pleading requirements for "predicate acts." *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995) ("[P]laintiff must plead at least two predicate acts."). Predicate acts are those that are "indictable under specified federal statutes ... as well as certain crimes chargeable under state law." *RJR Nabisco, Inc. v. Eur. Cmty.*, ─── U.S. ───, 136 S. Ct. 2090, 2096, 195 L.Ed.2d 476 (2016) (internal quotation marks omitted).

Allegations of mail fraud and wire fraud under 18 U.S.C. §§ 1341, 1343 "must be made with the particularity required by [Rule 9(b)]," which requires that the complaint allege content, date, place, or intent of any alleged misrepresentation. *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992). "Pursuant to this higher pleading standard, the complaint must adequately specify the statements it claims were false or misleading, give particulars **\*604** as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Id.* (internal quotation marks omitted). "[N]ot every use of the mails or wires in furtherance of an unlawful scheme to deprive another of property constitutes mail or wire fraud." *Id.* at 192 (internal quotation marks omitted); *accord Anatian*, 193 F.3d at 88 (plaintiff failed to allege RICO predicate acts of mail and wire fraud with sufficient particularity).

Here, Entretelas has failed to plead time, place, and content with respect to any of the alleged misrepresentations made by Soler. We agree with the district court's reasoning that

Entretelas has failed to sufficiently allege how it was harmed by Soler's conduct, or how it relied upon those misrepresentations to its detriment. *See Anatian*, 193 F.3d at 88 ("[A] plaintiff must plead injury to business or property as a result of the RICO violation.").

As to money laundering, we also agree with the magistrate judge's holding that Entretelas failed to meet the requisite pleading standard as it failed to allege that Soler engaged in financial transactions "involv[ing] the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a). Rather, Entretelas alleged only that Soler used funds derived from his compensations, including salary, director's fees, profit sharing, and reimbursement of expenses. *See United States v. Maher*, 108 F.3d 1513, 1527 (2d Cir. 1997) ("[A] defendant need not know precisely what specified unlawful activity produced the money, so long as he believed that the money was from some unlawful activity.").

As to extortion, even assuming that Soler committed predicate acts of extortion in violation of RICO, Entretelas did not sufficiently allege that such violations proximately caused injury. *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990). Instead, Entretelas relied on the conclusory assertion that it was injured "[b]y reason of the foregoing" alleged extortion scheme. App'x at 15. A "threadbare recital[ ] of a cause of action's elements, supported by mere conclusory statements, do[es] not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Because Entretelas failed to plausibly allege proximate causation, we need not and do not decide whether it has plausibly alleged that Soler committed extortion.

Accordingly, we affirm the dismissal of the RICO claims, substantially for the reasons set forth by the district court.

### 2. Common Law Claims

The magistrate judge held that it had no federal jurisdiction over the common law claims on the basis that plaintiff has failed to plausibly allege the amount in controversy. Entretelas claims only that, with respect to the common law claims, it has "been damaged in an amount to be determined at trial." App'x at 16. Accordingly, we affirm the district court's dismissal of plaintiff's common law claims for breach of contract and unjust enrichment for failure to sufficiently plead the amount in controversy.

Additionally, the magistrate judge did not abuse its discretion in declining to exercise supplemental jurisdiction over these claims. *See Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988) ("When all bases for federal jurisdiction have been eliminated from a case so that only pendent state claims remain, the federal court should ordinarily dismiss the state claims."); *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of **\*605** factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims.").

\* \* \*

We have considered Entretelas's remaining arguments and conclude they are without merit. For the foregoing reasons, we **AFFIRM** the order of the district court.

### All Citations

840 Fed.Appx. 601

---

**End of Document**  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

825 Fed.Appx. 46 (Mem)
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE 32.1
AND THIS COURT'S LOCAL RULE 32.1.1. WHEN
CITING A SUMMARY ORDER IN A DOCUMENT
FILED WITH THIS COURT, A PARTY MUST
CITE EITHER THE FEDERAL APPENDIX OR AN
ELECTRONIC DATABASE (WITH THE NOTATION
"SUMMARY ORDER"). A PARTY CITING A
SUMMARY ORDER MUST SERVE A COPY OF IT ON
ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals, Second Circuit.

Steven HODGE, Plaintiff-Appellant,

v.

ABACO, LLC, Defendant-Appellee.

20-1186-cv
|
October 9, 2020

Appeal from the United States District Court for the Southern
District of New York (Stanton, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: SAMUEL J. SAMARO,
Pashman Stein Walder Hayden, P.C., Hackensack, New
Jersey.

FOR DEFENDANT-APPELLEE: MICHAEL J. DEE,
O'Toole Scrivo, LLC, New York, New York.

PRESENT: BARRINGTON D. PARKER, DENNY CHIN,
Circuit Judges, JANE A. RESTANI, Judge. *

**\*47 SUMMARY ORDER**

Plaintiff-appellant Steven Hodge appeals the district court's
judgment, entered March 31, 2020, dismissing his complaint

against defendant-appellee Abaco, LLC ("Abaco"). By
memorandum and order entered the same day, the district
court granted Abaco's motion to dismiss pursuant to Federal
Rule of Civil Procedure 12(b)(6). We assume the parties'
familiarity with the underlying facts, the procedural history
of the case, and the issues on appeal.

Hodge began working for Abaco on October 1, 2018. Prior
thereto, the parties had executed an offer letter (the "Offer
Letter") summarizing the "terms and conditions of [Hodge's]
anticipated employment" with Abaco. App'x at 14. In relevant
part, the Offer Letter stated:

> **Employment Relationship**. It is anticipated that your
> employment with the Company will be for a minimum
> period of five 5 years. During the first three years, it
> is intended that you will focus on developing NY based
> accounts to be serviced. In the following two years the
> focus will shift to succession planning....

> **Termination**. Following usual practice, the Company
> reserves the right to terminate employment of any
> employee for just cause at any time without notice and
> without payment in lieu of notice. The Company will be
> entitled to terminate your employment for any reason other
> than for just cause, upon providing to you such minimum
> notice as required by law.

App'x at 16. On July 19, 2019, less than a year after he started,
Abaco terminated Hodge's employment.

Hodge filed this action below for breach of contract, alleging
that Abaco violated the terms of the Offer Letter by
terminating his employment before five years. The district
court disagreed, and granted Abaco's motion to dismiss.
Hodge now appeals.

"We review *de novo* a district court's grant of a motion to
dismiss, including ... its interpretation of contractual terms."
*Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d
861, 865 (2d Cir. 2015). "In New York, it has long been settled
that an employment relationship is presumed to be a hiring
at will, terminable at any time by either party." *Baron v. Port
Auth. of N.Y. and N.J.*, 271 F.3d 81, 85 (2d Cir. 2001) (internal
quotation marks and citation omitted). A party can rebut this
presumption "by establishing an express limitation in the
individual contract of employment curtailing an employer's
right to terminate at will." *Id.* (internal quotation marks and
citation omitted).

Hodge argues that the "durational language" in the Offer Letter "implied the existence of a five-year employment contract." Appellant's Br. at 16. But the parties' "anticipat[ion] that [Hodge's] employment with [Abaco] will be for ... five [ ] years," App'x at 16, does not amount to a promise. As the district court noted, the Offer Letter used this language to refer to "intentions and expectations," not guarantees. App'x at 20; *see also, e.g.*, App'x at 16 ("It is anticipated that your presence in the New York market will have a significant positive impact on the Company's business in the USA."). Moreover, Abaco also expressly reserved the right to terminate Hodge's employment at will. *See* App'x at 16 ("The Company will be entitled to terminate your employment for any reason other than for just cause, upon providing to you such minimum notice as required by law.").

Hodge argues that because Abaco promised him five years' employment, the "minimum notice" required by law runs to the end of that five-year period. *See* Appellant's Br. at 17 ("[T]he term of the contract **\*48** is itself legal notice. If the employment was at will, there was no obligation to provide Appellant with notice."). We are unpersuaded. There was no such promise in the Offer Letter, and Hodge has failed to identify any law imposing a notice requirement on Abaco's right to terminate his employment in the circumstances here.

We have considered Hodge's remaining arguments and conclude they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

**All Citations**

825 Fed.Appx. 46 (Mem)

---

## Footnotes

\*       Judge Jane A. Restani, of the United States Court of International Trade, sitting by designation.

---

                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by Robinson v. Deutsche Bank Trust Co. Americas, S.D.N.Y., June 12, 2008

2007 WL 4292034

Only the Westlaw citation is currently available.

United States District Court,

S.D. New York.

Daniel JUNK, Plaintiff,

v.

AON CORP., Aon Service Corporation,

and Aon Consulting, Inc., Defendants.

No. 07 Civ. 4640(LMM)(GWG).

|

Dec. 3, 2007.

*MEMORANDUM AND ORDER*

McKENNA, District Judge.

**\*1** Plaintiff Daniel Junk ("Plaintiff") is a former employee of Aon Corporation and its subsidiaries Aon Service Corporation and Aon Consulting, Inc. (collectively, "Aon" or "Defendants"), who now brings suit against Defendants asserting (1) Breach of Contract, (2) Fraudulent Inducement, and (3) Promissory Fraud claims. Defendants move to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), citing Plaintiff's failure to state claims upon which relief can be granted. For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part, and DENIED in part.

**1.**

Defendant Aon Corporation is incorporated in Delaware with a principal place of business in New York; its subsidiaries, Defendants Aon Service Corporation and Aon Consulting, Inc., are incorporated in Illinois and New York, respectively, with their principal places of business in New York. (Plaintiff's Complaint ("Compl.") ¶¶ 3, 4, 6.) In October 2006, Plaintiff, a South Carolina resident, relocated to New York City in order to begin his employment with Aon. (*Id.* ¶¶ 1, 28.) A graduate of New York Law School, Plaintiff held various executive and managerial positions for electronic

discovery software [1] and service providers prior to working for Aon, and had acquired substantial experience in electronic discovery-related matters. [2] (*Id.* ¶¶ 10, 11.) According to the complaint, Plaintiff was persuaded to travel to New York City and meet with Aon's management "based on AON's [sic] product and software development representations" that were proffered by Jerry Barbanel, an executive vice president of Aon. (*Id.* ¶¶ 20, 22.) The representations allegedly made by Barbanel gave Plaintiff the impression that Aon was in the final developmental stage for its "complete end-to-end e-discovery system" that would be completed in either "three weeks" or within "the next three months." (*Id.* ¶ 24.) Plaintiff also alleges that Barbanel promised, both in their October 2006 meeting and in subsequent phone conversations, that if he "accept[ed] employment with AON [sic], [Plaintiff] would have a guaranteed position at least until AON [sic] rolled out its end-to-end proprietary software solution and obtained the dominant market leading position in e-discovery software solutions." (*Id.* ¶ 27.) According to Plaintiff, this promise was made conditional upon his agreement to sell his home in South Carolina and move to New York "within a year after starting with AON [sic]." (*Id.*)

Plaintiff asserts that he relied upon these representations in deciding to accept employment with Aon, relinquish his current position with Renew Data Corporation, and sell his home in South Carolina. (*Id.* ¶¶ 28, 29.) Additionally, he now contends that the representations he relied upon were fraudulent, and that they were known by Defendants to be fraudulent at the time they were made. (*Id.* ¶¶ 26, 30.) Plaintiff also alleges that at the time his employment with Aon began: the company had not yet commenced their development of the e-discovery software; the allocation of funds for such development had not yet been approved; in lieu of its own software, Aon was marketing a repackaged version of "File Control," an already established e-discovery tool [3]; and Barbanel frequently "instructed Plaintiff and other AON [sic] employees to lie to customers ... and never to admit that [the] software was simply rebranded third-party applications." (*Id.* ¶ 30.)

**\*2** According to his complaint, Plaintiff grew increasingly concerned about these alleged misrepresentations and expressed his discomfort to Jerry Barbanel on several occasions. (*Id.* ¶¶ 32, 35.) In March and April of 2007, Plaintiff spoke to several members of Aon's management, informing them of the misrepresentations that Barbanel encouraged him (and his colleagues) to relay to customers, shareholders, and the public; he also articulated that his

uneasiness was due in large part to the fact that development of Aon's software had yet to even begin. (*Id.* ¶¶ 36, 38.) Subsequent to these conversations, an email from Anne Kemp, a colleague of Plaintiff s, was sent to Aon's top executive management as well as to members of Defendants' human resources team. (*Id.* ¶ 39.) The correspondence, which was also copied to Plaintiff, detailed "the fraudulent activities and misrepresentations of Jerry Barbanel and his management staff." (*Id.*) The following day, Plaintiff was contacted by another member of Aon's management who informed Plaintiff that Barbanel was aware of the Kemp email and stating that "there would be no investigation." (*Id.* ¶ 41.) Two days after the Kemp email was sent, Plaintiff received his notice of termination. (*Id.* ¶ 42.) Plaintiff now alleges and seeks compensation from Defendants for: (1) Breach of Contract, (2) Fraudulent Inducement, and (3) Promissory Fraud. Defendants move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## 2.

Under Rule 12(b)(6) a complaint will be dismissed if there is a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The Court must read the complaint generously, accepting the truth of and drawing all reasonable inferences from well-pleaded factual allegations. *See York v. Ass'n of Bar of City of New York,* 286 F.3d 122, 125 (2d Cir.2002); *see also Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). A court should dismiss a complaint only "if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *see also Jenkins v. McKeithen,* 395 U.S. 411, 422 (1969) (citation omitted). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *Atsi Communications, Inc. v. Shaar Fund Ltd.,* 493 F.3d 87 (2d Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007)).

## 3.

Defendants move to dismiss Plaintiff's causes of action for breach of contract based upon his termination "prior to the development and rollout of AON's [sic] proprietary end-to-end software solutions." (Compl.¶ 45.) Plaintiff

contends that his termination constitutes a breach of the employment agreement between himself and Defendants, as well as a breach of Defendants' stated policies and procedures regarding the "reporting of wrongful activities and procedures," which Plaintiff argues was also a contract between himself and Defendants. (*Id.* ¶¶ 45, 50, 52 .) First, the Court will consider Plaintiff's claim that Defendants' breached the terms of their employment agreement.

### 3a.

**\*3** Relevant case law dictates that an at-will employee, i.e., one whose employment can be terminated at any time, cannot maintain a claim for breach of contract. *Chimarev v. TD Waterhouse Investor Services, Inc.,* 280 F.Supp.2d 208, 216 (S.D.N.Y.2003) (citations omitted).; *see also Minton v. Lenox Hill Hosp.,* 160 F.Supp.2d 687, 699 (S.D.N.Y.2001) (an at-will employee cannot maintain a breach of contract claim). Such an employee confirms his or her at-will status by signing an employment agreement "which explicitly indicate[s] that the terms of his employment were at-will." *Chimarev,* 280 F.Supp.2d 208 at 216.

Additionally, even without a signed agreement affirming at-will employment, New York law states that an indefinite period of employment "is presumed to be a hiring at will that may be freely terminated by either party at any time for any reason or even for no reason." *Lobosco v. New York Telephone Company/NYNEX,* 96 N.Y.2d 312, 316 (N.Y.2001) (citation omitted). Courts have only found exceptions where a Plaintiff can show that there was reliance upon an "express *written* policy limiting the right of discharge." *Id.* (emphasis added).

In the instant litigation Plaintiff signed an employment offer letter from Defendants on November 9, 2006. (*See* Galletti Aff., Ex. B.) The offer letter reads in pertinent part:

> Nothing in this letter is intended or should be construed as a contract of guarantee of indefinite employment. Employment with Aon Consulting is for no specified period and constitutes at-will employment. As a result, you are free to resign at any time, for any reason or for no reason. Similarly, the Company is free to conclude its employment relationship with you at

any time, for any reason or for no reason.

(*Id.*)

By signing this letter, Plaintiff agreed to the terms therein-including his status as an at-will employee of Defendants. Further, even without this offer letter, in the absence of a written agreement specifying the length of employment, Plaintiff is presumed to be an at-will employee who may be terminated at any time. *See Chimarev, supra,* at 216.

Here, Plaintiff does not rely upon a written agreement. Instead, he cites an alleged oral agreement that he would be guaranteed employment with Defendants "at least until AON [sic] rolled out its end-to-end proprietary software solution and obtained the dominant market leading position in e-discovery software solutions." (Compl.¶ 27.) This reliance is problematic primarily because oral assurances are insufficient to alter an employee's at-will status. *See Cucchi v. NYC Off-Track Betting Corp.,* 818 F.Supp. 647, 652 (S.D.N.Y.1993); *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329 (N.Y.1987).

Moreover, the offer letter signed by Plaintiff contained a merger clause [4] stating that "this letter *supercedes any prior representations or agreements* between you and Aon Consulting, *whether written or oral."* (Galletti Aff., Ex. B (emphasis added).) By signing the offer letter, Plaintiff explicitly agreed to forfeit any prior oral agreement between himself and Defendants.

**\*4** Finally, the parol evidence rule expressly forbids any consideration of "evidence of a contemporaneous or prior oral agreement that modifies or contradicts the terms of an integrated written agreement. A 'contract which appears complete on its face is an integrated agreement as a matter of law.' " *Kempf v. Mitsui Plastics, Inc.,* 1996 WL 673812, \*7 (S.D.N.Y.1996) (citations omitted). The offer letter signed by Plaintiff and outlining the terms of his employment with Aon, appears complete on its face and therefore constitutes an integrated agreement between the parties. As such, any prior oral agreement between them is effectively barred in accordance with the parol evidence rule.

In light of the foregoing, Defendants' motion to dismiss Plaintiff's breach of contract claim, based upon the employment agreement between the parties, is hereby granted.

### 3b.

Next, the Court will examine Plaintiff's claim that his termination breached Defendants' stated employment policies. In bringing this claim, Plaintiff relies upon the whistleblower language in Aon's "Code of Business Conduct": "Aon strictly prohibits retaliating against someone for making a good faith report of an ethical or legal concern. In many instances retaliation is against the law." (Galletti Aff., Ex. E at 5.) Plaintiff asserts that his termination as an Aon employee was in direct retaliation for his reporting of Jerry Barbanel's alleged ethical violations and, additionally, for his refusal to engage in similar behavior. (Compl.¶ 53.) He further contends that this retaliation was a violation of Aon's stated policy language, that this language constituted a contract between himself and Defendants, and that his termination is therefore tantamount to a breach of contract on the part of Defendants. (*See* Galletti Aff., Ex. E at 5.; Compl. ¶¶ 52, 53.)

New York law specifies that a plaintiff may maintain a breach of contract claim by demonstrating that a company policy exists that *expressly* limits an employer's right to terminate an at-will employee.

'An employee may recover ... by establishing that the employer made the employee aware of its express written policy limiting its right of discharge and that the employee detrimentally relied on that policy in accepting the employment.' *De Petris v. Union Settlement Assoc.,* 633 N.Y.S.2d 274, 276(1995). Where the employee can prove each of these elements-the existence of an 'express written policy' and detrimental reliance upon that policy-'the employee in effect has a contract claim against the employer.' *Id.* We have explained that under New York law, 'in determining whether [the presumption of employment at will] is overcome, the trier of the facts will have to consider the totality of the circumstances, including the writings, the situation, the course of conduct of the parties and their objectives.' *Jones v. Dunkirk Radiator Corp.,* 21 F.3d 18, 22 (2d Cir.1994).

*Marfia v. T.C. Ziraat Bankasi,* 147 F.3d 83, 87-88 (2d Cir.1998). A whistleblower provision does serve to limit an employee's at-will status. *See Brady v. Calyon Securities (USA),* 406 F.Supp .2d 307, 317 (S.D.N.Y.2005). In determining whether such a limit is sufficient to overcome the presumption of at-will status, the existence of any disclaimer

language can be controlling. In *Baron v. Port Authority of New York and New Jersey,* the Second Circuit determined that:

> **\*5** [T]he disclaimers at the front of both the Port Authority Guidebook and the PAIs expressly and specifically disavow any intent on the Port Authority's part to accept contractual limitations on its rights as an at-will employer ... These disclaimers plainly convey the Port Authority's intention that the provisions in the Guidebook and PAIs are non-binding. No understanding by the plaintiffs to the contrary would have been objectively reasonable.

271 F.3d 81, 85-86 (2d Cir.2001).

*Lobosco v. New York Telephone Company/NYNEX,* 96 N.Y.2d 312, 316 (N.Y.2001), is a New York Court of Appeals decision that is directly on point. In that case, the plaintiff brought a breach of contract claim against his employer, citing his reliance upon a provision in the employee manual and asserting that this language created a contractual obligation, thereby altering his employee at-will status. The Court of Appeals explicitly disagreed with the plaintiff's argument, particularly because of the existence of disclaimer language:

> Routinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements ... It would subject employers who have developed written policies to liability for breach of employment contracts upon the mere allegation of reliance on a particular provision. Clearly that cannot be, especially in light of conspicuous disclaiming language. An employee seeking to rely on a provision arguably creating a promise must also be held to reliance on the disclaimer.

> *Id.* at 317.

In the present case, Plaintiff relies upon the whistleblower language in Aon's "Code of Business Conduct." In so doing, he must also rely upon any disclaimer language contained within the same. The "Code of Business Conduct" expressly forbids the creation of any contractual obligation, based upon the language of the Code itself: "[I]t is very important to note that this Code is not a contract of employment and

does not create any contractual rights between Aon and any employees." (Galletti Aff., Ex. E at 3.) Plaintiff's reliance upon the whistleblower provision cannot be considered objectively reasonable, particularly because of the disclaimer within the same document that clearly expresses Defendants' intention that it not be taken as a binding, contractual agreement.

In light of the foregoing, Defendants' motion to dismiss Plaintiff's breach of contract claim, based upon the whistleblower provision in Aon's "Code of Business Conduct," is hereby granted.

## 4.

Plaintiff also brings a claim of fraudulent inducement against Defendants. In his complaint, Plaintiff specifies that he "detrimentally relied on Defendants' fraudulent statements and misrepresentations and has lost commissions ... [and his] nationally renowned reputation and standing within the e-discovery market place has been damaged and impaired ..." (Compl.¶ 57.)

### 4a.

Defendants argue that Plaintiff's claim cannot be sustained because it is merged within Plaintiff's breach of contract claim and thereby barred. (Defs.' Br. 14-15.) "As a general rule, 'no cause of action for fraud is stated or exists where the only fraud charged relates to a breach of the employment contract.' However, as plaintiff points out, New York courts allow a litigant simultaneously to maintain a fraud and a breach of employment contract claim provided he either: '(i) demonstrate[s] a legal duty separate from the duty to perform under the contract ... or (ii) demonstrate[s] a fraudulent misrepresentation collateral or extraneous to the contract.' " *Alter v. Bogoricin,* 1997 WL 691332, \*9 (S.D.N.Y. November 6, 1997) (citations omitted). By definition, a collateral agreement "is one that is extraneous to the terms of the contract." *Id.* The Second Circuit held in *Stewart v. Jackson & Nash,* that "the plaintiff had stated a claim for fraud because the alleged fraud went to the inducement of the contract, not its breach. There, [ ... ] the false representations related not to the firm's intent to perform under an employment contract, but to opportunities beyond the scope of the contract that induced the plaintiff to enter into the contract." *Saleemi v. Pencom Systems Inc.,* 2000 WL 640647, \*5 (S.D.N.Y. May 17, 2000)

(citing *Stewart v. Jackson & Nash,* 976 F.2d 86, 88-89 (2d Cir.1992).

**\*6** The facts of the *Stewart* case are directly on point with those of the instant litigation. Here too, Plaintiff's fraudulent inducement claim refers to representations made regarding the development of Defendants' software, and alleges that these statements induced him to sign an employment contract. Plaintiff's claim does not relate to the terms of the contract itself, and as such, is considered "collateral" and survives this initial inquiry .[5]

**4b.**

Defendants contend that Plaintiff failed to adequately allege his fraudulent inducement claim, both under New York law, and under the heightened pleading requirement established under Federal Rule of Civil Procedure 9(b). The Court finds that Plaintiff met his burden with respect to both the federal and state law requirements.

Under New York law a plaintiff must successfully allege "(1) a knowingly false representation of a material fact and (2) detrimental reliance thereon. The false representation can be either a misrepresentation or the material omission of a fact. Reliance means 'reasonable' reliance." *Wurtsbaugh v. Banc of America Securities LLC,* 2006 WL 1683416, \*6 (S.D.N.Y. June 20, 2006) (citation omitted). Plaintiff successfully meets this burden within Paragraphs 24, 25, 27, and 29 of his complaint. He provides specific statements made by Barbanel, alleges that Defendants knew that these statements were false, acknowledges reliance upon these statements, and indicates how this reliance proved detrimental to his career. (*See* Compl. ¶¶ 24, 25, 27, 29.) Plaintiff has adequately alleged a fraudulent inducement claim under New York law.

The Federal Rules require that "[t]o satisfy Rule 9(b), a complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " *Hirsch v. Columbia University, College of Physicians and Surgeons,* 293 F.Supp.2d 372, 381 (S.D.N.Y.2003) (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993)). In addition to specifying the statements made, Plaintiff identified the speaker as Jerry Barbanel of Aon and provided that the statements were made in Aon's New York office in October of 2006. (Compl.¶ 23.) He goes on to allege that the statements were fraudulent because, *inter alia,* Defendants had not yet commenced the development of the e-discovery software and because they were selling instead, a repackaged version of an already existing software package. (Compl.¶ 30.) This Court finds that Plaintiff has adequately alleged his fraudulent inducement claim with respect to Federal Rule 9(b), as well.

**4c.**

Defendants also argue that Plaintiff will be unable to establish that his reliance upon the oral representations made by Jerry Barbanel was reasonable. (*See* Defs.' Br. 21-22.) "In the appropriate circumstances, a claim of fraud may be dismissed on the pleadings because as a matter of law a plaintiff will not be able to establish that reliance on the alleged representation was reasonable ." *Wurtsbaugh v. Banc of America Securities LLC,* 2006 WL 1683416, \*6 (S.D.N.Y. June 20, 2006).

**\*7** For various reasons, New York courts are typically reluctant to consider a plaintiff's reliance upon oral communications reasonable.

> When plaintiffs are sophisticated parties and the statement or omission relates to a business transaction that has been formalized in a contract, New York courts are generally reluctant to find reliance on oral communications to be reasonable. This reluctance stems from the view that "a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament."

*Id.* (quoting *Emergent Capital Inv. Mgmt. LLC v. Stonepath Group, Inc.,* 343 F.3d 189, 195 (2d Cir.2003)).

Further, though not an outright bar to such a claim, the existence of a merger clause does increase a court's reluctance to determine that a plaintiff reasonably relied on an oral representation. "[T]he Merger Clause reflects the parties' intention to make the Agreement comprehensive, and further undermines as a matter of law the reasonableness of plaintiffs' asserted reliance on oral representations." *Wurtsbaugh* at \*7 (quoting *Harsco Corp. v. Segui,* 91 F.3d 337, 343 (2d Cir.1996)); *see also Montchal v. Northeast Savings Bank,* 243 A.D.2d 452 (N.Y.App.Div.1997) ("the purported vague and speculative assurances allegedly made by a representative of the defendant are patently insufficient to sustain the cause of action sounding in fraudulent inducement, especially in view

of the plaintiff's written disclaimer of reliance upon any oral representations or promises regarding the conditions of his employment").

In spite of the fact that Plaintiff successfully alleged his fraudulent inducement claim against Defendants, based upon New York case law, he would be unable to establish that he reasonably relied upon the oral representations made by Jerry Barbanel. Plaintiff, by his own admission, is an attorney, and therefore is considered a sophisticated party within the eyes of this Court. (Compl.¶ 10.) As a sophisticated party he entered into a formal agreement with Defendants. What is more, the existence of the merger clause communicates an intention among the parties that the employment contract was to be controlling, and Plaintiff is deemed to have signed the document with this intent. As such, Plaintiff's claim must be dismissed.

