**Appeal No.: 0:2024cv01399 (24-1399)**

**In The United States Court of Appeals**

**for the Second Circuit**

Onwy Uzoigwe

*Plaintiff-Appellant*

v.

Charter Communications LLC.

*Defendant-Appellee*

Appeal from Case:

1:23-cv-07383-HG-LB

In The United States District Court for the Eastern District of New York

# APPELLANT'S REPLY BRIEF

Onwy Uzoigwe

4212 Flowerton Rd.

Baltimore, MD 21229

Phone: (347) 572-8280

Email: o.uzoigwe@gmail.com

*Pro se Plaintiff-Appellant*

**INTRODUCTION**

*Pro se* Appellant-Plaintiff, Onwy Uzoigwe, submits this Reply Brief to support his appeal. Defendant Charter Communications LLC's response is a vexatious attempt to exploit alleged technicalities to uphold the District Court's decision. Their frivolous arguments seek to create an unfair precedent by extending, modifying, or reversing existing law. This Reply demonstrates that their claims lack merit and are unsupported by established legal standards. Plaintiff will incorporate documents and evidence from *Uzoigwe v. Charter Communications LLC.* 1:23-cv-07383 ("Trial Court") by reference.

**ARGUMENT**

**I.   The Defendants' assertions of Plaintiff's alleged technical deficiencies.[1]**

The Defendant asserts that "[a]s a threshold matter, the Court should disregard Uzoigwe's Brief and dismiss his appeal given his non-compliance with numerous procedural requirements." D.E. 49.1 p. 35. This is Plaintiff's first appearance in a Federal Appeals Court. Any omissions in Plaintiff's Brief were unintentional, and no jurisdictional defect exists. Thus, the appeal should not be dismissed. "Appeal would not be dismissed on basis of plaintiff's failure to comply with requirements

---

[1] Plaintiff is a *pro se* litigant and has never had a case in a Federal Circuit Court.  If the Court wishes for Plaintiff to refile his Brief and if the Court allows it, Plaintiff will refile.

for filing an appellate brief where plaintiff was pro se and brief, liberally construed, contained an assertion of trial court error." *Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*, 706 F.2d 638 (5th Cir. 1983). *See also Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)("The Fifth Circuit has squarely addressed and rejected the argument raised by defendants, that a pro se appeal should be dismissed for failure to comply with the formal requirements of appellate briefs under Fed.R.App.P. 28."). The Defendant's cited cases don't make them seem any less vexatious. In *Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 48 (2d Cir. 2012) and *Sioson v. Knights of Columbus*, 303 F.3d 458 (2d Cir. 2002), both Plaintiff's were counseled. The Court holds lawyers to a higher standard the *pro se* litigants.

Additionally, even if Plaintiff did "not consistently cite to the original record in his Brief", Plaintiff used dates to correlate to specific filings. These arguments in II.A.B. are nothing more that vexatious attempts to have Plaintiff's appeal denied.

### A. <u>Plaintiff included the Jurisdictional Statement</u>

The Defendant's Response Brief ("<u>Resp.</u>") states that "Uzoigwe did not include a jurisdictional statement as required by <u>Federal Rule of Appellate Procedure 28</u>." (<u>Resp. p. 15n. 1</u>). Plaintiff included his Jurisdictional Statement at <u>D.E. 31.1</u> pp. 17-18. Plaintiff made clear that there is a challenge to jurisdiction which extended to <u>D.E. 31.1 p. 41</u>. The Defendant is incorrect.

**B. This Court has jurisdiction to review the *entire* District Court case**

The Defendant states that:

> [T]his Court lacks jurisdiction to review any arguments that fall outside the scope of the Dismissal Order, including those related to remand… Because the Notice of Appeal does not identify any district court order related to remand (including those orders denying Uzoigwe's Motion to Remand, First Motion for Reconsideration, Second Motion for Reconsideration, Motion to Recuse Judge Gonzalez, or Request for Evidentiary Hearing) this Court does not have jurisdiction to review them.

> D.E. 49.1 pp. 16-17.

This contradicts applicable law. Under FRAP Rule 4, an Interlocutory Appeal ripens upon entry of the District Court judgment: "A notice of appeal filed before the entry of judgment is treated as filed on the date of and after the entry." FRAP Rule 4.  This principle is well established in this jurisdiction. Defendant's claim that the Court's review must exclude remand and focus solely on the Dismissal Order further demonstrates their ongoing unfairness toward Plaintiff.

**C. Failing to file a complete Appendix is not a reason to dismiss Plaintiff's Appeal.**

Although Plaintiff did not file a Complete Complaint Appendix, "[p]arts of the record may be relied on by the court or the parties even though not included in the appendix." FRAP Rule 30.