In light of the foregoing, Defendants' motion to dismiss Plaintiff's fraudulent inducement claim is hereby granted.

**5.**

Plaintiff brings a promissory fraud claim against Defendants. (Compl.¶¶ 59-63.) Under New York law, "in order to state a claim for promissory fraud, it must be alleged that the 'promisor, at the time of making certain representations, lacked any intention to perform them.'" *Clarence Beverage, Inc. v. BRL Hardy (USA), Inc.,* 2000 WL 210205, *3 (W.D.N.Y. February 8, 2000)* (citation omitted). In order to survive a motion to dismiss, a plaintiff must set out *specific facts* in his complaint demonstrating that defendants never intended to make good on any of the promises made. *See L-3 Communications Corp. v. OSI Systems, Inc.,* 2004 WL 42276, *4 (S.D.N.Y. January 8, 2004)*; *see also Leve v. Franklin Capital Corp.,* 2003 WL 446807, *5 (S.D.N.Y. February 25, 2003)* ("The amended complaint sufficiently alleges promissory fraud, as it alleges that defendants fraudulently promised to pay a total purchase price of $4.5 million when they had no intention of performing the promise."). In *Clarence Beverage, Inc. v. BRL Hardy (USA), Inc.,* the District Court noted that "[i]t [is] worth repeating here that, when considering a motion to dismiss, all factual allegations contained in the Amended Complaint are presumed to be true and such will only be dismissed if it appears beyond doubt that no set of facts in support of Clarence's claim will entitle it to relief. The facts alleging promissory fraud satisfy this liberal standard." 2000 WL 210205 at *3.

**\*8** In the present case, the Court finds that Plaintiff does sufficiently satisfy this liberal standard, based upon a review of the allegations made in his complaint. First, Plaintiff cites the following representations made by Jerry Barbanel in October of 2006:(i) "Right now we [Defendants] have the best developers working on and completing our complete end-to-end e-discovery solutions"; (ii) "We [Defendants] are in the final stages of developing and completing a complete end-to-end proprietary e-discovery system ranging from data extraction to viewing to production"; (iii) "The proprietary software technology that we are developing right now will turn the industry on its ear and offer a completely integrated proprietary solution. Within the next three months we will have the only true end-to-end solution in the industry"; and finally, after Plaintiff expressed concern regarding the delay in development, "No. no. no. I have guys working on it as we speak and it will be done in three weeks." (Compl.¶ 24.) Next, Plaintiff alleges that each one of these representations "were false and known by Jerry Barbanel to be false at the time they were made." (*Id.* ¶ 25.)

Further, Plaintiff provides specific facts within his complaint establishing that Defendants had no intention of actually following through with the statements made by Barbanel. These facts are that: Defendants "had not yet commenced the development and programming of the proprietary software systems represented by Jerry Barbanel"; Defendants "had not yet even approved the allocation of funds and resources for the development and completion of [Defendants'] own proprietary e-discovery software solutions"; "At conferences and roll-out parties, [Defendants'] executives misrepresented to current and prospective customers that [Defendants] developed proprietary e-discovery software when, in fact, the software being offered was rebranded software already commonly available and utilized within the industry"; "In many instances Jerry Barbanel instructed Plaintiff and other employees to lie to customers about the proprietary nature of [Defendants'] software and never admit that [Defendants'] software was simply rebranded third-party applications"; and "at the time of offering [Defendants'] E Docs (a rebranded copy of File Control) Jerry Barbanel and [Defendants] had yet to secure the required license to even utilize File Control." (*Id.* ¶¶ 30, 33.)

By alleging that Defendants *knowingly* made false representations to Plaintiff, and by alleging specific facts which, if true, demonstrate repeatedly unethical and dishonest conduct on the part of Defendants (including the sale of a

product created by another entity under its own name, while making no effort to give that entity credit or to create its own e-discovery product), Plaintiff has sufficiently met the liberal standard necessary to survive a motion to dismiss.

In light of the foregoing, Defendants' motion to dismiss Plaintiff's promissory fraud claim is hereby denied.

**6.**

**\*9** Based upon the foregoing analysis, Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART. It is GRANTED with respect to Plaintiff's Breach of Contract and Fraudulent Inducement claims; it is DENIED with respect to Plaintiff's Promissory Fraud claim.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 4292034

---

## Footnotes

1    In his complaint, Plaintiff defines electronic discovery software as software capable of "retriev[ing], preserve[ing], document [ing], and produc[ing] electronic communications, records and files." (Compl.¶ 10.)

2    The recently amended Federal Rule of Civil Procedure 26(f)(3) classifies electronic discovery as the "disclosure or discovery of electronically stored information, including the form or forms in which it should be produced ..."

3    Plaintiff also alleges in ¶ 33 of his complaint, that Defendants had not yet obtained the license necessary to utilize "File Control" at the time of his employment with Aon. (*Id.*)

4    Plaintiff argues that any reference to the merger clause and other "extraneous documents" is "beyond the scope of the instant application." (Pl. Opp. Brief 7.) This argument, however, is unsubstantiated as the merger clause is contained within the employment agreement, precisely the document upon which Plaintiff's breach of contract claim is based, and is therefore integral to the present case.

 Along these lines, the Second Circuit noted that "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *International Audiotext Network, Inc. v. American Tel. and Tel. Co.,* 62 F.3d 69, 72 (2nd Cir.1995). "When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration [includes] ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit," even if they are not attached to complaint. *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

5    Contrary to Defendants' argument, the existence of a merger clause is not, on its face, a bar to Plaintiff's claim. (*See* Defs.' Br. 15.) In order to be an outright bar to a fraudulent inducement claim, the merger clause must specify *which* oral representations it intends to bar liability for. (*See Hakker v. Stratus Computer, Inc.,* 1996 WL 434565, \*4 (S.D.N.Y. August 2, 1996); *see also Wurtsbaugh v. Banc of America Securities LLC,* 2006 WL 1683416 (S.D.N.Y. June 20, 2006). General merger clauses, such as the one referenced in the present case, do not in and of themselves bar these claims.

 Also, Plaintiff relies upon statements of present fact and not future promises or puffery, as Defendants claim. (*See* Defs.' Br. 16-19.) The statements relied upon by Plaintiff bear striking similarity to the statements relied upon in *Stewart* (wording in both refers to work reportedly in progress or currently in

the process of being completed, and not to future activities), and therefore, is likewise sustainable. (*See Stewart* at 89.)

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 134 of 189

LCS Group, LLC v. Shire LLC, Not Reported in Fed. Rptr. (2019)

2019 WL 7824613

KeyCite Yellow Flag - Negative Treatment

On Reconsideration in Part   Lobbin v. Shire LLC,   2d Cir.,   December 6, 2019

2019 WL 7824613
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

LCS GROUP, LLC, Plaintiff-Appellant,

v.

SHIRE LLC, et al., Defendants-Appellees.
Stephen M. Lobbin, Foundation
Law Group LLP, Appellants,
LCS Group, LLC, Plaintiff,

v.

Shire LLC, et al., Defendants-Appellees,
Baker Hostetler, LLP, Defendant.

19-942
|
19-2404
|
November 12, 2019

S.D.N.Y. – N.Y.C., 18-cv-2688, Torres, J.

**Attorneys and Law Firms**

Stephen M. Lobbin, Esq., SML Avvocati P.C., La Jolla, CA, for Plaintiff-Appellant

Porter F. Fleming, Esq., Jonathan Herstoff, Esq., Jason Ari Kanter, Esq., Haug Partners LLP, New York, NY, for Defendants-Appellees Shire LLC, Shire Development LLC, Shire PLC, Haug Partners LLP

Tracy L. Cole, Esq., Baker & Hostetler LLP, New York, NY, for Defendant-Appellee Baker & Hostetler LLP

Present: Richard C. Wesley, Debra Ann Livingston, Joseph F. Bianco, Circuit Judges.

**Opinion**

**\*1** These appeals are consolidated for purposes of this order.

In 2d Cir. 19-942, Appellants move for reconsideration of the Court's order denying reinstatement and for the recall of the Court's mandate. Appellees cross-move to sanction the Appellants for filing and maintaining a frivolous appeal. In 2d Cir. 19-2404, Appellees move to dismiss the appeal. Upon

due consideration, it is hereby ORDERED that Appellants' motions in 2d Cir. 19-942 are DENIED and Appellees' motion in 2d Cir. 19-2404 is GRANTED because the Court lacks jurisdiction over either appeal.

First, no notice of appeal filed by the Appellants gives this Court jurisdiction to review the portion of the district court's judgment covering the merits. The April 2019 notice of appeal only covered Appellant Stephen M. Lobbin and only designated "the final judgment as it relate[d] to sanctions" as the matter being appealed. S.D.N.Y. 18-cv-2688, doc. 83. That unambiguous limitation of the scope of the notice of appeal limited this Court's jurisdiction to, at most, review of the orders ostensibly awarding attorney's fees as a sanction. See Fed. R. App. P. 3(c)(1)(B); Elliott v. City of Hartford, 823 F.3d 170, 172 (2d Cir. 2016) (per curiam). Although the June 2019 amended notice of appeal, S.D.N.Y. 18-cv-2688, doc. 97, was not limited in the same way as the April 2019 notice of appeal, it was untimely to the extent it designated the March 2019 judgment as the matter being appealed. See 28 U.S.C. § 2107; Bowles v. Russell, 551 U.S. 205, 214 (2007) (30-day deadline is jurisdictional). The August 2019 notice of appeal, S.D.N.Y. 18-cv-2688, doc. 104, also was untimely as to the judgment.

Second, to the extent any Appellant seeks to challenge the magistrate judge's award of attorney's fees as a sanction, a final order has not been issued by the district court as contemplated by 28 U.S.C. § 1291. See Petrello v. White, 533 F.3d 110, 113 (2d Cir. 2008). "Where attorney's fees and costs have been awarded, but not determined, the order is not final." Krumme v. WestPoint Stevens Inc., 143 F.3d 71, 86 (2d Cir. 1998). The district court's March 2019 order and judgment did not determine the amount of fees. See S.D.N.Y. 18-cv-2688, docs. 75, 76. Although the amount of fees was determined in a later order issued by a magistrate judge, that order is not final for purposes of § 1291. Under Federal Rule of Civil Procedure 54(d)(2)(D), a district court "may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter." Under Rule 72(b), absent the consent of the parties, a magistrate judge is only authorized to issue findings and recommendations on a dispositive pretrial matter. See also 28 U.S.C. § 636(b)(1)(B); Leyse v. Corp. Collection Servs., 557 F. Supp. 2d 442, 443 (S.D.N.Y. 2008) (deeming magistrate judge's "order" to be a report and recommendation). The Court thus understands the magistrate judge's May and July 2019 "orders," S.D.N.Y. 18-cv-2688, docs. 92, 100, to be recommendations that have not yet been reviewed by the district court. See, e.g., LoSacco v.

**LCS Group, LLC v. Shire LLC, Not Reported in Fed. Rptr. (2019)**

2019 WL 7824613

*City of Middletown*, 71 F.3d 88, 91 (2d Cir. 1995) (stating that magistrate judge's ruling under 28 U.S.C. § 636(b)(1)(A) or (b)(3) is directly appealable to a district judge, not this Court); *Sick v. City of Buffalo*, 574 F.2d 689, 693–94 (2d Cir. 1978) (stating that magistrate judge's report and recommendation, pursuant to § 636(b)(1)(B), is generally not a final order from which an appeal can be taken to the Court of Appeals).

**\*2** It is further ORDERED that Appellees' motion for sanctions is DENIED. Although we do not approve of the manner in which Appellant Lobbin prosecuted the appeal docketed under 2d Cir. 19-942, we conclude that sanctions are not warranted at this time. *See* Fed. R. App. P. 38; 28 U.S.C. § 1927; *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 948 F.2d 1338, 1345 (2d Cir. 1991).

**All Citations**

Not Reported in Fed. Rptr., 2019 WL 7824613

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

451 Fed.Appx. 57
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE 32.1
AND THIS COURT'S LOCAL RULE 32.1.1. WHEN
CITING A SUMMARY ORDER IN A DOCUMENT
FILED WITH THIS COURT, A PARTY MUST
CITE EITHER THE FEDERAL APPENDIX OR AN
ELECTRONIC DATABASE (WITH THE NOTATION
"SUMMARY ORDER"). A PARTY CITING A
SUMMARY ORDER MUST SERVE A COPY OF IT ON
ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals, Second Circuit.

Felix I. LESSAMBO, Plaintiff–Appellant,

v.

PRICEWATERHOUSECOOPERS, L.P.; Suchi
Lee; Durga Malampalli; Thomas Moore; Thomas
Mullen; Puneet Arora, Defendants–Appellees,
Oscar M.Q. Teunissen; Dimittri Semenov; Thomas
Swoboda; Thomas Groenen; Lowell Huth; Elena
Richards; Michelle Yen McGrady, Defendants.

No. 10–4464–cv
|
Dec. 21, 2011.

**Synopsis**
**Background:** Employee brought action against employer,
alleging racial discrimination. The United States District
Court for the Southern District of New York, Pauley, J.,
2009 WL 2170179, granted motion for partial judgment on
pleadings, and 2010 WL 3958787, dismissed complaint on
summary judgment. Employee appealed.

The Court of Appeals held that Court of Appeals lacked
subject matter jurisdiction to review district court's decision
granting motion for partial judgment on the pleadings.

Dismissed in part and affirmed in part.

**Procedural Posture(s):** On Appeal; Motion for Summary
Judgment; Motion for Judgment on the Pleadings.

**\*57** **UPON DUE CONSIDERATION,** it is hereby
**ORDERED, ADJUDGED, AND DECREED** that the
District Court judgment is **AFFIRMED.**

**Attorneys and Law Firms**

Felix I. Lessambo, pro se, Mount Vernon, NY.

Stephen L. Sheinfeld, William M. Sunkel, Winston & Strawn
LLP, New York, NY, for Defendants–Appellees.

**\*58** PRESENT: DENNIS JACOBS, Chief Judge, PIERRE
N. LEVAL, DEBRA ANN LIVINGSTON, Circuit Judges.

*SUMMARY ORDER*

Plaintiff–Appellant Felix I. Lessambo, *pro se,* appeals from
the September 29, 2010 judgment of the United States District
Court for the Southern District of New York (Pauley, *J.*)
dismissing the complaint on summary judgment. We assume
the parties' familiarity with the underlying facts and the
procedural history of the case.

**[1]** This Court lacks jurisdiction to review the District Court's
June 2009 decision granting the motion for partial judgment
on the pleadings because that decision was not designated in
Lessambo's notice of appeal, as required by Rule 3(c)(1)(B)
of the Federal Rule of Appellate Procedure. *See Shrader v.
CSX Transp., Inc.,* 70 F.3d 255, 256 (2d Cir.1995) (holding
that, when a notice of appeal specified one district court
order while failing to reference another, an appeal from
the unmentioned order cannot be considered). Therefore,
insofar as Lessambo challenges the District Court's June 2009
decision, the appeal is dismissed for lack of subject-matter
jurisdiction.

**[2]** As to Lessambo's remaining contentions, we affirm for
substantially the same reasons stated in the District Court's
thorough opinion.

Finding no merit in Lessambo's remaining arguments, we
hereby **AFFIRM** the judgment of the District Court, and
**DISMISS** the portion of the appeal for which we lack
jurisdiction.

**All Citations**

451 Fed.Appx. 57

---

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 138 of 189

Loeb v. County of Suffolk, Not Reported in Fed. Supp. (2023)

2023 WL 4163117

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

Christopher LOEB, Plaintiff,

v.

COUNTY OF SUFFOLK, et al., Defendants.

22-CV-6410 (HG)

|

Signed June 23, 2023

**Attorneys and Law Firms**

Christopher Joseph Cassar, The Cassar Law Firm, P.C., Huntington, NY, for Plaintiff.

Brian C. Mitchell, Davis and Ferber, Islandia, NY, Callan Wright Tauster, Suffolk County Department of Law, Hauppauge, NY, for Defendants County of Suffolk, Suffolk County Police Officer Shawn Petersen, Suffolk County Police Officer Erik Pedersen, Suffolk County Police Officer Frank Santanello, Suffolk County Police Officer Mathew Kenneally, Suffolk County Police Glen Ritchie.

**MEMORANDUM & ORDER**

HECTOR GONZALEZ, United States District Judge:

**\*1** Plaintiff Christopher Loeb brings a civil rights action under 42 U.S.C. § 1983 against the County of Suffolk, Suffolk County Police Officers Shawn Petersen, Erik Pedersen, Frank Santanello, Mathew Kenneally, Glen Ritchie, and other unidentified John Doe Suffolk County Police Officers (collectively, "Defendants"). Plaintiff asserts claims of excessive force, supervisory liability, failure to intervene, and municipal liability against Defendants. ECF No. 1 at 5–8.

Presently before the Court is Defendants' motion to dismiss Plaintiff's complaint. ECF No. 11. For the reasons set forth below, the Court grants Defendants' motion.

**BACKGROUND**

Plaintiff's claims arise from his arrest on March 22, 2019, in Suffolk County. Plaintiff alleges that during his arrest Defendants "beat" him and encouraged a Suffolk County

police dog to attack him. ECF No. 1 at 3. Plaintiff further alleges that as a result, he suffered substantial pain and serious physical injury. *Id.*

On October 21, 2022, Plaintiff filed the instant complaint. ECF No. 1. On December 8, 2022, in lieu of an answer, Defendants submitted a pre-motion conference letter requesting leave to file a motion to dismiss the complaint ("letter-motion"). ECF No. 11. On December 20, 2022, following Plaintiff's failure to submit a response to Defendants' letter-motion, on December 20, 2022, the Court directed Plaintiff to file a response by December 27, 2022. The Court warned Plaintiff that "[f]ailure to respond may result in the Court converting Defendants' letter into the motion itself and deeming it unopposed." Text Order dated December 20, 2022. Thereafter, on December 28, 2022, the Court converted Defendants' letter-motion to the motion to dismiss itself and deemed it unopposed because Plaintiff failed to file a response. [1] *See* Text Order dated December 28, 2022. Later that day, in response to the Court's December 28, 2022, Order, Plaintiff filed an opposition to Defendants' motion to dismiss. ECF No. 14. On June 7, 2023, the Court held oral argument on Defendants' motion and directed the parties to submit further briefing. On June 14, 2023, Plaintiff submitted supplemental briefing, ECF No. 18, and on June 21, 2023, Defendants filed a supplemental opposition. ECF No. 19.

**LEGAL STANDARD**

**\*2** "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). [2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In resolving a motion to dismiss, "consideration is limited to the factual allegations in plaintiffs' ... complaint, which are accepted as true." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). While the Court must draw all reasonable inferences in favor of the non-moving party, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim. *Iqbal*, 556 U.S. at 678.

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 139 of 189

Loeb v. County of Suffolk, Not Reported in Fed. Supp. (2023)

## DISCUSSION

Plaintiff raises claims under 42 U.S.C. § 1983 for excessive force, supervisory liability, failure to intervene, and municipal liability. "Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). Defendants move to dismiss Plaintiff's claims on the basis that: (i) Plaintiff's claims are barred by the statute of limitations, and (ii) Plaintiff voluntarily waived his rights to assert any claims arising from his arrest as a result of a settlement agreement in a related civil forfeiture action. *See generally* ECF No. 11.

### I. Plaintiff's Claims Are Time-Barred

"Section 1983 does not provide a specific statute of limitations. Thus, courts apply the statute of limitations for personal injury actions under state law. Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations." *Rivera v. City of New York*, No. 20-cv-9968, 2022 WL 1523165, at *4 (S.D.N.Y. May 13, 2022). However, "[a]lthough the statute of limitations period is determined by reference to state law, the determination of when a claim accrues is governed by federal law. For § 1983 claims, accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.*; *see also Garland v. City of New York*, No. 22-cv-10947, 2023 WL 2898625, at *5 (S.D.N.Y. Apr. 10, 2023) ("A claim for excessive force under Section 1983 accrues when the excessive force was used. In addition, a claim for failure to intervene under Section 1983 that is associated with an official's use of excessive force accrues on the date of the excessive force.").

Plaintiff's claims accrued on the day of his arrest, that is on March 22, 2019, and he filed his complaint on October 21, 2022. Under the three-year statute of limitations, Plaintiff's claims were time-barred as of March 23, 2022. Plaintiff argues that on March 20, 2020, the Governor of New York issued Executive Order 202.8, which he claims "tolled the statute of limitations in New York in light of the COVID-19 pandemic" and "[s]ubsequent orders extended the tolling period until November 3, 2020." ECF No. 14 at 2.[3] Plaintiff implicitly argues that he is entitled to an additional 228 days—the period of time covered by the executive orders —to file his complaint. Courts in this Circuit are split on whether Executive Order 202.8 suspended or tolled time

periods to which it applied. *Compare Barry v. Royal Air Maroc*, No. 21-cv-8481, 2022 WL 3215050, at *4 (S.D.N.Y. July 8, 2022), *report and recommendation adopted*, 2022 WL 3214928 (S.D.N.Y. Aug. 9, 2022) ("A number of New York courts have held that [Executive Order] 202.8 suspended *rather than* tolled the time periods to which it applied, and thus extended limitations periods that would otherwise have expired *between* March 3 and November 3, 2020, but did not lengthen periods that expired *after* November 3, 2020.") (emphasis added), *with Bell v. Saunders*, No. 20-cv-256, 2022 WL 2064872, at *5 (N.D.N.Y. June 8, 2022) ("Executive Order 202.8 used the word 'toll' in its operative language, and the Court does not find any persuasive evidence that the Court of Appeals would reach a different conclusion.").

### A. The Executive Orders Suspended (But Did Not Toll) the Statute of Limitations

**\*3** "A toll suspends the running of the applicable period of limitation for a finite time period, and the period of the toll is excluded from the calculation of the relevant time period. Unlike a toll, a suspension does not exclude its effective duration from the calculation of the relevant time period. Rather, it simply delays expiration of the time period until the end date of the suspension." *Brash v. Richards*, 149 N.Y.S.3d 560, 561 (N.Y. App. Div. 2021). The Court is of the opinion that Executive Order 202.8 *suspended* the time period to which it applied, and thus Plaintiff's claims were time-barred as of March 23, 2022. *See also Baker v. 40 Wall St. Holdings Corp.*, 161 N.Y.S.3d 723, 724–25 (N.Y. Sup. Ct. 2022) ("[T]he Governor did not toll all statutes of limitation, but only suspended them, due to the COVID-19 Pandemic, and ... he terminated the suspension on November 3, 2020.... With a suspension, a party can only benefit from the Executive Orders if his or her statute of limitations or filing deadline fell within the suspension period."); *Cruz v. Guaba*, 159 N.Y.S.3d 828, 828 (N.Y. Sup. Ct. 2022) ("Th[e] toll merely stopped the running of any applicable period of limitations for the 228 day period of time between March 3, 2020 and November 3, 2020. Contrary to Plaintiff's claims, the executive orders did not extend everyone's statute of limitations period for an additional 228 days.").

Although Executive Order 202.8 uses the word "toll" in its operative language, the Governor's authority to modify the statute of limitations was derived from the authority vested in him by Section 29–a of New York's Executive Law. *See* State of New York Executive Order No. 202.8

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 140 of 189

Loeb v. County of Suffolk, Not Reported in Fed. Supp. (2023)

("I ... Governor of the State of New York, by virtue of the authority vested in me by Section 29–a of Article 2-B of the Executive Law ... temporarily suspend or modify ... any specific time limit for the commencement, filing, or service of any legal action ... is hereby tolled from the date of this executive order...."). Executive Law Section 29–a provides that the Governor has the authority to "*temporarily suspend*" statutes of limitation during a state disaster emergency. *See* N.Y. Exec. Law § 29–a(1). Section 29–a(2)(d) further provides that, "the [Governor's] order may provide for such *suspension* only under particular circumstances, and may provide for the alteration or modification of the requirements of such statute, local law, ordinance, order, rule or regulation suspended, and may include other terms and conditions." *Id.* (emphasis added). Some New York courts have interpreted this language to mean that because the Governor has the authority to toll a statute of limitations, a toll is therefore the preferred interpretation. *See e.g.*, *Brash*, 149 N.Y.S.3d at 563 ("Since the tolling of a time limitation contained in a statute constitutes a modification of the requirements of such statute within the meaning of Executive Law § 29–a(2)(d), these subsequent executive orders continued the toll that was put in place by [the] Executive Order...."). While the Court does not posit an opinion on the Governor's ultimate authority, it is clear from the language of Section 29–a(2)(d) that COVID-19 presented a "particular circumstance" warranting *suspension*. *See* *Baker*, 161 N.Y.S.3d at 725 ("Here, if there was a toll, the period from the Governor's first order on March 20, 2020, to his last order on November 3, 2020 ... would be added to the statute of limitations for every person with a claim who had not filed suit by March 20, 2020, and would also be added to every type of litigation deadline that arose during the suspension period. That is not what was intended, nor is it what was provided for in the Executive Orders.").

Here, Plaintiff had a year and four months from the expiration of Executive Order 202.8 (on November 3, 2020) to the expiration of the three-year statute of limitations (March 23, 2022). Yet, Plaintiff did not file his complaint until October 21, 2022.[4] Executive Order 202.8 was issued in part to preserve litigants' rights during the COVID-19 pandemic, which presented extraordinary difficulties for, among other things, filing, obtaining counsel, and utilizing court services such as *pro se* offices. Interpreting Executive Order 202.8 as a toll rather than a suspension is contrary to the spirit of the Executive Order. Any other interpretation would provide an unwarranted windfall to litigants, such as Plaintiff, who had claims that did not expire during the emergency period covered by the Executive orders. Those litigants did not face

the risk that their claims would expire because of an inability to access the courthouse to file their claims during a period when normal courthouse operations were in flux because of the pandemic. Accordingly, the Court finds that Plaintiff's claims are time-barred.

### B. The Court Declines to Apply Any Tolling Authorized by the Executive Orders

**\*4** Alternatively, even if Executive Order 202.8 and its successive orders tolled rather than suspended the statute of limitations deadline, the Court holds that such a state law tolling rule does not apply to Section 1983 claims filed in federal court. Both the Supreme Court and the Second Circuit have explained that when considering Section 1983 claims, federal courts "generally refer[ ] to state law for tolling rules" when addressing statute of limitations issues. *Wallace v. Kato*, 549 U.S. 384, 394 (2007); *see* *Watson v. Tong*, No. 22-1258-cv, 2023 WL 176963, at \*2 n.3 (2d Cir. Jan. 13, 2023) (explaining that "Section 1983 claims borrow from state law for rules governing tolling"). However, this borrowing rule does not necessarily apply in every circumstance. The Supreme Court has said that an exception exists when applying a state law tolling rule "would defeat the goals of the federal statute at issue." *Hardin v. Straub*, 490 U.S. 536, 539 (1989) (applying state law tolling rule to Section 1983 claims). *See also* *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) ("The Supreme Court has instructed that in section 1983 actions, we borrow not only a state's limitations period but also its tolling rules, unless applying the state's tolling rules would defeat the goals of the federal statute at issue."); *Onibokun v. Chandler*, 749 F. App'x 65, 66 (2d Cir. 2019) (confirming continued vitality of exception).

The Court finds that applying any tolling purportedly required by the Executive Orders to Section 1983 claims filed in federal court would defeat the purposes of finality and certainty that statutes of limitations serve. The portion of Executive Order 202.8 that tolled the statute of limitations in New York state was expressly attributed not only to the Governor's power, but also to "the directive of the Chief Judge of the State to limit court operations to essential matters during the pendency of the COVID-19 health crisis." *See* State of New York Executive Order No. 202.8. Any tolling of the statute of limitations was, therefore, tied specifically to the status of operations in New York state courts and their diminished ability to serve the public due to their limited

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 141 of 189

Loeb v. County of Suffolk, Not Reported in Fed. Supp. (2023)

operations. But the federal courts operated under different circumstances, and Congress did not similarly respond to their limited availability by tolling, suspending, or extending all applicable statute of limitations.