**II. The Defendant's Arguments are vexatious and wholly frivolous.**

**A. The Defendant's "Summary of the Argument" is incorrect**

The Defendants' statements in various parts of their Summary of the Argument, D.E. 49.1 p. 28, are incorrect.  The Defendant should have done more

research before deciding to offer these ridiculous arguments. They assert that "[n]otably, Uzoigwe cannot maintain his appeal of the district court's remand decision because he did not identify any remand-related orders in his Notice of Appeal." (*Id*.). This is incorrect. As previously explained, this was an Interlocutory Appeal which has ripened into an appealable case. Therefore, this Court has the jurisdiction to review the entire record.

**B. The Defendants' request for Summary Dismissal due to Procedural Requirements is not warranted by law.**

The Defendant stated:

> [T]he Court should disregard Uzoigwe's Brief and dismiss his appeal given his non-compliance with numerous procedural requirements. Specifically, the Court supplied Uzoigwe with instructions as to what his Brief must include….Uzoigwe ignored these instructions, as he not only failed to file a proper appendix pursuant to Rule 30 and Local Rule 30.1, he also flouted the requirements of Rule 28 and Local Rule 28.1.

> D.E. 49.1 p. 35.

The Defendant's request is not in accordance with established law. They allege that Plaintiff violated rule FRAP Rule 30(a)(1), however, this is not a counseled case. See Local Rule 11.1(a)("In all *counseled* appeals other than those described in (b), the district clerk retains the record on appeal,"). The Courts are well aware that Plaintiff is a *pro se* litigant, therefore, nullifying the Defendant's argument. Furthermore, "[p]arts of the record may be relied on by the court or the parties even though not included in the appendix." <u>FRAP Rule 30</u>. All of the

evidence and documents relied on are on the District Court record. Therefore Plaintiff had a good faith belief that he only needed to refer to those parts of the District Court record. With respect, even if Plaintiff made a mistake, violating a local rule "[a] local rule imposing a requirement of form must not be enforced in a manner that causes a party to lose rights because of a nonwillful failure to comply with the requirement." FRAP Rule 47. Additionally, "*[t]he court may*, either by rule for all cases or classes of cases or *by order in a particular case*, dispense with the appendix and *permit an appeal to proceed on the original record* with any copies of the record, or relevant parts, that the court may order the parties to file." FRAP Rule 30. If the Court required Plaintiff to file any relied on documents, he would do so. The Defendant's argument fails.

## C. The Court should Reverse the District Court's Dismissal of Plaintiff's Breach of Contract Claim as there are genuine issues of the material facts.

The District Court improperly dismissed Plaintiff's Breach of Contract Claim where Plaintiff has proven the elements to allege a breach of contract.

### 1. The Existence of an Agreement.

The Defendant's argument at Section III.A is incorrect. Plaintiff's contract with the Defendant was, again, Trial Court: ECF 1-1 p. 16, which was on a Charter letterhead, included a start date (November 17th, 2019), a signature from the company, Plaintiff's signature, and a duration from which an end date is cognizable.

Plaintiff has pointed to all other consideration and terms in the District Court. *See* Trial Court: ECF 39-3. The only element that was in dispute was a duration in the contract.[2] Plaintiff pointed to that durational language that the Defendant recognized in their Brief, which states, "[y]our assignment is ***permanent so that you will continue in that assignment through and after the end of the strike*** by [the Union]." D.E. 49.1 p. 19. Judge Gonzalez stated that "The Court disagrees that this wording explicitly limited Defendant's ability to terminate Plaintiff after the strike ended." Trial Court: ECF 53 p. 9. The language implies that Plaintiff's position in the "Field Operations department" remains in effect for a lifetime, but has a cognizable end date. The Defendants do not deny the existence of a duration in the contract. Even if they attempt to construe the interpretation of the contract differently, it should be construed in light more favorable to Plaintiff against their Motion to Dismiss. Additionally, although the Court might have disagreed with Plaintiff, a jury may have found a different outcome—that a reasonable person would believe that Trial Court: ECF 1-1 p. 16 was a contract.

a. **The Appellee's Brief agrees that Plaintiff's Contract included a duration.**

---

[2] Plaintiff's return to work should be proof enough that there were terms and consideration which was agreed to. This fact should be judicially noticed as the Defendant is litigating issues that did not come up in the District Court.