Notably, the Court's decision not to give any tolling effect to the Executive Orders does not diminish plaintiffs' substantive rights because state courts are obligated to exercise concurrent jurisdiction over Section 1983 claims. *See Haywood v. Drown*, 556 U.S. 729, 735–36 (2009). During such suits, the New York courts may interpret the Executive Orders as they deem appropriate under state law.

## II. The Settlement Agreement Establishes Waiver

In conjunction with the criminal prosecution related to Plaintiff's arrest, a civil forfeiture action was commenced against Plaintiff by the District Attorney of Suffolk County in Suffolk County Supreme Court. *See* ECF No. 11 at 2; *see also Sini v. Loeb*, Index No. 19-0862 (Suffolk Cnty. Sup. Ct.). On April 26, 2022, "Plaintiff resolved the forfeiture action by voluntarily entering into a settlement agreement and consent to forfeiture." *Id.* Defendants argue that Plaintiff's suit is barred by the settlement agreement because Plaintiff "waived his rights to assert any claims arising out of the underlying events of March 22, 2019" including his arrest. ECF No. 11 at 2. Plaintiff responds that the waiver was not "in fact [a] knowing and voluntary waiver of [an] action based on excessive force." ECF No. 14 at 3. "Although a defendant has the initial burden of establishing that it has been released from any claims, a signed release shifts the burden of going forward to the plaintiff to show that there has been fraud, duress or some other fact which will be sufficient to void the release." *Gallo v. Inter-Con Sec. Sys., Inc.*, No. 20-cv-4879, 2021 WL 3913539, at *5 (S.D.N.Y. Sept. 1, 2021) (granting motion to dismiss released claims); *Ogbolu v. Trs. of Columbia Univ.*, No. 21-cv-1697, 2022 WL 280934, at *3 (S.D.N.Y. Jan. 31, 2022) (granting motion to dismiss and describing same burden-shifting framework), *aff'd*, No. 22-419-cv, 2023 WL 2579044 (2d Cir. Mar. 21, 2023).

**\*5** As an initial matter, the Court must determine whether it can consider the settlement agreement on a motion to dismiss. Generally, in resolving a motion to dismiss, "consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true." *Brass*, 987 F.2d at 150. However, "if the Settlement Agreement would dispose of this matter (that is, if it is an agreement entered into in good faith) it makes no sense to deny dismissal simply because it was not referenced in the Complaint." *See In re*

*Refco Inc. Secs. Litig.*, No. 07-md-1902, 2012 WL 4053939, at *2 (S.D.N.Y. Aug. 8, 2012), *report and recommendation adopted*, 2012 WL 4009175 (S.D.N.Y. Sept. 12, 2012); *see also Deutsch v. Pressler, Felt & Warshaw, LLP*, 535 F. Supp. 3d 322, 327 (S.D.N.Y. 2021) (citing *In re Refco* and considering settlement agreement at motion to dismiss stage). Accordingly, the Court will consider the settlement agreement because its release provision is dispositive.

Additionally, the settlement agreement was publicly filed on the Suffolk County Supreme Court's docket and so-ordered by the presiding judge in order to terminate the parties' litigation. *Sini v. Loeb*, Index No. 19-0862 (Suffolk Cnty. Sup. Ct. filed Apr. 29, 2022) (NYSCEF No. 10). The Court may therefore consider the agreement pursuant to the Court's authority to take judicial notice of dockets from other courts' proceedings on a motion to dismiss. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (affirming decision granting motion to dismiss and explaining that "docket sheets are public records of which the court could take judicial notice"). [5]

In this case, the settlement agreement's "release and indemnification" provision provides that:

> [Plaintiff] hereby agrees to release, indemnify, and hold harmless the District Attorney, the SCPD, the County of Suffolk, their officers, agents and/or employees from and against *any* claim for relief or cause of action for any conduct or action *in any way connected to the underlying criminal action*, the action, and/or the seizure, custody, and release of any and all property, including, but not limited to, claims by third parties to ownership of or security interest in property hereby forfeited, released to the defendant, or paid to his counsel.

ECF No. 15-1 at 5 (emphasis added). In approving the settlement agreement, the Suffolk County Supreme Court also ordered that "upon the express, written consent of the parties to the stipulations, understandings, *waivers*, and all other representations set forth above, that the Agreement shall

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 142 of 189

Loeb v. County of Suffolk, Not Reported in Fed. Supp. (2023)

be accorded full force and effect, and enforceable in law and equity." *Id.* at 7 (emphasis added).

The Court finds that the express language of the settlement agreement, which provides that Plaintiff waives "*any claim for relief ... in any way connected to the underlying criminal action,*" militates in favor of dismissal of the action. *Id.* at 5 (emphasis added). Plaintiff does not dispute that the settlement agreement relates to his March 22, 2019, arrest, but rather argues that constitutional rights can only be waived "upon clear and convincing evidence that the waiver is knowing, voluntary, and intelligent." ECF No. 14 at 2 ("[D]efendants claim that ... the plaintiff resolved the forfeiture action by ... entering into a settlement agreement ... which was so ordered by ... *the judge presiding over the criminal action* .... This agreement was in connection with the forfeiture of a jeep and not a waiver of any action for excessive force.") (emphasis added). The language of the release leaves no room for doubt, and there is nothing to suggest that Plaintiff was unaware that the release would apply to "any claim ... in any way connected to the underlying criminal action." ECF No. 15-1 at 5. The settlement agreement also unambiguously states that Plaintiff was assisted and advised of the consequences of its provisions by counsel. *Id.* ("[Plaintiff] knowingly and voluntarily enters into this Agreement after effective assistance from his counsel. [Plaintiff] has been advised by his attorney of the alternatives to this Agreement and *the consequences* thereto....") (emphasis added). As a result, contrary to Plaintiff's assertions, the Court finds that he knowingly and voluntarily agreed to a release of all claims. *See Miller v. New York City Dep't of Educ.*, 71 F. Supp. 3d 376, 380 (S.D.N.Y. 2014) ("A release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced. This standard applies to waivers of constitutional rights.").[6] Accordingly, the Court further finds that the complaint should be dismissed for the alternative reason that Plaintiff is barred from bringing the action as a result of the settlement agreement.

## CONCLUSION

**\*6** For the reasons set forth above, Defendants' motion to dismiss is GRANTED in its entirety and Plaintiff's claims are dismissed with prejudice.[7]

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4163117

---

## Footnotes

1  The Second Circuit has "approved the practice of construing pre-motion letters as the motions themselves – under appropriate circumstances." *Kapitalforeningen Lægernes Inv. v. United Techs. Corp.*, 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court construing pre-motion letters as the motions themselves). A court does not abuse its discretion in construing a pre-motion letter as the motion itself, where the party seeking leave to file the motion had a sufficient opportunity to make the necessary arguments to preserve its position for appellate review. *See In re Best Payphones, Inc.*, 450 F. App'x 8, 15 (2d Cir. 2011) (affirming the district court converting a pre-motion letter to a motion); *see also Manus Sports Gloves, LLC v. Everlast Worldwide, Inc.*, 759 F. Supp. 2d 459, 460 (S.D.N.Y. 2010) (finding that "the Court is not persuaded that motion practice is warranted at this point" and thus construing letter request for pre-motion conference as a motion). Here, Plaintiff failed to file a response to Defendants' letter-motion twice. Despite these failures and although the Court had already deemed Defendants' letter-motion unopposed, the Court is considering the arguments raised in Plaintiff's opposition, ECF No. 14, and his supplemental briefing, ECF No. 18.

2  Unless noted, case law quotations in this Order accept all alterations and omit all internal quotation marks, citations, and footnotes.

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 143 of 189

**Loeb v. County of Suffolk, Not Reported in Fed. Supp. (2023)**

3    The Governor of New York later issued nine subsequent executive orders that extended the suspension period through November 3, 2020. *See* Executive Order Nos. 202.14, 202.28, 202.38, 202.48, 202.55, 202.55.1, 202.60, 202.67, 202.72.

4    It is worth noting that if the Court was inclined to interpret Executive 202.8 as a toll—which it is not—the statute of limitations would have expired on November 6, 2022. Plaintiff did not file his complaint until October 21, 2022, just 16 days before the statute of limitations would have expired under Plaintiff's theory.

5    Plaintiff further argues that the Court should not consider the settlement agreement because it is not attached to, incorporated by reference, integral to, or explicitly referenced in the complaint. *See* ECF No. 18 at 2 (citing *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002)). For the reasons set forth above, the Court need not reach this issue because it may take judicial notice of the settlement agreement, and alternatively may consider the settlement agreement if it would "dispose" of the action. *See In re Refco*, 2012 WL 4053939, at *2.

6    Plaintiff asserts that he was advised by his prior attorneys that "if he accepted the offer of the misdemeanor and forfeit the Jeep, that he was not waiving his civil lawsuit against the county for excessive force." ECF No. 18 at 2. Yet, the language of the settlement agreement explicitly states the opposite. "A plaintiff cannot survive a motion to dismiss merely by stating conclusory allegations in the complaint." *Lans v. Kiska Const. Corp.*, No. 96-cv-4114, 1997 WL 313162, at *2 (S.D.N.Y. Apr. 18, 1997). Here, not only is Plaintiff's assertion conclusory, it is also not featured in the complaint. Accordingly, the Court will not consider it.

7    The Court finds that dismissal with prejudice is warranted because any amendment would be "futile" as Plaintiff's claims are time-barred. *See Kleeberg v. Eber*, 331 F.R.D. 302, 314 (S.D.N.Y. 2019) ("Courts will find good reason to deny a request for leave to amend pursuant to Rule 15 where the proposed amendment is futile because, for example, it fails to state a viable legal claim or is time-barred.").

---

End of Document                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 144 of 189

Maldonado v. Arcadia Business Corporation, Not Reported in Fed. Supp. (2015)

2015 WL 12791329
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Jose MALDONADO, individually and on behalf
of all other employees similarly situated, Plaintiff,

v.

ARCADIA BUSINESS
CORPORATION, et al., Defendants.

14 CV 4129 (DLI)(RML)
|
Signed 08/27/2015

**Attorneys and Law Firms**

Alan G. Serrins, Michael Taubenfeld, Serrins Fisher LLP,
New York, NY, for Plaintiff.

Diane K. Mendez, Murphy, Bartol & O'Brien LLP, Mineola,
NY, Andrew P. Saulitis, Andrew P. Saulitis, P.C., New York,
NY, Peter Scoolidge, Peter J. Scoolidge, Esq., Brooklyn, NY,
for Defendants.

REPORT AND RECOMMENDATION

LEVY, United States Magistrate Judge:

**\*1** By order dated January 12, 2015, the Honorable Dora
L. Irizarry, United States District Judge, referred defendant
Josephine O'Grady's motion to dismiss for improper service
of process to me for a report and recommendation. For
the reasons stated below, I respectfully recommend that the
motion be denied.

**BACKGROUND AND FACTS**

Plaintiff Jose Maldonado ("plaintiff") commenced this wage
and hour case on July 3, 2014, under the Fair Labor Standards
Act ("FLSA"), 29 U.S.C. §§ 201, et seq., the New York
Labor Law ("NYLL"), including Articles 6, 8 and 19, and the
New York State Department of Labor's Wage Orders ("Wage
Orders"), 12 N.Y.C.R.R. §§ 137, et seq. (Complaint, dated
July 3, 2014 ("Compl."), Dkt. No. 1, ¶ 26.) This matter was
conditionally certified as a collective action on April 24,
2015. (Order, dated Apr. 24, 2015, Dkt. No. 44.)

Plaintiff was a stone setter who alleged that he was
employed by several named individuals and companies
("defendants"), including Arcadia Business Corporation
("ABC"), which was owned and operated by defendant
Josephine O'Grady ("O'Grady"). In essence, plaintiff alleges
defendants underpaid him for the work he performed during
the relevant time period. (See generally Compl.) This motion
concerns solely the claims against O'Grady.[1]

According to plaintiff's documentation, O'Grady was served
on August 1, 2014 by a process server who hand-delivered the
summons and complaint to ABC's address, listed as "29-07
119th Street, Flushing, NY 11354." (Affidavit of Service
of Denise Lewis, sworn to Aug. 4, 2014 ("Affidavit of
Service"), Dkt. No. 8.) The recipient was "William Larosa,"
who identified himself as a co-worker of O'Grady. (Id.) The
affidavit described Mr. Larosa as a 58-year-old male. (Id.) A
copy of the summons and complaint was also sent on August
4, 2014 to the same "Flushing, NY" address by first class mail.
(Id.)

With the exception of O'Grady and ABC, defendants
answered the complaint on August 18 and October 20, 2014.
(Answer of Petrillo Stone Corp., dated Aug. 15, 2014, Dkt.
No. 4; Answer of James Donaghy, Academic Stone Setters,
Inc. and Academic Stone Inc., dated Oct. 20, 2014, Dkt.
No. 9.) On October 29, 2014, plaintiff requested an entry of
default against O'Grady and ABC. (Request for Certificate
of Default, dated Oct. 29, 2014, Dkt. No. 10.) The Clerk
of the Court entered defaults against O'Grady and ABC on
October 31, 2014. (Entry of Default of Defendant Josephine
O'Grady, dated Oct. 31, 2014, Dkt. No. 12; Entry of Default
of Defendant ABC, dated Oct. 31, 2014, Dkt. No. 13.)

A week later, on November 6, 2014, O'Grady wrote a letter
to the court seeking leave to challenge the default. (Letter,
dated Nov. 6, 2014, Dkt. No. 21.) She asserted that she
had never received notice of the complaint and had only
recently become aware of the action pending against her from
a "former business colleague." (Id.) In support of her request,
O'Grady explained that over the course of the previous year
"[her] company [was] slowly being closed for business."[2]
(Id.) Additionally, she stated that she had not employed
anyone "in more than a year" and she did not have a company
telephone or fax. (Id.) However, O'Grady did admit that she
"still receive[s] mail at the company address."[3] O'Grady
further stated it was "not possible" that she was served by
plaintiff as she was out of the country on August 1, 2014,
the date the process server claimed to have delivered the

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 145 of 189

Maldonado v. Arcadia Business Corporation, Not Reported in Fed. Supp. (2015)

summons and complaint. (Id.) She also asserted that she did not know a person named "William Larosa." (Id.)

**\*2** On November 7, 2014, all parties appeared in court for an initial conference, [4] at which plaintiff and O'Grady came to an agreement: in exchange for plaintiff's voluntarily withdrawing her default motion, O'Grady "[would] accept service by email on herself and the corporate defendant of which she is the sole officer." (Minute Entry, dated Nov. 7, 2014.) It was also established that O'Grady would proceed pro se and that ABC would default. (Id.) In compliance with this agreement, plaintiff served O'Grady on November 13, 2014 via "theshitbox@hotmail.com," an email address she provided. (Motion to Dismiss, dated Dec. 1, 2014, Dkt. 22-1, at 2.) On December 2, 2014, O'Grady moved to dismiss the complaint on the ground that the notice emailed to her on November 13, 2014 was beyond the 120 day limitation of Rule 4 of the Federal Rules of Civil Procedure. (Id.) In addition to her original motion, O'Grady supplied supplemental materials on December 17, 2014, which the court considered for this recommendation. (See Defendant O'Grady Supplemental Papers and Supports re 30, dated Dec. 17, 2014, Dkt. 31.)

### DISCUSSION

Proper service of a complaint is a key component of a fair judicial process. It provides a defendant the opportunity to address allegations raised against her of which she may otherwise be unaware. The Federal Rules of Civil Procedure provide that service may be effected by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located ...." FED. R. CIV. P. 4(e)(1). Thus, for the present matter, New York State law controls. The New York Civil Practice Law and Rules enumerate several means by which proper service can be effected. In addition to personal service, New York State permits service by a combination of delivery and mail. See N.Y. C.P.L.R. § 308(2).

A. New York State "Deliver and Mail" Process

1. Delivery to Actual Place of Business

The first step of this "deliver and mail" process requires "deliver[y of] the summons within the state to a person of suitable age and discretion at the actual place of business ... of

the person to be served ...." N.Y. C.P.L.R. § 308(2). "[A]ctual place of business" is defined as including "any location that the defendant, through regular solicitation or advertisement, has held out as the place of business." N.Y. C.P.L.R. § 308(6). "New York courts have construed 'actual place of business' to include (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a clear identification of the work performed by her within that place of business." Warshun v. New York Cmty. Bancorp., Inc., 957 F. Supp. 2d 259, 266 (E.D.N.Y. 2013) (quoting Velez v. Vassalo, 203 F. Supp. 2d 312, 325 (S.D.N.Y. 2002)). See also, Glasser v. Keller, 567 N.Y.S.2d 981, 982 (Sup. Ct. Queens Cnty. 1991). The key requirement is a reasonable reliance on prompt redelivery of the summons to the defendant. See Ascencio-Sutphen v. McDonald's Corp., 838 N.Y.S.2d 403, 407 (Sup. Ct. Bronx Cnty. 2007).

The New York statute also requires that the recipient of the summons be a person of "suitable age and discretion." N.Y. C.P.L.R. § 308(2). This person "must objectively be of sufficient maturity, understanding and responsibility under the circumstances so as to be reasonably likely to convey the summons to the defendant." Entm't by J&J, Inc. v. Las Hermanas Rest., Inc., No. 02 CV 1119, 2006 WL 3711565, at \*2 (S.D.N.Y. Dec. 14, 2006) (citing City of New York v. Chem. Bank, 470 N.Y.S.2d 280, 285 (Sup. Ct. N.Y. Cnty. 1983) (listing cases)). [5] An adult co-worker can satisfy these requirements; it makes no difference if the individual refuses to give his name or gives a false one. See, e.g., Finkel v. Genergy Elec. Servs. Co. LLC, No. 08 CV 446, 2010 WL 8445099, at \*2 (E.D.N.Y. Aug. 24, 2010) (finding service was proper when delivered to a self-identified co-worker of the defendant who refused to give his name); Garcia v. Maersk, No. 03 CV 5697, 2005 WL 1492380, at \*1 (E.D.N.Y. June 24, 2005) (upholding sufficiency of service where "Joe Smith" accepted service on behalf of a corporation). Significantly, there is no requirement that the process server independently verify the person's self-proclaimed relationship to the defendant, so long as it is reasonable to assume they are who they purport to be. See, e.g., Finkel, 2010 WL 8445099, at \*2 (noting the recipient self-identified as the co-worker of the defendant).

2. Mailing to Actual Place of Business

**\*3** In addition to hand-delivering the summons, a plaintiff must mail the summons "by first class mail to the person

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 146 of 189

Maldonado v. Arcadia Business Corporation, Not Reported in Fed. Supp. (2015)

to be served at his or her actual place of business ...." N.Y. C.P.L.R. § 308(2). It must be "in an envelope bearing the legend 'personal and confidential' and not indicating on the outside thereof ... that the communication is from an attorney or concerns an action against the person to be served ...." N.Y. C.P.L.R. § 308(2). It is not necessary that the defendant actually receive the mailing, as the statute calls only for the sending of the mail. See, e.g., Pesner v. Fried, 560 N.Y.S.2d 795 (2d Dep't 1990); Cohen v. Shure, 548 N.Y.S.2d 696 (2d Dep't 1989). A sufficient challenge to the adequacy of a mailing requires more than mere assertions that delivery was impossible; a defendant must offer "evidence indicating that the address to which the summons and complaint were mailed was deemed insufficient by the postal service [and] evidence indicating that he did not receive the mailed copies ...." King v. Galluzo Equip. & Excavating, Inc., No. 00 CV 6247, 2001 WL 1402996, at *5 (E.D.N.Y. Nov. 8, 2001).

Here, plaintiff has complied with the requirements for proper service. A copy of the summons was hand-delivered to a person who described himself as her co-worker and mailed to O'Grady at ABC's address. O'Grady has admitted that she is the sole owner of ABC and that, as of November 2014, she was still receiving mail at that location; she also represented to the court that she could be contacted at ABC's "Flushing, NY" address. (Letter, dated Nov. 6, 2014, Dkt. No. 21; Initial Conference Recording, dated Nov. 7, 2014.) Thus, ABC was O'Grady's "actual place of business" and it was appropriate for plaintiff's process server to both hand-deliver and mail the summons to that address. While O'Grady stated that her business was slowing down, the fact that she still knowingly received mail there makes it reasonable to assume that she would receive a communication delivered there. As explained above, the process server's affidavit indicates that the summons was received by a 58-year-old male who identified himself as O'Grady's co-worker. Objectively, this appears to be a person of suitable age and discretion. Finally, the summons and complaint were sent by first class mail in an envelope marked "personal and confidential" three days after it was hand-delivered. (See Affidavit of Service.) As such, plaintiff complied with the statutory requirements for proper service.

### 3. Timing and Notice to the Court

New York State law requires that both steps of the "deliver and mail" process be completed within twenty days of each other, though in no particular order. N.Y. C.P.L.R. § 308(2).

Proof of service must be filed with the court within twenty days after the final step is completed and include information that identifies the recipient as being of "suitable age and discretion and state the date, time and place of service ...." Id. However, failure to file proof of service is not necessarily fatal to a plaintiff's claim. Many courts have found this to be "a mere irregularity, non-jurisdictional in nature, which may be corrected by an order nunc pro tunc." Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314 F. Supp. 2d 177, 181 (S.D.N.Y. 2003) (quoting Durant v. Traditional Investments, Ltd., No. 88 CV 9048, 1990 WL 135731, at *3 (S.D.N.Y. Sept. 12, 1990)); see also Haegeland v. Massa, 427 N.Y.S.2d 887 (2d Dep't 1980) (finding that a defendant had been "properly served" under N.Y. C.P.L.R. § 308(2) and entering default judgment in plaintiff's favor despite plaintiff having neglected to file proof of service). In contrast, time limitations set out in the Federal Rules of Civil Procedure, requiring that service be made within 120 days after the complaint is filed, are more rigidly enforced. See infra Section C.

Here, plaintiff's affidavit of service shows that both the hand-delivery and the mailing were completed twenty-nine days after the complaint was filed. (Affidavit of Service.) Plaintiff filed proof of this service with the court in the form of an affidavit that included the identity of a recipient of suitable age and discretion as well as the date, time and place that service was effected. (Id.) While this was filed with the court thirty days after completion of the two-step "deliver and mail" process, this sole irregularity in what was otherwise proper service does not make the service defective, as it is within the discretion of this court to correct this by an order nunc pro tunc. Accordingly, plaintiff complied with the statutory requirements for proper service.

### B. Challenging Proper Service

**\*4** If challenged, a plaintiff bears the burden of showing that service was proper. FED. R. CIV. P. 4(c)(1); Khan v. Khan, 360 Fed.Appx. 202, 203 (2d Cir. 2010). However, absent a request for a full evidentiary hearing, a plaintiff need only show prima facie evidence of proper service. Colvin v. State Univ. Coll. at Farmingdale, No. 13 CV 3595, 2014 WL 2863224, at *12 (E.D.N.Y. June 19, 2014) (internal quotation marks and citations omitted). This requirement can be satisfied by filing an affidavit. See Ahluwalia v. St. George's Univ., LLC, 63 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (citing Colvin, 2014 WL 2863224, at *14). A court has discretion to hold an evidentiary hearing on this matter sua

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 147 of 189

Maldonado v. Arcadia Business Corporation, Not Reported in Fed. Supp. (2015)

sponte, but is not required to do so. See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 86 (2d Cir. 2013).[6]

Finally, filings by a pro se litigant are "to be liberally construed" in favor of that party and are held to "less stringent standards than formal pleadings drafted by lawyers." Water Res. Grp., LLC v. Powers, No. 12 CV 3779, 2013 WL 5202679, at *5 (E.D.N.Y. Sept. 13, 2013) (citations and quotations omitted). However, while courts are to " 'interpret [pro se litigants' filings] to raise the strongest arguments that they suggest,' " Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)), "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice" when construing a motion to dismiss. Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted). Evidence must be produced that shows the service was defective in some way, such as delivery to an incorrect address. See, e.g., Cumberbatch v. Emstar Pizza, Inc., No. 13 CV 7170, 2014 WL 5682513, at *5 (E.D.N.Y. Nov. 4, 2014) (holding that an incorrect address made service improper despite evidence that the mailed notice was actually delivered to the defendant).

In this case, even construing O'Grady's statements liberally, service was proper. By submitting an affidavit with all of the statutorily required information, plaintiff has presented prima facie evidence of proper service. The affidavit of service shows that plaintiff complied with all the requirements of N.Y. C.P.L.R. § 308(2), with the exception of the non-fatal requirement of filing proof of service within twenty days of its completion. Additionally, service was rendered thirty days from the date the complaint was filed with the court, making it compliant with the Federal Rules of Civil Procedure. As such, plaintiff has met his burden of presenting a rebuttable presumption of proper service.

In response, O'Grady provides no more than conclusory assertions that service was improper. Even if her statements are true and she does not know a "William Larosa" and has had no employees for over a year, this is insufficient to overcome plaintiff's showing. A process server is not required to independently verify the recipient's relationship to the defendant. Therefore, O'Grady's motion has failed to demonstrate defective service.

C. Timing and Good Cause

**\*5** The Federal Rules state that service must be made within 120 days after the complaint is filed. FED. R. CIV. P. 4(m). If it is determined that service was not made within this time, the action must be dismissed "without prejudice against that defendant or [the court may] order that service be made within a specified time." Id. (emphasis added). If the plaintiff shows "good cause for the failure, the court must extend the time for service for an appropriate period." Id. " 'Good cause' is generally found only in 'exceptional circumstances' where the plaintiff's failure to make timely service was the result of circumstances beyond his control." Myers v. Sec'y of the Dep't of the Treasury, 173 F.R.D. 44, 46 (E.D.N.Y. 1997).[7] However, even in the absence of good cause, "district courts have discretion to grant extensions ...." Zapata v. City of New York, 502 F.3d 192, 196 (2d Cir. 2007).[8]

In this case, even if the August 1, 2014 service were deemed improper, an extension of time to allow for the November 13, 2014 email to fulfill the requirement of proper service would be warranted. This finding can be made even without addressing the question of good cause or any other factors that might merit an extension of time. At the initial conference on November 7, 2014, plaintiff and O'Grady agreed on the record that plaintiff would voluntarily withdraw his default motion and O'Grady would accept service by email.[9] With this agreement, plaintiff was effectively granted an extension of time to serve O'Grady with her consent. Plaintiff's subsequent compliance with this agreement and O'Grady's acknowledgment of receipt of plaintiff's email on November 30, 2014 establish that service was proper. As such, I respectfully recommend that the motion be denied.

## CONCLUSION

**\*6** For the reasons stated above, I respectfully recommend that Josephine O'Grady's motion to dismiss for improper service of process be denied. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Irizarry and to my chambers, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a).

**All Citations**

Not Reported in Fed. Supp., 2015 WL 12791329

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 148 of 189

Maldonado v. Arcadia Business Corporation, Not Reported in Fed. Supp. (2015)

---

### Footnotes

1   While O'Grady has also asserted a motion to dismiss on behalf of ABC, ABC's motion cannot be considered, as a corporation may not represent itself pro se in federal court. See Jones v. Niagara Frontier Transp. Auth., 772 F.2d 20, 22 (2d Cir. 1983) (holding that "it is established that a corporation, which is an artificial entity that can only act through agents, cannot proceed pro se").