The Defendant continues to focus only the word "permanent" in the contract. It is clear and agreed that "permanent", alone, does not create a duration. If the word permanent were removed from the contract and it instead stated "[y]our assignment…***will continue…through and after the end of the strike*** by [the Union]", there would still be a duration that existed. However, *their* explanation confirms that they do, in fact, agree that there was a duration in the contract. They assert that, "***permanent so that you will continue in that assignment through and after the end of the strike***", expresses that "Uzoigwe's employment would be 'permanent' in the sense of ***continuing*** *after the Union strike*[.]" Their convoluted interpretation acknowledges the contract's duration. The Defendant could have used alternative language to avoid implying a just-cause employment promise, such as: "Your position is permanent" or "your position is permanent and you will not be displaced at the end of the strike." The contract stated "continue…through and after." That is a duration similar to the "*for as long as*" duration that created the fixed duration in *Rooney v. Tyson*, 697 N.E.2d 571 (N.Y. 1998). The definite end date is when the company seizes operations. A reasonable jury would agree with this reasoning. "[I]f the employer made a promise, either express or implied, not only to pay for the service but also that the employment should *continue* for a period of time that is either definite or capable of being determined, that employment is not terminable * * * 'at will' after the employee has begun or rendered some of the

requested service or has given any other consideration." *Rooney v. Tyson*, 697 N.E.2d 571, 575 (N.Y. 1998).

i.  **The Defendant asserts that there is Ambiguity in the Interpretation of the Agreement.**

The Contract stated "*permanent so that you will continue in that assignment through and after the end of the strike[.]*" Plaintiff interprets the line as a promise of lifetime employment unaffected by the strike. Defendant states that they interpret the letter as "Uzoigwe's employment would be 'permanent' in the sense of continuing after the Union strike and does not set forth any ascertainable boundaries dictating when his employment would end after that date." D.E. 49.1 p. 44.  In New York, ambiguity in a contract means the motion to dismiss must be denied.  "In the context of a motion to dismiss, if the contract's language is ambiguous, then the motion must be denied to permit the parties to discover and present extrinsic evidence of the parties' intent." *Vectron Intern., Inc. v. Corning Oak Holding, Inc.*, 964 N.Y.S.2d 724, 726 (N.Y. App. Div. 3d Dept. 2013). The general principle is "that an ambiguous contract term should be construed against the drafter." *Garcia v. Am. Gen. Life Ins. Co. of New York*, 695 N.Y.S.2d 420, 421 (N.Y. App. Div. 2d Dept. 1999).  "The existence of ambiguity is determined by examining the entire contract and considering the relation of the parties and the circumstances under which it was executed." *Geothermal Energy Corp. v. Caithness Corp.*, 825 N.Y.S.2d 485, 489 (N.Y. App. Div. 2d Dept. 2006)(cleaned up).  "Unless for some reason an

ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004). Because the Defendant implies that there is ambiguity, the District Court incorrectly dismissed this claim.

   **b.  <u>The Average Lifespan of companies the size of Charter gives a cognizable end date.</u>**

The Defendants assert that because there is no specific endpoint in the contract a duration doesn't exist.  They stated:

> Although Uzoigwe concocts imaginary hypothetical scenarios to try to manufacture an ascertainable end-point such as the illusory involvement of a new union or the possibility that Charter ceases operations in New York (<u>App. D.E. 31.1 at 50</u>)—those events are not inevitable or even likely to occur, and are nowhere to be found in the Letter.

> D.E. 49.1 p. 44.

One seemingly inevitable end-point is the "death" or the company.  Charter Communications Inc., the Defendants' parent company, is a Fortune 500 company. *See* <u>https://fortune.com/company/charter-communications/</u>.  In 2016, research found that "[b]ig companies used to have a lifespan of 61 years, it's now down to 18." *Imd.org*     (<u>https://www.imd.org/research-knowledge/disruption/articles/why-you-will-probably-live-longer-than-most-big-companies/</u>).   It is believed that the life expectancy of the company is shorter than the expected length of time for the Defendant's boxing career in *Rooney v. Tyson,*  where Tyson's professional boxing

career was from 1985-2005 and he is set to fight professionally again in 2024. *See* espn.com(https://www.espn.com/boxing/story/_/id/39717002/mike-tyson-biography-boxing-record-fights-more)*see also*(https://www.usatoday.com/story/sports/boxing/2024/11/09/mike-tyson-vs-jake-paul-fight-date-time/76111924007/). This infers that the end date does not need to be inevitable—it just needs to be plausible.

Therefore, the District Court's dismissal of Plaintiff's Breach of Contract claim should be Reversed.

## 2. **Plaintiff has alleged an Express Policy Limiting the Defendant's Ability to Terminate Plaintiff at their will, which Plaintiff expressed his reliance on.**

Plaintiff has provided a sworn statement of Charter's Waajeha Aziz's stating that there is a six-step process prior to termination Trial Court: ECF 39-1 ¶ 3, and has also provided proof of Charter's Corrective Action Report ("CAR"). Trial Court: ECF 50-2.