2   If taken from the date of the letter, this would indicate that O'Grady's business began closing on or about November 2013. During the initial conference on November 7, 2014, O'Grady represented to the court that her business would be closed by the end of that month. (Minute Entry, dated Nov. 7, 2014.)

3   Notably, O'Grady informed the court that her contact information was on a letter she submitted to the court dated November 6, 2014. The mailing address listed was the same "Flushing, NY" address to which plaintiff's process server delivered the summons. (See Letter, dated Nov. 6, 2014, Dkt. No. 21.)

4   All parties appeared in person with the exception of O'Grady, who participated by telephone.

5   Delivery to such a person "provide[s] a reasonable likelihood of giving actual notice, since the law correctly presumes that such responsible persons are likely to promptly pass the summons on to its intended recipient." Chem. Bank, 470 N.Y.S.2d at 284 (Sup. Ct. N.Y. Cnty. 1983).

6   In Dorchester, the Second Circuit held that the district court had not erred "in failing to hold an evidentiary hearing, as there is no indication that either party requested one" and that where a district court chooses not to conduct "a full-blown evidentiary hearing," it can only evaluate whether the plaintiff has "through its pleadings and affidavits, made a prima facie showing of personal jurisdiction notwithstanding any controverting presentations by [the defendant]." 722 F.3d at 86 (quotations and citation omitted).

7   Courts will consider two factors in assessing good cause: "(1) reasonableness and diligence of a plaintiff's efforts to serve; and (2) the prejudice to the moving defendants from the delay." Lab Crafters, Inc. v. Flow Safe, Inc., 233 F.R.D. 282, 284 (E.D.N.Y. 2005) (quoting Blessinger v. United States, 174 F.R.D. 29, 31 (E.D.N.Y. 1997)). To satisfy these factors, a plaintiff must show "more than mere attorney 'inadvertence, neglect, or mistake.' " Id. at 284 (quoting Myers at 47). "[R]eliance on a third party or process server to effect service is insufficient to merit a finding of good cause or an extension of time for service." Id. "Additionally, a mistaken belief that service was proper does not establish good cause." Tieman v. City of Newburgh, No. 13 CV 4178, 2015 WL 1379652, at *9 (S.D.N.Y. Mar. 26, 2015) (quoting Bernstein v. Vill. of Piermont, No. 11 CV 3677, 2012 WL 6625231, at *3 (S.D.N.Y. Dec. 20, 2012) (internal quotation marks omitted)).

8   Factors generally considered in determining whether to grant extensions in the absence of good cause are:

> (1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision.

Micciche v. Kemper Nat'l Servs., 560 F. Supp. 2d 204, 210 (E.D.N.Y. 2008) (quoting Beauvoir v. U.S. Secret Serv., 234 F.R.D. 55, 58 (E.D.N.Y. 2006) (internal quotation marks and citations omitted)).

9   In her supplemental materials for this motion, O'Grady acknowledges that she both agreed to accept service via email and that she was served by plaintiff a week later. (See Defendant O'Grady Supplemental Papers and Supports re 30, dated Dec. 17, 2014, at 3, Dkt. 31.)

**Maldonado v. Arcadia Business Corporation, Not Reported in Fed. Supp. (2015)**

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

2003 WL 22221353
This case was not selected for
publication in West's Federal Reporter.
United States Court of Appeals, Second Circuit.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

KATHLEEN'S BAKESHOP, LLC, Respondent.

No. 02–4673.
|
Sept. 26, 2003.

**Synopsis**

Labor union filed petition complaining of unfair labor practices allegedly committed by employer, a bakery, in response to employee organizing campaign. The National Labor Relations Board (NLRB), 2002 WL 1881226, entered an order adopting in part and reversing in part the finding of the administrative law judge that employer engaged in unfair labor practices. Upon the application for enforcement of the order of the NLRB, the Court of Appeals held that substantial evidence supported NLRB's finding that one employee was constructively discharged due to employer's anti-union animus and that another employee was discharged for engaging in protected concerted activity, so as to warrant enforcement of order.

Application granted.

Application to enforce the order of the National Labor Relations Board (the "Board").

**Attorneys and Law Firms**

Fred L. Cornnell, National Labor Relations Board (Michael H. Carlin, Arthur F. Rosenfeld, John E. Higgins, Jr., John H. Ferguson, and Aileen A. Armstrong, of counsel), Washington, DC, for Petitioner.

Joseph D. McCluskey, LeClair Ryan (Perry S. Heidecker and Joseph M. Labuda, Milman & Heidecker, Lake Success, NY, of counsel), Richmond, VA, for Respondent.

PRESENT: Hon. WILFRED FEINBERG, Hon. ROBERT D. SACK, Circuit Judges, and Hon. LEONARD D. WEXLER, District Judge. *

SUMMARY ORDER

**\*1** THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, Foley Square, in the City of New York, on the 26th day of September, two thousand and three.

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the application for enforcement is GRANTED.

Our review of Board orders is "quite limited." *Nat'l Labor Relations Bd. v. Katz's Delicatessen,* 80 F.3d 755, 763 (2d Cir.1996). "We must enforce the Board's order where its legal conclusions are reasonably based, and its factual findings are supported by substantial evidence on the record as a whole." *Id.*

Reversal based on a factual question is only warranted when, "after looking at the record as a whole, we are left with the impression that no rational trier of fact could reach the conclusion drawn by the Board." *Nat'l Labor Relations Bd. v. Albany Steel, Inc.,* 17 F.3d 564, 568 (2d Cir.1994) (internal quotation marks omitted). Our role in reviewing credibility determinations of an ALJ is "constricted, inasmuch as they may not be disturbed unless incredible or flatly contradicted by undisputed documentary testimony." *Nat'l Labor Relations Bd. v. G & T Terminal Packaging Co.,* 246 F.3d 103, 114 (2d Cir.2001) (internal quotation marks omitted).

The reasonable-basis standard for review of legal findings is also deferential. In reviewing the Board's legal conclusions, "we afford the Board a degree of legal leeway." *Nat'l Labor Relations Bd. v. Caval Tool Div.,* 262 F.3d 184, 188 (2d Cir.2001) (internal quotation marks omitted).

The respondent (the "Bakeshop") contends that the Board erred in finding a constructive discharge of George

Panagiotopoulos based on anti-union animus. After review of the record, we conclude that the Board's finding is supported by substantial evidence. In reaching this conclusion, we take into consideration, *inter alia,* the evidence of the Bakeshop's treatment of Panagiotopoulos that was the subject of an earlier settlement agreement. *See Oster Specialty Prods.,* 315 N.L.R.B. 67, 74 (1994); *see also Albertson's Inc. v. Nat'l Labor Relations Bd.,* 161 F.3d 1231, 1237 (10th Cir.1998). The determination of a state unemployment insurance board that Panagiotopoulos voluntarily quit his position is, however, irrelevant to our decision. *See Nat'l Labor Relations Bd. v. Zoe Chem. Co.,* 406 F.2d 574, 584 n. 18 (2d Cir.1969).

The Bakeshop also contends that the Board erred in finding that Maria Campero had been discharged for engaging in protected concerted activity. Our review of the record indicates that this finding is supported by substantial evidence. Furthermore, Campero did not legally lose protection for her concerted activity by raising her voice to management. "Employees receive some leeway since passions may run high and impulsive behavior is common." *Caval Tool Div.,* 262 F.3d at 192 (internal quotation marks omitted). Campero's raising of her voice is a far cry from the shouting, disrupting operations, refusing to accompany a supervisor to a conference room, and refusing to leave the premises that the Board found to exceed the protections of the National Labor Relations Act in another case. *See Volt Info. Sciences, Inc.,* 274 N.L.R.B. 308, 308 n. 6 (1985). Because the manager with whom Campero spoke raised his voice and cursed at Campero, Campero had broad leeway to respond to the manager, which she did by merely raising her voice. *See Trustees of Boston Univ. v. Nat'l Labor Relations Bd.,* 548 F.2d 391, 393 (1st Cir.1977).

**\*2** The Bakeshop has not challenged any of the Board's other determinations. Any claims with regard to unchallenged determinations are waived, *see City of New York v. Minetta,* 262 F.3d 169, 180–81 (2d Cir.2001), and the Board is "entitled to summary affirmance of those findings and conclusions." *Torrington Extend–A–Care Employee Ass'n v. Nat'l Labor Relations Bd.,* 17 F.3d 580, 590 (2d Cir.1994).

For the foregoing reasons, the application to enforce the order of the National Labor Relations Board is hereby GRANTED.

**All Citations**

Slip Copy, 2003 WL 22221353, 173 L.R.R.M. (BNA) 2576

---

### Footnotes

\*    Of the United States District Court for the Eastern District of New York, sitting by designation.

---

**End of Document**                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

744 Fed. Appx. 35 (Mem)

This case was not selected for publication in West's Federal Reporter.

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals, Second Circuit.

Brontie O'NEAL, Plaintiff-Appellant,

v.

Thomas SPOTA, Suffolk County Municipality, Town of East Hampton, East Hampton Town Police Department, Marianne Susanna Rantala, Suffolk County 18b Lawyer, Irene Foster, Defendants-Appellees.

17-3334-pr
|
December 6, 2018

Appeal from a judgment of the United States District Court for the Eastern District of New York (Bianco, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Brontie O'Neal, pro se, Attica, NY.

FOR DEFENDANTS-APPELLEES: Steven C. Stern, Sokoloff Stern LLP, Carle Place, NY, for Town of East Hampton and East Hampton Town Police Department, and Arlene S. Zwilling, Assistant County Attorney, Suffolk County Attorney's Office, Hauppauge, NY, for Thomas Spota and Suffolk County Municipality.

PRESENT: ROBERT A. KATZMANN, Chief Judge, GUIDO CALABRESI, RAYMOND J. LOHIER, JR., Circuit Judges.

**\*36 SUMMARY ORDER**

Appellant Brontie O'Neal, proceeding pro se, appeals the district court's dismissal of his 42 U.S.C. § 1983 claims against former Suffolk County District Attorney Thomas Spota, the "Suffolk County Municipality," the Town of East Hampton, the East Hampton Town Police Department ("EHPD"), his court-appointed attorney Marianne Rantala, and Irene Foster, the complainant in a related criminal case, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). O'Neal alleged that (1) Spota and the County of Suffolk ("county defendants") maliciously prosecuted and defamed him; (2) the Town of East Hampton and the EHPD ("town defendants") falsely arrested him; (3) Rantala provided inadequate representation during his criminal proceedings; and (4) Foster was liable for his false arrest because she lied to the police. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review de novo the dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), accepting all factual allegations as true and drawing all reasonable inferences in plaintiff's favor. *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). The complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), although that requirement is "inapplicable to legal conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

"[W]e liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) ). However, pro se appellants must comply with Federal Rule of Appellate Procedure 28(a), which requires an appellant's brief to contain, "under appropriate headings and in the order indicated":

> (4) a jurisdictional statement ... ; (5) a statement of the issues presented for review; (6) a concise statement of the case setting out the facts relevant to the issues submitted for review ... ;

(7) a summary of the argument ... ; (8) the argument ... ; [and] (9) a short conclusion stating the precise relief sought....

Fed. R. App. P. 28(a); *see also Moates v. Barkley*, 147 F.3d 207, 209 (2d Cir. 1998) (noting that Rule 28(a) "requires appellants in their briefs to provide the court with a clear statement of the issues on appeal"). Despite affording pro se litigants "some latitude" in meeting procedural rules, we "normally will not[ ] decide issues that a party fails to raise in his or her appellate brief." *Id.* Moreover, "[a]n appellant's failure to comply with Rule 28 invites dismissal of the appeal." *Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 48 (2d Cir. 2012).

O'Neal's brief does not challenge the substance of the district court's January 12, 2017 dismissal of his claims against the county defendants or its September 19, 2017 order adopting the magistrate judge's recommendation to dismiss O'Neal's claims against the town and individual defendants. Nor does his brief identify any issues on appeal, set forth coherent **\*37** arguments, or cite the record or legal authority, as required under Rule 28. Despite the "latitude" we afford pro se litigants, O'Neal's failure to comply with Rule 28 is fatal to his appeal. *Moates*, 147 F.3d at 209; *Taylor*, 690 F.3d at 48. Accordingly, because O'Neal fails to raise any issue regarding the district court's dismissals in his brief, he has waived his challenge to those issues before this Court. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal." (internal citation omitted) ).

Additionally, O'Neal waived his right to judicial review of the magistrate judge's report and recommendation ("R & R") by failing to timely object. *See Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992). This rule applies to pro se litigants if the magistrate judge expressly warns a pro se litigant that a failure to timely object will waive further judicial review and cites relevant statutory and civil rules authority. *See Smith v. Campbell*, 782 F.3d 93, 102 (2d Cir. 2015) (explaining that, where party received clear notice of the consequences, failure to timely file objections to the magistrate report operates as a waiver to further judicial review of the magistrate's decision); *Frank*, 968 F.2d at 300 ("[T]his Court requires the magistrate's report to warn the *pro se* litigant of the consequences of the failure to object."). Here, the magistrate judge warned O'Neal at the end of the R & R, in bold lettering, that "[f]ailure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court [or the] Court of Appeals." *See O'Neal v. Spota*, No. 2:16-cv-00579, Dkt. No. 120 at 15 (E.D.N.Y. Aug. 28, 2017). Because O'Neal did not object to the magistrate judge's R & R recommending dismissal of his claims against the town and individual defendants despite having received an express warning about the consequences of his failure to do so, these claims are waived.

We have considered all of O'Neal's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

## All Citations

744 Fed.Appx. 35 (Mem)

2016 WL 5900194
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Romain PRAGE, Plaintiff,

v.

KAVULICH & ASSOCIATES, P.C. et al., Defendants.

16-CV-1627 (CBA)
|
Signed 10/07/2016

**Attorneys and Law Firms**

Eve Weissman, New Economy Project, Susan Shin, Neighborhood Economic Development Advocacy Project, New York, NY, Ahmad Keshavarz, The Law Offices of Ahmad Keshavarz, Brooklyn, NY, for Plaintiff.

Mitchell L. Pashkin, Huntington, NY, for Defendants.

## MEMORANDUM AND ORDER

ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE

*\*1* In this suit under the Fair Debt Collection Practices Act, plaintiff Romain Prage ("plaintiff") alleges that defendants Gary Kavulich ("Kavulich"), Kavulich & Associates, P.C. ("K&A"), and SJ Cooper Realty, LLC ("SJCR") (collectively, "defendants") wrongfully restrained and attempted to seize statutorily exempt funds. Plaintiff now seeks an order *nunc pro tunc* validating his proof of service on each defendant. See First Motion to Amend/Correct/Supplement Summons Return Executed *Nunc Pro Tunc* (Sept. 21, 2016) ("Pl. Mot."), Electronic Case Filing ("ECF") Docket Entry ("DE") #23. Defendants respond that plaintiff's failure to file proof of service within the time period specified under Rule 4(m) of the Federal Rules of Civil Procedure ("FRCP") renders service ineffective. See Opposition re First Motion to Amend/Correct/Supplement Summons Return Executed *Nunc Pro Tunc* (Sept. 28, 2016) ("Def. Opp'n"), DE #27. For the following reasons, the Court rejects defendants' analysis and grants plaintiff's motion.

## PROCEDURAL BACKGROUND

Plaintiff filed suit on April 2, 2016. See Complaint, DE #1. On April 29, 2016, he served process on K&A and SJRC by delivering copies of the summons and complaint in this action to the Office of the Secretary of State of the State of New York. See Summons Returned Executed [on] Kavulich & Associates, P.C. (July 18, 2016), DE #9 (citing N.Y. Bus. Corp. Law § 306); Summons Returned Executed [on] SJ Cooper Realty, LLC, DE #8 (citing N.Y. Ltd. Liab. Co. Law § 303). On May 11, 2016, plaintiff delivered copies of the summons and complaint to a person of suitable age and discretion at Kavulich's actual place of work, and mailed copies to Kavulich at the same address the following day. See Summons Returned Executed [on] Gary Kavulich (Sept. 8, 2016) at 1–2, DE #19, #20. Defendants filed their answer on August 3, 2016, asserting, in part, an affirmative defense based on plaintiff's purported failure to serve Kavulich and failure to file proof of timely service for K&A and SJRC. See Answer at 1, DE #12.

Plaintiff filed the instant motion on September 21, 2016, requesting that the Court, *nunc pro tunc*, deem timely his proof of service on each defendant. See Pl. Mot. at 1. With respect to service on Kavulich, plaintiff concedes that he filed proof of service past the twenty-day deadline specified in the New York Civil Practice Law and Rules ("CPLR"), but claims that this "failure was non-jurisdictional under state and federal law, and can therefore be corrected by the Court." Pl. Mot. at 2 (citing CPLR § 308(2); Fed. R. Civ. P. 4(l)(3)). Plaintiff underscores that Kavulich was timely served and was therefore not prejudiced by plaintiff's delay in filing proof of service. See id. at 3. As for the entity defendants, plaintiff denies that proof of service for K&A and SJCR was untimely under the FRCP, and contends in any event that any such delay "would [likewise] not be a jurisdictional defect" warranting dismissal. Id. at 2.

*\*2* Despite their affirmative defense to the contrary, defendants do not now claim that plaintiff failed to serve any of them properly. Compare Def. Opp'n with Answer at 1. Rather, they argue that Rule 4(m) of the FRCP requires denial of plaintiff's motion (or dismissal of this action without prejudice) [1] because plaintiff, without good cause, failed to file timely proof of having served any of the defendants. See Def. Opp'n at 2–3 (citing Reid *ex rel.* Roz B v. Freeport Pub. Sch. Dist., 89 F.Supp.3d 450 (E.D.N.Y. 2015)). Defendants concede that Rule 4(l)(3) of the FRCP grants this Court discretion to "permit proof of service to be amended[,]" but contend, without citation, that any such amendments may be made only with respect to the contents of proof of service that

has been timely filed, and not to the timeliness of the filing. Def. Opp'n at 2.

### DISCUSSION

Under the FRCP, "[u]nless service is waived, proof of service must be made to the court ... by the server's affidavit." Fed. R. Civ. P. 4(l)(1). While the FRCP provides no time limit within which plaintiff must file proof of service, a decision issued in this district has construed the FRCP to require filing within the time-frame for service prescribed in Rule 4(m).[2] See, e.g., Reid, 89 F.Supp.3d at 455–56. However, as Rule 4(l)(3) expressly provides, "[f]ailure to prove service does not affect the validity of service[,]" and "the court may permit proof of service to be amended[,]" Fed. R. Civ. P. 4(l)(3); accord Leung v. N.Y. Univ., No. 08-cv-5150 (GBD), 2016 WL 1084141, at *8 n.8 (S.D.N.Y. Mar. 17, 2016) ("[T]he failure to file proper proof of service is a procedural irregularity [under New York law], not a jurisdictional defect, that may be cured by motion or *sua sponte* by the court in its discretion ...." (internal formatting omitted)).[3] By contrast, courts cannot acquire personal jurisdiction over defendants not properly served. See Nieves v. Gonzalez, No. 05-CV-17S(SR), 2006 WL 758615, at *6–7 (E.D.N.Y. Mar. 2, 2006).

Accordingly, federal courts generally deny motions to dismiss for untimely or insufficient proof of service when service was in fact properly made, because in such circumstances defendants cannot claim prejudice due to lack of notice. See, e.g., McLean v. Wayside Outreach Dev. Inc., 624 Fed.Appx. 44, 44–45 (2d Cir. 2015) (affirming default judgment, despite defective proof of service, where defendant did not dispute that service had been properly made and consequently failed to show prejudice); Leung, 2016 WL 1084141, at *8 (denying motion to dismiss for insufficient service where plaintiff corrected defect in server's affidavit two years after service was made); Gusler v. City of Long Beach, 823 F.Supp.2d 98, 123 (E.D.N.Y. 2011) (denying motion to dismiss for failure to file timely proof of service where plaintiff filed server's affidavits after defendants moved to dismiss and defendants failed to address validity of service in their motion papers);

Maier v. N.Y.C. Police Dep't, No. 08-CV-5104 (ILG)(JO), 2009 WL 2915211, at *4 (E.D.N.Y. Sept. 1, 2009) (denying motion to dismiss on account of delay in filing proof of service for more than 120 days after the complaint was filed). Though the Reid court dismissed claims where the plaintiff delayed in filing proof of service, nothing in that court's decision or the underlying motion papers suggests that the plaintiff there provided *any* proof of service at *any* point in the litigation. See Reid, 89 F.Supp.3d at 455–56.

**\*3** Here, in contrast, plaintiff asserts, without meaningful opposition, that plaintiff duly served process on all defendants more than two months before defendants answered the complaint. Defendants make no effort to show that they suffered any prejudice from plaintiff's delay in filing proof of service. Instead, they suggest that plaintiff's claims are subject to dismissal due to an administrative defect of no demonstrable import. In light of the one-year limitations period applicable to FDCPA claims, dismissal without prejudice here could effectively result in dismissal *with* prejudice. Compare Compl. with 15 U.S.C. § 1692k(d). The Court declines to adopt a tortured reading of the FRCP that would effectively deprive plaintiff of the opportunity to litigate his claims on their merits, especially where defendants have not even sought permission to file a motion to dismiss.

### CONCLUSION

For the foregoing reasons, plaintiff's motion is granted in its entirety.

Any objection to this Memorandum and Order must be filed with the Honorable Carol B. Amon by **October 24, 2016**, or will be deemed waived.

**SO ORDERED.**

**Dated: October 7, 2016**.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 5900194

---

**Footnotes**

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 156 of 189

Prage v. Kavulich & Associates, P.C., Not Reported in Fed. Supp. (2016)

1  Defendants have not, however, sought permission from the District Court to file a motion to dismiss. See Individual Motion Practices and Rules of Judge Carol Bagley Amon ¶ 2(A).

2  Rule 4(m) was recently amended to reduce the time period from 120 days to 90 days. See Fed. R. Civ. P. 4(m) advisory committee's note to 2015 amendment.

3  Under the FRCP, litigants may serve process on opponents by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located ...." Fed. R. Civ. P. 4(e)(1). Because defendants do not now contend that plaintiff has failed to serve them properly, only that he did not file timely proof of having done so, the Court will not address the sufficiency of plaintiff's affidavits of service other than their timeliness. Similar to the FRCP, however, New York law provides that filing proof of service is not required for the acquisition of jurisdiction over a defendant. See Kahn v. Hernandez, 122 A.D.3d 802, 803 (2d Dep't 2014) (citing, inter alia, CPLR § 2004). Where service is properly made but proof of service not timely filed, the CPLR permits courts to grant an order for late filing *nunc pro tunc*. See id. (reversing trial court's denial of motion to deem proof of service timely filed *nunc pro tunc* as an "improvident[ ] exercise[ ] [of] its discretion").

---

**End of Document**                                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

632 Fed.Appx. 663
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE 32.1
AND THIS COURT'S LOCAL RULE 32.1.1. WHEN
CITING A SUMMARY ORDER IN A DOCUMENT
FILED WITH THIS COURT, A PARTY MUST
CITE EITHER THE FEDERAL APPENDIX OR AN
ELECTRONIC DATABASE (WITH THE NOTATION
"SUMMARY ORDER"). A PARTY CITING A
SUMMARY ORDER MUST SERVE A COPY OF IT ON
ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals, Second Circuit.

RCB EQUITIES # 3, LLC, Plaintiff–Appellee,

v.

Howard MARTIN, Defendant–Appellant,
New York State Department of Taxation and
Finance, Skyline Woods Realty, LLC, Defendants.

No. 14–4518
|
Dec. 8, 2015.

**Synopsis**

**Background:** Mortgagee brought foreclosure action against mortgagor and personal guarantor. The United States District Court for the Northern District of New York, D'Agostino, J., awarded summary judgment on mortgagee's claim of foreclosure, ordered foreclosure and sale of subject property, and, 2013 WL 935785, confirmed referee's computation of amount owed to mortgagee, and, 2013 WL 2468845, awarded attorney's fees, costs, and disbursements to mortgagee, and finally, entered deficiency judgment against personal guarantor. Personal guarantor appealed.

**Holdings:** The Court of Appeals held that:

personal guaranty of mortgage was genuine and legally effective, and

mortgagee had standing to seek deficiency judgment against personal guarantor.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

 **\*664**  Appeal from a judgment of the United States District Court for the Northern District of New York (D'Agostino, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

**Attorneys and Law Firms**

Gary A. Lefkowitz, Schiller & Knapp, LLP, Latham, NY, for Plaintiff–Appellee.

Stuart S. Zisholtz, Zisholtz & Zisholtz, LLP, Mineola, NY, for Defendant–Appellant.

PRESENT: B.D. PARKER, PETER W. HALL and SUSAN L. CARNEY, Circuit Judges.

## SUMMARY ORDER

Following a bench trial, the district court found in favor of appellee RCB Equities # 3, LLC on both of the two issues that were before it: (1) whether appellant Howard Martin's 2007 payment guaranty was authentic and (2) whether appellee RCB had standing to enforce that payment guaranty. Accordingly, in its November 10, 2014 final trial order, the court granted RCB's motion for leave to file a deficiency judgment and entered a deficiency judgment against Martin.

On appeal, Martin argues that: (1) the 2007 loan modification and extension agreement superseded his original 1998 guaranty, so the 2007 payment guaranty was never effective; (2) RCB could not prove the authenticity of the 2007 payment  **\*665**  guaranty without producing the original document at trial; (3) the loan assignment from Greystone to RCB did not specifically mention Martin's guaranty, so the guaranty was not transferred to RCB and RCB lacked standing to seek a deficiency judgment on it; (4) the district court erred in its March 11, 2013 Order by adopting the Referee's Report, which Martin claims is defective; and (5) Greystone's original complaint insufficiently alleged a claim on the 2007 payment guaranty. We assume the parties' familiarity with the

underlying facts, the procedural history of the case, and the issues on appeal.

Both the limited scope of the bench trial and Martin's notice of appeal, which lists only the final judgment entered following from that trial, stand in stark contrast to the breadth of arguments Martin seeks to raise in his appellate brief. Fed. R.App. P. 3(c) states that "[t]he notice of appeal must ... designate the judgment, order, or part thereof being appealed." This requirement is jurisdictional. *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 256 (2d Cir.1995) ("Since a notice of appeal 'must designate the judgment, order, or part thereof appealed from,' Fed. R.App. P. 3(c), the appellant's failure to mention the ... order [that he now claims is erroneous] in his notice of appeal bars us from considering his claim...."). Furthermore, any issues not sufficiently raised before the district court may be considered waived on appeal. *See Baker v. Dorfman,* 239 F.3d 415, 420 (2d Cir.2000).

In denying RCB's motion for leave to file a deficiency judgment at the summary judgment stage, Judge D'Agostino stated that "two issues remain to be resolved by a finder of fact as to Defendant Howard's liability as personal guarantor: the authenticity of the payment guaranty and whether the assignment incorporated the payment guaranty." J.A. at 74. Those were the only two issues presented to and decided by Judge D'Agostino at trial. Martin's notice of appeal challenges only the "Judgment dated November 10, 2014 and entered November 10, 2014 of Honorable Mae A. D'Agostino, which granted [RCB] a Deficiency Judgment against the Defendant, Howard Martin, and ... the whole of the said Judgments and ... each and every part thereof." J.A. at 594. We therefore do not consider any of Martin's arguments with respect to supersession of the 1998 guaranty, the Referee's Report, or the inadequacy of the complaint. The scope of our review is limited to the arguments that address either the authenticity of the 2007 payment guaranty or RCB's standing to claim under the guaranty, i.e., whether Greystone properly assigned the payment guaranty to RCB.

"On appeal from a bench trial, the district court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo." Mobil Shipping and Transp. Co. v. Wonsild Liquid Carriers Ltd.,* 190 F.3d 64, 67 (2d Cir.1999).