### a. **Plaintiff relied on the six step rule.**

Plaintiff filed an affidavit swearing to asking Ms. Aziz about job security prior him signing Trial Court: ECF 1-1 p. 16, and that it was her answer—that there was a six step process prior to termination—that made Plaintiff comfortable enough to sign the contract, proving his reliance on the six step process. *See* Trial Court: ECF 39-1 ¶ 3. The Defendant did not adequately challenge the authenticity of that sworn

statement. Additionally, the Defendant did not deny the authenticity of Plaintiff's question to his former Manager where he asked, "[s]o then, what happened to the six step rule?" <u>D.E. 31.1 p. 54n. 9</u>; *see also* <u>D.E. 44.1 pp. 17-18</u>. The Defendant recognized these documents.

**b.  <u>The Corrective Action Report (Trial Court: ECF 50-2)</u>**

The CAR's title should be enough to prove that the existence of a six step process was plausible. The title of the document was not "Termination Report", the title says "*Corrective Action"* Report, which sounds in taking progressive disciplinary steps prior to an employee's termination. The proof of this is on the last page of the CAR, under "Employee Acknowledgment", which states:

> I acknowledge that the information described on this Corrective Action Form has been discussed with me and that my signature does not necessarily indicate agreement with the contents. I understand that for all Written and Final Warnings, I may be ineligible to apply for internal positions for a period of six (6) months. I also understand that additional violations of company policy, or not meeting performance expectations may result in increasing levels of corrective action, up to and including termination of employment.

> (Trial Court: ECF 50-2 p. 4).

The Defendant's use of this form supports the requirement for progressive discipline, whether through a six-step process or otherwise, before Plaintiff's termination. This makes Plaintiff's claim of an express policy limiting at-will termination plausible, highlighting the error in dismissing the Breach of Contract claim.

Although there is no clear evidence of a written policy incorporating the actual "six-step process", Plaintiff agreed to updated terms from the Defendant which stated:

> This letter does not constitute a contract of employment and the Company may terminate your employment at any time for any reason not prohibited by law or the collective bargaining agreement between the Company and the union, with or without prior notice…This letter constitutes the full terms and conditions of your employment with the Company; it supersedes any other oral or written promises **(except Employment Agreements)** that may have been made to you.
>
> Trial Court: ECF 39-3 p. 8.

The updated terms did not apply to Plaintiff, as the six-step process constituted a written Employment Agreement with the Defendant, underscoring the District Court's error in dismissing Plaintiff's Breach of Contract claim. Plaintiff only received the update as part of the procedure to relocate his "home" garage from the Defendant's Brooklyn shop to the original Queens location after the strike.

3. **The District Court incorrectly failed to preclude issues from further litigation according to Plaintiff's UIAB Decision.**

Judge Gonzalez clearly gave an unfair decision when he only applied *res judicata* to Plaintiff's Breach of Contract claim where Plaintiff asked for *either* res judicata *or* collateral estoppel to apply to Plaintiff's Unemployment Insurance Appeal Board decision.

First, the Defendant does not deny that they had a full and fair opportunity to litigate. Next, both Judge Gonzalez and the Defendant are conflating the invocation

of *res judicata* and collateral estoppel. *See* <u>Trial Court: ECF 53 p. 8</u>. Judge Gonzalez's reason for res judicata not being applicable was "[b]ecause the previous determination by the ALJ was not a determination on the merits of the instant action and because the ALJ's determination has no preclusive effect on Plaintiff's breach of contract claim in this action[.]" *Id*. This does not follow legal standards. "Dismissal pursuant to an affirmative defense is appropriate when that defense appears on 'the face of the complaint.'" *Sanders v. Sanders*, No. 20-CV-5621 (VEC), 2021 WL 4392053, at *4 (S.D.N.Y. Sept. 24, 2021), *aff'd*, No. 22-99, 2022 WL 16984681 (2d Cir. Nov. 17, 2022). *See also Ricci v. Teamsters Union Loc. 456*, 781 F.3d 25, 28 (2d Cir. 2015)("[A]n affirmative defense…can still support a motion to dismiss if the statute's barrier to suit is evident from the face of the complaint."). Plaintiff expressed his reliance on his Unemployment Appeal Decision in the Complaint (Trial Court: ECF 1-1 pp. 9-11). That make clear that Judge Gonzalez's contentions were incorrect.

Next, the Defendant cites *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986) and points to elements of collateral estoppel. Collateral estoppel in that case applied to a prior *judgments*, not an administrative determination. The application of collateral estoppel from *administrative determinations*, in New York, is different. "In the application of collateral estoppel with respect to administrative determinations, the burden rests upon the proponent of collateral estoppel to

demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in prior action or proceeding." *Ryan v. New York Tel. Co.*, 467 N.E.2d 487, 491 (N.Y. 1984)[3]. That makes clear that N.Y. Lab. Law § 623 does not have <u>*claim* preclusion effect</u>, however it does have <u>*issue* preclusion effect.</u> As previously cited in Appellant's Brief:

> 1. A decision of a referee, if not appealed from, shall be final on all questions of fact and law. A decision of the appeal board shall be final on all questions of fact and, unless appealed from, shall be final on all questions of law.
>
> 2. No finding of fact or law contained in a decision rendered pursuant to this article by a referee, the appeal board or a court shall preclude the litigation of any issue of fact or law in any subsequent action or proceeding
>
> N.Y. Lab. Law § 623 (McKinney).