Martin contends that RCB's failure to produce the original guaranty at trial was fatal to its claim. Martin cites several cases, none of which supports this proposition. Fed.R.Evid. 1003 permits the admission of a duplicate copy of a document

unless the party seeking to oppose the admission of that document raises a genuine question as to its authenticity or shows that the circumstances make it unfair to admit the duplicate. Martin's attorney objected to the admission of the duplicate at trial on grounds that "it's not the original," but the court overruled that objection because RCB's attorney had laid a proper foundation for admission of the duplicate and Martin's attorney never pointed to anything indicating that the duplicate was somehow different than the original. Martin **\*666** submitted three different copies of the payment guaranty into evidence, and argued that the fact that his social security number and the loan number were redacted from the signature page showed that the document had been altered. The court rejected this argument, noting that the redactions were required pursuant to Local Rule 8.1. *See* N.D.N.Y. L.R. 8.1 (requiring certain redactions for personal privacy protection). The court additionally noted that Martin's attorney never served a subpoena to request that the original document be brought to trial, and that Martin inspected the original guaranty prior to trial and had the opportunity to have an expert inspect it as well.

The only evidence Martin produced at trial to suggest the payment guaranty was not authentic was his own uncorroborated statement that he did not sign the guaranty and never would have agreed to such an extension of his liability. Yet Martin conceded that the signature on the guaranty form looked like his, he admitted to signing all of the documents that were given to him at the 2007 closing without reading them, and he presented no evidence of fraud or manipulation. The court did not err in finding, based on the evidence presented, that Martin's signature and the guaranty agreement were genuine and legally effective. *See Bronsnick v. Brisman,* 30 A.D.3d 224, 819 N.Y.S.2d 492, 493 (1st Dept.2006) (rejecting claim of debtor that she "did not sign the note" because "something more than a bald assertion of forgery is required to create an issue of fact contesting the authenticity of a signature" (brackets and quotation omitted)).

The parties do not dispute that Greystone had standing to enforce the 2007 payment guaranty before assigning it to RCB, so whether RCB has standing to pursue its claim on the guaranty boils down to whether the assignment was valid. On appeal, Martin highlights the fact that in ruling on summary judgment the district court found ambiguities in assignment documents. Martin fails to mention, however, that when the district court called for a trial to address the ambiguities it saw in one assignment document, it did not have before it all of the assignment documents. Thus, while the court determined

that the Skyline Mortgage Assignment was ambiguous when it ruled on summary judgment, at trial the court relied on language in the Bill of Sale and Assignment, which the court had not previously analyzed but which was executed concurrently with the Skyline Mortgage Assignment. The Bill of Sale and Assignment provides in relevant part:

> [Greystone] hereby sells, assigns and transfers unto [RCB] ... all right, title and interest of Assignor in, to and under or arising out of [the 2007 Consolidated Note], secured by the real property known as 4 Skyline Drive ... together with all right, title and interest of Assignor in, to and under or arising out of: (1) the Loan Documents; (2) *all guaranties* ... and other documents executed and/ or delivered to Assignor in connection with the Loan....

J.A. at 445 (emphasis added). We agree with the district court's final determination that this language unambiguously transferred all guaranties executed in connection with the 2007 consolidated note and mortgage, which necessarily included Martin's guaranty.

At trial and on appeal, Martin has relied heavily upon an unreported New York Supreme Court case, *East West Bank v. 32 Tower, LLC,* No. 30798/10, 939 N.Y.S.2d 740 (Table), 2011 WL 5515436 (N.Y.Sup.Ct. Nov. 9, 2011) to argue that the guaranty here was not assigned. In that case, the court found that the following language contained in an assignment did not include the personal guaranty at issue: "All promissory note(s), note consolidation and/or **\*667** modification agreements, and related unrecorded documents evidencing indebtedness secured by the Mortgages, and all sums payable under the foregoing...." *Id.* at \*1. The state supreme court held that this language did not include the guaranty at issue because "the assignment d[id] not expressly state that any 'guaranties' were assigned." *Id.* at \*3. Here, by contrast, the Bill of Sale and Assignment includes the language "all guaranties," which the district court reasonably interpreted as including Martin's guaranty. The district court did not err in concluding that Greystone properly assigned Martin's payment guaranty to RCB and that RCB therefore had standing to seek a deficiency judgment against Martin on that guaranty.

We have considered all of Martin's remaining arguments and find them to be without merit. The judgment of the district court is **AFFIRMED.**

**All Citations**

632 Fed.Appx. 663

---

**End of Document**　　　　　　　　　　© 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by Robinson v. Deutsche Bank Trust Co. Americas, S.D.N.Y., June 12, 2008.

2003 WL 21782645

Only the Westlaw citation is currently available.

United States District Court,

S.D. New York.

Peter STAMELMAN, Plaintiff,

v.

FLEISHMAN–HILLARD, INC., Defendant.

No. 02 Civ.8318 SAS.

|

July 31, 2003.

**Synopsis**

Employee, an entertainment marketing executive, brought action for breach of contract and fraudulent inducement against company for which he had consulted and which had recruited him away from sister agency, then terminated him without cause less than one year later. Defendant moved to dismiss complaint for failure to state claim and to plead fraud with particularity. The District Court, Scheindlin, J., held that: (1) employee could not rely on oral representations and, without making allegations sufficient to overcome employment at will presumption, failed to state breach of employment contract claim; (2) employee failed to plead fraud with sufficient particularity, insofar as he did not allege minimal factual basis necessary to sufficiently plead scienter under either motive and opportunity or conscious behavior approach; and (3) employee sufficiently pled other elements of fraudulent inducement and would be granted leave to amend complaint to replead claims.

Motion granted.

**Attorneys and Law Firms**

Ramon A. Pagan, The Law Offices of Neal Brickman, New York, NY, for Plaintiff.

A. Michael Weber, Christina L. Feege, Littler Mendelson, P.C., New York, NY, for Defendant.

*OPINION AND ORDER*

SCHEINDLIN, J.

**\*1** Peter Stamelman brings this action for breach of contract and fraudulent inducement against Fleishman–Hillard, Inc. ("Fleishman"). Fleishman now moves to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and in the alternative, failure to plead fraud with particularity pursuant to Rule 9(b). For the reasons stated below, Fleishman's motion is granted.

**I. BACKGROUND**

Peter Stamelman is a resident of New York. Complaint ("Compl.") ¶ 2. Fleishman is incorporated in and has its principal place of business in Missouri. *Id.* ¶ 3. Stamelman has worked in the entertainment industry for over twenty years as an agent and television network executive for various entities. *Id.* ¶ 5. In 2000, Stamelman was employed as Vice President of the International Business Development division at the TBWA Entertainment Company ("TBWA") in New York. *Id.* ¶ 6. During 2000 and 2001, Stamelman consulted on several projects for Fleishman, a sister agency of TBWA. *Id.* ¶¶ 7–8. In 2001, Peter Verrengia, the general manager at the time for Fleishman's New York office, began to recruit Stamelman for a position at Fleishman. *Id.* ¶¶ 9–10. During negotiations, Stamelman informed Verrengia that he wished to build an entertainment practice. *Id.* ¶ 11. Verrengia replied that Fleishman was planning to buttress its consumer marketing practice with an entertainment marketing group and could provide Stamelman with a significant role in its development. *Id.* ¶ 12. Verrengia referred Stamelman to Nancy Seliger, the Senior Vice President and Senior Partner at the time. *Id.* ¶ 13.

On May 16, 2001, Stamelman and Seliger met for lunch to discuss the possibility of employment. *Id.* ¶ 14. Stamelman stated that the development of an entertainment marketing practice would require internal referrals of existing Fleishman clients, a staff and travel budget, introductions to existing Fleishman clients, and at least one year for development. *Id.* ¶ 15. Seliger assured Stamelman that Fleishman would meet all of these requirements. *Id.* ¶ 16. After the lunch, Verrengia informed Stamelman that his employment at Fleishman could begin shortly, contingent on the operating board's approval. *Id.* ¶ 17.

On May 30, 2001, Stamelman terminated his employment at TBWA. *Id.* ¶ 18. On June 15, 2001, Verrengia sent an email to Stamelman stating, "[e]xcitement is building here about the skills and experience you'll bring to help us develop this area of practice ." *Id.* ¶ 19. On the same day, Verrengia sent a letter to Stamelman setting forth the terms of employment, including a start date of June 19, 2001, the title of Senior Vice President of the Marketing Communications group, an annual salary of $150,000, and his eligibility to participate in the employee benefits plan. *Id.* ¶ 20; 6/15/01 Offer of Employment Letter from Verrengia to Stamelman ("Offer Letter"), Ex. A to Compl. The oral representations previously made by Verrengia and Stamelman were not mentioned in the Offer Letter. Stamelman verbally accepted the offer and began working at Fleishman on June 19, 2001. *Id.* ¶ 21.

**\*2** Over the course of his eleven-month employment, Stamelman was not introduced to any of Fleishman's existing clients. *Id.* ¶ 24. By October 2001, Fleishman eliminated all travel expenses relating to the entertainment marketing group unless paid for by the client, and by November 15, 2001, Stamelman was reduced to a part-time employee and received a forty percent cut in salary. *Id.* ¶¶ 25–26. Despite his often praised performance and assurances from Fleishman that he would be restored to his former position and provided with his previously promised requirements, Stamelman was terminated without cause on May 28, 2002. *Id.* ¶¶ 27–29.

## II. LEGAL STANDARD

"Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." ' [1] *Swierkiewicz v. Sorema, N. A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Thus, a plaintiff need only plead " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." [2] *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (quoting Rule 8(a)(2)). A plaintiff need not, in other words, plead the elements of a claim. *See Initial Public Offerings,* 241 F.Supp.2d at 323 ("Rule 8(a) does not require plaintiffs to plead the legal theory, facts or elements underlying their claim.").

At the motion to dismiss stage, the issue " 'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." ' *Phelps v. Kapnolas,* 308 F.3d 180, 184–85 (2d Cir.2002) (per curiam) (quoting *Chance v.. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998)). Therefore, the task of the court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Pierce v. Marano,* No. 01 Civ. 3410, 2002 WL 1858772, at \* 3 (S.D.N.Y. Aug.13, 2002) (internal quotation marks and citation omitted). When deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). Although the plaintiff's allegations are taken as true, the claim may still fail as a matter of law if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief or if the claim is not legally feasible. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 158 (2d Cir.2003). Courts may not consider matters outside the pleadings but may consider documents referenced in the pleadings or documents that are integral to the pleadings. *See Chambers,* 282 F.3d at 152–53.

## III. BREACH OF CONTRACT

### A. Employment At–Will

**\*3** Under New York law, "absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919 (1987). "The terms of an at-will employee's employment may be modified at any time." *Kempf v. Mitsui Plastics, Inc.,* No. 96 Civ. 1106, 1996 WL 673812, at \*6 (S.D.N.Y. Nov. 20, 1996). "The employee's only option is to terminate the relationship; by continuing to remain as an employee, the employee will be deemed to have ratified the new relationship." *Id.* (citation omitted). However, an employee may rebut the presumption of at-will employment and recover under a breach of contract claim by proving that "the employer made the employee aware of its express written policy limiting its right of discharge and that the employee detrimentally relied on that policy in accepting the employment." *Id.* (citing *Weiner v. McGraw–Hill, Inc.,* 57 N.Y.2d 458, 465–66, 457 N.Y.S.2d 193, 443 N.E.2d 441

(1982)). A limitation by express agreement may exist where an employee was induced to leave his prior employment by the assurance that his new employer would not discharge him without cause, the assurance is incorporated into the employment application, and the employment is subject to the provisions of a personnel handbook or manual which provides that dismissal will be for just and sufficient cause only. *See id.*

B. Stamelman Fails to State a Claim for Breach of Contract

1. Fixed Term of Employment

The Offer Letter, which Stamelman concedes he verbally accepted without objection, constitutes an employment agreement between the parties. The Offer Letter states, in relevant part:

> This letter confirms the details of our offer as follows: Your start date will be Tuesday, June 19, 2001. You will join us as a Senior Vice President in the Marketing Communications group in the New York office. You will be eligible to participate in the [Fleishman] Incentive Compensation Plan for 2002. You will receive a base salary of $6,250 per semi-monthly pay period, annualized at $150,000. You will be eligible to participate in the [Fleishman] employee benefits plan.... Please let me know if you have any questions or concerns regarding the above information.... Please sign this letter of acceptance and return a copy to my office. Let me know if you have any questions or concerns regarding the above information.

Offer Letter (emphasis added). The Offer Letter does not contain a fixed term of employment of one year or any language limiting Fleishman's right to terminate or modify the terms of Stamelman's employment.

Stamelman argues that his employment was governed by the terms of the Offer Letter *and* the representations made by Fleishman. *See* Plaintiff's Memorandum in Opposition

to Motion to Dismiss ("Pl.Mem.") at 15. This argument flies in the face of well-settled law. "[A] contract which appears complete on its face is an integrated agreement as a matter of law." *Stroll v. Epstein,* 818 F.Supp. 640, 645 (S.D.N.Y.), *aff'd,* 9 F.3d 1537 (2d Cir.1993). As such, evidence of a prior oral agreement that modifies the terms of the agreement is excluded by the parol evidence rule. *See id.* A contract may be found integrated when it completely "embod[ies] the rights and obligations of the parties." *Id.* A letter of confirmation indicating the prospective employee's title, including a geographic specification, salary, start date and benefits may be considered complete on its face. *See Kempf,* 1996 WL 673812, at *7. Accordingly, the Offer Letter, which "confirm[s] the details of [Fleishman's] offer," states Stamelman's employee title, start date, salary and benefits, and was verbally accepted without objection, expresses the terms of the parties' agreement and is complete on its face. Therefore, I conclude, as a matter of law, that Stamelman cannot rely on any oral representations in support of his breach of contract claim.

2. Employment At–Will Presumption

**\*4** Stamelman further argues that despite the lack of an express term of fixed employment in the Offer Letter, he is entitled to recover for breach of contract because he left his former employer, accepted employment with Fleishman and remained with Fleishman even after he was relegated to part-time status, all in reliance on Fleishman's representations. *See* Pl. Mem. at 14–15. Stamelman contends that as such, he overcomes the employment at-will presumption.

In *Weiner v. McGraw–Hill,* the New York Court of Appeals set the standard for overcoming the presumption of at-will employment. *See* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441. *Weiner* was a breach of contract action brought by an employee who (1) was orally assured that the prospective employer only fired for just cause; (2) signed an employment application that incorporated the oral assurance; (3) rejected other offers of employment in reliance on the assurance; and (4) was instructed to proceed in strict compliance with the express employer policy in the personnel handbook that employees be discharged only for just cause. *See id.* at 465–66, 457 N.Y.S.2d 193, 443 N.E.2d 441. The court held that the presence of these four elements was sufficient to show an express agreement to alter the employee's at-will status and permitted the employee to pursue an action for breach of contract and reinstated the trial court's order denying defendant's motion to dismiss. *See id.* at 460–67, 457 N.Y.S.2d 193, 443 N.E.2d 441.

Stamelman's pleading satisfies only two prongs of the *Weiner* test: (1) that he was orally assured that he would be employed for at least one year; and (2) terminated his previous employment in reliance on the assurance. *See* Compl. ¶¶ 15–16, 35. Without allegations satisfying the other *Weiner* elements, namely an express written policy limiting the employer's right of termination that is incorporated into the employment contract, Stamelman fails to allege enough to rebut the employment at-will presumption. *See Ligaya v. American Friends of Hebrew Univ., Inc.,* No. 96 Civ. 240, 1998 WL 146227, at *5 (S.D.N.Y. Mar. 25, 1998) (granting employer's motion to dismiss breach of contract claim because employee failed to show express limitation on the employer's right to discharge).

Furthermore, "general assurances of future employment will not transform an employment at will to a contract of permanent employment." *Kelly v. Chase Manhattan Bank,* 717 F.Supp. 227, 234 (S.D.N.Y.1989) (granting defendant's motion to dismiss on grounds that there was no modification of at-will status, despite assurance that "you will not be terminated; there is nothing to worry about, we will find jobs for everybody").

The rule that employment is presumed to be at-will is deeply ingrained in New York law. *See Horn v. New York Times,* 100 N.Y.2d 85, 90–91, 760 N.Y.S.2d 378, 790 N.E.2d 753 (2003). Though *Weiner* recognized an exception to this rule, subsequent courts have refused to make further exceptions. *See id.* at 91–93, 760 N.Y.S.2d 378, 790 N.E.2d 753 (collecting cases) (quoting *Murphy,* 58 N.Y.2d at 304–05, 461 N.Y.S.2d 232, 448 N.E.2d 86 ("[U]nder New York law ... absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired.")). Therefore, without making allegations sufficient to overcome the employment at-will presumption, Stamelman fails to state a claim for breach of contract. Fleishman's motion to dismiss the breach of contract claim is granted.

## IV. FRAUDULENT INDUCEMENT

### A. Pleading Fraud

**\*5** As a threshold matter, Fleishman argues that Stamelman's fraudulent inducement claim is a tort claim for wrongful discharge in disguise. It is well settled that "because at-will employees 'may be freely terminated ... at any time for any reason,' they can neither challenge their termination in a contract action nor 'bootstrap' themselves around this bar by alleging that the firing was in some way tortious." *Stewart v. Jackson & Nash,* 976 F.2d 86, 88 (2d Cir.1992) (quoting *Murphy v. American Home Prod. Corp.,* 58 N.Y.2d 293, 300, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983)). As a result, an at-will employee cannot state a fraud claim based on facts arising out of his termination or the employer's failure to perform terms of the employment agreement. Nonetheless, Stamelman alleges eight representations that were not part of the terms of the employment agreement as stated in the Offer Letter:

> (a) that [Fleishman] was seeking to create and develop an entertainment marketing practice to buttress its existing consumer marketing practice; (b) that [Fleishman] would allow plaintiff at least one year to develop this entertainment marketing practice; (c) that [Fleishman] would use its best efforts to provide plaintiff's entertainment marketing practice with "buy-in" from other [Fleishman] offices, which served as gatekeepers for then existing [Fleishman] clients; (d) that [Fleishman] would introduce plaintiff to existing [Fleishman] clients on a regular basis; (e) that [Fleishman] would provide plaintiff with adequate support staff and travel budget to create and develop a profitable entertainment marketing practice; (f) that [Fleishman] would provide plaintiff with an adequate travel budget to allow plaintiff to personally meet with potential clients; (g) that [Fleishman] would instruct its regional offices to assist in the creation of an entertainment practice; and (h) that [Fleishman's] regional offices had all been briefed on, and that they had agreed to support, the entertainment practice.

Compl. ¶ 32. Because Stamelman alleges representations that were collateral and extraneous to the employment agreement,

he may pursue an action for fraudulent inducement. *See Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 20 (2d Cir.1996).*

In order to prove fraudulent inducement under New York law, Stamelman must show (1) a representation of a material fact (2) falsity (3) scienter (4) reasonable reliance and (5) injury. *See id.* at 19 (quotation marks and citation omitted). In order to plead fraud, Stamelman must comply with Rule 9(b), which states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). The Second Circuit has explained its interpretation of Rule 9(b) as follows:

> To pass muster under rule 9(b), the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation. Although scienter need not be alleged with great specificity, there must be some factual basis for conclusory allegations of intent. Allegations of scienter are sufficient if supported by facts giving rise to a strong inference of fraudulent intent.

**\*6** *Ouaknine v. MacFarlane,* 897 F.2d 75, 78–80 (2d Cir.1990) (quotation marks and citations omitted). A "strong inference of fraudulent intent," in turn, can be pled in one of two ways:

> First, the plaintiff may allege a motive for committing fraud and a clear opportunity [3] for doing so. Second, where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater.

*Powers,* 57 F.3d at 184 (citations, quotation marks and alterations omitted). [4]

B. Stamelman Fails to Plead Fraud with Sufficient Particularity

1. Representations of Existing Fact
Stamelman properly alleges representations of existing fact, as opposed to mere promises of future action which only give rise to a breach of contract claim. *See Stewart,* 976 F.2d at 86 (quotations and citations omitted). Though all but one of the alleged representations appear to be future promises because of the use of the phrase "Fleishman *would* ..." (the exception is the representation that Fleishman's regional offices had been briefed on and had agreed to support the entertainment practice), this Circuit has held that:

> [w]hile [m]ere promissory statements as to what will be done in the future are not actionable, ... it is settled that, *if a promise was actually made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of material existing fact* upon which an action for recision [based on fraudulent inducement] may be predicated.

*Stewart,* 976 F.2d at 89 (quoting *Sabo v. Delman,* 3 N.Y.2d 155, 160, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957) (emphasis added)) (stating that plaintiff's allegation that defendant, at the time it made a future promise, "knew it did not intend" to fulfill it, makes the alleged representation an allegation of present fact which gives rise to a claim of fraudulent inducement); *see also Deerfield Commun. v. Chesebrough–Pond's,* 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986) (stating that plaintiff alleges present fact where it claims defendant made a promise with the undisclosed present intention of not performing it). Therefore, Stamelman's allegation that Fleishman, at the time it made the future promises, "knew them to be false," renders those representations allegations of existing fact.

### 2. Scienter

Stamelman fails to allege the minimal factual basis necessary to sufficiently plead scienter. Under the motive and opportunity approach, Stamelman contends that Fleishman's fraudulent motive was to use his "Hollywood contacts and network for its financial advantage, and then discard" him. Compl. ¶ 23. Stamelman does not explicitly state Fleishman's opportunity to act on this motive but presumably, as an international public relations firm and as Stamelman's employer, Fleishman had access to Stamelman's contacts. However, Stamelman provides no facts in support of this alleged motive. He does not allege, for example, that Fleishman benefitted from its use of his contacts or that Fleishman retained his contacts subsequent to his termination. Moreover, this Circuit has held that a generalized motive that does not result in concrete benefits to the defendant is insufficient to plead scienter. *See Chill v. General Elec. Co.,* 101 F.3d 263, 268 (2d Cir.1996) (citing *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 813–14 (2d Cir.1996) (finding allegation that defendants were motivated by a desire to maintain the company's credit rating insufficient to plead scienter) and *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 54 (2d Cir.1995) (finding allegation that defendants were motivated to defraud the public because an inflated stock price would increase their compensation insufficient to plead scienter)).

**\*7** Stamelman also attempts to plead scienter under the conscious behavior approach, but once again, his allegations are inadequate. The facts submitted as "clear circumstantial evidence of conscious misbehavior and recklessness with regard to the truth" are merely a recitation of the representations made by Seliger and Verrengia that never materialized. *See* Pl. Mem. at 8. However, "the alleged misrepresentation concerns future conduct, the defrauded party must allege specific facts showing that the promisor intended not to honor her obligations at the time she made the statement." *SNCB Corporate Fin. Ltd. v. Schuster,* 877 F.Supp. 820, 826 (S.D.N.Y.1994) (citing *National Westminster Bank v. Ross,* 130 B.R. 656, 664 (S.D.N.Y.1991), *aff'd sub nom. Yaeger v. National Westminster,* 962 F.2d 1 (2d Cir.1992)). The defrauded party may not satisfy this requirement simply by showing that the future event never occurred. *See id.* Stamelman alleges no other facts to support an inference of scienter, and thus, his claim for fraudulent inducement fails.

### 3. Reliance

Stamelman sufficiently pleads reliance. In a fraud action, a trier of fact must ultimately find that the reliance was reasonable. *See Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996). However, "[w]hether or not reliance on alleged misrepresentations is reasonable in the context of a particular case is intensely fact-specific and generally considered inappropriate for determination on a motion to dismiss." *Doehla v. Wathne Ltd., Inc.,* No. 98 Civ. 6087, 1999 WL 566311, at \*10 (S.D.N.Y., Aug.3, 1999) (citation omitted).

Fleishman relies on two propositions to argue that Stamelman's reliance was unreasonable as a matter of law. Both arguments are unavailing. Fleishman cites the proposition that "[w]here sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." *Hyosung Am., Inc. v. Sumagh Textile Co. Ltd.,* 137 F.3d 75, 78 (2d Cir.1998) (quotation marks and citation omitted). However, the *Hyosung* court reversed the district court's dismissal of the plaintiff's fraud claim on the grounds that defendant failed to show that "plaintiff was placed on guard or practically faced with the facts" of the truth of the representations on which it relied. *Id.* Fleishman argues that Verrengia's statement that employment would begin upon the operating board's approval put Stamelman on notice that the representations were contingent. *See* Defendant's Memorandum in Support of Motion to Dismiss at 12. However, Stamelman alleges that on the day Verrengia sent the Offer Letter, he also sent an email to Stamelman stating, "[e]xcitement is building here about the skills and experience you'll bring to help us develop this area of practice." Compl. ¶ 19. Whether Stamelman acted reasonably in relying upon this statement that the representations were approved by the Fleishman operating board and were included in the terms of his employment is a determination of fact, not law.

**\*8** Fleishman also cites the proposition that "as a matter of law, [the plaintiff is] not entitled to rely on a representation flatly contradicting the express terms" of a contract. *Robert J. McRell Assocs., Inc. v. Insurance Co. of N. Am.,* 677 F.Supp. 721, 731 (S.D.N.Y.1987). The court in *McRell Assocs.* found that reliance was unreasonable as a matter of law because of a merger clause in the agreement that contained language nullifying all prior oral or written agreements with respect to the subject matter of that agreement. *See id.* The facts are clearly different in this case. The representations are not included in the Offer Letter, but are not explicitly excluded.

There is no direct contradiction between the two. In sum, Fleishman has not shown that Stamelman will be unable to offer evidence, consistent with the allegations, that would permit him to pursue this claim. As a result, Stamelman's alleged reliance was not unreasonable as a matter of law.

4. Damages

Stamelman sufficiently pleads damages. In a fraud action, "the true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong or what is known as the 'out-of-pocket' rule.... Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained." *Lama Holding,* 88 N.Y.2d at 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (internal citations omitted). Stamelman asserts that as a result of Fleishman's fraudulent inducement, he "suffered damages, including, but not limited to, loss of business and a diminution of his earnings and earning capacity" and requests compensatory damages in the amount of $1,000,000 and punitive damages in the amount of $9,000,000. Compl. ¶ 36. Stamelman claims that his losses stem from damage to his career development and advancement incurred during his employment with Fleishman as a result of his lack of staff, budget, introductions, and eventually, full time status. *See* Pl. Mem. at 12. Stamelman adequately alleges a causal connection between Verrengia and Seliger's representations and the resulting injury and may claim compensatory damages for these out-of-pocket losses.

Under New York law, punitive damages are available in a tort action where "the wrongdoing is intentional or deliberate, has circumstances of aggravation or outrage, has a fraudulent or evil motive, or is in such conscious disregard of the rights of another that it is deemed willful and wanton." *Swersky v. Dreyer & Traub,* 219 A.D.2d 321, 643 N.Y.S.2d 33, 38 (1st Dep't 1996) (citing *Prozeralik v. Capital Cities Communications, Inc.,* 82 N.Y.2d 466, 479, 605 N.Y.S.2d 218, 626 N.E.2d 34 (1993) (citation omitted)). Because Stamelman alleges a fraudulent motive, his pleading for

punitive damages survives the motion to dismiss stage, although this issue may well be revisited at summary judgment.

V. LEAVE TO AMEND

When a cause of action is dismissed because of pleading deficiencies, the usual remedy is to permit a plaintiff to amend his complaint. *See* Fed.R.Civ.P. 15(a) ("[L]eave [to amend] shall be freely given when justice so requires."); *see also Foman v.. Davis,* 371 U.S. 178, 183, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (stating that refusal to grant leave to amend without reason is an abuse of discretion and inconsistent with the spirit of the Rules). The policy of granting free leave to amend is especially appropriate in the context of claims dismissed under Rule 9(b) because the law favors resolving disputes on their merits. *See Acito,* 47 F.3d at 54–55; *Luce v. Edelstein,* 802 F.2d 49, 56–57 (2d Cir.1986).