The Defendant asserts that "Uzoigwe cannot and does not identify any error in the court's reasoning on this point, and his argument is meritless." <u>D.E. 49.1 pp. 50-51</u>. Plaintiff has absolutely identified many errors in the District Court's reasoning. The Defendant furthers another vexatious attempt to have Plaintiff's claim against them dismissed. Their contentions are wholly incorrect. The Supreme

---

[3] The Defendant attempted to discredit *Ryan v. New York Tel. Co.,* however, the *Ryan* court is a case that "shaped" N.Y. Lab. Law § 623. The Defendant implies that *Ryan* was abrogated which is not the case. Their contentions for the remainder of their attempt to discredit are moot arguments. *See* <u>D.E. 49.1 p. 52n. 15</u>.

Court, Appellate Division, Second Dept. in New York stated "[w]e agree with the appellant that the court erred in refusing to give collateral estoppel effect to the ALJ's determination." *Alvarez v. Brown*, 682 N.Y.S.2d 421, 421 (N.Y. App. Div. 2d Dept. 1998). "The appellant demonstrated that the identical issue, namely, the amount of time worked by the plaintiff during the period in question, had been necessarily decided in the unemployment proceeding and was therefore decisive in this action." *Id.* Similarly, in this case, Plaintiff has identified identical issues—going home to use the bathroom constituting misconduct—which the ALJ found not to constitute misconduct. *See* Trial Court: ECF 1-1 p 20. The UIAB decision also makes clear that Plaintiff had "no prior written warnings and had not been advised that his job was in jeopardy." *Id.* The Supreme Court held "that when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *U. of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986) (cleaned up). This Court agrees that "[i]n New York, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Brooks v. Giuliani*, 84 F.3d 1454, 1463 (2d Cir. 1996) (cleaned up). Furthermore, besides the Defendant's citing of *Thomas v. City of New York*, 563 N.Y.S.2d 832 (N.Y. App.

Div. 1st Dept. 1991), they offer no state cases to disprove the validity of Plaintiff's claim or assertions. The Unemployment benefits in *Thomas v. City of New York* were only irrelevant because the "issues and applicable rules are different." *Id*. at 834. There is no reason that collateral estoppel did not apply to this matter and this Court should reverse the District Court's decision.

**D. Plaintiff's Negligence Claim is clearly based on the Defendant's Breach of Contract.**

Plaintiff's Negligence Claim, based on Defendant's Breach of Contract, was timely filed under New York law. The Second Department Appellate Division and all other New York Appellate Courts agree that the COVID-19 Executive Orders tolled filing deadlines.

**III. The Defendant concedes to Plaintiff's Negligence Claim against them.**

The Defendant does not deny that they were negligent in terminating Plaintiff. Instead they litigate an entirely different claim of Negligent Termination/Discharge or Wrongful Discharge which Plaintiff did not assert a claim of. D.E. 49.1 p. 53. While Plaintiff stated that the claim was due to the unjust termination of his employment, the overall reasoning is because the Defendant Breached the Contract by terminating him without just or proper cause. *See* Trial Court: ECF 1-1 p. 13 ("Plaintiff terminated employee while knowing there was a contract signed between them, and breached the contract[.]"). There is no evidence that the Defendant can

point to that specifically states that Plaintiff claimed Negligent Discharge or the like. This argument is moot.

**A. <u>Plaintiff's Negligence Claim was timely.</u>**

In <u>D.E. 49.1 pp. 54-57, Section IV.B</u>, the Defendant advances legal contentions that are not warranted by existing law along with frivolous arguments, requesting this Court to modify existing law or to establish new law in order for them to evade accountability in complete violation of Fed. R. Civ. P. Rule 11, and is sanctionable under FRAP Rule 38.