**\*9** It is possible, although it appears highly doubtful, that Stamelman can yet make sufficient allegations to satisfy all four prongs of the *Weiner* test. In addition, Stamelman asserts that he can plead fraud with greater particularity. *See* Pl. Mem. at 13. Accordingly, Stamelman is granted leave to amend his complaint to re-plead these claims. Any such amended complaint must be served within thirty (30) days of receipt of this Opinion.

VI. CONCLUSION

For the reasons stated above, Fleishman's motion is granted. Stamelman's claims for breach of contract and fraudulent inducement are dismissed without prejudice with leave to amend. Should Stamelman timely file an amended pleading, a conference is scheduled for September 2, 2003, at 4:00 p.m. The Clerk of the Court is directed to close this motion.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 21782645

---

**Footnotes**

1     Although the substantive law of New York governs the claims at issue here, federal procedural law applies. *See generally, Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (explaining that procedural requirements in federal court are governed by federal, not state, procedural law).

2     Because general accusations of fraud are thought to be too amorphous to provide a defendant with sufficient notice to permit a response, fraud claims are subject to the heightened pleading standard of Rule 9(b), which requires that "the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b); *see In re Initial Public Offerings Sec. Litig.,* 241 F.Supp.2d 281, 325 (S.D.N.Y.2003).

3     The usual finding of clear opportunity arises when the defendant is already well positioned to carry out the fraudulent transaction, such as when he possesses the necessary trust and authority. *See Powers v. British Vita, P.L.C.,* 57 F.3d 176, 185 (2d Cir.1995).

4     Although this recitation of the pleading standard for scienter is most familiar in the context of securities fraud, *see e.g., Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), it applies with equal force whenever fraudulent intent must be pled under Rule 9(b), *see e.g., Ouaknine,* 897 F.2d at 79–80.

---

**End of Document**          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 1236121
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

The STOP & SHOP SUPERMARKET
COMPANY LLC, Plaintiff,
v.
Stuart O. GOLDSMITH and Gator
Stony Point LLC, Defendants.

No. 10–CV–3052 (KMK).
|
March 31, 2011.

**Attorneys and Law Firms**

Gary A. Kreinik, Esq., Marc A. Lebowitz, Esq., Kreinik Associates LLC, New York, NY, for Plaintiff.

Todd E. Soloway, Esq., Joshua D. Bernstein, Esq., Pryor Cashman LLP, New York, NY, for Defendants.

*OPINION AND ORDER*

KENNETH M. KARAS, District Judge.

**\*1** On or about March 3, 2010, Plaintiff, the Stop & Shop Supermarket Co. LLC ("Stop & Shop"), brought this action in New York State Court. (Notice of Removal ("Notice") (Dkt. No. 1) ¶ 1.) Defendant Gator Stony Point LLC ("Gator") was served with the state court complaint on March 23, 2010, and removed the case to this Court on April 9, 2010. (*Id.* ¶ 2.) Plaintiff seeks remand and attorneys' fees. (Dkt. No. 8.)

*I. Background*

Plaintiff is a Massachusetts company. (Verified Compl. (Decl. of Todd E. Soloway ("Soloway Decl.") (Dkt. No. 14) Exh. A ("Compl.")) ¶ 1.) The domicile of Defendant Stuart O. Goldsmith is disputed, but it is either New York or New Jersey. (Pl.'s Mem. of Law in Supp. of its Mot. to Remand this Action Back to State Ct. ("Pl.'s Mem.") (Dkt. No. 10) 1; Notice ¶ 4(b).) Plaintiff has not disputed Gator's assertion that the amount in controversy exceeds $75,000. (Notice ¶ 5.) Gator is a Florida corporation that was properly served as of the date of removal, April 9, 2010. (Decl. of Gary A.

Kreinik ("Kreinik Decl.") (Dkt. No. 9) ¶ 9; Deck of Todd E. Soloway ("Soloway Decl.") (Dkt. No. 14) ¶ 7–8; Compl. ¶ 3; Verified Answer with Countercls. ("Gator's Answer") (Dkt. No. 4) ¶ 3.) One day before that, on April 8, 2010, a copy of the Complaint was left with the doorman of Goldsmith's New York residence and a copy was sent by mail to the same address. (Kreinik Deck ¶ 13.) Gator argues that Goldsmith had not been properly served at the time it removed this case. (Def.'s Mem. of Law in Opp'n to Pl.'s Mot. to Remand ("Gator's Mem.") (Dkt. No. 12) 6–9 & nn. 3–4.)

*II. Discussion*

*A. Removal—Standard of Review*
Federal courts are courts of limited jurisdiction. *See Keene Corp. v. United States,* 508 U.S. 200, 207 (1993). Accordingly, "removal jurisdiction exists in a given case only when that jurisdiction is expressly conferred on the courts by Congress." *Fed. Ins. Co. v. Tyco Int'lLtd.,* 422 F.Supp.2d 357, 367 (S.D.N.Y.2006) (internal quotation marks omitted); *see also Irving Trust Co. v. Century Exp. & Imp., S.A.,* 464 F.Supp. 1232, 1234 (S.D.N.Y.1979) (noting that the right of removal is "a matter of legislative grace" (citing *Great N. Ry. Co. v. Alexander,* 246 U.S. 276 (1918))). Judicial scrutiny is especially important "in the context of removal, where considerations of comity play an important role." *Johnston v. St. Paul Fire & Marine Ins. Co.,* 134 F.Supp.2d 879, 880 (E.D.Mich.2001). Thus, "[o]ut of respect for the independence of state courts, and in order to control the federal docket, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.,* 314 F.Supp.2d 177, 179 (S.D.N.Y.2003) (internal quotation marks omitted); *see also Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09 (1941) (noting that federalism concerns call for "the strict construction" of the removal statute; *Lupo v. Human Affairs Int'l, Inc.,* 28 F.3d 269, 274 (2d Cir.1994) ("In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." (internal quotation marks omitted)); *Zerafa v. Montefiore Hosp. Hous. Co.,* 403 F.Supp.2d 320, 324 (S.D.N.Y.2005) ("Removal jurisdiction is strictly construed inasmuch as it implicates significant federalism concerns and abridges the deference courts generally give to a plaintiff's choice of forum.").

**\*2** The party asserting federal jurisdiction generally bears the burden of proving that the case is properly in federal court. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189 (1936). "Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper." *United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc.,* 30 F.3d 298, 301 (2d Cir.1994).

### B. Unanimity and Forum–Defendant Rules

#### 1. General Law

Stop & Shop argues remand is required for two reasons. (PL's Mem. 1,3.) First, it contends that it is undisputed that Goldsmith has not consented to removal. (*See generally* Notice.) Indeed, "[w]here there are multiple defendants, 'all named defendants over whom the state court acquired jurisdiction must join in the removal petition for removal to be proper.' " *Burr ex rel. Burr v. Toyota Motor Credit Co.,* 478 F.Supp.2d 432, 437 (S.D.N.Y.2006) (quoting *Miller v. First Sec. Invs., Inc.,* 30 F.Supp.2d 347, 350 (E.D.N.Y.1998)); *see also Smith v. Kinkead,* No. 03–CV–10283, 2004 WL 728542, at \*2 (S.D.N.Y. Apr. 5, 2004) ("[T]he removal statute has consistently been interpreted to require that all defendants consent to removal within the thirty day period." (internal quotation marks omitted)). This is known as the rule of unanimity or the unanimity rule. "Courts have very little discretion—if any—to forgive a failure to comply with the rule of unanimity." *Patrick v. Porter–Cable Corp.,* No. 10–CV–131, 2010 WL 2574121, at \*3 (D.Conn. Apr. 1, 2010); *see also Russell Corp. v. Am. Home Assurance Co.,* 264 F.3d 1040, 1049 (11th Cir.2001) (noting that the unanimity rule is "strictly interpreted and enforced"). Although all Defendants need not sign the removal petition, courts "typically require that each defendant timely submit some form of unambiguous written evidence of consent." *Tate v. Mercedes–Benz USA, Inc.,* 151 F.Supp.2d 222, 224 (N.D.N.Y.2001) (internal quotation marks omitted). [1]

Second, Stop & Shop argues that Goldsmith is a citizen of New York and that under the "forum-defendant rule," removal is improper when a defendant is a citizen of the forum state. Again, the legal premise behind Stop & Shop's argument is unassailable. *See* 28 U.S.C. § 1441(b) (allowing removal of cases, other than federal question cases, "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought"); *HSBC Bank, USA v. Norley,* No. 04–CV–547, 2004 WL 813024, at

\*1 (D.Conn. Apr. 7, 2004) (holding that remand was required when no federal question was present, and defendant was a citizen of the forum state).

#### 2. Exception to These Rules

Gator argues that this case is excepted from these rules, and therefore was properly removed, because Goldsmith was not served as of the date of the Notice. As Gator notes, the rule of unanimity and the forum-defendant rule apply only to parties properly served. *See* 28 U.S.C. § 1441(b) (removal is proper only if "none of the parties in interest *properly joined and served as* defendants" is an in-state defendant); *Patrick,* 2010 WL 2574121, at \*3 (noting that one of the three exceptions to the "rule of unanimity" applies when "the nonjoining defendants have not been served with service of process at the time the removal petition is filed" (internal quotation marks omitted)); *Flores v. Merck & Co.* (*In re Fosamax Prods. Liab. Litig.*), MDL No. 1789, 2008 WL 2940560, at \*2 (S.D.N.Y. July 29, 2008) ("Courts almost uniformly have read [the forum-defendant provision of § 1441(b) ] to allow removal where an in-state defendant has not been served by the time the removal petition is filed."); *Deveer v. Gov'tEmps. Ins. Co.,* No. 07–CV–4437, 2008 WL 4443260, at \*4 (E.D.N.Y. Sept. 26, 2008) ("[R]emoval of a diversity case is permissible where an in-state defendant has not been served by the time the removal petition is filed." (internal quotation marks omitted)).

**\*3** Stop & Shop attempted to serve Goldsmith according to the procedure set forth in N.Y. C.P.L.R. § 308(2), which provides in relevant part:

> Personal service upon a natural person shall be made ... by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business ...; proof of such service shall be filed with the clerk of the court designated in the summons within

twenty days of either such delivery or mailing, whichever is effected later; service shall be complete ten days after such filing ....

N.Y. C.P.L.R. § 308(2) (" § 308(2)").

Gator makes two arguments in support of its position that Goldsmith was not properly served by April 9, 2010. First, Gator argues that, under § 308(2), service is not complete until ten days after proof of service is filed. Proof of service was not filed in this case until April 14, 2010, thus service was not complete until April 24, 2010—fifteen days after the Notice was filed. (Gator's Mem. 7.) Second, Gator argues that service was improper because the Manhattan building where Goldsmith was served was not Goldsmith's "actual dwelling place or his usual place of abode." (*Id.* at 8 n. 4.) As the Court agrees with Gator's first argument, it does not reach the second. [2]

The law is unsettled as to whether federal jurisdiction is affected by New York's requirement that proof of service be filed, and ten days pass, before service is "complete." Some federal courts have held that federal jurisdiction is unaffected by the requirement. *See Stan Winston Creatures,* 314 F.Supp.2d at 181 ("Federal court jurisdiction is not dependent on the technicality of New York state procedure requiring ten days after filing proof of service for service to be deemed 'complete.' "); *Windfield v. C & C Trucking,* No. 02–CV–7688, 2003 WL 21749610, at *2–3 (S.D.N.Y. July 29, 2003) (holding, under a parallel New York law, that though "[t]he court obtains personal jurisdiction over a defendant only after [ ] proof of compliance has been filed," "a delay in filing the proof of service is not a jurisdictional defect so long as the service itself followed the requirements of the statute"). At least one court, however, has held that federal jurisdiction *is* affected by the provision. *See Newkirk v. Clinomics Biosciences, Inc.,* No. 06–CV–553, 2006 WL 2355854, at *3–4 (N.D.N.Y.2006) (holding that, in the context of N.Y. Business Corporation Law § 307, which parallels § 308, jurisdiction does not arise in the state court until service is completed and, hence, the exception to the rule of unanimity was satisfied when removal petition was filed prior to filing of proof of service for non-removing defendant). [3]

**\*4** The first two steps of personal service pursuant to § 308(2), delivery and mailing of the summons,

are jurisdictional requirements, and failure to properly perform either of them results in dismissal of an action. *See* 2 Weinstein, Korn & Miller, N.Y. Civil Practice: CPLR ¶ 308.13a (2011 ed.) ("[D]elivery *and* mailing are essential in order to obtain jurisdiction over the defendant." (emphasis in original)); *see also Steele v. Hempstead Pub Taxi,* 760 N.Y.S.2d 188, 189 (App.Div.2003) (failure to mail copy of summons and complaint to defendant's actual place of business deprived trial court of personal jurisdiction, requiring vacatur of default judgment); *Einheber v. Bodenheimer,* 820 N.Y.S .2d 842, 12 Misc.3d 1177(A), at *3 (Sup.Ct.2006) (stating that "[c]ase law is explicitly clear that, notice received by means other than those authorized by statute does not bring a defendant within the jurisdiction of the court" and dismissing for failure to file proof of service documenting that any of § 308(2)'s requirements had been met); *cf. N.Y. State Higher Educ. Servs. Corp. v. Palmeri,* 563 N.Y.S.2d 358, 359–60 (App.Div.1990) (failure to mail copy of summons and complaint to defendant's residence within twenty days of delivery, as required by § 308(2), deprived trial court of personal jurisdiction over defendant).

However, New York courts are somewhat less clear on the jurisdictional status of the requirement that proof of service be filed, and ten days pass thereafter, before service is "complete." *Compare Pope v. Rice,* No. 04–CV–4171, 2005 WL 613085, at *15 (S .D.N.Y. Mar. 24, 2005) (holding that failure to file proof of service is a "jurisdictional defect" requiring dismissal for insufficient service of process); *Howard v. Klynveld Peat Marwick Goerdeler,* 977 F.Supp. 654, 660 (S.D.N.Y.1997) (" '[L]eave and mail' service under Section 308(2) is ineffective where a plaintiff does not file proof of service with the clerk within twenty days of the date on which the process server mailed the summons and complaint."); *Roth v. Syracuse Hous. Autk,* No.2001–5404, 2002 WL 31962630, at *12 (N.Y.Sup.Ct. July 17, 2002) (holding that action was not properly recommenced within six months after its prior termination under C.P.L.R. § 205(a), because service was not "complete" until after the six-month period ended, noting "the filing of an Affidavit of Service is generally a procedural act which has no effect upon jurisdiction ... [but] the specific language of CPLR 308(2) confers jurisdictional import upon the filing which is accomplished in connection with that section."); *andMorris v. Smithline,* 548 N.Y.S.2d 408, 409–10 (City Ct.1989) (holding that the filing of proof of service is jurisdictional), *with Bell v. Bell, Kalnick, Klee & Green,* 668 N.Y.S.2d 177, 178 (App.Div.1998) ( "[F]ailure to timely file the affidavit of

service, late in this case by eight days, was an irregularity that was properly cured by deeming it filed nunc pro tunc."); *Foley v. Messina,* 528 N. Y.S.2d 709, 711 (App.Div.1988) ("While proof of service apparently was not filed within the 20–day period required by CPLR 308(2), the defect is not jurisdictional."); *Toulouse v. Chandler,* 798 N.Y.S.2d 714, 5 Misc.3d 1005(A), at *5 (N.Y.Sup.Ct. Oct. 18, 2004) (noting that while proof of service was late under § 308(2), "this Court is empowered to correct such a *de minimus* deficiency by deeming the Affidavit of Service filed *nunc pro tunc"* ); *and* Weinstein, Korn & Miller, *supra,* 308.16; *cf Discover Bank v. Eschwege,* 897 N.Y.S.2d 333, 334 (App.Div.2010) (holding that failure to file proof of service under C.P.L.R. § 308(4), which mirrors § 308(2) in relevant respects, "is not a jurisdictional defect but, rather, is a procedural irregularity that may be cured by an order permitting the late filing of proof of service nunc pro tunc"); *Conde v. Zaganjor,* 886 N.Y.S.2d 829, 829 (App.Div.2009) ("The requirement in CPLR 308(4) that proof of service be filed with the clerk of the court within 20 days of affixing or mailing of the summons and complaint ... pertains solely to the time within which a defendant must answer, and does not relate to the jurisdiction acquired by service of the summons." (alteration and internal quotation marks omitted)). [4]

**\*5** 28 U.S.C. § 1441(b), the source of the rule of unanimity, provides that an action not arising under federal law is removable only if no party *"properly joined and served* as [a] defendant[ ]" is a resident of the forum state. New York state law will determine whether a defendant has been "properly ... served" for purposes of this rule. "[W]hile it may still be true that technicalities in state service law will not affect a federal court's interpretation of the removal statute, ... the law requires a federal court to generally apply state procedural rules in determining whether a defendant has been properly served in a removed action." *Fed. Ins. Co.,* 422 F.Supp.2d at 384 n. 16 (citing *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 204–05 (2d Cir.2001) (concluding that even though "a summons with notice is not technically defined as a pleading under" New York law, "it may constitute an initial pleading for purposes of the federal removal statute")); *see also id.* (" '[A]ter [ *Murphy Bros., Inc. v. MichettiPipe Stringing, Inc.,* 526 U.S. 344 (1999) ], proper service of process under state law is required to trigger a defendant's removal obligations.' " (quoting *In re Pharm. Indus. Average Wholesale Price Litig.,* 307 F.Supp.2d 190, 195 (D.Mass.2004))).

Whether or not § 308(2)'s requirements that proof of service be timely filed and that ten days pass before service

is "complete" are "jurisdictional" in the sense that strict compliance is necessary before a court may exercise power over a defendant, the importance of the proof of service requirement demonstrates that a defendant is not "properly ... served" before it is satisfied, as it was not in this case with respect to Goldsmith before Gator filed the Notice. Most conspicuously, though a plaintiff's failure to file proof of service on time may be "curable," it is still a "defect" needing a cure. Thus *complete* failure to file proof of service requires dismissal, *see Einheber,* 12 Misc.3d 1177(A), at *3, and even the courts that have held *untimely* failure to file proof of service to be a "curable" defect require a plaintiff to obtain permission to make a late filing; a plaintiff's failure to do so voids any action taken by the court even when the plaintiff files late on his own, *see Zareef v. Lin Wong,* 877 N.Y.S.2d 182, 183 (App.Div.2009) (holding that because "plaintiff did not obtain an order permitting a late filing of proof of service," the "late filings were nullities and the defendants' time to answer never began to run"). Moreover a court is without power, under New York law, to enter a default judgment prior to the filing of proof of service. *See Discover Bank,* 897 N.Y.S.2d at 334 ("A court may not ... [cure a failure to timely file proof of service under C.P.L.R. § 308(4) ] retroactive to a defendant's prejudice by placing the defendant in default as of a date prior to the order, nor may a court give effect to a default judgment that, prior to the curing of the irregularity, was a nullity requiring vacatur."); *see also R.L.C. Investors, Inc. v. Zabski,* 487 N.Y.S.2d 201, 201 (App.Div.1985) (same, in the context of failure to file proof of service under § 308(2)). [5] Similarly, a plaintiff may not file a motion that is returnable prior to the end of the ten-day clock that runs from the date proof of service is filed. *See, e.g., Brooklyn Fed. Sav. Bank v. Crosstown W. 28 LLC,* No. 28268/09, 29 Misc.3d 1237(A), 2010 WL 5141734, at *6 & n. 4 (N.Y.Sup.Ct. Dec. 19, 2010) (noting that notice of motion for summary judgment in lieu of complaint filed pursuant to N.Y. C.P.L.R. § 3213 should have been made returnable thirty days following the expiration of the ten-day time period after which service was "complete" under § 308(2), as defendants were not obligated to enter an answer until thirty days after that date); *cf. MMC Energy, Inc. v. Miller,* No. 08–CV–4353, 2009 WL 2981914, at *4 (S.D.N.Y. Sept. 14, 2009) (denying motion for default judgment because defendant filed motion to dismiss within the ten-day period before service was "complete" under § 308(2)).

**\*6** The rationale for each of these rules is that a defendant is not required to make an appearance in an action involving service pursuant to § 308(2) until thirty days "after service

is complete," N.Y. C.P.L.R. § 320(a), so the filing of proof of service and the passage often days thereafter are necessary steps in triggering a defendant's time to respond. *See, e.g., R.L.C.,* 487 N.Y.S.2d at 201. Moreover, the proof of service requirement is no mere "technicalit[y]" but rather an assurance that the other requirements of § 308(2), delivery and mailing, have been satisfied. *Flick v. Stewart–Warner Corp.,* 555 N.E.2d 907, 910 (N.Y.1990) (describing the proof of service requirements in N.Y. Bus. Corp. Law §§ 307(c) (1) and (2) as "measures designed to satisfy due process requirements of actual notice"). The inescapable implication is that prior to the filing of proof of service, service under § 308(2) is not "complete," and is therefore not "proper" within the meaning of § 1441(b).

Stop & Shop had not filed the requisite proof of service documenting its attempt to serve Goldsmith by April 9, 2010, the date Gator removed this case. It follows that Gator's

removal satisfies the exception to both the rule of unanimity and the forum-defendant rule, as Goldsmith, at the time the Notice was filed, had not yet been properly served under New York law.

### *III. Conclusion*

For the reasons stated herein, Plaintiff's Motion to Remand is denied. The Clerk of the Court is respectfully requested to terminate the relevant motion, (Dkt. No. 8).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 1236121

---

## Footnotes

1    Though not explicitly required by the removal statute, the courts have concluded that the unanimity rule promotes "the congressional purpose of giving deference to a plaintiff's choice of a state forum and of resolving doubts against removal and in favor of remand." *Miller,* 30 F.Supp.2d at 350 (internal quotation marks omitted).

2    Though the Court does not reach the issue of Goldsmith's domicile, the Court is perplexed by the manner in which Gator seeks to obfuscate it—a fact of which Gator, which is wholly owned by Goldsmith's son (Decl. of James Goldsmith (Dkt. No. 13) ¶ 1), presumably has actual knowledge. Yet, Gator has given inconsistent statements about Goldsmith's address. (Notice ¶ 4(b) (adopting Plaintiff's "upon information and belief allegation that Goldsmith is a New Jersey domiciliary while carefully avoiding actually stating that Goldsmith is in fact domiciled in New Jersey by merely noting that Goldsmith "has an address" in New Jersey); Gator's Answer ¶ 2 (denying Plaintiff's allegation that Goldsmith "has an address"—the exact same address as admitted in ¶ 4(b) of the Notice—in New Jersey).)

3    Federal courts in other jurisdictions are also split on the jurisdictional import of proof of service. *Compare Godley v. Valley View State Bank,* No. 99–CV–2531, 2000 WL 1863375, at *1–2 (D.Kan. Dec. 15, 2000) (holding that despite a state requirement that "[s]ervice ... shall be deemed complete when it has been made [in the manner required] ... and the service shall be proved" by affidavit, "failure to file th[e] affidavit before removal d[id] not preclude th[e] court from determining that service ... was complete at the time of removal"), *with Cooper v. Sentry Select Ins. Co.,* No. 08–CV–649, 2008 WL 4610235, at *2 (W.D.La. Oct. 15, 2008) (holding that even though service was complete under state law, defendants did not need the consent of co-defendants to remove when proof of service had not been filed because "[c]ounsel for the removing defendant should be able to rely on the state court record"), *Cucci v. Edwards,* 510 F.Supp.2d 479, 482–83 (C.D.Cal.2007) (holding that case was properly removed because service was not "complete" under state law until after removal petition was filed), *and Kopff v. World Research Group, LLC,* 298 F.Supp.2d 50, 59

(D.D.C.2003) (denying a motion to remand because failure to file an adequate proof of service triggered the exception to the rule of unanimity).

4    The New York Court of Appeals appears not to have directly spoken on the precise question of whether a New York court has personal jurisdiction over a party prior to service becoming "complete" under § 308(2). It bears noting, however, that some of the cases holding that the filing of proof of service is a jurisdictional requirement rely on the Court of Appeals' treatment of New York Business Corporation Law § 307(c), which contains a parallel requirement of that proof of service be filed in cases involving service on a foreign business corporation not authorized to do business in the state of New York; service is "complete ten days after such papers are filed." N.Y. Bus. Corp. Law § 307(c) (1), (2). *See Pope,* 2005 WL 613085, at * 14 n. 16; *Roth,* 2002 WL 31962630, at * 12. The Court of Appeals has held that failure to file the affidavit constituting proof of service is a "jurisdictional" defect "and does not constitute a mere irregularity subject to cure." *Flannery v. Gen. Motors Corp.,* 655 N.E.2d 176, 176 (N.Y.1995) (alteration and internal quotation marks omitted) (citing *Flick v. Stewart–Warner Corp.,* 555 N.E.2d 907, 910 (N.Y.1990)); *see also Flick,* 555 N.E.2d at 910 (filing proof of service is "not [a] mere procedural technicalit[y] but [a] measure[ ] designed to satisfy due process requirements of actual notice"). The cases holding that failure to file proof of service is non-jurisdictional under §§ 308(2) and (4) do not mention these cases. The BCL § 307(c) cases could be distinguished, however, on the ground that they may have turned on the particular due process requirements that exist in cases involving out-of-state corporations not authorized to do business in New York. *See Flick,* 555 N.E.2d at 909–10.

5    *Stan Winston* relied on an older Appellate Division case, *Haegeland v. Massa,* 427 N.Y.S.2d 887 (App.Div.1980), which apparently allowed the trial court to give effect to a default judgment entered prior to proof of service being filed. *Stan Winston,* 314 F.Supp.2d at 182–83. The Appellate Departments appear to have changed course since 1980, even including the Second Department which issued *Haegeland. See Paracha v. Cnty. of Nassau,* 643 N.Y.S.2d 637, 638 (App. Div.2d Dep't 1996) ("Because the proof of service required by CPLR 308(2) has yet to be filed, the respondent never defaulted in appearing."); *Weininger v. Sassower,* 612 N.Y.S.2d 249, 250 (App. Div.2d Dep't 1994) (holding that default judgment was properly entered after Supreme Court granted plaintiffs motion to file late proof of service nunc pro tunc and defendant failed to appear within ten days after the late filing, but noting that "we agree that a court cannot invoke the device of nunc pro tunc to effectively grant a default judgment retroactively").

---

**End of Document**                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 174 of 189

Terrell v. NBC Universal Media LLC, Not Reported in Fed. Supp. (2019)

2019 WL 3206131
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

David TERRELL, Plaintiff,

v.

NBC UNIVERSAL MEDIA LLC, et al., Defendants.

18-cv-2354 (NG)(RLM)
|
Signed 07/15/2019
|
Filed 07/16/2019

**Attorneys and Law Firms**

Eric Sanders, The Sanders Firm, P.C., New York, NY, for Plaintiff.

Bruce Steven Rosen, McCusker, Anselmi, Rosen & Carvelli, PC, Florham Park, NJ, Erik Christopher Bierbauer, NBC Universal, Chelley E. Talbert, NBCUnviersal Media, LLC, New York, NY, for Defendant NBCUniversal Media, LLC.

Bruce Steven Rosen, McCusker, Anselmi, Rosen & Carvelli, PC, Florham Park, NJ, Chelley E. Talbert, NBCUnviersal Media, LLC, New York, NY, for Defendant Sarah Wallace.

Bruce Steven Rosen, McCusker, Anselmi, Rosen & Carvelli, PC, Florham Park, NJ, for Defendants Tribune Broadcasting, LLC, James Ford, Jay Dow.