The Defendant continues to advance the wholly incorrect assertion that the New York "Covid-19 Executive Orders" suspended, instead of tolled, the statute of limitations on the commencement of new actions. They relied on *Loeb v. Cnty. of Suffolk*, No. 22-CV-6410 (HG), 2023 WL 4163117, at *3 (E.D.N.Y. June 23, 2023) and *Weingot v. Unison Agreement Corp.*, No. CV 21-4542 (JS)(AYS), 2023 WL 5152478 (E.D.N.Y. July 20, 2023), *report and recommendation adopted as modified*, No. 21-CV-4542 (JS)(AYS), 2024 WL 1191106 (E.D.N.Y. Mar. 20, 2024). Plaintiff made it unmistakably clear in his Brief that *Loeb* which was held in front of Judge Gonzalez, was an incorrect case to use and lack persuasive authority as Judge Gonzalez's judgment runs contradictory to the cases he cited to support his decision. The cases which Judge Gonzalez relied on, which at first found the Executive Orders to be suspensions, were reversed and those Courts found the

Orders to be tolls. *See Baker v. 40 Wall St. Holdings Corp.*, 161 N.Y.S.3d 723, 725 (N.Y. Sup. Ct. 2022), *rev'd*, 208 N.Y.S.3d 680 (N.Y. App. Div. 2d Dept. 2024)(At first holding that "the Governor imposed a suspension, not a toll." Then reversing, holding "that three-year statute of limitations was tolled for 228-day period that executive orders tolling statutes of limitations due to COVID-19 pandemic were in effect, and thus claim against defendant was timely."); *see also Cruz v. Guaba*, 159 N.Y.S.3d 828 (N.Y. Sup. Ct. 2022), *rev'd*, 210 N.Y.S.3d 425 (N.Y. App. Div. 2d Dept. 2024) (First stating, "[a]s such, the statute of limitations for Plaintiff to commence this action expired on February 4, 2021. Since Plaintiff commenced this action on May 12, 2021, it is barred by the three-year statute of limitations", then reversing, holding "COVID-19 executive orders applied to partially toll three-year limitations period for pedestrian to file action."). Their reliance to *Weingot, supra* also lacks persuasive authority as it was found that "the statute of limitations on Plaintiffs' TILA claim had already expired when Executive Order 202.8 was issued in March 2020." *Id.* at p. 4. The Defendant's argument completely fails.

Defendant seeks a ruling contrary to the Erie Doctrine (D.E. 49.1, p. 57n.17) but cites no state cases, as New York courts uniformly agree the Executive Orders tolled the statute of limitations for 228 days. Tolling was proper due to pandemic restrictions that prevented filing new cases. Defendant's flawed interpretation of the Orders and the District Court's misapplication of state law should not prevail. The

Court should reverse the ruling, find Plaintiff had 228 extra days to file, and conclude Defendant conceded by failing to argue or deny the claim.

**IV.     The Court should Reverse the District Courts Denial or Plaintiff's Request to Remand the Case to the State Court.**

In <u>D.E. 49.1 pp. 57-60, Section V.A.</u>, the Defendant asserts that Several Procedural Deficiencies Bar Uzoigwe's Remand Arguments, stating that (1) this Court lacks jurisdiction to review the Remand Orders, (2) that Plaintiff improperly raises new arguments on appeal which cannot be considered. They advance legal contentions that are not warranted by existing law along with frivolous arguments, requesting this Court to modify existing law or to establish new law in order for them to evade accountability in complete violation of Fed. R. Civ. P. Rule 11, and is sanctionable under FRAP Rule 38.

The first prong of their argument is that: "notice of appeal must "designate the judgment—or appealable order—from which the appeal is taken" and that Uzoigwe's Notice of Appeal identifies only the non-final "order and judgment entered on April 24, 2024" and because there was "no judgment dated April 24, 2024…" where "final judgment in the case was not entered until May 31, 2024", the Denial of Remand Order cannot be reviewed. *See* <u>D.E. 49.1 p. 58</u>. This argument is frivolous and does not align with the current law. Rule 3 of the Federal Rules of Appellate Procedure states that:

An appeal must not be dismissed for informality of form or title of the notice of appeal, for failure to name a party whose intent to appeal is otherwise clear from the notice, or for failure to properly designate the judgment if the notice of appeal was filed after entry of the judgment and designates an order that merged into that judgment.

FRAP Rule 3.

The timely Notice of Appeal filed by Plaintiff stated "*Plaintiff* Onwy C. Uzoigwe, appeals to the United States Court of Appeals for the Second Circuit from the Order and Judgment entered on April 24th, 2024." <u>Trial Court: ECF 55 p. 1</u>. That Order "adjudicate[d] all remaining claims and the rights and liabilities of all remaining parties." FRAP Rule 3. Plaintiff clearly treated that Order as a Judgment and did not move for any further relief. Therefore, Plaintiff "designate[d] an order that merged into that judgment." Furthermore, all of the Defendant's cited cases in support of their argument are before the 2021 Amendment. Defendant's argument fails entirely and reflects a lack of research into current precedent, advancing frivolous claims that warrant sanctions for needless litigation.