James Frederick Horton, Littler Mendelson, P.C., Nicholas Benjamin Green, NYC Law Department, New York, NY, for Defendants the City of New York, James P. O'Neill, Darcel A. Clark, Wanda Perez-Maldonado.

John Andrew Scola, Jr., Law Office of John A. Scola PLLC, New York, NY, for Defendants Nwokoro & Scola, Esquires, Chukwuemeka Nwokoro, John Scola.

Michael T. Stolper, The Stolper Group, LLP, New York, NY, for Defendant Law Cash, LLC.

**ORDER**

GERSHON, United States District Judge:

**\*1** This civil rights action was filed on April 22, 2018. Two of the defendants, Manuel Gomez and Black Ops Private

Investigators, Inc. ("BOPI"), now move to dismiss the claims against them for failure to effectuate service of process pursuant to Federal Rules of Civil Procedure 4(m) and 12(b)(5). On April 25, 2019, the court set a briefing schedule for this motion, which required plaintiff to serve his opposition to defendants' motion by, June 14, 2019. Plaintiff never served an opposition on defendants, nor did he request additional time to do so from the court. Accordingly, defendants' motion is unopposed. [1]

Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "But if the plaintiff shows good cause for the failure, the court must extend time for service for an appropriate period." Id. Rule 12(b)(5) permits a party to move to dismiss for insufficient service of process.

When a defendant raises a challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy. See Burda Media, Inc. v. Viertel, 417 F.3d 292, 298-99 (2d Cir. 2005). In considering a motion to dismiss for insufficient service of process, a court may consider matters outside the complaint. Ramsaram v. Abraham, 2017 WL 1194482, at *10 (S.D.N.Y. Mar. 30, 2017).

Mr. Gomez, the owner and sole employee of BOPI, submitted a declaration to the court stating that he was never served with the complaint and that he first learned about this lawsuit on February 25, 2019, when he was contacted by a lawyer for another defendant. A review of the docket corroborates Mr. Gomez's assertion that he was never served. Despite doing so for other defendants, plaintiff never filed proof of service for Mr. Gomez. I find that plaintiff has not met his burden to show that Mr. Gomez was properly served. I also find that, given his failure to respond to defendants' motion, plaintiff has not demonstrated that there was good cause for this failure such that he should be granted additional time to serve Mr. Gomez.

Plaintiff did file on the docket proof of service with regard to BOPI. A process server attests to having mailed, on July 30, 2018, the summons and complaint to Black Ops Private Investigations, Inc. "via USPS Certified Mail and Return Receipt Requested" to BOPI's registered agent's address listed on the New York Department of State website. Defendants argue that the service was defective in three respects. First, a corporation sued in federal court in New York may not

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 175 of 189

Terrell v. NBC Universal Media LLC, Not Reported in Fed. Supp. (2019)

be served by certified mail, return receipt requested. Second, the tracking information for the package indicates that the mailing was unclaimed and returned to sender in September 2018. Third, the letter was addressed to the wrong entity —Black Ops Private *Investigations*, not Black Ops Private *Investigators*. I am not persuaded that the minor error in the letter's address rendered service defective. *See Doe v. Constant*, 354 Fed. Appx. 543, 546 (2d Cir. 2009). But I agree with defendants that the service on BOPI by certified mail —especially since the mailing was returned to sender—was insufficient.

**\*2** In federal court, a corporation may be served following the law of the state where the district court is located or where service is made. Fed. R. Civ. P. 4(h)(1)(A) (incorporating Fed. R. Civ. P. 4(e)(1)). Alternatively, a plaintiff may serve a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B).

"[S]ervice of a summons and complaint on a corporation by certified mail does not satisfy the requirements of Rule 4(h) (1) or New York Civil Practice Law and Rules ("CPLR")." *United States v. Calaman*, 2016 WL 8453343, at \*5 (E.D.N.Y. Nov. 16, 2016); *see, e.g., Morris v. N.Y. Gaming Comm'n*,

2019 WL 2423716, at \*3 (W.D.N.Y. Mar. 14, 2019). The CPLR does allow for service by first class mail "as an alternative to personal service," but this method—similar to Federal Rule of Civil Procedure 4(d)'s waiver of service— requires simultaneous service of two copies of "a statement of service by mail and acknowledgment of receipt," along with a return, stamped envelope. N.Y. Civ. Prac. L. & R. § 312-a(a); *accord Calaman*, 2016 WL 8453343, at \*5. "The signed acknowledgment of receipt [ ] constitute[s] proof of service." N.Y. Civ. Prac. L. & R. § 312-a(b). Here, there is no indication that plaintiff chose to use this alternative method of service, let alone employed it successfully. To the contrary, defendant has submitted evidence indicating that the package plaintiff sent to BOPI was returned to sender. Under these circumstances, plaintiff has not met his burden to show that he properly served BOPI and has not established good cause for his failure.

In sum, I agree with Mr. Gomez and BOPI that plaintiff failed to effectuate proper service on them.[2] The claims against these defendants are dismissed without prejudice.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 3206131

---

## Footnotes

1  The other defendants in this action have moved to dismiss the complaint under Rule 12(b)(6). Plaintiff filed an opposition to those motions, which are pending before me.

2  Because plaintiff, by not responding to defendants' motion, has not even attempted to show good cause for his failure, I decline to exercise my discretion, in the absence of good cause, to extend plaintiff's time for service. *See Zapata v. City of N.Y.*, 502 F.3d 192, 196–98 (2d Cir. 2007) (citing *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 508–09 (2d Cir. 2006)) ("[B]efore we will even consider vacating a Rule 4(m) dismissal for abuse of discretion, the plaintiff must ordinarily advance some colorable excuse for neglect.").

---

**End of Document**                                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

803 Fed.Appx. 538 (Mem)
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE 32.1
AND THIS COURT'S LOCAL RULE 32.1.1. WHEN
CITING A SUMMARY ORDER IN A DOCUMENT
FILED WITH THIS COURT, A PARTY MUST
CITE EITHER THE FEDERAL APPENDIX OR AN
ELECTRONIC DATABASE (WITH THE NOTATION
"SUMMARY ORDER"). A PARTY CITING A
SUMMARY ORDER MUST SERVE A COPY OF IT ON
ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals, Second Circuit.

UNITED STATES of America, Appellee,

v.

David GILMARTIN, Defendant-Appellant.

No. 18-1831
|
May 5, 2020

Appeal from a judgment of the United States District Court
for the Southern District of New York (Valerie E. Caproni,
*Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED that the
amended judgment and orders of the District Court are
AFFIRMED.

**Attorneys and Law Firms**

FOR DEFENDANT-APPELLANT: David Gilmartin, pro se,
Barstow, CA.

FOR APPELLEE: Stanley J. Okula, Jr., Nanette L. Davis,
Special Assistant United States Attorneys, Karl Metzner,
Assistant United States Attorney, for Geoffrey S. Berman,
United States Attorney for the Southern District of New York,
New York, NY.

PRESENT: RAYMOND J. LOHIER, JR., JOSEPH F.
BIANCO, MICHAEL H. PARK, Circuit Judges.

**\*539 SUMMARY ORDER**

David Gilmartin appeals from an amended judgment and
orders, entered on May 9, 2018 and June 5, 2018, by the
United States District Court for the Southern District of New
York (Caproni, J.) modifying the restitution order that was
imposed at Gilmartin's sentencing and denying Gilmartin's
motion to reconsider the modification. We assume the parties'
familiarity with the underlying facts and prior record of
proceedings, to which we refer only as necessary to explain
our decision to affirm.

As an initial matter, we note that the parties dispute whether
our review on appeal is limited to the District Court's denial
of the motion for reconsideration, or whether we can review
the underlying order that modified the restitution order. Given
the limited scope of the notice of appeal, which by its terms
designates only the District Court's order denying the motion
for reconsideration, we agree with the Government that our
review is limited to whether the District Court's denial of
reconsideration was an abuse of discretion. See Shrader v.
CSX Transp., Inc., 70 F.3d 255, 256 (2d Cir. 1995).

We conclude that the District Court did not abuse its discretion
in denying Gilmartin's motion for reconsideration. See United
States v. Yalincak, 853 F.3d 629, 635 (2d Cir. 2017). The
motion failed to raise any new arguments that the District
Court had not already addressed in its May 1, 2018 opinion
and order. The motion also did not point to controlling
authority or evidence that the District Court overlooked in its
original order. See Shrader, 70 F.3d at 257.

Even assuming that we have jurisdiction to review the
underlying modification, see Van Buskirk v. United Grp. of
Cos., Inc., 935 F.3d 49, 52 (2d Cir. 2019), we conclude that the
District Court did not err in modifying Gilmartin's restitution
order. We review the imposition of a restitution order for
abuse of discretion, but our review is de novo when the
defendant asserts an error of law. United States v. Thompson,
792 F.3d 273, 276–77 (2d Cir. 2015). A district court may
modify the restitution schedule if there is a "material change
in the defendant's economic circumstances." 18 U.S.C. §
3664(k).

There is no doubt that Gilmartin's economic circumstances
materially changed after his release from prison. At the
time of sentencing, Gilmartin was not collecting Social

Security benefits. Following his release, Gilmartin elected to receive Social Security benefits, which satisfies the statutory test for a "material change in the defendant's economic circumstances." 18 U.S.C. § 3664(k); see also United States v. Grant, 235 F.3d 95, 100–01 (2d Cir. 2000) (holding that the release of frozen funds and the consequent availability of the funds following defendant's release from prison constituted a "material change"). Gilmartin also argues that the sentencing judge intentionally exempted any Social **540** Security retirement benefits from restitution payments. In the absence of more explicit language that the sentencing judge even considered Gilmartin's Social Security benefits, we cannot conclude that those benefits were purposefully exempted from these payments as Gilmartin claims.

We have considered Gilmartin's remaining arguments and conclude that they are without merit. For the foregoing reasons, the amended judgment and orders of the District Court are AFFIRMED.

**All Citations**

803 Fed.Appx. 538 (Mem)

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 178 of 189**

Weingot v. Unison Agreement Corp., Not Reported in Fed. Supp. (2023)

KeyCite Yellow Flag - Negative Treatment

Report and Recommendation Adopted as Modified by  Weingot v. Unison Agreement Corp.,  E.D.N.Y.,  March 20, 2024

2023 WL 5152478

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

Yisroel WEINGOT and Suri Weinberger
a/k/a Suri Weingot, Plaintiffs,

v.

UNISON AGREEMENT CORP., Real
Estate Equity Exchange Inc. and Odin New
Horizon Real Estate Fund, LP, Defendants.

CV 21-4542 (JS)(AYS)
|
Signed July 20, 2023

**Attorneys and Law Firms**

Charles Wertman, Rockville Centre, NY, Elliot J. Blumenthal, Cedarhurst, NY, for Plaintiffs.

Alexander J. Gershen, Pro Hac Vice, Jamie Danielle Wells, Pro Hac Vice, Scale LLP, San Francisco, CA, for Defendants Unison Agreement Corp., Real Estate Equity Exchange Inc., Odin New Horizon Real Estate Fund LP.

## REPORT AND RECOMMENDATION

ANNE Y. SHIELDS, United States Magistrate Judge:

**\*1** Before the Court, on referral from the Honorable Joanna Seybert, is Defendants' motion to dismiss the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted. For the following reasons, this Court respectfully recommends that Defendants' motion be granted in part and denied in part.

## BACKGROUND

Plaintiffs, Yisroel Weingot ("Yisroel") and Suri Weinberger, also known as Suri Weingot ("Suri") (collectively, "Plaintiffs" or "Weingots"), are husband and wife residing at 973 Benton Street in Woodmere, New York (the "Property"). (Am.

Compl. ¶ 1.) The Weingots have owned and resided at the Property since 2008. (Id. ¶ 28.) The Property is Plaintiffs' only real estate holding and represents the major portion of their net worth. (Id. ¶ 31.)

In October 2017, in need of a financial loan, Yisroel researched different options available to utilize Plaintiffs' equity in the Property. (Id. ¶ 30.) During the course of his research, Yisroel found Defendant Unison Agreement Corporation's ("Unison") website (the "Website"), which stated as follows: "We convert up to 17.5% of your home's value to cash, so you can live the life you really want. Unlike a loan, there is no added debt, monthly payments, or interest. We share in a portion of your home's change in value when you decide to sell." (Id. ¶¶ 16, 32.) Upon review of the information on the Website, Yisroel contacted Eric Reou ("Reou"), a Senior Program Specialist for Unison, on October 31, 2017, to inquire whether Unison's program could meet his needs. (Id. ¶ 37.)

Reou advised Yisroel that Unison's program was appropriate for his needs. (Id. ¶ 38.) Reou further advised Yisroel that Unison would share in a portion of the Property's change in value when he decided to sell. (Id. ¶ 38.) Based upon the information provided, Yisroel requested an application and other material to commence the process by which Plaintiffs would receive funds from Unison. (Id. ¶ 39.)

In or about November 2017, Plaintiffs received an application package from Unison. (Id. ¶ 40.) Unison thereafter appraised Plaintiffs' Property at $668,000.00. (Id. ¶ 41.) In January 2018, Plaintiffs were presented with the following agreements (the "Agreements") for signature: (1) a "Unison Homeowner Option Agreement"; (2) a "Unison Homeowner Covenant Agreement"; and, (3) a "Unison Homeowner Mortgage and Security Agreement." (Id. ¶ 42.) A Unison representative brought the foregoing Agreements to Plaintiffs' home but when Plaintiffs asked various questions about the documents, the representative stated that he was unable to answer their questions. (Id. ¶ 43)

Pursuant to the Unison Homeowner Option Agreement (the "Option Agreement"), Plaintiffs granted to Unison "an option to purchase, in the future, an undivided 68.6% interest" in the Property. (Id. ¶ 44.) The Option Agreement gave Unison the right to an interest in the entire value of the Property, not just the change in value from the date of the original "investment," which Plaintiffs allege contradicts the statements on the Website (Id. ¶¶ 44-45.) With the appraisal

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 179 of 189

Weingot v. Unison Agreement Corp., Not Reported in Fed. Supp. (2023)

set at $668,000.00, Unison set the "Purchase Price" of the Property at $459,985.00, with an option to purchase 68.6% of the Property's future value. (Id. ¶ 46.) Unison paid Plaintiffs $115,000.00 – known as the "Unison Investment Payment" – as an advance against the Purchase Price. (Id.) According to the various Agreements Plaintiffs signed, upon a sale of the Property, Unison would receive 68.6% of the sale price. (Id. ¶ 47.) The Unison Homeowner Mortgage and Security Agreement (the "Mortgage Agreement") Plaintiffs signed created a lien on the Property in the amount of $115,000.00 in favor of Unison. (Id. ¶ 51.)

**\*2** The Agreements also provided for termination by Plaintiffs after three years, known as a "Special Termination." (Id. ¶ 48.) The procedure for a Special Termination requires the same calculations as for a sale but a new appraisal of the Property takes the place of the sale price in the calculations. (Id.) The Special Termination provision also grants Unison the greater of either the calculation described above or the Unison Investment Payment. (Id.) When Yisroel inquired about the possibility of buying out Unison's interest, he was advised that he would have to pay back the Unison Investment Payment as part of any buyout. (Id. ¶ 50.)

Plaintiffs commenced the within action in New York Supreme Court, Nassau County, on May 28, 2021. (Docket Entry ("DE") [1-1].) Defendants thereafter removed the action to this Court on August 12, 2021 on the basis of diversity jurisdiction. (DE [1].) On December 16, 2021, Judge Seybert referred the action to mediation; however, mediation was unsuccessful. On consent of Defendants, Plaintiffs filed an Amended Complaint herein on August 22, 2022, (DE [30]), asserting fifteen causes of action: (1) two counts of common law fraud, (Am. Compl. ¶¶ 61-73); (2) fraudulent misrepresentation, (id. ¶¶ 74-83); (3) two counts to quiet title, (id. ¶¶ 84-89, 151-61); (4) unjust enrichment, (id. ¶¶ 90-94); (5) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, and Regulation Z of the Federal Reserve Board ("Regulation Z"), 12 C.F.R. § 226.1 (id. ¶¶ 95-108); (6) violation of the New York Banking Law, (id. ¶¶ 109-13); (7) violation of Section 349 of the New York General Business Law, (id. ¶¶ 114-18); (8) violation of Section 350 of the New York General Business Law, (id. ¶¶ 119-27); (9) unconscionable conduct, (id. ¶¶ 128-35); (10) rescission, (id. ¶¶ 136-40); (11) slander of title, (id. ¶¶ 141-50); (12) declaratory relief, (id. ¶¶ 162-72); and, (13) injunctive relief, (id. ¶¶ 173-79.) Plaintiffs seek money damages as well as a declaration that complete title and possession of the Property is vested solely in Plaintiffs to the exclusion of all others, a permanent injunction preventing Defendants from interfering with Plaintiffs' title, possession and enjoyment of the Property, and attorney's fees and costs. (Id. Wherefore Clause.)

Presently before the Court is Defendants' motion to dismiss Plaintiffs' Amended Complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE [32].) Plaintiffs oppose Defendants' motion. (DE [36].) The Court now turns to the merits of the motion.

## DISCUSSION

### I. Legal Standard

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable of the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). As a general rule, the Court is required to accept all of the factual allegations in the Complaint as true and draw all reasonable inferences in the plaintiff's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Town of Babylon v. Fed. Hous. Fin. Agency, 699 F.3d 221, 227 (2d Cir. 2012).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." Iqbal, 556 U.S. at 678-79 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. Iqbal, 556 U.S. at 679. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement' " will not suffice. Iqbal, 556 U.S. at 678 (quoting Twombly, 555 U.S. at 557).

**\*3** While the facts to consider in the context of a Rule 12 motion to dismiss are generally limited to those set forth in the pleadings, a court may consider matters outside of the pleadings under certain circumstances. Specifically, in the context of a Rule 12(b)(6) motion, a court may

consider: (1) documents attached to the complaint as exhibits or incorporated by reference therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). Applying these principles here, the Court has considered the Agreements submitted by Defendants in rendering this Report and Recommendation since such documents are referenced heavily in the Amended Complaint and are therefore rendered "integral" to the pleading.

## II. Plaintiffs' TILA, Banking Law and General Business Law Claims are Time-Barred

As stated above, Plaintiffs bring claims pursuant to TILA, the New York Banking Law, and Sections 349 and 350 of the New York General Business Law. For the reasons that follow, all such claims are untimely.

Claims brought pursuant to TILA are subject to a one-year statute of limitations, commencing on "the date of the occurrence of the violation." 15 U.S.C. § 1640(e); see also Blagrove v. Deutsche Bank Nat'l Trust Co., No. 19-CV-5357, 2021 WL 1601115, at *3 (E.D.N.Y. Apr. 23, 2021) (noting that "a plaintiff must bring damages claims under TILA within one year from the date of the occurrence of the violation"). "It is well-settled that where a claim for damages under TILA is premised on the failure to provide material disclosures, the date of the occurrence of the violation is no later than the date the plaintiff enters the loan agreement, or possibly, when defendant performs by transmitting the funds to plaintiff." Blagrove, 2021 WL 1601115, at *3 (quoting Williams v. Ocwen Loan Servicing, LLC, No. 19-CV-2187, 2020 WL 5757640, at *10 (E.D.N.Y. Sept. 27, 2020)). Where claims under TILA are time-barred, any claims based on Regulation Z – the "regulatory vehicle through which TILA is implemented" – are time-barred as well. Blagrove, 2021 WL 1601115, at *3 (citation omitted); see also Williams, 2020 WL 5757640, at *9 (dismissing a claim for violation of Regulation Z since the claim was time-barred under TILA). Similarly, claims brought pursuant to Section 598 of the New York Banking Law – which, although not specified in the Amended Complaint, appears to be the section upon which Plaintiffs base their claim – and Sections 349 and 350 of the New York General Business Law are subject to a three-year statute of limitations. See N.Y. C.P.L.R. § 214(2); see also Hutter v. Countrywide Bank, N.A., 41 F. Supp. 3d 363, 373 (S.D.N.Y.

2014) (applying a three-year statute of limitations to a claim brought pursuant to Section 598(5) of New York's Banking Law); Martin Hilti Family Tr. v. Knoedler Gallery, LLC, 137 F. Supp. 3d 430, 466 (S.D.N.Y. 2015) ("Claims brought under New York General Business Law §§ 349 and 350 are subject to a three-year statute of limitations under N.Y. C.P.L.R. § 214(2).").

Here, Plaintiffs signed the Agreements with Unison on January 15, 2018. (Def. Ex. A-D.) Accordingly, any claim under TILA and Regulation Z needed to be commenced by January 15, 2019 and any claims pursuant to Section 598 of New York's Banking Law and Sections 349 and 350 of New York's General Business Law needed to be brought by January 15, 2021. Plaintiffs commenced this action in state court on May 28, 2021. As such, the claims set forth at the Sixth, Seventh, Eighth, and Ninth causes of action contained in the Amended Complaint are time-barred.

**\*4** Plaintiffs argue that their claims are timely because on March 20, 2022, the Governor of New York issued Executive Order 202.8, which "tolled all applicable dates between March 20, 2020 and November 3, 2020." (Pl. Mem. of Law in Opp'n 14.) Plaintiffs therefore argue that they are entitled to have an additional seven and one-half months added to their statutes of limitation. (See id.)

"Courts in this Circuit are split on whether Executive Order 202.8 suspended or tolled time periods to which it applied." Loeb v. County of Suffolk, No. 22-CV-6410, 2022 WL 4163117, at *2 (E.D.N.Y. June 23, 2023) (comparing cases). As explained by the New York Appellate Division, Second Department,

> [a] toll suspends the running of the applicable period of limitations for a finite time period, and the period is excluded from the calculation of the relevant time period. Unlike a toll, a suspension does not exclude its effective duration from the calculation of the relevant time period. Rather, it simply delays expiration of the time period until the end date of the suspension.

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 181 of 189

Weingot v. Unison Agreement Corp., Not Reported in Fed. Supp. (2023)

Brash v. Richards, 149 N.Y.S.3d 560, 561 (2d Dep't 2021). The most recent case to interpret Executive Order 202.8 in this district found it to operate as a suspension rather than a toll. See Loeb, 2022 WL 4163117, at *3 ("The Court is of the opinion that Executive Order 202.8 suspended the time period to which it applied, and thus Plaintiff's claims were time-barred.") (emphasis in original). This Court recommends that the same analysis be applied herein, rendering Plaintiff's claims brought pursuant to TILA, Regulation Z, the New York Banking Law and the New York General Business Law untimely. See also Baker v. 40 Wall St. Holdings Corp., 161 N.Y.S.3d 723, 724-25 (N.Y. Sup. Ct. 2022) ("[T]he Governor did not toll all statutes of limitation, but only suspended them, due to the COVID-19 Pandemic, and ... he terminated the suspension on November 3, 2020."); Cruz v. Guaba, 159 N.Y.S.3d 828, 828 (N.Y. Sup. Ct. 2022) ("Th[e] toll merely stopped the running of any applicable period of limitations for the 228 day period of time between March 3, 2020 and November 3, 2020. Contrary to Plaintiff's claims, the executive orders did not extend everyone's statute of limitations period for an additional 228 days.").

Here, the statute of limitations on Plaintiffs' TILA claim had already expired when Executive Order 202.8 was issued in March 2020. "Nothing in the Executive Order indicates that it is to be retroactively applicable and, '[b]y its terms, it cannot be read to revive already expired time limitations.' " Arnold v. Town of Camillus, No. 5:20-CV-1364, 2023 WL 2456059, at *16 (N.D.N.Y. Mar. 9, 2023) (quoting Jackson v. Wilcox, 70 Misc. 3d 1208(A) (N.Y. Sup. Ct. 2021)) (alteration in original). Moreover, Plaintiffs had two and one-half months from the expiration of Executive Order 202.8 to the expiration of the three-year statute of limitations on their New York Banking Law and General Business Law claims. Yet, they chose not to commence this action until May 2021. With a suspension, like that set forth in Executive Order 202.8, "a party can only benefit from the Executive Orders if his or her statute of limitations or filing deadline fell within the suspension period." Baker, 161 N.Y.S.3d at 384. The limitations period on Plaintiffs' claims clearly fell outside that period.

Based on the foregoing, this Court respectfully recommends that Defendants' motion to dismiss Plaintiffs' claims brought pursuant to TILA, Regulation Z, the New York Banking Law, and Sections 349 and 350 of the New York General Business Law as time-barred be granted.

III. Requests for Declaratory and Injunctive Relief are Not Causes of Action

**\*5** The Fourteenth and Fifteenth Causes of Action contained in the Amended Complaint assert claims for "declaratory relief" and "injunctive relief." (Am. Compl. ¶¶ 162-79.) It is black-letter law that the federal Declaratory Judgment Act "is procedural only and does not create an independent cause of action." Chevron Corp. v. Naranjo, 667 F.3d 232, 244 (2d Cir. 2012). Accordingly, a "request for a declaratory judgment is not a cause of action; it is a request for a remedy that does not exist independent of a plausible underlying claim for relief." Performing Arts Cent. of Suffolk County v. Actor's Equity Ass'n, No. CV 20-2531, 2022 WL 16755284, at *16 (E.D.N.Y. Aug. 25, 2022) (citation omitted), adopted by, 2022 WL 4977112 (E.D.N.Y. Sept. 30, 2022). "Similarly, injunctions are remedies and may only be issued on an independent claim for relief." Goureau v. Lemonis, No. 1:20-cv-04691, 2021 WL 4847073, at *5 (S.D.N.Y. Oct. 15, 2021) (citations omitted); see also Brown v. Showtime Networks, Inc., 394 F. Supp. 3d 418, 444 (S.D.N.Y. 2019) (holding that cause of action for a permanent injunction is "not an independent claim upon which relief could be granted, since injunctions are remedies, not claims").

In light of the foregoing, this Court respectfully recommends that Plaintiffs' Fourteenth and Fifteenth causes of action for declaratory and injunctive relief be dismissed.

IV. Unconscionability is not a Cause of Action

"Under New York law, unconscionability is an affirmative defense to the enforcement of a contract." Colonial Funding Network, Inc. v. Epazz, Inc., 252 F. Supp. 3d 274, 285 (S.D.N.Y. 2017) (quoting Ng. v. HSBC Mortg. Corp., No. 07 Civ. 5434, 2011 WL 3511296, at *8 (E.D.N.Y. Aug. 10, 2011)). While Plaintiffs assert a claim for "Unconscionable Contract" as the Tenth Cause of Action in the Amended Complaint, "[a] cause of action for unconscionability may not be used to seek affirmative relief." Colonial Funding Network, 252 F. Supp. 3d at 285 (quoting Ng, 2011 WL 3511296, at *8) (additional citation omitted); see also Knox v. Countrywide Bank, 4 Supp. 3d 499, 513 (E.D.N.Y. 2014) (dismissing unconscionability claim on the ground that it is a "defense[ ] that plaintiffs attempt to convert into [an] affirmative claim[ ] for relief"); Fortune Limousine Serv., Inc. v. Nextel Commc'ns, 826 N.Y.S.2d 392m 396 (2d Dep't 2006) ("The third cause of action seeking affirmative relief on the ground of unconscionable contract terms must also be dismissed as [t]he doctrine of unconscionability is to be used

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 182 of 189

Weingot v. Unison Agreement Corp., Not Reported in Fed. Supp. (2023)

as a shield, not a sword, and may not be used as a basis for affirmative recovery.").

Based on the foregoing, Plaintiffs' claim for "unconscionable contract" should be dismissed.

## V. The Fraud Claims

Plaintiffs assert three claims sounding in fraud in their Amended Complaint: two counts of common law fraud (the First and Second Causes of Action) and one count of fraudulent misrepresentation (the Third Cause of Action). (Am. Compl. ¶¶ 61-83.) Defendants seek to dismiss all three claims on the grounds that Plaintiffs have failed to plead their fraud claims with the requisite specificity set forth in Federal Rule of Civil Procedure 9(b).