The second prong of their argument asserts that Plaintiff's "new arguments" cannot be considered on appeal which "asserts for the first time in his Brief that: (1) Rule 11 of the Federal Rules of Civil Procedure and the Federal E-Sign Act rendered service on Charter complete when Charter filed the Acknowledgement Form with its Notice of Removal", that "(2) the district court should have invoked CPLR § 2001 and cured Uzoigwe's failure to perfect service for many reasons not articulated

at the lower court, as Uzoigwe only mentioned this argument in passing", that "(3) Charter's Opposition to Uzoigwe's Motion to Remand violates Rule 11",  and that "(4) good cause or the interest of justice require remand." *See* <u>D.E. 49.1 pp. 59-60</u>. This is another set of frivolous arguments causing needless litigation as the Defendant is wholly incorrect.

For (1), Rule 11 and the Federal E-Sign act are not "new arguments", they are legislative facts.  Rule 11 requires that every document that is filed be signed.  The Acknowledgment Document was for the *exclusive* use of acknowledging receipt of service pursuant to NY CPLR §312-A, which is determined from the context of the Rule.   The Rule states that "[t]he defendant, an authorized employee of the defendant, defendant's attorney or an employee of the attorney *must* complete the acknowledgement of receipt and mail or deliver one copy of it within thirty (30) days from the date of receipt." NY CPLR 312-a.  Therefore, if the Defendant was in receipt of the Acknowledgment Documents, they were under the *exclusive* duty to return them signed within 30 days. It could not be used for any purpose until it was first signed.  Since it was filed under the Defendant's attorney, it was inherently signed and delivered to the Plaintiff.

The statute further states:

> Where the signed acknowledgement of receipt is not returned within thirty (30) days after receipt of the documents mailed pursuant to subdivision (a) of this section, the reasonable expense of serving process by an alternative method shall be taxed by the court on notice pursuant to section 8402 of this chapter as a

disbursement to the party serving process, and the court shall direct immediate judgment in that amount.

NY CPLR 312-A

Plaintiff completed subsequent service received by Defendant's resident agent, while Defendant's attorneys deny proper service. They filed proof in District Court of retaining the Acknowledgment Documents received on August 28, 2023 [4], proving their intent of causing prejudice to the Plaintiff. Their denial of proper subsequent service, despite evidence in the District Court docket, indicates maliciousness. The Court should reverse the District Court's decision due to the Defendant's retention of served documents. *See Lucenti v. City of Buffalo*, 29 A.D.2d 833, 287 N.Y.S.2d 612 (1968)("The Supreme Court, Appellate Division, held that defendant's retention of complaint served upon it operated as waiver of untimely service.").

The Defendant's statement, "[w]hile Uzoigwe argued this concept at the district court, he never tied it to Rule 11 or the E-Sign Act. Thus, as indicated in Section V.A, he waived these arguments on appeal." D.E. 49.1 p. 65n. 23, is an incorrect and frivolous argument. Pursuant to The Federal Rules of Evidence Rule 103(a)(1)(B)—and as the Defendant's statement makes clear that they realize—it

---

[4] The Defendant also implicitly agreed to this date in their Notice of Removal.

was apparent from the context that Plaintiff was referring to <u>Fed. R. Civ. P Rule 11</u>.

Plaintiff, preserving his arguments and the District Court's error previously stated:

> Defendant later filed most of the remainder of the Documents (sent in ECF 14-1 filing and considered a "curable defect") but still omitted the postage prepaid and self-addressed return envelope. Although the defects were "cured", they were still omitted. These omissions prejudiced the Plaintiff, preventing him from trying his case to obtain the relief sought. The defective service caused by the Acknowledgment Documents not being returned is the fault of the Defendant, and not the Plaintiff, and was beyond Plaintiff's control. There is, therefore, good cause to believe that if Defendant's would have returned the Acknowledgment Documents to the Plaintiff, Plaintiff would have completed service.

> <u>Trial Court: ECF 30 pp. 9-10</u>

Plaintiff also stated:

> Plaintiff was in full conformity with the statute (312-A). The lack of proper service was due to the Defendant retaining pertinent documents. Plaintiff asserts that NY CPLR §2001 should apply here to disregard the technical defect in service and consider the Defendant served.

> Trial Court: ECF 30 pp. 11.

The Defendants also contradicts themselves where they concurrently state that they were aware of these "new arguments" from the District Court. *See* <u>D.E. 49.1 p. 59</u> ("Uzoigwe mentions CPLR § 2001 in his Motion for Reconsideration").

The Defendant asserted, "this argument fails on its face as Rule 11 neither requires signatures on exhibits attached to the primary pleading, nor does it create a signature where none otherwise exists." <u>D.E. 49.1 pp. 65-66</u>. First, the Defendant pointed to no authority validating that assertion. Rule 10(c) states "A copy of a written instrument that is an exhibit to a pleading [such as the Acknowledgement

Documents] is a part of the pleading *for all purposes.*" The Defendant may have filed the Acknowledgment Documents to avoid perjury, but Plaintiff intended to prove receipt per the statute after removal. By filing them with their Letter Motion, the Defendant effectively signed the documents as required.