To plead a claim for fraud or fraudulent misrepresentation, a plaintiff must demonstrate four elements: "(1) a material misrepresentation of a presently existing or past fact; (2) an intent to deceive; (3) reasonable reliance on the misrepresentation by the plaintiff; and (4) resulting damages." Rockaway Beverage, Inc. v. Wells Fargo & Co., 378 F. Supp. 3d 150, 166 (E.D.N.Y. 2019) (citing Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58, 62 (2d Cir. 2012)). In addition, pursuant to Federal Rule of Civil Procedure 9(b), fraud claims must be pled with particularity. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). As the Second Circuit has repeatedly held, Rule 9(b) "requires the plaintiff '(1) to specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " Nakahata v. New York-Presbyterian Healthcare Sys., 723 F.3d 192, 197 (2d Cir. 2013) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)) (additional citations omitted). "Conclusory statements and allegations are not enough to meet the Rule 9(b) pleading requirements." Beth Israel Med. Ctr. v. Verizon Bus. Network Servs., No. 11 Civ. 4509, 2013 WL 1385210, at *4 (S.D.N.Y. Mar. 18, 2013) (quoting Musalli Factory for Gold & Jewelry Co. v. JPMorgan Chase Bank, N.A., 382 Fed. Appx. 107, 108 (2d Cir. 2010)).

**\*6** The plaintiff must also "allege facts that give rise to a strong inference of fraudulent intent." Nakahata, 723 F.3d at 198 (quoting First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 175 (2d Cir. 2004)). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity

to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (citing cases). "To show motive and opportunity, a plaintiff must allege that the defendant 'benefitted in some concrete and personal way from the purported fraud.' " Goonewardena v. Forster & Garbus LLP, No. 18-CV-00029, 2019 WL 121677, at *7 (E.D.N.Y. Jan. 7, 2019) (quoting ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 198 (2d Cir. 2019)) (additional citation omitted).

Here, the Amended Complaint alleges that Unison's Website states that it will "share in a portion of your home's change in value when you decide to sell." (Am. Compl. ¶ 16.) According to Plaintiffs, the Agreements they signed contradict the statement on the Website because they state that Unison's share is actually calculated based upon the entire value of the home upon its sale and not just the change in value. (Id. ¶ 44.) Plaintiffs allege that, as a result of this contradiction, the statement on the Website is fraudulent.

The Amended Complaint further alleges that Unison's representative, Reou, spoke with Plaintiffs on or about October 31, 2017 and reiterated the same statement – that Unison would share in a portion of their home's change in value upon its sale. (Id. ¶¶ 37-38.) Finally, the Amended Complaint alleges that, in reliance on Unison's statements – both on their Website and by their representative – Plaintiffs entered into the Agreements with Unison, resulting in the transfer of a substantial ownership interest in the Property to Unison. (Id. ¶¶ 67, 69, 83.)

The Court notes Defendants' argument that while Plaintiffs have brought this action against three separate entities, the Amended Complaint only contains allegations of direct interaction with Unison. As Defendants point out, where the complaint indicates multiple defendants in an alleged fraud, it "should inform each defendant of the nature of his alleged participation in the fraud." Arroyo v. PHH Mortgage Corp., No., 2014 WL 2048384, at *9 (E.D.N.Y. May 19, 2014) (quoting DiVittorio v. Equidyne Extractive Indus., 822 F.2d 1242, 1247 (2d Cir. 1987)). The Amended Complaint fails to satisfy this standard.

Based on the foregoing, this Court finds that Plaintiffs have adequately pled their fraud claims in accordance with both New York State law and Rule 9(b), solely with respect to Defendant Unison. Accordingly, this Court respectfully

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 183 of 189

Weingot v. Unison Agreement Corp., Not Reported in Fed. Supp. (2023)

recommends that Defendants' motion to dismiss the fraud claims be denied with respect to Unison and granted with respect to all other Defendants.

## VI. The Title Claims

The Amended Complaint asserts two claims to quiet title (the Fourth and Thirteenth Causes of Action) and one claim for slander of title (the Twelfth Cause of Action). This Court recommends that only the slander of title claim be dismissed.

### A. Quiet Title

Although originally a common law cause of action, the New York Real Property Actions and Proceedings Law ("RPAPL") codified the claim to quiet title into a statutory one under Article 15 and exists "to compel the determination of any claim adverse to that of the plaintiff which the defendant makes." Knox, 4 F. Supp. 3d at 513 (quoting N.Y. R.P.A.P.L. § 1501(1)). Under Article 15, "the plaintiff need only plead its claim to an estate or interest in land and defendant's adverse claim; plaintiff need not plead the 'invalidity' of defendant's claim as required under common law." Knox, 4 F. Supp. 3d at 513 (quoting W. 14th St. Comm. Corp. v. 5 W. 14th Owners Corp., 815 F.2d 188, 196 (2d Cir. 1987)). Specifically, an Article 15 claim to quiet title must include allegations concerning: "(1) the plaintiff's interest in the real property, and the particular nature of the interest; (2) that the defendant claims an interest in the property adverse to that of the plaintiff, and the particular nature of that interest; (3) whether any defendant is known or unknown, or incompetent; and (4) whether all interested parties are named." Knox, 4 F. Supp. 3d at 514 (citing N.Y. R.P.A.P.L. § 1515) (additional citation omitted).

**\*7** The Amended Complaint in the within action sufficiently alleges all four of the foregoing elements. While Defendants argue that Plaintiffs cannot maintain an action to quiet title where they voluntarily entered into an agreement to place secured obligations on the Property, "[t]he fact that plaintiff executed the mortgage which he now seeks to remove as a cloud on title does not deprive him of the right to maintain the action." Knox, 4 F. Supp. 3d at 514 (citation omitted); see also Barberan v. Nationpoint, 706 F. Supp. 2d 408, 420 (S.D.N.Y. 2010) ("However weak Defendants believe Plaintiffs' factual claims regarding the enforceability of the mortgage, the note and the assignment to be, the Court will not decide which Party's claims are stronger on a motion to dismiss.").

In making their argument, Defendants rely on a decision from the New York Appellate Division, Second Department, in which the court dismissed plaintiff's quiet title claim because the "documentary evidence conclusively established the existence of the subject mortgage" and the allegations in the complaint failed to set forth a "controversy as to whether the subject property [was] wrongfully encumbered." Zuniga v. BAC Home Loans Servicing, L.P., 47 N.Y.S.3d 374, 376 (2d Dep't 2017). However, the court in Zuniga appears to have applied either the wrong standard or the earlier one – the common law standard in which a plaintiff needed to plead the "invalidity" of defendant's claim. W. 14th St. Comm. Corp., 815 F.2d at 196. Under Article 15 of the RPAPL, no such requirement exists any longer. Even where a complaint fails to sufficiently allege that a defendant's interest "was invalidated by fraud or ... other alleged wrongdoing, the statutory quiet-title claim does not require that plaintiffs plead anything other than that defendants have an interest." Knox, 4 F. Supp. 3d at 513. The Amended Complaint meets this standard.

Accordingly, this Court respectfully recommends that Defendants' motion to dismiss Plaintiffs' quiet title claims be denied.

### B. Slander of Title

To state a claim for slander of title under New York law, a plaintiff must demonstrate "(1) a communication falsely casting doubt on the validity of [the] complainant's title, (2) reasonably calculated to cause harm, and (3) resulting in special damages." Rutty v. Krimko, No. 17-cv-6090, 2018 WL 1582290, at \*3 (E.D.N.Y. Mar. 30, 2018) (quoting 39 Coll. Point Corp. v. Transpac Capital Corp., 810 N.Y.S.2d 520, 521 (2d Dep't 2006)) (alteration in original). "New York law also requires that [p]laintiff demonstrate that the statements are made with 'malice' or 'at least a reckless disregard for their truth or falsity.' " Rutty, 2018 WL 1582290, at \*3 (quoting Gonzalez v. J.P. Morgan Chase Bank, N.A., 228 F. Supp. 3d 277, 290 (S.D.N.Y. 2017)) (additional citations omitted) (alteration in original).

Here, the Amended Complaint is wholly devoid of any allegations that Defendants acted with the requisite malicious intent or reckless disregard for the truth necessary to state a claim for slander of title. In fact, Plaintiffs fail to even address Defendants' arguments on this point in their opposition to the within motion. As such, the Amended Complaint fails to state a claim for slander of title and Defendants' motion to dismiss the claim should be granted.

Case: 24-1399, 11/08/2024, DktEntry: 49.1, Page 184 of 189

Weingot v. Unison Agreement Corp., Not Reported in Fed. Supp. (2023)

## VII. Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must show: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006) (citation omitted). A claim for unjust enrichment may not be used as "a catchall cause of action to be used when others fail ... [It] is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Patellos v. Hello Prods., LLC, 523 F. Supp. 3d 523, 536-37 (S.D.N.Y. 2021) (quoting Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012)). "Rather, it 'is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.' " Patellos, 523 F. Supp. 3d at 537 (quoting Corsello, 18 N.Y.3d at 790) (emphasis in original).

**\*8** Where unjust enrichment claims rely on a similar set of facts as the plaintiff's other claims, courts routinely dismiss the unjust enrichment claims as duplicative. See Bermudez v. Colgate-Palmolive Co., No. 1:21-cv-10988, 2023 WL 2751044, at \*14 (S.D.N.Y. Mar. 31, 2023) (discussing cases). While, as Plaintiffs point out, "a plaintiff may plead unjust enrichment in the alternative, ... where [it] is duplicative of other causes of action, it should be dismissed." Bermudez, 2023 WL 2751044, at \*14 (quoting Bourbia v. S.C. Johnson & Son, Inc., 375 F. Supp. 3d 454, 467 (S.D.N.Y. 2019)). "An unjust enrichment claim is duplicative if it 'relies on the same conduct that forms the basis of [the plaintiff's] other claims.' " Bermudez, 2023 WL 2751044, at \*14 (quoting Bourbia, 374 F. Supp. 3d at 467). Here, Plaintiffs' unjust enrichment claim is premised on similar allegations as their other claims and is, therefore, duplicative. Accordingly, this Court respectfully recommends that Defendants' motion to dismiss Plaintiffs' unjust enrichment claim be granted.

## VIII. Rescission

Plaintiffs' Eleventh Cause of Action seeks an order rescinding the Agreements signed in January 2018 on the grounds that money damages will not sufficiently "cure the stain on Plaintiffs' title to the Property and make Plaintiffs whole." (Am. Compl. ¶ 138.) Defendants seek dismissal of this claim, asserting that the claim fails as a matter of law.

"[R]escission of [a] contract [is] an 'extraordinary remedy' that is generally unavailable under New York law." St. Francis Holdings, LLP v. MMP Capital, Inc., No. 20-CV-4636, 2022 WL 991980, at \*15 (E.D.N.Y. Mar. 31, 2022) (quoting Shane Campbell Gallery, Inc. v. Frieze Events, Inc., 441 F. Supp. 3d 1, 5 (S.D.N.Y. 2020)) (additional citation omitted) (alteration in original). "In order to obtain rescission ... the party seeking it must show that it has no adequate remedy at law." Asset Mgmt. Assoc. of N.Y., Inc. v. Emerson Telecommunication Prods. LLC, No. 08-CV-2506, 2011 WL 318100, at \*4 (E.D.N.Y. Jan. 25, 2011) (quoting Rosewood Apartments Corp. v. Perpignano, 200 F. Supp. 3d 269, 272 (S.D.N.Y. 2002)) (additional citation omitted). "Where an adequate remedy at law is provided, the reason for granting equitable relief disappears." Asst Mgmt. Assoc., 2011 WL 318100, at \*4 (quoting Lewis v. City of Lockport, 276 N.Y. 336 (1937)).

To state a claim for rescission based on fraud, Plaintiffs must demonstrate "misrepresentation, concealment or nondisclosure of a material fact; an intent to deceive; and an injury resulting from justifiable reliance by the aggrieved party." St. Francis Holdings, 2022 WL 991980, at \*15 (quoting Allen v. WestPoint-Pepperell, Inc., 945 F. 2d 40, 44 (2d Cir. 1991)) (additional citations omitted). Since Plaintiffs have adequately pled claims sounding in fraud, as set forth above, they have also adequately pled a claim for rescission based on their claim of fraud. See Robinson v. Sanctuary Rec. Grps., Ltd., 826 F. Supp. 3d 570, 575 (S.D.N.Y. 2011) ("Rescission is used as a remedy in limited circumstances [including] fraud in the inducement of the contract ...."). Accordingly, this Court respectfully recommends that Defendants' motion to dismiss Plaintiffs' rescission claim be denied.

## IX. Leave to Replead

While Plaintiffs have not sought leave to replead their claims, the Court finds that, in any event, the right to replead should be denied. Although "it is the usual practice upon granting a motion to dismiss to allow leave to replead," Cruz v. TD Bank, N.A., 742 F.3d 520, 523 (2d Cir. 2013), doing so here would be futile as the claims recommended for dismissal herein are time-barred, procedurally deficient, or fail as a matter of law. No amount of repleading will alter that outcome. Moreover, Plaintiffs have amended their complaint once already. Permitting them to amend again would unreasonably delay this action that has already been pending for two years and is still only at the motion to dismiss stage. Accordingly, this Court respectfully recommends that

the claims recommended for dismissal herein be dismissed with prejudice.

## RECOMMENDATION

**\*9** For the foregoing reasons, this Court respectfully recommends that Defendants' motion to dismiss be granted in part and denied in part. Specifically, the Court recommends that Defendants' motion be granted as to the following claims and that such claims be dismissed, with prejudice: (1) the TILA, New York Banking Law and New York General Business Law claims (the Sixth, Seventh, Eighth and Ninth Causes of Action); (2) the claims for declaratory and injunctive relief (the Fourteenth and Fifteenth Causes of Action); (3) the claim for unconscionable contract (the Tenth Cause of Action); (4) the slander of title claim (the Twelfth Cause of Action); and, (5) the claim for unjust enrichment (the Fifth Cause of Action). The Court further recommends that the fraud claims set forth at the First, Second and Third Causes of Action be dismissed as pleaded against Defendants Real Estate Equity Exchange Inc. and Odin New Horizon Real Estate Fund LP. In all other respects, the Court respectfully recommends that Defendants' motion to dismiss be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 5152478

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

758 Fed.Appx. 59
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE 32.1
AND THIS COURT'S LOCAL RULE 32.1.1. WHEN
CITING A SUMMARY ORDER IN A DOCUMENT
FILED WITH THIS COURT, A PARTY MUST
CITE EITHER THE FEDERAL APPENDIX OR AN
ELECTRONIC DATABASE (WITH THE NOTATION
"SUMMARY ORDER"). A PARTY CITING A
SUMMARY ORDER MUST SERVE A COPY OF IT ON
ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals, Second Circuit.

Yamilette WILLIAMS, Ed.D., Plaintiff-Appellant,

v.

BUFFALO PUBLIC SCHOOLS, Board of Education
for the City School District of the City of Buffalo,
City School District of the City of Buffalo, Pamela
Brown, Ed.D. in her official and individual capacity,
Darren Brown, in his official and individual capacity,
Sharon Belton-Cottman, in her official and individual
capacity, Mary Guinn, Ed.D. in her official and individual
capacity, Florence Johnson, in her official and individual
capacity, Mary Ruth Kapsiak, Ed.M., S.D.A. in her
official and individual capacity, John Licata, Esq. in his
official and individual capacity, Jason M. McCarthy,
in his official and individual capacity, Barbara Seals
Nevergold, Ph.D., in her official and individual capacity,
Carl Paladino, Esq., in his official and individual
capacity, James M. Sampson, in his official and
individual capacity, Theresa Harris-Tigg, Ph.D., in her
official and individual capacity, Defendants-Appellees.

17-3483-cv
|
December 12, 2018

**Synopsis**
**Background:** Former school administrator brought action
against school district, board of education, and several
individual administrators and board members, alleging breach
of contract, negligent termination, and defamation. The

United States District Court for the Western District of New
York, Geraci, J., 2017 WL 4310698, granted defendants'
motion to dismiss. Administrator appealed.

**Holdings:** The Court of Appeals held that:

administrator's allegation that her alternative certifications
satisfied the contractual requirement that she satisfy the
certification requirements of the New York Department of
Civil Service or the New York State Education Department,
supported a plausible breach of contract claim;

administrator plausibly alleged that school district and related
parties waived contractual requirement that she satisfy the
certification requirements of the New York Department of
Civil Service or the New York State Education Department;

administrator failed to allege that school district and related
parties owed her a duty beyond the terms of her employment
contract, as required to state a claim for negligent termination,
if such a cause of action existed under New York law; and

administrator failed to plausibly allege defamation claim
against board of education member.

Affirmed in part, vacated in part, and remanded.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for
Failure to State a Claim.

 **\*61** Appeal from an order of dismissal of the United States
District Court for the Western District of New York (Geraci,
*J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court entered on September 28, 2017,
is **AFFIRMED** in part and **VACATED** in part and the case
is **REMANDED**.

**Attorneys and Law Firms**

For Appellant: Yamilette Williams, pro se, Deltona, Florida.

For Appellees: Joel C. Moore, Buffalo Public Schools Legal
Department, Buffalo, New York.

PRESENT: PETER W. HALL, GERARD E. LYNCH,
SUSAN L. CARNEY, Circuit Judges.

**SUMMARY ORDER**

Plaintiff-Appellant Yamilette Williams, a school administrator proceeding *pro se*, appeals from the judgment of the district court dismissing for failure to state a claim her breach of contract and negligent termination claims against Defendants-Appellees Buffalo Public Schools, the Board of Education for the City School District of the City of Buffalo ("the Board"), the City School District of the City of Buffalo ("the District"), and several individual administrators **\*62** and board members, and her defamation claim against individual board member Carl Paladino. This is not the Court's first encounter with several of the issues presented here, and our disposition of this appeal, it should come as no surprise, tracks substantially our disposition in the remarkably similar case of *Morrison v. Buffalo Bd. of Educ.*, 741 F. App'x 827 (2d Cir. 2018) (summary order). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues.

We review *de novo* the dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6). *Forest Park Pictures v. Universal Television Network*, 683 F.3d 424, 429 (2d Cir. 2012). The complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Although all allegations are assumed true, this tenet does not apply to legal conclusions. *Id.*

**I. Breach of Contract**
To plead a breach of contract claim under New York law, the plaintiff must allege (1) the existence of a contract; (2) her performance under the contract; (3) the defendants' breach of the contract; and (4) damages. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). "Under New York law, '[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent.' " *Id.* (quoting *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 780 N.E.2d 166 (2002) ). A contract is the best source of the parties' intent and "if an agreement is 'complete, clear and unambiguous on its face[, it] must be enforced according to the plain meaning of its terms.' " *Id.* (quoting *Greenfield*, 98 N.Y.2d at 569, 750 N.Y.S.2d 565,

780 N.E.2d 166). A district court may dismiss a breach of contract claim at the pleadings stage "only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016). "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." *Id.* (internal quotation marks omitted).

The dispute here focuses on whether Williams's pleadings, taken as true, plausibly alleged that the Defendants breached the contract. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. In dismissing the breach of contract claim, the district court determined that Williams failed to satisfy a contractual provision obligating her to maintain professional certifications required by the Department of Civil Service or Department of Education and, therefore, that the Defendants did not violate the contract by firing her. Given the present record, it was error to reach that conclusion as a matter of law. The motion to dismiss should have been denied.

The contract states under Section 13 ("Termination of Agreement by Operation of Law") that, among other things, if Williams "fails to maintain any certifications or qualifications required of h[er] position (*i.e.*, qualifications required by the [New York] Department of Civil Service or State Education Department), then this agreement shall immediately become null and void." J. App. 81. In her pleadings, Williams, who had professional certificates from Oklahoma and Florida, admitted that she lacked the appropriate New York certificate for her position, but she also alleged that "at the time of interview and \*63 hiring she truthfully declared her lack of a valid New York State Education Department Certification[.]" *Id.* at 23, 26. Williams further alleged that during her first week, she was advised to apply for, and did promptly apply for, interstate certification reciprocity, and that she later obtained through reciprocity a "conditional School Building Leader's Certificate" from the State Department of Education on December 7, 2013. *Id.* at 26–27. She also alleged that on March 29, 2014, she obtained a "School District Leader Internship Certificate," which was "suitable for a district wide supervision position." *Id.* at 27–28. As a result, Williams maintained that at the time of her firing on April 2, 2014, she held the proper professional certificates required under the contract.

The Defendants-Appellees contend, and the district court agreed, that Williams's admission that she did not have the requisite professional certificate at the time of her hiring defeats her breach of contract claim and that her after-

acquired certificates did not satisfy the contract's certification requirement. As to the latter point, the Defendants highlight the District's job posting for Williams's position, which provided that candidates must have "a permanent teacher certificate, and a New York State School District Administrator Certificate." Appellees' Br. at 20 (referencing the "Notice of Position," J. App. 85). The contract itself, however, is silent with respect to these certificates. Instead, as noted above, it requires Williams to satisfy the certification requirements of the New York Department of Civil Service or the New York State Education Department. *See Total Telcom Grp. Corp. v. Kendal on Hudson*, 157 A.D.3d 746, 747, 68 N.Y.S.3d 491, 492 (2d Dep't 2018) (explaining courts may determine material contract term using "objective extrinsic event, condition, or standard" referenced within contract itself) (internal quotation marks omitted). Nowhere in the record, however, are there identified the specific state-agency certification requirements referenced in the contract. Nor do the Defendants point to a statute, rule, or regulation from which the requirements may be judicially noticed. As a result, Williams's allegation that her alternative certifications satisfied those requirements, taken as true, supports a plausible breach of contract claim.

Contrary to the Defendants' argument, Williams's admission that she did not have the proper certification at the time of her hiring does not negate her breach of contract claim. New York law provides that a party may waive its contractual rights if they "are knowingly, voluntarily and intentionally abandoned." *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., LP*, 7 N.Y.3d 96, 104, 817 N.Y.S.2d 606, 611, 850 N.E.2d 653 (2006). "Such abandonment may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage." *Id.* (internal quotation marks omitted). Although waivers are "not ... lightly presumed," whether a party intends to waive a contractual right is generally a question of fact. *Id.* (internal quotation marks omitted). And even though the contract at issue here contains a non-waiver clause, the existence of such a clause does not preclude a waiver of contractual rights. *See TSS-Seedman's, Inc. v. Elota Realty Co.*, 72 N.Y.2d 1024, 1027, 534 N.Y.S.2d 925, 927, 531 N.E.2d 646 (1988); *Stassa v. Stassa*, 123 A.D.3d 804, 806, 999 N.Y.S.2d 116, 119 (2nd Dep't 2014).

Given Williams's allegations that the Defendants knew she did not have a New York certification but hired her anyway, that the Defendants advised her to apply for alternative certifications, which she obtained, **\*64** and that

her Internship Certificate complied with the requirement in the contract, it may be plausibly inferred that the Defendants waived their right to enforce the contract's New York certification requirement—at least as concerns Williams's initial period of non-compliance. *See Awards.com, LLC v. Kinko's, Inc.*, 42 A.D.3d 178, 188–89, 834 N.Y.S.2d 147, 156 (1st Dep't 2007) (explaining that, regardless of non-waiver provision, if nonbreaching party continues the contract after a breach, it loses its right to enforce the initial breach, but retains the right to terminate the contract for subsequent breaches). Accordingly, we vacate the district court's dismissal of Williams's breach of contract claim and remand for further proceedings.

## II. Negligent Termination

The district court dismissed Williams's claim for negligent termination, reasoning that her termination was appropriate under the contract. It did not, therefore, reach the question of whether this cause of action exists under New York law. It appears that New York courts do not recognize such a claim. *See Lobosco v. N.Y. Tel. Company N.Y. Tel. Company/ NYNEX*, 96 N.Y.2d 312, 316, 727 N.Y.S.2d 383, 385, 751 N.E.2d 462 (2001) ("New York does not recognize the tort of wrongful discharge."). In any event, even if such a claim exists, Williams's relationship with the District was governed by contract, and the well-established rule is that "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 656, 516 N.E.2d 190 (1987). Because this claim is governed by contract, and Williams does not plausibly allege that the District owed her a duty beyond the contract's terms, the claim fails. *See Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012) (Under New York law, if "the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative").

The district court did not specifically dismiss Williams's claim for negligent termination against the individual Defendants. By dismissing her complaint, however, the district court implicitly dismissed that claim as well. Although Williams argues in support of that claim in her reply brief, she failed to raise this argument in her opening brief. It is therefore waived. *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an appellant's opening brief are waived even if

the appellant pursued those arguments in the district court or raised them in a reply brief.").

## III. Defamation

Finally, the district court did not err in dismissing Williams's defamation claim against Defendant school board member Paladino, although we affirm for slightly different reasons. *See Algarin v. Town of Wallkill*, 421 F.3d 137, 139 (2d Cir. 2005) ("We may affirm on any ground supported by the record"). Defamation is "the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Foster v. Churchill*, 87 N.Y.2d 744, 751, 642 N.Y.S.2d 583, 587, 665 N.E.2d 153 (1996) (internal quotation marks omitted). The elements of a defamation claim are (1) a **\*65** false statement that is (2) negligently, at minimum, (3) published to a third party (4) without privilege or authorization, and that (5) causes harm, unless the statement is per se defamatory. *Dillon v. City of New York*, 261 A.D. 2d 34, 38, 704 N.Y.S.2d 1 (1st Dep't 1999). Only false statements of fact are subject to a defamation action; expressions of opinion are deemed privileged. *Kamchi v. Weissman*, 125 A.D.3d 142, 157, 1 N.Y.S.3d 169, 180 (2nd Dep't 2014). Determining whether a statement is one of fact or opinion requires consideration of several factors, including "the full context of the communication in which the statement appears," "whether the specific language in issue has a precise meaning which is readily understood," and "whether the statements are capable of being proven true or false." *Id.* at 157 (quoting *Mann v. Abel*, 10 N.Y.3d 271, 276, 856 N.Y.S.2d 31, 885 N.E.2d 884 (2008) ). "In an action for libel or slander, the particular words complained of shall be set forth in the complaint[.]" N.Y. C.P.L.R. 3016(a). The

complaint also must specify "the time, manner and persons to whom the publications were made." *Vardi v. Mut. Life Ins. Co. of N.Y.*, 136 A.D.2d 453, 455, 523 N.Y.S.2d 95, 98 (1st Dep't 1988).

Williams's contention that Paladino called her a "hanger[ ] on," and said that the Board was "dizzy" for retaining her and should never have given her an interview, *see* J. App. 54–56, does not sufficiently allege false statements of fact. Rather, the statements, which lack "precise meaning" and are not "capable of being proven true or false," constitute privileged opinions. *Kamchi*, 125 A.D.3d at 157. Williams's allegation that Paladino's comments on his website blog indicating that she was illegally hired were "only half true" undercuts the purported falsity of his statements regarding her qualifications and lack of proper licensure as does her acknowledgment that she lacked the appropriate certifications at the time that she was hired. J. App. 23, 57. Finally, Williams's allegation that Paladino disseminated "lies and falsehoods" about her professionalism and qualifications, *id.* at 55, fails to identify the "particular words" underlying that contention. Her claim, therefore, does not allege defamation with the specificity required under New York law. *See* N.Y. C.P.L.R. 3016(a).

We have considered all of Williams's remaining arguments and find them to be without merit. For the reasons stated, the judgment of the district court is **AFFIRMED** as to William's negligent termination and defamation claims, **VACATED** as to Williams's breach of contact claim, and the case is **REMANDED**.

## All Citations

758 Fed.Appx. 59, 364 Ed. Law Rep. 77

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.