Next, the Defendant didn't file a pleading, they filed a Letter Response to a Letter Motion. *See* <u>Trial Court: ECF 14 & 14-1</u>.[5] Next, their "exhibit" became Plaintiff's evidence. The evidence shows the Defendant received the Acknowledgment Documents but retained them to prejudice Plaintiff. It would not be unfair to the Defendant if the Court finds they were served on August 28, 2023, as they had the opportunity to respond in State Court but chose to attempt to prejudice Plaintiff.

The Defendant's Brief, pursuant to 15 U.S.C. § 7003(b)(1), stated "the Act expressly states that it does not apply to 'court orders or notices, or official court documents (including briefs, pleadings, and other writings) required to be executed in connection with court proceedings,' necessarily exempting the Acknowledgement Form from its reach." That exception is inapplicable and does not help the

---

[5] In the event that this Court chooses to construe the Defendant's Letter Motion as a pleading, as they have asserted, Plaintiff Requests for Judgment on the Pleadings as the Defendant has not denied any allegation under any of the claims set forth.

Defendant's argument, proven by the number of electronic filings transmitted back and forth so far.  Under 15 USC 7003(c)(2) it states:

> If a Federal regulatory agency, with respect to matter within its jurisdiction, determines after notice and an opportunity for public comment, and publishes a finding, that one or more such exceptions are no longer necessary for the protection of consumers and eliminating such exceptions will not increase the material risk of harm to consumers, such agency may extend the application of section 7001 of this title to the exceptions identified in such finding.

> 15 U.S.C.A. § 7003.

Federal and state courts widely accept e-signatures and e-filing systems like PACER, bypassing the need for paper records. Since e-filing is authorized under court rules and not restricted by 15 U.S.C. § 7003, the Defendant's argument is invalid.

The Defendant stated "initially, federal courts sitting in diversity apply federal procedural law. Therefore, Uzoigwe's assertion that the federal district court should have invoked a state procedural rule ignores settled law governing applicable procedures." D.E. 49.1 p. 67.  Plaintiff's header stated "[u]sing NY CPLR §2001, NY CPLR 305(c), and/or **Fed. R. Civ. P Rule 4(l)(3)** to cure Plaintiff's defective service would have been proper in the interest of justice." D.E. 31.1 p. 32.

The Defendant also argues that "Charter had no obligation to rebut service" because "New York law requires only that in its Notice of Removal, Charter 'affirmatively allege' that it 'was not properly served' because it did not return the Acknowledgment Form. New York law does not require Charter to argue it never

received the Summons and Complaint by mail." <u>D.E. 49.1 pp. 71-72</u>. Defendant does not dispute that a traverse hearing was warranted, as Plaintiff never claimed New York required it.. The Defendant further stated, "Moreover, as the district court recognized, Uzoigwe acknowledged that he did not properly serve Charter before Charter removed the case to federal court." <u>D.E. 49.1 p. 72</u>.

Defendant cannot prove Plaintiff conceded improper service before removal. The Court may hold a hearing to confirm proper service.

## V. <u>Judge Gonzalez should have Recused himself given the conflict of interest that Plaintiff brought to his attention.</u>[6]

Plaintiff reasonably believed Judge Gonzalez was biased, citing his former law firm, Dechert LLP, previously representing the Defendant's predecessor and sharing a lobbyist panel with Charter Communications. Plaintiff provided an affidavit showing a reasonable person would find his involvement concerning, but Judge Gonzalez denied the recusal request.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff is requesting that Judge Gonzalez's decision be REVERSED on the grounds that Plaintiff has presented sufficient facts to avoid dismissal, or to VACATE the District Court's Judgment and

---

[6] *See* <u>Trial Court: ECF 37</u> and Docket Text Order on 12/21/2023

Order for this matter to be remanded back to the State Court as Plaintiff believes he has proven they have jurisdiction and so that the State can properly apply their laws.

Respectfully submitted,

Onwy Uzoigwe

4212 Flowerton Rd.

Baltimore, MD 21229

Phone: (347) 572-8280

Email: o.uzoigwe@gmail.com

*Plaintiff*

**CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that, on this 21st day of November 2024, that this principal brief does not exceed 6,500 words, using typeface Time New Roman ant 14 point text and footnotes and large quotations are at 12 point text.

Onwy Uzoigwe

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 21st day of November 2024, a copy of the foregoing document and Certificate of Compliance was sent by the Court's ECF system to all registered parties:

Onwy Uzoigwe